# EXHIBIT 9

# 18-100

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

JOE FASANO, Individually and on Behalf of All Others Similiarly Situated, ALTIMEO OPTIMUM FUND, Individually and on Behalf of All Others Similiarly Situated, ALTIMEO ASSET MANAGEMENT, Individually and on Behalf of All Others Similiarly Situated,

*Plaintiffs-Appellants,*

—against—

GUOQING LI, PEGGY YU YU, DANGDANG HOLDING COMPANY LIMITED, E-COMMERCE CHINA DANGDANG, INC., KEWEN HOLDING COMPANY LIMITED, SCIENCE & CULTURE INTERNATIONAL LIMITED, FIRST PROFIT MANAGEMENT LIMITED, DANQIAN YAO, LIJUN CHEN, MIN KAN, RUBY RONG LU, KE ZHANG, XIAOLONG LI,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR PLAINTIFFS-APPELLANTS

SAMUEL J. LIEBERMAN
BEN HUTMAN
SADIS & GOLDBERG, LLP
551 Fifth Avenue, 21st Floor
New York, New York 10176
(212) 947-3793

*Attorneys for Plaintiffs-Appellants*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff-Appellant Altimeo Optimum Fund states that it is an investment fund that does not have any parent company or publicly-held company that owns 10% or more of it. Plaintiff-Appellant Altimeo Asset Management states that it is the investment manager and authorized agent of Altimeo Optimum Fund and does not have any parent company or publicly-held company that owns 10% or more of it.

Dated:  New York, NY          SADIS & GOLDBERG LLP
        March 29, 2018

        /s/ Samuel J. Lieberman

        By:  Samuel J. Lieberman, Esq.

            *Attorneys for Plaintiffs-Appellants*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................ii

JURISDICTIONAL STATEMENT .........................................................................1

ISSUES PRESENTED FOR REVIEW ...................................................................2

STATEMENT OF THE CASE...............................................................................4

SUMMARY OF THE ARGUMENT ...................................................................17

ARGUMENT ....................................................................................................19

STANDARD OF REVIEW .................................................................................19

I.      THE DISTRICT COURT ERRED AS A MATTER OF LAW BY
        FAILING TO ADDRESS THE MANDATORY FORUM
        SELECTION CLAUSE IN DANGDANG'S ADR'S REQUIRING
        LITIGATION IN NEW YORK COURTS...................................................20

II.     THE DISTRICT COURT ERRED IN GIVING "LITTLE
        DEFERENCE" TO A NEW YORK CO-LEAD PLAINTIFFS'
        FORUM CHOICE FOR AN ACTION ASSERTING U.S.
        SECURITIES AND NEW YORK STATE LAW CLAIMS, WHERE
        IT DID NOT FIND THAT PLAINTIFFS ENGAGED IN FORUM
        SHOPPING..............................................................................................23

        A.      The District Court Erred in Failing to Consider the U.S. Interest
                in Enforcing Securities Laws or Dangdang's Exclusive Listing
                on the NYSE in Determining the Level of Deference ......................24

        B.      The District Court's Erred in Applying Only "Little Deference"
                to Plaintiffs' Forum Choice When it Found No Evidence that
                Plaintiffs Had an Improper Motive in Bringing Suit Here..................27

        C.      The District Court Failed to Consider Whether Defendants'
                Motion was Motivated by Forum-Shopping, as Required by
                Iragorri................................................................................................29

III.   THE DISTRICT COURT ERRED IN FAILING TO REQUIRE
       DEFENDANTS TO PROVE OPPRESSIVENESS AND VEXATION
       OUT OF ALL PROPORTION TO PLAINTIFFS' CONVENIENCE .........30

IV.    THE DISTRICT COURT FAILED TO CONSIDER THE UNITED
       STATES' STRONG INTEREST IN ENFORCING ITS SECURITIES
       LAWS IN ASSESSING THE LOCAL INTERESTS IN THIS CASE ........32

V.     THE DISTRICT COURT'S CHOICE OF LAW ANALYSIS
       IMPROPERLY DISREGARDED PLAINTIFFS' U.S. SECURITIES
       AND NEW YORK STATE LAW CLAIMS, AND DANGDANG'S
       ADOPTION OF NYSE AND SARBANES OXLEY CORPORATE
       GOVERNANCE STANDARDS...............................................................35

       A.   The District Court Improperly Relied on Its Skepticism As to
            Plaintiff's Securities Law Claim as a Basis to Disregard It................35

       B.   New York Law Applies to Plaintiff's Common Law
            Misrepresentation Claim, and Thus The District Court Erred
            Holding that Cayman Law Predominated Based on This Claim. .......38

       C.   The District Court Failed to Address Dangdang's Affirmative
            Adoption of Higher Sarbanes-Oxley and NYSE Listing
            Standards for Related Party Transactions and Inaccurate Public
            Statements ........................................................................40

       D.   The District Court Erred in Concluding that the Need to Apply
            Some Foreign Law Justified Forum Non Conveniens Dismissal .......43

CONCLUSION ...............................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
    585 F.3d 696 (2d Cir. 2009) ...........................................................2, 17, 19, 21

*Alnwick v. European Micro Holdings, Inc.*,
    29 F. App'x 781 (2d Cir. 2002)........................................................................36

*Asoma Corp. v. SK Shipping Co.*,
    467 F.3d 817 (2d Cir. 2006) ............................................................................21

*Bigio v. Coca-Cola Co.*,
    448 F.3d 176 (2d Cir. 2006) ...........................................................20, 26, 29, 43

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) (Blackmun, J., dissenting)..............................................24

*Brink's Ltd. v. S. African Airways*,
    93 F.3d 1022 (2d Cir. 1996) ............................................................................39

*DeKalb Cty. Pension Fund v. Transocean, Ltd.*,
    817 F.3d 393 (2d Cir. 2016) ............................................................................37

*DiRienzo v. Philip Servs. Corp.*,
    294 F.3d 21 (2d Cir. 2002) .........................................................................*passim*

*Flame-Spray Indus. Inc. v. GTV Auto. GmbH*,
    266 F. Supp. 3d 608, 620 (E.D.N.Y. 2017) .....................................................30

*Gulf Oil v. Gilbert*,
    330 U.S. 501 (1947)..............................................................................21, 23, 36

*Howing Co. v. Nationwide Corp*,
    826 F.2d 1470, 1474–76 (6th Cir. 1987) .........................................................36

*In re Integra Group*,
    (2016 (1) CILR 192) .......................................................................................43

*Iragorri v. United Techs. Corp.*,
 274 F.3d 65 (2d Cir. 2001) (*en banc*) ..........................................................*passim*

*Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*,
 528 F. App'x 33 (2d Cir. 2013)..................................................................................23

*LVAR, L.P. v. Bermuda Commercial Bank Ltd.*,
 649 F. App'x 25 (2d Cir. 2016)..................................................................................22

*M/S Bremen v. Zapata Off-Shore Co.*,
 407 U.S. 1 (1972)....................................................................................17, 20, 21, 22

*Macsteel Int'l USA Corp. v. M/V Larch Arrow.*,
 354 F. App'x 537 (2d Cir. 2009)................................................................................22

*Manu Int'l, S.A. v. Avon Prod., Inc.*,
 641 F.2d 62 (2d Cir. 1981) ..................................................................................36, 43

*Martinez v. Bloomberg LP*,
 740 F.3d 211 (2d Cir. 2014) .....................................................................................21

*Morrison v. Nat'l Australia Bank Ltd.*,
 561 U.S. 247 (2010) (Stevens, J. concurring in judgment) ......................................24

*Norex Petroleum, Ltd. v. Access Industs., Inc.*,
 416 F.3d 146 (2d. Cir. 2005) .........................................................................19, 28, 29

*Olympic Corp. v. Societe Generale*,
 462 F.2d 376 (2d Cir. 1972) .....................................................................................44

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am.
   Sec., LLC*,
 446 F. Supp. 2d 163 (S.D.N.Y. 2006) .......................................................................39

*Phillips v. Audio Active Ltd.*,
 494 F.3d 378 (2d Cir. 2007) ................................................................................21, 22

*Pollux v. Chase Manhattan Bank*,
 329 F.3d 64 (2d Cir. 2003) .......................................................................................19

*In re Poseidon Concepts Sec. Litig.*,
 2016 WL 3017395 (S.D.N.Y. May 24, 2016) ...........................................................24

v

*S.K.I. Beer Corp. v. Baltika Brewery*,
  612 F.3d 705 (2d Cir. 2010) ..................................................................21, 22

*Salis v. Am. Exp. Lines*,
  331 Fed. App'x. 811 (2d Cir. 2009) ................................................................22

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007)........................................................................................30

*In re Thelen LLP*,
  736 F.3d 213 (2d Cir. 2013) ...........................................................................39

*Wiwa v. Royal Dutch Petroleum Co.*,
  226 F.3d 88 (2d Cir. 2000) ......................................................................*passim*

*Wu v. Stomber*,
  750 F.3d 944 (D.C. Cir. 2014)........................................................................39

*Zicherman v. Korean Air Lines Co.*,
  516 U.S. 217 (1996)........................................................................................39

## Statutes & Regulations

15 U.S.C. § 78b.................................................................................................33

15 U.S.C. § 78m(e) .....................................................................................36, 37

15 U.S.C. § 78n(a) ......................................................................................36, 37

15 U.S.C. § 78u-4(a)(3)(A)..............................................................................15

15 U.S.C. § 78u-5(b)(1)(E)..............................................................................37

17 C.F.R. § 240.13e-3(d), (e) ............................................................................8

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 1331 ...............................................................................................1

28 U.S.C. § 1367 ...............................................................................................1

28 U.S.C. § 1332(d) ..........................................................................................1

Alien Tort Claims Act....................................................................................26, 44

Cayman Islands Companies Law Part XVI ..............................................................43

Private Securities Litigation Reform Act ("PSLRA").................................15, 16, 37

U.S. Sarbanes Oxley Act of 2002 ...................................................................*passim*

Securities Exchange Act of 1934....................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 23 ...........................................................................................1

NYSE Listing Standards Section 303A.02…........................................................12

NYSE Listing Standards § 303A.10 ...............................................................10, 41

Peter Halesworth, *Chinese "Squeeze Outs" in American Stock
    Markets and the Need to Protect U.S. Investors*, at 5-6 (2016)
    *available at* http://hengreninvestment.com/whitepapersqueezeouts-
    english.pdf.................................................................................................34

S.E.C. Rel. No. 5884, 1977 WL 187732 (Nov. 17, 1977).......................................37

## JURISDICTIONAL STATEMENT

Appellants Joe Fasano ("Fasano"), Altimeo Optimum Fund, and Altimeo Asset Management (the Altimeo entities, together "Altimeo) (all plaintiff-appellants together "Appellants" or "Plaintiffs"), brought this action in the District Court as a class-action for violations of federal securities laws and related common-law claims against E-Commerce China Dangdang, Inc. ("Dangdang") and the other Defendant-Appellees ("Defendants") on behalf of all Dangdang minority stockholders cashed out in the going-private merger at issue.

Federal Courts have subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1367 because it involves a U.S. securities law claim for violating § 13(e) of the Securities Exchange Act of 1934 and Rule 13e-3 thereunder in the going-private merger conducted by Defendant-Appellees buying securities exclusively listed on the New York Stock Exchange ("NYSE"). Federal Courts also have subject matter jurisdiction under 28 U.S.C. § 1332(d) because this is a class action under Fed. R. Civ. P. 23 involving more than $5,000,000 in damages, and the parties are at least minimally diverse, as Defendant-Appellees reside overseas in China, The Cayman Islands and the British Virgin Islands, whereas the named Appellants reside in New York and France.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, as it is an appeal from a final order disposing of all parties and all claims.

## ISSUES PRESENTED FOR REVIEW

1.      Whether the Court below erred in failing to enforce the mandatory forum selection clause in Dangdang's American Depositary Receipts ("ADRs"), which requires that: "Any controversy, claim or cause of action arising out of or relating to the Shares … shall be litigated in Federal and state courts in … New York." (A351 § 23(b).)[1] *See Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009).

2.      Whether the Court below erred in giving "Little Deference" to a New York Co-Lead Plaintiff's choice of his home forum for an action asserting U.S. securities law and New York State common law claims arising out of Dangdang's shares traded exclusively on the New York Stock Exchange ("NYSE"), when there was no finding that Plaintiffs' choice was motivated by forum-shopping. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (*en banc*).

3.      Whether the Court below erred by failing to apply the legal standard for weighing the *forum non conveniens* public and private interest factors, which requires that plaintiffs should not be "deprived of their choice of forum except upon defendants' clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience." *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002).

---

[1] The Joint Appendix is cited herein using the format "A___."

4.       Whether the Court below erred in applying the *forum non conveniens* local interest factor without considering the "strong public interest" of "the United States in enforcing its securities law," which "favors access to American courts for those who use American securities markets." *Id.* at 33.

5.       Whether the Court below erred in its choice of law analysis by failing to (i) credit Plaintiffs' U.S. securities law claims, (ii) address the Sarbanes-Oxley and NYSE Corporate Governance standards that Dangdang adopted, which directly apply to Plaintiffs' claims of conflicts of interest in a related party transaction, and (iii) apply the New York choice of forum provision in Dangdang's ADRs and otherwise find New York law applicable to Plaintiffs' common law misrepresentation claim.

## STATEMENT OF THE CASE

This action was brought in the Southern District of New York because Dangdang chose to list its stock exclusively in New York on the NYSE, using a mandatory New York forum selection clause, and Lead Plaintiffs, including a New York resident, assert claims under U.S. securities and New York State law.

Co-Lead Plaintiff Joe Fasano is a New York resident who brought this action on November 10, 2016, based on misrepresentations made in Dangdang's S.E.C. Schedule 13E-3 statements and similar claims related to disclosures about a going-private transaction in which a controlling stockholder forced out minority stockholders at plainly low price.  His Co-Lead Plaintiffs are two French entities.

Dangdang is a leading business-to-consumer e-commerce company with headquarters in Beijing, China.  (A20 ¶ 27.)  By December 31, 2015, Dangdang was the largest Chinese book retailer in terms of revenues, and offered approximately 1,200,000 book titles.  (A351-52.)  Dangdang had 27.8 million active customers in 2015.  (A352.)

Dangdang has maintained a website, which is accessible throughout the United States, including in New York.  (*See* www.dangdang.com; *see also* A178.) This distinguishes the website from local Chinese websites, which end with the domain extension ".cn".  (A357.)  Through its website, Dangdang offers its catalog

of book titles, and other products including fashion, apparel, beauty, personal care, home and lifestyle, baby, children and maternity products.  (A351.)

**A.**     **Dangdang Deliberately Sought Out the New York Securities Market by Exclusively Listing its Shares to Trade in New York, on the NYSE**

Dangdang's stock was exclusively listed and traded in New York on the NYSE.  On December 8 2010, Dangdang decided to publicly list its stock for trading exclusively on the New York Stock Exchange ("NYSE"), through an initial public offering ("IPO") of American Depository Shares ("ADS").  (A21 ¶ 29.) Dangdang's stock was exclusively listed and traded on the NYSE from its IPO through the late-September 2016 effective date of the going-private transaction related to this action.  (A282, 340.)

Dangdang's stock was also primarily held in New York.  Approximately "67.0% of [Dangdang's] total outstanding common shares were held" as of record "the United States."  (A359-60.)  Dangdang's shares were held through "The Bank of New York Mellon," ("BONY") "the depositary of" its "ADS program."  (*Id.*) BONY's headquarters are located in New York City.  (A19 ¶ 25.)

Pursuant to its exclusive NYSE listing, Dangdang maintained a New York agent for service of process for "any action brought against us under the securities laws of the United States."  (A342, 382-83.)  Dangdang appointed Law Debenture Corporation Services, Inc., at "400 Madison Avenue, 4th Floor, New York, New York 10017," as its agent.  (A335.)

5

**B.**    **Dangdang Chose a Mandatory New York Forum Selection Clause for All Claims Arising Out of or Relating to its ADS Shares**

Importantly, the Depositary Agreement ("ADS Agreement") between Dangdang and all "Owners and Holders" of its ADS (A382) contains a mandatory forum selection clause requiring litigation in "the Federal and state courts in the Borough of Manhattan, The City of New York," (A389.)  Exhibit A to the ADS Agreement is the Receipt – ADR – for Dangdang's shares, which provides:

> "(b) Any controversy, claim or cause of action arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts or this Deposit Agreement … *shall be litigated in the Federal and state courts in the Borough of Manhattan, The City of New Y   ork* and the Company hereby submits to the personal jurisdiction of the court in which such action or proceeding is brought." (*Id.* § 23(b) (emphasis added).)

The term "shall be litigated" makes clear this provision is meant to be mandatory.

This provision expressly applies to U.S. securities law and similar claims, and thus governs this action.  It applies to claims including those "against the Company relating to or based upon the provisions of the Federal securities laws of the United States or the rules and regulations promulgated thereunder."  (*Id.* § 23(a).)  It also refers to § 7.06 of the ADS Agreement, which states that Dangdang "consents and submits to the jurisdiction of any [] court in the State of New York," for "any suit or proceeding arising out of or relating to… the … Shares."  (A382-83.)  This agreement also has a New York Choice of Law provision.  (A384.)

6

The Court below did not analyze – over even address – this mandatory forum clause in ruling on the *forum non conveniens* motion. Nor did the Court address the several other New York forum clauses that the Appellees had agreed to related to Dangdang's ADS shares or their roles as Dangdang fiduciaries.

For example, Dangdang's publicly-filed executive "Employment Agreement," specifically provides:

> "Each party hereto *irrevocably agrees* that the courts of the State of New York *shall have* jurisdiction to hear and determine any suit, action or proceeding … which may arise out of or in connection with this Agreement and for such purposes *irrevocably submits* to the jurisdiction of such courts." (A393 § 16) (emphasis added).

Appellees Guoqing Li; Peggy Yu Yu; Danqian Lao; Lijun Chen; and Min Kan all served as Dangdang executives (the "Executive Defendants") who are subject to this New York choice of forum and law clause. (A16-17 ¶¶ 7, 10, 15, 17-18.)

Similarly, the Underwriting Agreement for Dangdang's IPO signed by Appellees Dangdang, Kewen Holding Co., Ltd. ("Kewen") and Ms. Yu states:

> "Each of the Company and the Selling Shareholders submit to the non-exclusive jurisdiction of the Federal and state courts in the Borough of Manhattan in The City of New York … *and irrevocably and unconditionally waive [] and agree[] not to ... claim in any such court that any such suit or proceeding ... has been brought in an inconvenient forum.*" (A397-98 §17 (emphasis added).)

And all of Dangdang's officers and directors, including the Executive Defendants and Special Committee directors Lu, Zhang and Xiaolong Li, each

signed an "Indemnification Agreement" stating that it "shall be governed and interpreted in accordance with the laws of the State of New York." (A409 § 16.)

**C.**    **Defendants Made the Key Misrepresentations in Filings Required by U.S. Securities Laws, Which Were Disseminated in New York**

Defendants made the key misrepresentations at issue in Schedule 13E-3 filings required by the U.S. securities laws, which were disseminated in New York. A Schedule 13E-3 filing providing disclosure of material information related to a "Going private transaction[]" is required under S.E.C. Rule 13e-3, which is authorized under § 13(e) of the Exchange Act. 17 C.F.R. § 240.13e-3(d), (e). The U.S. securities and New York State misrepresentations claims are based on two categories of misrepresentations made in the Defendants' Schedule 13E-3 S.E.C. filings disseminated in New York:

*First*, Defendants' Schedule 13E-3 filing twice falsely represent that Maples & Calder ("Maples") was independent Cayman counsel to the Special Committee as a reason to support the transaction, as follows:

> "the Special Committee's independent control of the sale process with the advice and assistance of … Maples and Calder, as its legal advisor[], [] reporting solely to the Special Committee." (A303; *accord* A28, 36, Compl. ¶¶ 67, 114-22.)

> "the Special Committee retained and was advised by independent legal counsels." (A308.)

But the Complaint shows these statements were materially false, since Maples had a conflict of interest in also serving as company counsel to Dangdang, which was

8

controlled by Defendant Guoqing Li, who was seeking to acquire Dangdang with his Controlling Group.  (A27-29, 37 ¶¶ 65-68, 121.)

*Second*, Defendants repeatedly misrepresented that they believed "that the merger is substantively and procedurally fair to the [minority] security holders" (A289, 306; *see also* A36 ¶ 115.)  But this was false.  Defendants knew that the Board had rejected a superior third-party, all cash offer of $8.80 per ADS in favor of the Controlling Group's $6.70 per ADS offer.  And the Controlling Group's offer was improperly coercive due to an inherent conflict of interest.  (A14-15 ¶ 2.)

The materiality of these Schedule 13E-3 misrepresentations is shown by the Merger Agreement itself, which made "the accuracy of the information provided in the Schedule 13E-3 and this proxy statement" a condition to the Merger.  (A312; A318 § 3.05(b).)  Further, materiality is also shown by the Defendants' focus on these representations as evidence of important "procedural safeguards" supporting the fairness of the transaction also indicates materiality. (A303, 307.)

Notably, Defendants disseminated their Schedule 13E-3 false statements in New York, through BONY, Dangdang's ADS Depositary.   Defendants furnished BONY "with ... all notices of shareholders' meetings and other reports and communications."  (A361.)  And they directed BONY to "make such notices, reports and communications available to" all holders Dangdang's "ADSs."  (*Id.*)

9

The Schedule 13E-3's containing the false statements at issue here contain a "Notice of Extraordinary General Meeting of Shareholders," (A279.)  Thus, it was sent to all Dangdang ADS stockholders – including the Lead Plaintiffs – through BONY in New York.  Dangdang also made these statements publicly available to investors through an S.E.C. filing and website in "Washington. D.C."  (A361.)

**D.     Dangdang Adopted NYSE and Sarbanes-Oxley Corporate Governance Standards to Govern Instead of Cayman Islands Standards**

Dangdang expressly adopted corporate governance standards under the U.S. Sarbanes Oxley Act of 2002 ("SOX") – of the U.S. securities laws – and NYSE Listing standards, which impose higher standards than Cayman Law.  It adopted a Code of Business Conduct and Ethics ("Code") required by "Section 406 of the Sarbanes-Oxley Act of 2002" (A432) and NYSE Listing Standards, (A371-72 § 303A.10), to govern the conduct of "all of the directors, officers and employees of the Company," (A432 § II).

Notably, Dangdang's "Code" imposes higher standards for two corporate governance areas at issue here:   Transactions involving "Conflicts of Interest" and "Inaccurate, [or] incomplete … reporting" in public statements."  (A433-34, 438.) The Code prohibits "an interested director or senior officer" from being "involved in any proposed transaction between the Company and an Interested Business."

10

(A434). This governs the fiduciary duty claim that the Controlling Group[2] acted out of an improper conflict of interest in negotiating and approving the September 20, 2016 Going-Private Merger (the "Going Private Merger") to acquire Dangdang.  (A34-35 ¶¶ 102, 105-06.)

Similarly, the Code prohibits "inaccurate [or] incomplete … reporting" in public statements and requires disclosure of "Conflicts of Interest."  (A435, 438).

Dangdang has repeatedly admitted that its Code's standards under the Sarbanes-Oxley Act and NYSE Listing requirements impose binding standards in lieu of Cayman Law.  In particular, Dangdang's Code provides that:

> "To the extent *this Code requires a higher standard than required by* commercial  practice  or *applicable laws, rules or regulations, we adhere to these higher standards.*"  (A432 § I (emphasis added).)

Similarly, Dangdang publicly admitted that its Code and NYSE Listing corporate governance standards govern instead of Cayman standards:

> "Certain corporate governance practices in the Cayman Islands, which is our home country, differ significantly from the New York Stock Exchange corporate governance listing standards. . . . *Currently, we do not plan to rely on home country practice with respect to our corporate governance. . . .*"  (A363-64 (emphasis added).)

---

[2]  The Controlling Group is Defendants Guoqing Li (Dangdang's controlling stockholder), his wife Executive Chairman Peggy Yu, Dangdang executives Danqian Yao, Min Kan, and Lijun Chen, Dangdang Holding Company, Ltd. ("Parent"), Mr. Li's companies Kewen and Science & Culture International Ltd., and Mr. Yao's company First Profit Management, Ltd.  (A16-17 ¶¶ 7, 10-19.)

11

Further, Dangdang's corporate charter states that its "corporate governance" standards are subject to "applicable law or the listing rules of the recognized stock exchange … where the Company's securities are traded."  (A369 ¶ 78; *Id.* ¶ 77(b)) (director nominations are "subject" to "New York Stock Exchange corporate governance rules").   Thus, NYSE and Sarbanes-Oxley standards apply here.

Indeed, even the Going-Private Merger recognizes the binding and applicable nature of NYSE Corporate Governance standards by incorporating those standards into the Merger Agreement.   The transaction was contingent upon "compliance in all material respects with the applicable listing and corporate governance rules and regulations of the New York Stock Exchange."  (A312.) Section 3.05(b) and 4.04(b) of the Agreement both require "compliance with the rules and regulations of the New York Stock Exchange."  (A318, 320.)   And § 3.04(b) represents, as a condition to the transaction, that Dangdang's "Special Committee" members all qualified "as an 'independent director'" under "NYSE Listed Company Manual Section 303A.02…."  (A317; *accord* A322-23 § 7.02.)

E.   **Key Steps of the Transaction at Issue Occurred in New York and the United States**

The Going-Private Merger involved in this action involved many steps that occurred in New York and the United States. *First*, as noted above, the transaction involved disseminating Schedule 13E-3 forms and filings in New York through BONY and in Washington, D.C. through the S.E.C.  (A361.)

12

*Second*, the Merger required Dangdang sending a letter to the NYSE in New York requesting that it be delisted from the NYSE. (A321.) This involved asking the NYSE to file a Form 25 with the S.E.C. delisting Dangdang.

*Third*, the Merger involved a stockholder vote that required all Dangdang ADS holders seeking to vote on the transaction to send voting instructions and shares to BONY "in New York City." (A282, 285.)

*Fourth*, the Merger involved an extraordinary stockholder meeting that holders of Dangdang's ADS could only attend if they delivered their ADS shares to "the ADS depositary" – BONY in New York – for cancellation. (*Id.*)

*Fifth*, Dangdang's Special Committee (defendants Lu, Zhang, and Xialong Li, (A18 ¶ 23), hired Duff & Phelps, LLC out of Chicago, Illinois as its financial advisor. (A291.) This means that the evaluation of the financial fairness of the Going-Private Merger involved many back and forth communications into and out of Chicago, Illinois. (A291-300.) And thus significant information as to the fairness of the transaction is located in Chicago.

Indeed, Duff & Phelps issued its financial Fairness Opinion in support of the Going-Private Merger from its offices at "311 South Wacker Drive" in "Chicago, IL" to provide a financial fairness opinion. (A326.) This was a significant step in the transaction, because a "written opinion of Duff & Phelps, LLC" was a condition precedent to the Merger's closing. (A317 § 3.04(c).) And thus evidence

13

relevant to the transaction's fairness is located in Chicago, Illinois – not the Cayman Islands.

*Sixth*, the U.S. legal counsel for the Controlling Group, the Special Committee, and a third-party bidder, iMeigu Capital, are U.S. law firms with New York and other U.S. offices – but no Cayman Islands office. The Controlling Group was represented by Skadden, Arps, which has a New York principal office. (A291.) The Special Committee U.S. legal adviser was Shearman & Sterling LLP, a New York-centered firm. (A290.) And third-party bidder iMeigu Capital was represented by O'Melveny & Myers, which is headquartered in Los Angeles and has a New York office. (A461.) Thus, any non-privileged documents these law firms have (*e.g.*, third party correspondence) would be more easily obtained in New York than in the Cayman Islands.

**F.    Upon the Filing of the Complaint, Defendants Sought to Evade a U.S. Forum, and the Court Below Immediately Required that Plaintiffs Follow the Requirements of U.S. Securities Law**

Despite Dangdang's exclusive NYSE listing and mandatory New York forum clause, the Defendants have sought to evade a U.S. forum. The Lead Plaintiffs filed the Complaint on November 10, 2016. (A13.) They asked the Defendants to waive service, but Defendants declined to do so. (A267-68.)

On November 25, 2016, Plaintiffs served each of the corporate entity defendants (the "Entity Defendants") – Dangdang, Parent, Kewen, Science &

14

Culture International, Ltd. ("SCI"), and First Profit Management, Ltd. ("First Profit") – at their registered offices in the British Virgin and Cayman Islands. (A268.)  On November 29 – nineteen days after this action was filed – Dangdang filed an Appraisal Petition in the Grand Court of the Cayman Islands (the "Appraisal Action") – involving a small number of stockholders who dissented from the Merger.  (*Id.*; A425-30)   Plaintiffs have since served four Defendants (Yu Yu, Yao, Chen, and Kan) through Hague Convention service.  (A496-520.)

Upon the filing of the Complaint, the Court below immediately imposed U.S. securities law requirements.  On November 17, 2016, the Court ordered the Lead Plaintiffs to make publication of the pendency of this action under "The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(A)." (A50; *see also* Dkt. No. 10 (cited at A5).)  The Court next required Plaintiffs to move for appointment as Co-Lead Plaintiffs under the PSLRA, which the Court later granted on March 8, 2017.  (A6, 58-71, 92-94.)  Finally, the Court imposed the PSLRA stay of discovery to the entire case, based solely on the U.S. securities law claim, citing the PSLRA, 15 U.S.C. § 78u-4(b)(3)(B).  (A91.)

## G.    <u>The Decision Under Review</u>

On December 29, 2017, the Court below granted the Entity Defendants' motion to dismiss on *forum non conveniens* grounds.  (A524-25.)  The Court gave "Little Deference" to Plaintiffs' choice of forum, even though Co-Lead Plaintiff

15

Mr. Fasano is a New York resident suing in his home forum.  It reasoned that two other Co-Lead Plaintiffs from France have larger financial losses and Mr. Fasano's representative status supported diminished deference.  (A535-36.)  The Court then found the Cayman Islands to be an adequate forum, and held that "On Balance" the public and private interest factors slightly favored dismissal.  (A543.)  It found the private interest factors "Neutral" (*id.*), but the public interest factors favored dismissal, based on the local interest and issues of foreign law.  (A547, 550-54.)

16

## SUMMARY OF THE ARGUMENT

The decision below should be reversed because it applied the wrong legal standards and failed to consider Plaintiffs' valid reasons for bringing this action in New York because Dangdang listed its stock exclusively in New York using a mandatory New York forum selection clause, and Lead Plaintiffs, including a New York resident, assert claims under U.S. securities and New York State law.

*First*, the district court erred in failing to enforce – or even address – the mandatory forum selection clause in Dangdang's ADRs, which demands that "Any … claim or cause of action arising out of or relating to the Shares … shall be litigated in Federal and state courts in … New York." (A351 § 23(b).)  The district court should have enforced this mandatory forum clause instead of applying standard *forum non conveniens* factors – under Second Circuit and Supreme Court precedent.  *See Aguas Lenders Recovery Grp. v. Suez, S.A.* , 585 F.3d 696, 699 (2d Cir. 2009) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).)

*Second*, an independent reason for reversal is that the district court erred in choosing the level of deference to Plaintiffs' forum by failing to consider two of their valid reasons for bringing suit in New York:  (i) Dangdang sought out New York investors by exclusively listing its stock on the NYSE; and (ii) the "interest in having United States Courts enforce United States securities laws."  *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002).  Failing to consider these valid

reasons violated this Court's ruling that courts "must consider" the "legitimate reasons" for a forum choice in considering the level of "deference." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (*en banc*).

Moreover, the district court erred in giving only "Little Deference" to Plaintiff's forum choice despite finding that there was no "evidence that Plaintiffs had an improper motive in bringing suit here." (Op. 15.) Under *Iragorri*, it is only proper to apply "diminishing deference to a plaintiff's forum choice to the extent it was motivated by tactical advantage." 274 F.3d at 73.

*Third*, the district court applied the wrong legal standard by failing to require the defendants to prove that a New York forum would cause "oppressiveness and vexation ... out of all proportion to plaintiff[s'] convenience." *DiRienzo*, 294 F.3d at 33. This error changed the outcome, since the district found only that the slight "Balance" of the public and private factors favored dismissal. (Op. at 20).

*Fourth*, the district court erred in analyzing the local interest factor by failing to consider the United States' "strong public interest" in ensuring that "securities fraud law" is "clear and enforceable" for "securities markets to function efficiently." *DiRienzo*, 294 F.3d at 33. Failing to consider this interest made the district court's ruling "fall[] outside the permissible range of decisions." *Id.*

*Fifth*, the district court improperly applied the foreign law factor by improperly: (i) discounting Plaintiffs' securities law claims based on its skepticism

18

of the merits, (ii) overlooking that New York law applies to Plaintiffs' common law misrepresentation claim, and (iii) ignoring Dangdang's express adoption of higher corporate governance standards for related party transactions under the Sarbanes Oxley Act of 2002 and NYSE Listing Standards.  The U.S. law claims at issue here mean that the possibility of applying foreign law is no basis for dismissal – particularly since both proposed fora would have to apply foreign law. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 107 (2d Cir. 2000).

## ARGUMENT

## STANDARD OF REVIEW

The standard of review of a district court's dismissal on the ground of *forum non conveniens* is abuse of discretion.  *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 699 (2d Cir. 2009).  A district court abuses its discretion, and should have its decision reversed or vacated, when its decision (1) rests on "'an error of law or a clearly erroneous finding of fact, or (2) cannot be located within the range of permissible decisions, or (3) fails to consider all the relevant factors or unreasonably balances those factors.'"  *Aguas Lenders*, 585 F.3d at 699-700 (quoting *Pollux v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003)).

An abuse of discretion includes failing to enforce a mandatory forum clause. *See id.*  It also includes not giving the proper "degree of deference" to a plaintiff's forum choice.  *Norex Petroleum, Ltd. v. Access Industs., Inc.*, 416 F.3d 146, 153

(2d. Cir. 2005). And it includes "misapprehend[ing] or misapply[ing] the relevant legal standards." *Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006).

## I. THE DISTRICT COURT ERRED AS A MATTER OF LAW BY FAILING TO ADDRESS THE MANDATORY FORUM SELECTION CLAUSE IN DANGDANG'S ADR'S REQUIRING LITIGATION IN NEW YORK COURTS

The District Court erred as a matter of law by failing to enforce – or even address – the mandatory forum selection clause in Dangdang's ADRs requiring that any action arising out of or related to Dangdang's shares "shall be litigated" in New York courts. (A389 § 23(b).) Dangdang's ADR's specifically require that:

> "(b) Any controversy, claim or cause of action arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts or this Deposit Agreement … *shall be litigated in the Federal and state courts in the Borough of Manhattan, The City of New York …" Id.* (emphasis added).)

Further, the ADRs state that this mandatory forum clause applies to claims including those "against the Company relating to or based upon the provisions of the Federal securities laws of the United States or the rules and regulations promulgated thereunder." (*Id.* § 23(a).) Accordingly, the ADR mandatory forum clause applies here, both because this action asserts claims related to Dangdang's ADS shares, including claims under, and relating to, the U.S. securities laws.

On a *forum non conveniens* motion, a mandatory "forum clause should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). A mandatory forum clause is given a

"presumption of enforceability" that governs, instead of the "the traditional forum *forum non conveniens* standards … in *Gulf Oil Corp. v. Gilber*t." *Aguas Lenders*, 585 F.3d at 700; *accord Martinez v. Bloomberg LP*, 740 F.3d 211, 218–19 (2d Cir. 2014) ("the presumptive enforceability of forum selection clauses reflects a strong federal public policy of its own" which requires a "substantial modification of the *forum non conveniens* doctrine"). A mandatory choice of forum clause should govern unless a party can clearly "show that trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *M/S Bremen*, 407 U.S. at 18.

The forum selection clause here is mandatory because it uses obligatory language – "shall be litigated" – in New York for claims against Dangdang related to its ADS shares based upon or related to the U.S. securities laws. (A389 ¶ 23(b).) "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007). This Court has repeatedly held that the term "shall" is "mandatory language" in the choice of forum and choice of law context. *S.K.I. Beer Corp. v. Baltika Brewer y*, 612 F.3d 705, 710 (2d Cir. 2010); *accord Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 824 (2d Cir. 2006) (reversing *forum non conveniens* dismissal based on forum clause requiring that "claims shall be brought" in New York).

For example, this Court held in *S.K.I. Beer Co rp.* that the phrase "shall govern" was "mandatory language" in a choice of law statute.  612 F.3d at 710. Similarly, this Court in another case held that "the word 'shall' renders" a forum "clause mandatory." *LVAR, L.P. v. Bermuda Commercial Bank Ltd.*, 649 F. App'x 25, 27 (2d Cir. 2016).  And this Court held that a forum selection clause was mandatory based on the phrase "shall be referred to and decided by." *Salis v. Am. Exp. Lines*, 331 Fed. App'x. 811, 814 (2d Cir. 2009).

Indeed, the "shall be litigated" language in Dangdang's ADRs (A389) is virtually identical to the "must be" language held to be mandatory by the Supreme Court in *M/S Bremen*, 407 U.S. at 2.  Further, this language is far stronger than the "to be" language that this Court has repeatedly held to make a forum selection clause mandatory.  *Phillips*, 494 F.3d at 386 ("use of the phrase 'are to be brought'" created mandatory forum in "England"); *accord Macsteel Int'l USA Corp. v. M/V Larch Arrow.* , 354 F. App'x 537, 540 (2d Cir. 2009) ("The 'to be' language makes the forum selection clause mandatory.")  Thus, the heavy weight of binding authority holds that Dangdang's ADR forum selection clause is mandatory, and should have been applied here to deny the motion to dismiss.

Defendants did not – because they could not – clearly show that trial in New York would be "so gravely difficult and inconvenient" as to deprive them of their day in court.  *M/S Bremen*, 407 U.S. at 18.  They cannot do so because they chose

22

New York for the exclusive listing of Dangdang's shares.  And they chose New York as a forum in several other agreements.  (A393, 397-98.)   Accordingly, the district court's judgment should be reversed and this case remanded.[3]

## II. THE DISTRICT COURT ERRED IN GIVING "LITTLE DEFERENCE" TO A NEW YORK CO-LEAD PLAINTIFFS' FORUM CHOICE FOR AN ACTION ASSERTING U.S. SECURITIES AND NEW YORK STATE LAW CLAIMS, WHERE IT DID NOT FIND THAT PLAINTIFFS ENGAGED IN FORUM SHOPPING

An independent basis to reverse the judgment is that – even if the mandatory forum clause was somehow not deemed mandatory – the district court erred in giving "Little Deference" to a New York resident's forum choice for this action asserting claims under the U.S. securities and New York State law related to stock traded exclusively on the NYSE.  In so erring, the district court improperly deviated from the legal principle that "a plaintiff's choice of forum is entitled to substantial deference and should only be disturbed if the factors favoring the alternative forum are compelling."  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000) (quoting *Gulf Oil v. Gilbert* , 330 U.S. 501, 508 (1947)).  This means that a "'plaintiff's choice of forum should rarely be disturbed.'"  *Id.*

Critically, the district court overlooked this Court's directive that "[t]he more it appears that a domestic or foreign plaintiff's choice of forum has been

---

[3] The district court's ruling should at least be vacated and remanded, because it erred in "failing to analyze" "the applicability of [the] forum selection clause" and "instead proceed[ed] directly to a" standard "*forum non c onveniens* analysis." *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 528 F. App'x 33, 35–36 (2d Cir. 2013).

23

dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice" and "the more difficult it will be for the defendant to gain dismissal for *forum non conveniens.* " *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001) (en banc).

**A.**     **The District Court Erred in Failing to Consider the U.S. Interest in Enforcing Securities Laws and Dangdang's Exclusive Listing on the NYSE in Determining the Level of Deference**

*First,* the district court erred in failing to consider this country's interest in having United States courts enforce United States securities laws, and Dangdang's exclusive listing of its stock on the NYSE, in deciding the level of deference. In *DiRienzo v. Philip Services. Corp.* , this Court held that this "country's interest in having United States courts enforce United States securities laws" is a "quite valid reason for litigating in" New York federal court. 294 F.3d 21, 28 (2d Cir. 2002).[4] This interest "demonstrates a 'bona fide' connection to the United States, that is, a valid reason," supporting substantial deference to a New York forum. *Id.*

*DiRienzo* also held that another "legitimate interest" supporting substantial deference to a New York forum is that the "defendants sought out business

---

[4] Indeed, New York is the optimal forum for U.S. securities law claims because this Court is the "'Mother Court' of securities law." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 276 (2010) (Stevens, J. concurring in judgment) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 737 (1975) (Blackmun, J., dissenting)); *In re Poseidon Concepts Sec. Litig.* , 2016 WL 3017395, at *9 (S.D.N.Y. May 24, 2016) ("The Lead Plaintiff's choice of this district is entitled to significant deference. The claims arise under U.S. securities laws. Securities litigation is regularly litigated in New York, … the nation's financial center.").

opportunities in this country by registering stock on American exchanges, filing statements with the SEC and conducting business" in the United States. *Id.*

Both of these factors should have been applied to give greater deference to Plaintiffs' forum choice under *DiRienzo* and *Iragorri*. Here, the Lead Plaintiffs are asserting U.S. securities law claims based on two sets of material misrepresentations in Defendants' Schedule 13E-3 filings touting the benefits of the transaction. (A27-29, 36-37, ¶¶ 65-68, 114-22.) This is a "quite valid reason for litigating in" New York that the district court did not consider at all in its deference analysis. *DiRienzo*, 294 F.3d at 28; *see Iragorri*, 274 F.3d at 71-72.

Further, the district court failed to address in its deference analysis the Lead Plaintiffs' "legitimate interest" in a New York forum based on the Defendants:

- affirmatively seeking out business opportunities in this country by registering stock exclusively on the NYSE (A21 ¶ 29, A282);

- disseminating its statements through New York using its ADS Depositary BONY and by filing them with the S.E.C. in Washington D.C. (A361);

- conducting business in this country through www.dandang.com (A178);

- having 67% of its shares held in New York, (A359-60); and

- Choosing New York courts for all claims arising out of or relating to Dangdang's shares. (A389 ¶ 23(b)).

Yet the district court did not consider any of these factors in its deference analysis. Accordingly, the decision below should be reversed under *DiRienzo*.

25

As in *DiRienzo*, this Court in *Wiwa* reversed a district court's *forum non conveniens* dismissal for failing to give "proper significance" to "the policy interest implicit in our federal statutory law in providing a forum for adjudicating claims of violations" of a U.S. statute, there the Alien Tort Claims Act ("ATCA"). 226 F.3d at 100. This Court did so, even though the case involved many non-U.S. claims, including claims under "international law and treaties, Nigerian law," *id.* at 93-94, and a claim for the liability of a "British corporation" for the acts of a subsidiary under "British law." *Id.* at 107. The district court here erred under *Wiwa* in not considering the U.S. interest in enforcing securities laws as a basis for deference.

The district court's failure to consider the above valid reasons for choosing a New York forum is also reversible error under *Iragorri*, which requires "greater deference to a plaintiff's forum choice to the extent it was motivated by legitimate reasons." 274 F.3d at 73. By failing to consider these two "quite valid" and legitimate reasons in its deference analysis, the district court ran afoul of *Iragorri*'s requirement to give greater deference based on valid reasons for a forum choice.

Under *Iragorri*, a court "must consider a plaintiff's likely motivations in light of all the relevant indications." 274 F.3d at 73. Thus, the district court' failure to recognize "the legitimate and substantial reasons" for Plaintiffs' choice of forum and failure to apply the appropriate level of deference is reversible error. *See Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006).

26

**B.      The District Court Erred in Applying Only "Little Deference" to Plaintiffs' Forum Choice When it Found No Evidence that Plaintiffs Had an Improper Motive in Bringing Suit Here**

*Second*, the district court misapplied the *Iragorri* standards for giving deference when it gave "Little Deference" to Plaintiffs' forum choice despite finding no "evidence that Plaintiffs had an improper motive in bringing suit here." (Op. at 15.) *Iragorri* authorizes "diminishing deference" to a Plaintiff's forum choice only to the extent that it "was motivated by tactical advantage." 274 F.3d at 73. Having found no such improper motive, the district court erred in twice "diminish[ing]" the deference to Plaintiffs' forum choice based on different factors to the extent that it ultimately gave only "Little Deference." (Op. at 15.)

Indeed, this Court has repeatedly reversed district court decisions that gave little or no deference to a plaintiff's forum choice for the reasons the court below cited: a New York resident being joined by foreigners in representative litigation. In *DiRienzo*, this Court reversed the district court's deference because "[a]lthough less than all of the named plaintiffs [] reside in … New York, no evidence suggests they had an improper motive in bringing suit here."[5] 294 F.3d at 28. Under *DiRienzo*, it was improper for the district court to give little deference to Plaintiff's

---

[5] After this Court in *DiRienzo* initially held that it was improper as a matter of law to give less weight to the forum choice of a representative plaintiff, it revisited the issue and ultimately left the issue open and unresolved. 294 F.3d at 28.

27

choice of forum when there was no evidence of an improper motive for bring suit here – even though the New York Lead Plaintiff is joined by two French entities.

Likewise, *Wiwa* reversed a district court's minimal deference for the forum choice of a group of four plaintiffs, only one of whom lived in the United States at the time of appeal – and none of whom resided in New York. 226 F.3d at 94 & n.3. Despite the involvement of foreign plaintiffs (and two plaintiffs acting as representatives), this Court held "the district court did not accord proper significance to a choice of forum by lawful U.S. resident plaintiffs." *Id.* at 99-100. Thus, the Court reversed the district court for failing to give "the substantial deference courts are required to give the plaintiff's choice of forum." *Id.* at 108.

The case against the district court's lack of deference is even stronger here than in *Wiwa*, because Co-Lead Plaintiff Joe Fasano is a New York resident suing in his home forum, which favors higher deference. None of the *Wiwa* plaintiffs was a New York resident. Thus, *Wiwa* requires reversal.

Moreover, this Court has reversed district courts for giving insufficient deference to the forum choice of entirely foreign plaintiffs, where there was no finding that the forum was chosen for improper purposes. In *Norex Petroleum Ltd. v. Access Indus., Inc.*, this Court held that a Canadian plaintiff's New York forum choice was entitled to "substantial deference" where the district court made "no such adverse finding" of improper forum-shopping motives. 416 F.3d 146, 156–57

28

(2d Cir. 2005).   The Court held that the plaintiff's valid reasons, coupled with the absence of a finding of forum-shopping, justified the high level of deference. *See id.; accord Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006) (granting "considerable deference" to Canadian plaintiffs' forum choice due to legitimate reasons for choosing a U.S. forum.)

Reversal is warranted under *Iragorri*, *DiRienzo*, *Wiwa* and *Norex* because the district court improperly diminished the deference to Plaintiffs' forum choice despite no finding of an improper motive for suing in New York.

## C.    The District Court Failed to Consider Whether Defendants' Motion was Motivated by Forum-Shopping, as Required by *Iragorri*.

*Third*, the district court erred in failing even to consider whether the Defendants' *forum non conveniens* motion itself is based on "forum-shopping reasons." *Iragorri*, 274 F.3d at 75.   Before this action, Defendants had (i) listed Dangdang's stock to trade exclusively in New York (A282), (ii) designated a New York agent for service of process (A342), and (iii) chose New York courts as their forum for disputes relating to Dangdang's shares, its IPO underwriting, and the individual defendants' Dangdang employment contracts (A382-83, 388-89, 393, 397-98).   But now that they have been sued for material misrepresentations in their S.E.C. filings to justify a lowball buyout, they suddenly prefer the Cayman Islands.

29

As a district court in this Circuit recently held, a defendant's claim of inconvenience is "at best, disingenuous" given a number of written agreements in which it had voluntarily agreed to the plaintiff's choice of forum. *See Flame-Spray Indus. Inc. v. GTV Auto. GmbH*, 266 F. Supp. 3d 608, 620 (E.D.N.Y. 2017). In *Flame-Spray*, the court doubted the defendants' motives for disputing a New York forum "In light of the voluntary execution of an NDA selecting a New York forum as well as the presence of a choice of New York law clause in" several "agreements." *Id.* *Flame-Spray* is persuasive, and should apply here.

Defendants' prior focus on the New York securities market and New York courts casts serious doubt on the veracity of their new claim that New York is inconvenient. That the district court did not even consider this issue supports reversal of its decision under *Iragorri*.

## III.   THE DISTRICT COURT ERRED IN FAILING TO REQUIRE DEFENDANTS TO PROVE OPPRESSIVENESS AND VEXATION OUT OF ALL PROPORTION TO PLAINTIFFS' CONVENIENCE

The district court decision should also be reversed for applying the wrong legal standard to balancing the public and private *forum non conveniens* factors. The district court did not require defendants to show "oppressiveness and vexation … out of all proportion to plaintiff[s'] convenience." *DiRienzo*, 294 F.3d at 33 (citation omitted). The Supreme Court recently confirmed that this standard applies. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429

30

(2007) ("oppressiveness and vexation").   Instead, the district court ruled that "On Balance, the Public and Private Interest Factors Favor Dismissal." (Op. at 20.)

The use of the incorrect standard was plainly outcome-determinative, because the Court found that the four private factors and two public factors were "neutral," but that the remaining two public factors "favor dismissal." (*Id.*)   This was reversible error.   In *DiRienzo*, this Court reversed the district could because "plaintiffs should not have been deprived of their choice of forum except upon defendants' clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience." 294 F.3d at 30.   The Court imposed this standard even though, like here, the plaintiffs sued in a representative capacity and "less than all of the named plaintiffs reside[d]" in "New York." *Id.* at 28.   *DiRienzo*'s holding supports reversal.

Moreover, the district court's ruling should be reversed because it does not appear to have imposed *any* substantial evidentiary burden on the defendants to show that the public and private factors weighed significantly against New York. The court's finding that "On Balance" the factors weighed in favor of dismissal shows that its ruling was due to the balance tipping slightly in one way – not based on the defendants meeting any significant burden. (Op. at 20.)   Indeed, the district court only found that the private factors were neutral, as were two public factors, with one of the remaining two public factors only weighing "slightly" in favor of

31

dismissal. (*Id.* at 24.) A mere "Balance" of the factors supporting dismissal falls well short of even a standard requiring proof that a Cayman Island forum is "significantly preferable." *Iragorri*, 274 F.3d at 74-75.[6]

Accordingly, the district court applied the wrong legal standard to balancing the private and public interest factors, and its ruling should be reversed.

## IV.    THE DISTRICT COURT FAILED TO CONSIDER THE UNITED STATES' STRONG INTEREST IN ENFORCING ITS SECURITIES LAWS IN ASSESSING THE LOCAL INTERESTS IN THIS CASE

The district court's ruling also "falls outside the permissible range of decisions" because it failed to consider "the interest of the United States in enforcing its securities laws" in assessing the local interest factor. *DiRienzo*, 294 F.3d at 33. The district court analyzed the local interests by balancing the Cayman Islands interest in regulating a Cayman Island registered company and its fiduciaries against the U.S. interest in adjudicating disputes involving foreign entities listed on the NYSE that target American investors. (Op. at 24-26.) But the district court did not consider the United States' interest in enforcing its securities laws in its local interest analysis. (*Id.*)

---

[6] The district court (Op. at 11) suggested that the standard "genuinely inconvenient and the selected forum significantly preferable," *Iragorri*, 274 F.3d at 74–75, is far lower than the "oppressive and vexatious" standard. But that conflicts with this Court's reasoning in *DiRienzo,* which equated the two standards. *See* 294 F.3d at 33. Regardless of whether there is a difference between the two standards, the district court's finding that a mere "Balance" of factors supports dismissal (Op. at 20) does not rise to the level of finding that the defendants proved that a Cayman Island forum is "significantly preferable." *Iragorri*, 274 F.3d at 74–75.

32

As *DiRienzo* held, the United States securities laws are "'affected with a national public interest.'"  294 F.3d 33 (quoting 15 U.S.C. § 78b).  This means there is a "strong public interest" in ensuring that "securities fraud law" is "clear and enforceable" for "securities markets to function efficiently."  *Id.*   The United States has a strong local interest in this action raising securities law claims to ensure that its securities laws are "applied consistently" with regard to the entire class in this case – all of which bought their shares on the NYSE, where Dangdang's stock was exclusively listed and traded.  *Id.*

In fact, the United States' interest in its securities laws in this action is arguably greater than in *DiRienzo*, because here the entire class bought their shares on the NYSE.  (A282.)  In contrast, in *DiRienzo*, only "80 percent of the shares traded" on United States exchanges, with the other 20% trading on exchanges in Canada.  294 F.3d at 25.   Thus, in *DiRienzo*, the U.S. interest in its securities laws was partially offset by Canada's "analogous interest with respect to Canadians who bought their [] stock in Ontario."  *Id.* at 33.

This country's strong interest in enforcing its securities laws to statements touting a going-private merger by a Chinese company that listed on a U.S. exchange goes beyond just this case. Between January 2015 and April of 2016, at least 38 Chinese companies that listed ADRs or ADSs on United States exchanges announced going-private mergers with management buyouts of minority

33

shareholders.[7]   These companies raised billions of U.S. dollars from American investors, becoming cash-rich, and then management turned around and forced out American minority investors at below fair market value – often far below the U.S. IPO price – when Chinese currency rates changed.  This left thousands of U.S. investors with little recourse, given that these companies leave the U.S. and had registered in the Cayman Islands, where litigation is much more costly for U.S. investors because it is located over 1,000 miles away from them.  *Id.* at 5–8.

Only if the United States' strong local interest in applying its securities laws to these transactions is enforced will ordinary American investors have an effective and viable recourse to challenge these transactions when they involve fraud.   As the Mother Court for securities law, this Court can ensure this important local interest is enforced in this troubling context.  The district court failed to address this interest at all in its local interest analysis, which is a reversible error "outside the permissible range of decisions" under *DiRienzo*.  294 F.3d at 33.

---

[7] Peter Halesworth, *Chinese "Squeeze Outs" in A merican Stock Markets and the Need to Protect U.S. Investors*    ,    at    5-6    (2016)    *available at* http://hengreninvestment.com/whitepapersqueezeouts-english.pdf        (hereinafter "China Squeeze-Outs")).    In contrast, there were 26 such management buyouts announced by U.S.-listed Chinese companies between 2010 and 2014. *Id.* at 5.

**V.    THE DISTRICT COURT'S CHOICE OF LAW ANALYSIS IMPROPERLY DISREGARDED PLAINTIFFS' U.S. SECURITIES AND NEW YORK STATE LAW CLAIMS, AND DANGDANG'S ADOPTION OF NYSE AND SARBANES OXLEY CORPORATE GOVERNANCE STANDARDS**

The district court made several errors in applying the factor of avoiding difficulties of applying foreign law. *First*, the district court improperly relied on its skepticism of Plaintiffs' securities law claims as a basis to disregard them. *Second*, the district court incorrectly concluded – without any analysis – that Cayman law would apply to Plaintiffs' common law misrepresentation claims, when choice of law principles require applying New York law, where the statements were disseminated.    *Third*, the district court ignored that Dangdang had adopted Sarbanes-Oxley Act and NYSE Listing standards governing conflicts of interest in related party transactions instead of Cayman law as its rules of corporate governance.    *Fourth*, this Court's decisions in *Wiwa* and *DiRienzo* hold that the mere fact that a district court may have to apply foreign law is an insufficient basis for *forum non conveniens* dismissal.

**A.    The District Court Improperly Relied on Its Skepticism as to Plaintiff's Securities Law Claim as a Basis to Disregard It**

The district court improperly relied on its skepticism that "it is unclear whether Plaintiffs' section 13(e) claim would survive a motion to dismiss" as a basis for giving this claim little weight in its choice of law analysis.  (Op. at 30.)

35

*First*, this Court had made clear that a "*forum non conveniens*" motion "is not the proper way" to address whether a claim "may be dismissible" on the merits. *Manu Int'l, S.A. v. Avon Prod., Inc.*, 641 F.2d 62, 68 (2d Cir. 1981). This is because the "*Gilbert* factors do not include consideration of the merits of a particular claim … on a motion to dismiss for *forum non conveniens*." *Alnwick v. European Micro Holdings, Inc.*, 29 F. App'x 781, 784 (2d Cir. 2002). Thus, the district court's "skepticism about the viability of plaintiffs' fraud claims" was an improper consideration in addressing the choice of law factors.

*Second*, the district court's skepticism was also improper because Plaintiffs' § 13(e) claim has significant merit. The only Court of Appeals to address the issue, the S.E.C. and Congress have recognized a private right of action under § 13(e)'s going-private provision. In *Howing Co. v. Nationwide Corp.*, the Court held that it was "clear" that § 13(e) provided for a private right of action. 826 F.2d 1470, 1474–76 (6th Cir. 1987). The Court reasoned that "[w]hen § 13(e) was adopted in 1967, the Supreme Court had already recognized an implied private right of action under § 14(a)." *Id.* at 1475. Thus, "Congress indicated its desire to allow a private right of action under § 13(e) when it chose language that was identical to the crucial language supporting a private right of action under § 14(a)." *Id.*; *compare* 15 U.S.C. § 78m(e), *with* 15 U.S.C. § 78n(a).

36

This Court's recent ruling that there remains an "implied private right of action" under "Section 14(a)" of the Exchange Act also supports a finding that there is a private right of action under the identical statutory language in § 13(e). *DeKalb Cty. Pension Fund v. Transocean, Ltd.*, 817 F.3d 393 (2d Cir. 2016). Section 13(e) is virtual identical to § 14(a) in providing that:

> "It shall be unlawful for an issuer" to act "in contravention of such rules and regulations as the Commission, in the public interest or for the protection of investors, may adopt.... as … necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78m(e), *compare with* 15 U.S.C. § 78n(a) (same).

If such language creates a § 14(a) private right of action under binding precedent, then it should certainly support a § 13(e) private right of action.

The S.E.C. has similarly concluded that "courts" interpreting "Section 13(e)" should "construe its provisions in such a way as to imply a private right" of action. "Going Private Transactions by Public Companies or Their Affiliates," S.E.C. Rel. No. 5884, 1977 WL 187732, at *24 (Nov. 17, 1977).

And Congress recently suggested that it recognized a § 13(e) private action when it enacted the PSLRA in 1995. It expressly excluded from the PSLRA's Safe Harbor any forward looking statement "in connection with a going-private transaction." 15 U.S.C. § 78u-5(b)(1)(E). It defined such an excluded action as one arising from a going-private transaction "pursuant to § 78m(e)," *i.e.*, § 13(e) of the 1934 Act. 15 U.S.C. § 78u-5(i)(3).

37

Further, Plaintiffs' § 13(e) claims are strong based on the alleged facts. For example, Defendants' repeated false claim in their Schedule 13E-3 statements that Maples gave the Special Committee "independent control" of the sales process was false and material because Maples had a fatal conflict of interest as counsel to the Company, which was controlled by Defendant Li. (A27-29, 37 ¶¶ 65-68, 121.) Being counsel both to a company controlled by the proposed acquirer and the Special Committee reviewing the proposal is a clear conflict of interest. This was material as a matter of U.S. securities law, and thus actionable.

Accordingly, Plaintiffs' federal securities law claims are an important part of the core claims assert in this action. And the district court erred in giving this claim any weight in its choice of law analysis.[8]

B. **New York Law Applies to Plaintiff's Common Law Misrepresentation Claim, and Thus The District Court Erred Holding that Cayman Law Predominated Based on This Claim.**

The district court incorrectly concluded – without any analysis – that Cayman law applied to Plaintiffs' common law misrepresentation claims, when choice of law principles require New York law, the location where the statements

---

[8] The district court also erred in disregarding Plaintiff's argument that, even if it Plaintiffs' § 13(e) theory failed, they could easily be re-pled as a § 10(b) claim for intentional fraud. Section 10(b) applies to any fraud in connection with a purchase or sale of a security, and thus applies here. Plaintiff pled its claim under § 13(e) instead of § 10(b) to avoid a dispute over *scienter*.

were disseminated.   Thus, the district court thus erred in concluding Cayman Islands law would predominate due to the "misrepresentation" claim.  (Op. at 30.)

In an action "instituted in the United States District Court for the Southern District of New York, New York law, including New York choice of law rules, controls."  *Brink's Ltd. v. S. African Airways* , 93 F.3d 1022, 1030 (2d Cir. 1996); *see Zicherman v. Korean Air Lines Co.*   , 516 U.S. 217, 228–29 (1996) ("Choice of law is, of course, determined by the forum jurisdiction.").   Under New York choice of law rules, "for claims based on" misrepresentations, the applicable law is where the "locus of the tort" occurs, which is "is generally deemed to be the place where the injury was inflicted, rather than where the fraudulent act originated."  *In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013).

Where, as here, the statements at issue were disseminated (A323) "in New York" to "international investors, including investors within this state," then New York applies.  *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 194–95 n.231 (S.D.N.Y. 2006).  In a similar case, the U.S. Court of Appeals for the D.C. Circuit held that New York or D.C. law applied – "but not Dutch law" – to statements as to a Dutch company that were made in D.C., and the plaintiffs suffered losses in New York and D.C.  *Wu v. Stomber*, 750 F.3d 944, 949–50 (D.C. Cir. 2014).

Moreover, the "locus of the tort" factor strongly supports New York law, because the injuries from the misrepresentations overwhelmingly occurred in New York because that is where Dangdang's stock was exclusively listed and traded (A244).  That is also where 67% of Dangdang stock was held, (A330).   And that is certainly true as to Co-Lead Plaintiff Joe Fasano, who is a New York resident.  Thus, choice of law rules strongly support the application of New York law to Plaintiffs' common law misrepresentation claim.

The district court erred in simply assuming that Cayman law would apply to this claim, and thus its reliance on this fact to argue that Cayman law would predominate is similarly erroneous and should be reversed.

**C.**    **The District Court Failed to Address Dangdang's Affirmative Adoption of Higher Sarbanes-Oxley and NYSE Listing Standards for Related Party Transactions and Inaccurate Public Statements**

The district court erred in failing to address Dangdang's adoption of higher Sarbanes-Oxley Act and NYSE Listing standards for conflicts of interest in related party transactions and for false public statements in rejecting the relevance of those standards in this action.  (Op. at 30.)  In particular, Dangdang expressly adopted corporate governance standards under the Sarbanes-Oxley – part of the U.S. securities laws – and NYSE Listing standards, which impose higher standards than Cayman Law.  Dangdang adopted a Code under "Section 406 of the Sarbanes-

40

Oxley Act of 2002" (A432) and NYSE Listing Standards, (A371-72 § 303A.10), to govern "the directors, officers and employees of the Company," (A432 § II).

The Code makes clear that it is binding, and that it imposes higher standards than Cayman Law.  It states:

> "To the extent *this Code requires a higher standard than required by* commercial  practice  or *applicable laws, rules or regulations, we adhere to these higher standards.*"  (*Id.* § I (emphasis added).)

Notably, Dangdang's "Code" imposes higher standards for the key fiduciary duty issue here:  "Conflicts of Interest" in a related party transaction.  (A433-34.)  It prohibits "an interested director or senior officer" from being "involved in any proposed transaction between the Company and an Interested Business" (A434). This governs the fiduciary duty claim that the Controlling Group had a disloyal improper conflict of interest in negotiating and approving the Going-Private Merger to acquire Dangdang.  (A34 ¶¶ 102, 105-06.)

The Code's specific prohibition of "Conflicts of Interest" of Dangdang fiduciaries in any "proposed transaction" between the Company and an "Interested Business" (A433-34) goes directly to the core of this actions – contrary to the district court's finding.  (Op. at 30).  Thus, the district court erred in failing to consider how the Code's prohibitions on conflicts of interest and involvement in conflicted transactions applied to this case.

41

Moreover, Dangdang's public admission that it adopted higher standards than Cayman law conflict with the district court's conclusion that Cayman law predominates. In addition to Dangdang's Code stating that it is imposing higher standards than Cayman law, Dangdang also publicly stated that it was relying on NYSE Listing standards instead of Cayman law as to corporate governance:

> "Certain corporate governance practices in the Cayman Islands, which is our home country, differ significantly from the New York Stock Exchange corporate governance listing standards.... *Currently, we do not plan to rely on home country practice with respect to our corporate governance*...." (A363-64 (emphasis added).)

Further, that Dangdang adopted higher standards than Cayman law is plain from its corporate charter stating that its "corporate governance" standards are subject to "applicable law or the listing rules of the recognized stock exchange … where the Company's securities are traded." (A369 ¶ 78; *Id.* ¶ 77(b) (same).)

As Defendants' own expert admits, "Cayman Islands companies" may "modify the duties that directors owe under the general principals of equity and common law through the company's articles of association." (A205.) Dangdang did just that in adopting heightened Sarbanes-Oxley and NYSE Listing Standards beyond the requirements of Cayman law. Its adoption of these standards makes them binding and applicable to the issue of whether the defendants breached their fiduciary duties. And thus the district court's failure to address these higher standards in its choice of law analysis was improper and warrants reversal.

42

Importantly, the district court's conclusion that Cayman law would predominate on the issue of the "fairness of the consideration" is also misguided. Indeed, Defendants' own expert relied on authority holding that Cayman law looks to Delaware law in determining fair value. He relied on a case, *In re Integra Group*, (2016 (1) CILR 192), (A208 ¶ 27), in which the Cayman court expressly relied on "Delaware jurisprudence" from the United States" as a "guide to the meaning of 'fair value'" in a merger under Cayman law. (A226.) Cayman law relies so heavily on Delaware law from the U.S. because 2016 was the first time a Cayman court had "been called upon to value a company's shares in connection with a merger carried out in accordance with the provisions of Part XVI of the Companies law." (A223.) The key role of Delaware law in dictating fair value under Cayman law makes the district court's finding very suspect. (Op. at 31).

### D.      The District Court Erred in Concluding that the Need to Apply Some Foreign Law Justified Forum Non Conveniens Dismissal

*Finally*, the district court erred in concluding that the mere fact that it would have to apply some foreign law weighed significantly in favor of *forum non conveniens* dismissal. It is well-settled in this Court that "'the need to apply foreign law is not in itself a reason to apply the doctrine of *forum non conveniens*.'" *Manu Int'l*, 641 F.2d at 67–68 (quoting *Olympic Corp. v. Societe Generale* , 462 F.2d 376, 379 (2d Cir. 1972)). This is because "the courts of this Circuit are regularly called upon to interpret foreign law." *Bigio*, 448 F.3d at 178–79; *Manu*

43

*Int'l*, 641 F.2d at 68 ("[W]e must guard against excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform.").

In fact, this Court in *Wiwa* rejected the fact that a district court might have to apply a variety of foreign claims as a primarily basis for dismissal. In *Wiwa*, the plaintiffs had asserted a U.S. Alien Tort Claims Act claim, but also several non-U.S. claims, including claims under "international law and treaties, Nigerian law," 226 F.3d at 93-94, and a claim for the liability of a "British corporation" for the acts of a subsidiary under "British law." *Id.* at 107. Yet despite the significant number of potential foreign law issues, the Court reversed the district court's *forum non conveniens* dismissal. *Wiwa* is on point, and should govern here.

Furthermore, the district court's ruling overlooks that the U.S. securities and New York state law claims in this case mean that just like a New York court, a Cayman Islands Court would also have to address foreign law issues. And such a court would also have to address the impact of, and interpret, the Sarbanes-Oxley and NYSE Listing standards on the defendants' fiduciary duties.

Accordingly, since issues of foreign law will come up regardless of whether this action proceeds in New York or the Cayman Islands, the district court erred in relying so heavily on choice of law issues to support its dismissal of this case. Thus, the district court decision should be reversed.

44

45

## <u>CONCLUSION</u>

For all of the above reasons, this Court should reverse the judgment of the Court below and remand this action for further proceedings.

Dated:  New York, NY          SADIS & GOLDBERG LLP
       March 29, 2018

                                /s/ Samuel J. Lieberman
                           By: Samuel J. Lieberman
                                Ben Hutman
                                551 Fifth Avenue, 21st Floor
                                New York, New York 10176
                                Telephone:  (212) 573-8164
                                Email: slieberman@sglawyers.com
                                bhutman@sglawyers.com

## **Certificate of Compliance With Type-Volume Limit,**
## <u>**Typeface Requirements, and Type-Style Requirements**</u>

1.      This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 10,555 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.


Dated: New York, New York
       March 29, 2017

By:  /s/ Ben Hutman

Ben Hutman, Esq.
SADIS & GOLDBERG, LLP
551 5th Avenue, 21st Floor
New York, New York 10176
(212) 573-6675
bhutman@sglawyers.com
*Counsel for Plaintiffs-Appellants*
