Nathan M. McClellan (SBN 291435)
Email:  nathan.mcclellan@dechert.com
**DECHERT LLP**
US Bank Tower
633 West 5th Street, Suite 4900
Los Angeles, CA 90071
Telephone: 213-808-5700

*Counsel for Defendants*
*Qihoo 360 Technology Co. Ltd.*
*and Eric X. Chen*

(Additional Counsel listed on signature page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION, LOS ANGELES

| | |
|---|---|
| ALTIMEO ASSET MANAGEMENT, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>v.<br><br>QIHOO 360 TECHNOLOGY CO. LTD., HONGYI ZHOU, XIANGDONG QI and ERIC X. CHEN,<br><br>                    Defendants. | Case No.  2:19-cv-1619-JAK-JC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS QIHOO 360 TECHNOLOGY CO. LTD AND ERIC X. CHEN'S MOTION TO DISMISS LEAD PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Date: January 13, 2020<br>Hearing Time:  8:30 a.m.<br>Judge:           Hon. John A. Kronstadt<br>Courtroom:      10B |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND..................................................................................3

ARGUMENT ..........................................................................................................6

I. PLAINTIFFS FAIL TO STATE A SECTION 10(B) CLAIM.....................7

    A. Plaintiffs Fail to Adequately Plead A Material Misstatement or Omission ..........................................................................................7

        1. Plaintiffs Fail to Plead an Actionable Omission. ..................7

        2. Qihoo's Statements Concerning Future Plans Following the Merger Are Inactionable Forward-Looking Statements..... 10

        3. Qihoo Expressed Sincerely Held Opinions that the Merger Was Fair and Not Misleading. ..................................... 11

    B. Plaintiffs Fail to Adequately Plead Particularized Facts Giving Rise to a Strong Inference of Scienter ................................... 15

        1. Plaintiffs Fail to Adequately Plead Motive. ........................... 16

        2. Plaintiffs Fail to Adequately Plead Strong Circumstantial Allegations of Intent to Defraud. ................................ 16

            a. Allegations of Position Are Insufficient. ...................... 16

            b. The Court Should Disregard Plaintiffs' CW1............... 17

            c. Unsubstantiated Allegations from Articles Regarding the Buyer Group Do Not Give Rise to Scienter. .................................................................. 19

            d. Post-Class Period Appraisal Proceedings Are Insufficient.................................................................. 20

        3. Plaintiffs Fail to Adequately Plead Scienter As to the Company.................................................................. 21

    C. Plaintiffs Fail to Adequately Plead Reliance ................................... 22

    D. Plaintiffs Fail to Adequately Plead Loss Causation ......................... 23

II. PLAINTIFFS FAIL TO STATE A SECTION 20A CLAIM AS TO THE COMPANY .................................................................................. 25

CONCLUSION........................................................................................................ 25

# TABLE OF AUTHORITIES

**CASES**

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972) ...................................................................................23

*Allison v. Brooktree Corp.*,
999 F. Supp. 1342 (S.D. Cal. 1998) .........................................................16

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
824 F. Supp. 2d 1164 (C.D. Cal. 2011) ....................................................24

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ........................................................................2, 8, 22

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975) ..................................................................................22

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) .......................................................................9

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ..................................................................................23

*Gammel v. Hewlett-Packard Co.*,
905 F. Supp. 2d 1052 (C.D. Cal. 2012) ....................................................17

*Glazer Capital Mgmt, LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ...............................................................16, 21

*In re A-Power Energy Generation Sys., Ltd. Sec. Litig.*,
No. 11-2302-GW, 2012 WL 1983341 (C.D. Cal. May 31, 2012) .....................16

*In re Arrowhead Research Corp. Sec. Litig.*,
No. 2:14-cv-07890, 2016 WL 6562066 (C.D. Cal. Mar. 29, 2016),
*aff'd*, 711 F. App'x 434 (9th Cir. 2018) ........................................................7, 25

*In re Citigroup, Inc. Sec. Litig.*,
330 F. Supp. 2d 367 (S.D.N.Y. 2004) ..............................................................21

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) .................................................11, 14, 15, 25

CASE No. 2:19-CV-1619-JAK-JC
MEM. OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

*In re Impac Mortg. Holdings Inc. Sec. Litig.*,
554 F. Supp. 2d 1083 (C.D. Cal. 2008)................................................................15

*In re Merge Healthcare Inc.*,
No. 11388-VCG, 2017 WL 395981 (Del. Ch. Jan. 30, 2017) ...........................13

*In re Merrill Lynch Auction Rate Sec. Litig.*,
704 F. Supp. 2d 378 (S.D.N.Y. 2010)................................................................14

*In re Rackable Sys., Inc. Sec. Litig.*,
No. C 09-0222 CW, 2010 WL 3447857 (N.D. Cal. Aug. 27, 2010) .................15

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ..............................................................................7

*In re Shanda Games Ltd. Sec. Litig.*,
No. 1:18-cv-02463-ALC, 2019 U.S. Dist. LEXIS 171592
(S.D.N.Y. Sept. 30, 2019) ...........................................................................passim

*In re Wet Seal, Inc. Sec. Litig.*,
518 F. Supp. 2d 1148(C.D. Cal. 2007)....................................................17, 19, 21

*Lefter v. Yirendai Ltd.*,
No. 16-06473-MWF, 2017 WL 2857535 (C.D. Cal. June 20, 2017) .............9, 10

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002).........................................................................25

*Little Gem Life Scis. LLC v. Orphan Med., Inc.*,
No. 06-1377-ADM, 2007 WL 541677 (D. Minn. Feb. 16, 2007) ....................24

*Lloyd v. CVB Fin. Corp.*,
No. CV 10 -06256-MMM, 2012 WL 12883517 (C.D. Cal. Aug. 21,
2012) ...............................................................................................................24

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014).............................................................................24

*Mallen v. Alphatec Holdings, Inc.*,
861 F. Supp. 2d 1111 (S.D. Cal. 2012), *aff'd sub nom Fresno Cnty
Emps' Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th
Cir. 2015).........................................................................................................11

CASE No. 2:19-CV-1619-JAK-JC
MEM. OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

*Melot v. Jakks Pacific, Inc.*,
   No. 13-05388 JAK, 2016 WL 6902093 (C.D. Cal. Nov. 18, 2016) ................... 6

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ............................................................... 23

*Morrison v. Nat'l Australia Bank*,
   561 U.S. 247 (2010) ............................................................................ 22

*Nathanson v. Polycom, Inc.*,
   87 F. Supp. 3d 966 (N.D. Cal. 2015) ....................................................... 21

*OFI Asset Management v. Cooper Tire & Rubber*,
   834 F.3d 481 (3d Cir. 2016) .................................................................. 13

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   135 S. Ct. 1318 (2015) ........................................................... 12, 13, 14

*Patel v. Parnes*,
   253 F.R.D. 531 (C.D. Cal. 2008) ........................................................ 7, 19

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian
   Imperial Bank of Commerce*,
   694 F. Supp. 2d 287 (S.D.N.Y. 2010) ..................................................... 19

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ............................................................... 18

*Poulos v. Caesars World, Inc.*,
   379 F.3d 654 (9th Cir. 2004) ................................................................. 23

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ........................................................... 20, 21

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
   119 F. Supp. 3d 1213 (C.D. Cal. 2015) ................................................. 3, 22

*Shurkin v. Golden State Vintners Inc.*,
   471 F. Supp. 2d 998 (N.D. Cal. 2006), *aff'd* 303 F. App'x 431 (9th
   Cir. 2008) ....................................................................................... 9, 12

*Stolow v. Greg Manning Auctions Inc.*,
   258 F. Supp. 2d 236 (S.D.N.Y. 2003) ..................................................... 19

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta Inc.*,
    552 U.S. 148 (2008) ................................................................................... 6, 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .........................................................................................2, 3

*Wilson v. Bank of Am., N.A.*,
    No. 12-1532-JLR, 2013 WL 275018 (W.D. Wash. Jan. 24, 2013)..................... 19

*Young v. Dreisbach*,
    182 F. App'x 714 (9th Cir. 2006)........................................................................ 8

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ....................................................................passim

**STATUTES AND RULES**

15 U.S.C. § 78j(b)................................................................................................. 22

15 U.S.C. § 78t-1 ................................................................................................. 25

15 U.S.C. § 78u-4(b)(4).......................................................................................... 23

15 U.S.C. § 78u-5(c)(1) ................................................................................... 10, 11

28 U.S.C. § 1658(b)................................................................................................ 24

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4..............passim

Securities Exchange Act of 1934
    § 10(b)..........................................................................................................passim
    § 20(a) .............................................................................................. 1, 2, 6, 25
    § 20A .............................................................................................. 1, 2, 6, 25

Fed. R. Civ. P. 8(a) ............................................................................................... 7

Fed. R. Civ. P. 9(b) ..........................................................................................7, 16

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 3

SEC Rule 10b-5 .........................................................................................6, 7, 8

**PRELIMINARY STATEMENT**

Qihoo Technology Company Ltd. ("Qihoo" or "the Company") is a Cayman Islands corporation headquartered in China.  In 2016, it entered into a "going private" transaction (the "Merger").  The price paid was $77 per American Depositary Share ("ADS").  The Merger was approved by a Special Committee of the Board, led by Defendant Eric Chen and advised by J.P. Morgan.  On July 15, 2016, the Merger closed, and the Company delisted from the New York Stock Exchange ("NYSE").  Over a year and a half later, on February 28, 2018, the entity that emerged from the Merger combined with a publicly-traded Chinese manufacturing company, which Plaintiffs erroneously claim amounted to a "backdoor listing" of Qihoo on the Shanghai Stock Exchange.

Unhappy with the 32% premium they received from the Merger and choosing not to challenge the Merger price in an on-going appraisal action in the Cayman Islands, Plaintiffs—two former ADS holders who have filed several securities class actions—now assert claims under Sections 10(b), 20A, and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  Plaintiffs allege that Defendants concealed their plans to relist Qihoo in order to artificially deflate the Merger price, but their claims are based on hindsight speculation, conjecture, and a blatant disregard for the well-settled disclosure obligations of public companies.  Plaintiffs' First Amended Complaint ("Amended Complaint" or "FAC") is the type of suit by enterprising shareholders that the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "PSLRA"), was intended to guard against and thus should be dismissed for the following reasons:

***First***, the FAC fails to identify any alleged misstatement or omission sufficient to serve as the basis for a securities fraud claim.  Plaintiffs' primary objection is that Qihoo failed to disclose a definitive plan to relist the Company at a higher valuation on a different exchange.  But Plaintiffs cannot escape the fact that the proxy statements in question do, in fact, explicitly disclose the possibility of such a relisting,

and Plaintiffs fail to allege Defendants' had a duty to disclose more.  This alone dooms Plaintiffs' claim.  While Plaintiffs also object to statements that the Merger was "fair," these are merely opinion statements that are not actionable and based on forward-looking statements that are protected by the PSLRA's safe harbor provision.

*Second*, the FAC fails to plead facts giving rise to any inference that Qihoo or Mr. Chen acted with scienter, much less a "strong inference" that is "at least as compelling as any opposing inference," as required by the PSLRA and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  Instead, Plaintiffs rely on generic motives, a lower level confidential witness whose averments must be discounted, and impermissible hindsight pleading—which fail to give rise to strong inference of scienter.  Instead, the only plausible inference to make is that Defendants accurately disclosed the possibility that the surviving company that emerged from privatization would be relisted later; neither Mr. Chen nor the Company—who were also not a part of the Buyer's Group and not involved post-merger—could accurately predict, let alone control, the future of the surviving Company.

*Third,* Plaintiffs fail to plead the essential element of reliance.  Notwithstanding Plaintiffs' express disclaimer of individual reliance, Plaintiffs' claims also fail because they cannot invoke the presumption of reliance for efficient-market transactions set forth in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), as the Merger was a separately negotiated deal approved by Qihoo shareholders, not an open-market transaction.

*Fourth*, Plaintiffs fail to plead loss causation.  Plaintiffs have not identified a corrective disclosure that caused the stock price to drop significantly.  Nowhere do Plaintiffs allege that the stock was inflated during the putative class period or that the stock actually dropped upon an issuance of a corrective disclosure.  In fact, Plaintiffs allege the opposite, stating that the shares were "fraudulent[ly] depress[ed] at the time of the sale."  And Plaintiffs explain that the stock *increased* upon its relisting.

*Last*, Plaintiffs' Section 20A and 20(a) claims must be dismissed, among other

reasons, because Plaintiffs have failed to allege a primary violation of Section 10(b), an essential element of the claims.

For these reasons, this lawsuit has no merit. The FAC should be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

***The Company.*** Qihoo, a leading internet company that provides internet security products, is a Cayman Islands corporation headquartered in Beijing. FAC ¶¶ 2, 21, 34. During the putative class period, Qihoo registered ADSs that were listed and traded on the NYSE until it was taken private in a "Merger" on July 15, 2016. *Id.* ¶ 21.

***Individual Defendants.*** Defendant Eric X. Chen served as a Qihoo Director from January 2014 through the Merger. Mr. Chen was Chairman of the Special Committee of independent directors that the Company appointed to evaluate the Merger. FAC ¶¶ 24, 26; Ex. 1, 1/11/16 Proxy at 29. Defendants Hongyi Zhou and Xiangdong Qi are Qihoo's Co-Founders. Mr. Zhou served as Qihoo's Chairman and CEO, while Mr. Qi served as Qihoo's President and Director during the putative class period. FAC ¶¶ 22-23; Ex. 1, 1/11/16 Proxy at 29. Messrs. Zhou and Qi own shares in certain entities of the Buyer Group, comprised of 36 equity investors. FAC ¶¶ 29-30; Ex. 2, Merger Agreement at Exhibit B. Messrs. Zhou and Qi have not yet been served and are not parties to this Motion.

***Lead Plaintiffs.*** Lead Plaintiffs are ODS Capital LLC ("ODS"), a Florida

---

[1] Exhibit references ("Ex.") refer to exhibits to the Declaration of Nathan McClellan, filed with this Motion. This background is drawn from documents that may be considered on this motion, including (i) the Complaint and documents referenced therein, and (ii) Qihoo's SEC filings. *See Tellabs*, 551 U.S. at 322 (court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference."); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009) (same); *see also ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1230 (C.D. Cal. 2015) (taking judicial notice of SEC filings). Unless otherwise indicated, all emphasis in text and case citation has been added and internal citations have been omitted.

limited liability company, and Altimeo Asset Management ("Altimeo"), an independent portfolio management company based in France and approved by the French Financial Authority. FAC ¶¶ 18-20. Altimeo and ODS have both served as lead plaintiff in securities class action suits against Chinese companies incorporated in the Cayman Islands in the last three years. *See, e.g.*, *Fasano, et al. v. Li, et al.*, 1:16-cv-08759 (S.D.N.Y.) (Altimeo as co-lead plaintiff); *ODS Capital LLC v. JA Solar Holdings Co. Ltd.*, No. 1:18-cv-12083 (S.D.N.Y.) (Altimeo and ODS as co-lead plaintiffs); *Altimeo Asset Mgmt. v. Wuxi PharmaTech (Cayman), Inc., et al.*, 1:19-cv-01654 (S.D.N.Y.) (Altimeo as lead plaintiff).[2]

***The Merger.*** The concept of the Merger purportedly first arose in early May 2015, when Defendant Zhou discussed a possible acquisition of Qihoo with a group of investors. FAC ¶ 41; Ex. 1, 1/11/16 Proxy at 29. On June 17, 2015, the Board received a preliminary letter from Zhou and a group of investors, offering to take Qihoo private. FAC ¶ 42; Ex. 1, 1/11/16 Proxy at 29. The Board formed an independent special committee of outside directors, including Mr. Chen, to evaluate and negotiate any deal. FAC ¶¶ 24, 26, 44; Ex. 1, 1/11/16 Proxy at 29. The Special Committee members, including Mr. Chen, "are unaffiliated with any member of the Buyer Group [in the Merger at issue]." Ex. 1, 1/11/16 Proxy at 5. The Special Committee also retained J.P. Morgan Securities (Asia Pacific) Limited ("J.P. Morgan") as its financial advisor in connection with its review and evaluation of the Merger proposal. FAC ¶ 45; Ex. 1, 1/11/16 Proxy at 30.

After analyzing and negotiating the Merger, the parties agreed to a price of $77 per ADS and $51.33 per ordinary share, representing a premium of 32.7% to the

---

[2] Moreover, ODS has served as lead plaintiff in *In re Diamond Resorts Int'l, Inc. Sec. Litig.*, No. 2:18-cv-1355 (D. Nev.); *Gingello v. Patriot Nat'l, Inc.*, No. 1:17-cv-1866 (S.D.N.Y.). Combined, the co-lead plaintiffs run afoul of the restrictions on professional plaintiffs under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(vi) ("Except as the court may otherwise permit . . . a person may be a lead plaintiff . . . in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period").

average closing price of the Company's ADSs on June 16, 2015.  FAC ¶ 162; Ex. 3, 12/18/15 Press Release at 1.  On December 18, 2015, Qihoo issued a press release announcing that the parties had reached an agreement.  FAC ¶¶ 3, 60; Ex. 3, 12/18/15 Press Release at 1.  Between January 11, 2016 and March 3, 2016, Qihoo filed Registration Statements, attaching an initial proxy statement in January 2016, as well as two subsequent amendments in February 2016, and a final proxy statement in March 2016 (the "Proxy Statements").  *Id.* ¶¶ 66-69.  Included in the Proxy Statements were financial projections prepared by management of the Company to J.P. Morgan.  Ex. 1, 1/11/16 Proxy at 52; Ex. 4, 2/8/16 Proxy at 52; Ex. 5, 2/26/16 Proxy at 52; Ex. 6, 3/3/16 Proxy at 52.  As the Proxy Statements make clear, the projections were "included solely to give shareholders access to certain information that was made available to the Special Committee's financial advisor and are not included for the purpose of influencing any shareholder to make any investment decision with respect to the Merger. . . ." *See, e.g.*, Ex. 1, 1/11/16 Proxy at 52.

Importantly, the Proxy Statements make clear under the heading **Plans for the Company *after* the Merger**:

> "[S]ubsequent to the consummation of the Merger, the Surviving Company's management and Board will continuously evaluate and review the Surviving Company's entire business and operations from time to time, and may propose or develop plans and proposals, including any of the foregoing actions, ***including the possibility of relisting the Surviving Company or a substantial part of its business on another internationally recognized stock exchange.***"

FAC ¶ 170; *see also* Ex. 1, 1/11/16 Proxy at 66; Ex. 4, 02/08/16 Proxy at 66; Ex. 5, 02/26/16 Proxy at 66; Ex. 6, 03/03/16 Proxy at 68.

The Proxy Statements also described shareholders' right to dissent and seek judicial appraisals under Cayman Islands law as a Cayman Islands company.  FAC ¶¶ 88, 89; *see also* Ex. 1, 1/11/16 Proxy at 27.  Before the Merger closed, some shareholders—though not Plaintiffs—dissented and exercised their right to seek a judicial appraisal of their shares in the Cayman Islands.  FAC ¶ 138.  Plaintiffs chose

CASE No. 2:19-CV-1619-JAK-JC
MEM. OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

to forgo an appraisal, and instead filed this suit.

On March 30, 2016, Qihoo announced that the Merger passed the shareholder vote that was held that day. FAC ¶¶ 4, 83; Ex. 7, 3/30/16 Press Release. The Merger proceeded to close on July 15, 2016. FAC ¶ 93. A year and a half later, the company that emerged from the Merger combined with SJEC, a Chinese manufacturer, which was already listed on the Shanghai Stock Exchange, providing for what Plaintiffs claim as the "backdoor listing" of Qihoo. *Id.* ¶¶ 96-100.

*Allegations.* Unhappy with their 32% premium, Plaintiffs assert claims in the United States for Sections 10(b), 20A, and 20(a) of the Exchange Act, alleging that Qihoo made false and misleading statements in the December 18, 2015 press release announcing the Merger, and in four subsequent Registration Statements, attaching Proxy Statements. Broadly speaking, Plaintiffs claim that Qihoo falsely characterized the Merger, and failed to disclose that the Company would eventually be relisted on the Shanghai Stock Exchange years later. The crux of the Complaint centers around the fact that Qihoo's Securityholders were underpaid in the Merger because Qihoo's purported "backdoor listing" allowed Qihoo to relist on the Shanghai Stock Exchange at a higher value than the Merger Price. FAC ¶¶ 10, 12.

## ARGUMENT

To state a claim under § 10(b) of the Securities Exchange Act ("Exchange Act") and Rule 10b-5 promulgated thereunder, a plaintiff must plead with the required particularity facts establishing the following elements: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss, and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta Inc.*, 552 U.S. 148, 157 (2008); *Melot v. Jakks Pacific, Inc.*, No. 13-05388 JAK, 2016 WL 6902093, at *18 (C.D. Cal. Nov. 18, 2016).

To state a claim under § 20A of the Exchange Act, a plaintiff must allege that: (1) the defendant committed an Exchange Act violation by purchasing or selling a

security while in possession of material, nonpublic information; and (2) the defendant's trade occurred contemporaneously with a complementary trade made by the plaintiff. *In re Arrowhead Research Corp. Sec. Litig.*, No. 2:14-cv-07890, 2016 WL 6562066 (C.D. Cal. Mar. 29, 2016), *aff'd*, 711 F. App'x 434 (9th Cir. 2018).

Plaintiffs must comply with the heightened particularity requirements of Fed. R. Civ. P. 9(b) and the PSLRA, which require the FAC to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012).

## I.     PLAINTIFFS FAIL TO STATE A SECTION 10(b) CLAIM

### A.     Plaintiffs Fail to Adequately Plead A Material Misstatement or Omission

Under Rule 10b-5, it is unlawful to (1) "make any untrue statement of material fact," or (2) "omit to state a material fact necessary in order to make the statement made . . . not misleading." Plaintiffs allege that Defendants' disclosures relating to the Merger in the Press Release announcing the Merger and the Preliminary Proxy and subsequent amendments thereof, contained false and misleading statements.[3] Yet Plaintiffs fail to allege particularized facts to support these allegations.

#### 1.     Plaintiffs Fail to Plead an Actionable Omission.

Plaintiffs do not claim that Defendants made any untrue affirmative statement during the putative class period. Instead, they allege that many statements in the Proxy Statements were false and misleading because Defendants allegedly knew, but did not disclose, that the Buyer Group had a definitive plan to relist Qihoo at a higher

---

[3] Plaintiffs state that only parts of a statement that are "bolded and italicized" in the FAC are alleged to be false and misleading, FAC 63 n. 28. But the FAC is riddled with long passages of text that span multiple pages of the FAC, and Plaintiffs repeatedly claim these expansive passages are likewise false and misleading. FAC ¶¶ 161-246. Courts have referred to this tactic as "puzzle-pleading" and do not satisfy Rule 8(a). *See Patel v. Parnes*, 253 F.R.D. 531, 551 (C.D. Cal. 2008).

valuation a year and a half after the class period ended. *See, e.g.*, FAC ¶¶ 159(a), (b), (d). Plaintiffs allege that as a result of this purported omission, the following statements were false and misleading: (i) "there were no plans in place for Qihoo to undergo a transaction following the Merger that would cause the Company's structure to be changed" (ii) "there were no alternatives to the Merger that would be more beneficial to Qihoo Securityholders", and (iii) "that the Buyer Group preferred for Qihoo to be a private company so that it would not face the pressures associated with the public markets". *Id.* Plaintiffs cannot base a claim on these statements.

First, Plaintiffs' chief allegation—that during the Merger Qihoo concealed the Buyer Group's intentions to relist in order to depress the stock price—is definitively refuted by the exact Proxy Statements on which they rely. The Company specifically *did* disclose in its public filings the potential that the Company may relist. As Plaintiffs acknowledge, FAC ¶ 170, the plain language of the disclosure states:

> [S]ubsequent to the consummation of the Merger, the Surviving Company's management and Board will continuously evaluate and review the Surviving Company's entire business and operations from time to time, and may propose or develop plans and proposals, including any of the foregoing actions, ***including the possibility of relisting the Surviving Company or a substantial part of its business on another internationally recognized stock exchange***.

FAC ¶ 170; *see also* Ex. 1, 1/11/16 Proxy at 66; Ex. 4, 02/08/16 Proxy at 66; Ex. 5, 02/26/16 Proxy at 66; Ex. 6, 03/03/16 Proxy at 68. This forthright disclosure appearing in all the Proxy materials defeats Plaintiffs' claims.

Second, Plaintiffs have failed to allege facts supporting the conclusion that further disclosures were required. It is well-settled that "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5." *Young v. Dreisbach*, 182 F. App'x 714, 718 (9th Cir. 2006) (affirming dismissal of securities claims) (quoting *Basic Inc.*, 485 U.S. at 239 n.17). Not only must Plaintiffs identify a duty to disclose, any such duty "extends only to material information." *Id.* An omitted fact is material if there is "a substantial likelihood that the disclosure of the omitted fact would have

been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* Section 10(b) "prohibit[s] only misleading and untrue statements, not statements that are incomplete." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (affirming dismissal of securities claims).

*Lefter v. Yirendai Ltd.*, No. 16-06473-MWF, 2017 WL 2857535 (C.D. Cal. June 20, 2017), is instructive. The plaintiff there contended that Yirendai, a Cayman Islands corporation headquartered in Beijing, failed to adequately disclose that a major revenue stream would be put in jeopardy by Draft Measures promulgated by the China Banking Regulatory Commission. The court rejected plaintiffs' argument explaining the facts disclosed were consistent with the Draft Measures because the disclosures "never created the impression that the Draft Measures did ***not*** put its business model at risk; they simply did not explain the risk in the manner or level of detail that Plaintiff would have preferred." *Id.* at *7. Ultimately, the court held plaintiff failed to allege further disclosures were required. *Id.* at *7-8; *see also Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998, 1018 (N.D. Cal. 2006), (dismissing omission claim because defendants never indicated that merger would not occur), *aff'd* 303 F. App'x 431 (9th Cir. 2008).

Similarly, here, with respect to plans, alternatives, or reasons for the Merger, Defendants did not state or even suggest that after the Merger it would remain private indefinitely. *Id.* In fact, it disclosed the opposite—the possibility of relisting. FAC ¶ 170; *see also* Ex. 1, 1/11/16 Proxy at 66; Ex. 4, 02/08/16 Proxy at 66; Ex. 5, 02/26/16 Proxy at 66; Ex. 6, 03/03/16 Proxy at 68. And Qihoo was not obligated to speculate in its filings regarding the future plans of the Buyer Group (nor could it have). Plaintiffs cannot allege that at the time of the Merger it was a foregone conclusion that Qihoo would one day relist at a higher valuation on an entirely different exchange as a different segment. Even Plaintiffs concede that any relisting would be "particularly complex" (i.e. involve a new surviving company that emerged from the Merger and then would relist on an entirely different exchange as a different

segment of the surviving company) a year and a half after the class period ended. FAC ¶¶ 12, 108-109.[4]  Thus, Plaintiffs fail to plead an actionable omission.

### 2.  Qihoo's Statements Concerning Future Plans Following the Merger Are Inactionable Forward-Looking Statements

Nor can Plaintiffs base their claims on Qihoo's disclosures about what would happen *after* the Merger as such statements are forward-looking statements accompanied by cautionary language and thus protected by the PSRLA's safe harbor. 15 U.S.C. § 78u-5(c)(1) (a person shall not be liable with respect to any forward-looking statement if the forward-looking statement is accompanied by meaningful cautionary statements; or immaterial; or plaintiff fails to allege it was made with actual knowledge).  This is an independent reason for dismissal.

Many of the statements cited in expansive block-quotes throughout the FAC are clearly forward-looking.  *See, e.g.*, FAC ¶ 170 (the Surviving Company's management and Board *will* continuously evaluate and review the Surviving Company's entire business and operations from time to time, and may propose or develop plans and proposals, including any of the foregoing actions, *including the possibility of relisting* the Surviving Company or a substantial part of its business on another internationally recognized stock exchange."); ¶ 172 ("Following the consummation of the Merger, the Buyer Group *anticipates* that the Company *will* continue to conduct its operations substantially as they are currently being conducted); ¶ 174 ("an equity investment in Holdco and Parent by the Buyer Group following the Merger *will* involve substantial risk. . ."), ¶ 176 ("the Unaffiliated Holders will have no on-going equity participation in the Company following the Merger, and they *will* cease to participate in the Company's future earnings or growth . . .").

---

[4] In any event, Plaintiffs' allegations that any so-called plans were disclosed in newspaper articles eviscerates their claims. *See, e.g.*, *Lefter*, 2017 WL 2857535, at *7 (no duty to disclose already public information in Chinese).

Not only are these statements identified as forward looking,[5] they are accompanied by meaningful cautionary language. *See, e.g.*, 1/11/16 Proxy at 124 ("[T]he forward-looking statements do not reflect the potential impact of any future acquisitions, mergers, . . . or investments made by the parties."); *id.* ("We cannot assure you that the actual results or developments we anticipate will be realized or, if realized, that they will have the expected effects on our business or operations"); *id.* ("[R]eaders should ***not*** place undue reliance on forward-looking statements"); *id.* ([W]e undertake no obligation to update these forward-looking statements to reflect future events or circumstances."). These forward-looking statements are protected by the safe harbor. *See, e.g.*, *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1134 (S.D. Cal. 2012) (cautionary language precluded liability), *aff'd sub nom Fresno Cnty Emps' Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010) (same).[6]

### 3. Qihoo Expressed Sincerely Held Opinions that the Merger Was Fair and Not Misleading.

Plaintiffs also attempt, but fail, to allege that Defendants' statements that the Merger was "fair" or in the "best interest of the company" were somehow false and misleading. FAC ¶¶ 187-212. More specifically, Plaintiffs argue that: (i) the merger was not "fair" because the financial projections and J.P. Morgan's financial analysis were flawed and J.P. Morgan compared Qihoo to an improper set of peer companies; and (ii) Defendants purportedly disclosed more positive financial projections privately to the Buyer Group. *Id.* ¶ 159(c). Plaintiffs' theory appears to be that the

---

[5] Qihoo's public filings contained language similar to the following: "Certain statements in this proxy statement, the documents attached hereto and the documents incorporated by reference in this proxy statement are forward-looking statements based on estimates and assumptions. These include statements as to such things as our financial condition, results of operations, plans, objectives, future performance and business, as well as forward-looking statements relating to the Merger." *See, e.g.*, Ex. 1, 1/11/16 Proxy at 123.

[6] As explained below, *infra* I.B., Plaintiffs likewise do not plead Defendants had actual knowledge of a definitive pre-existing plan that would guarantee the Buyers Group would relist the surviving company at a higher value.

$77 per ADS cash-out price offered with the Merger was fraudulently low, given that Defendants relisted the stock.

However, representations that a proposed plan of action is "fair, from a financial point of view, to the shareholders" is a statement of opinion. *Shurkin*, 471 F. Supp. 2d at 1013 (dismissing complaint regarding going-private transaction), *aff'd* 303 F. App'x 431. To state a claim based on a false opinion, a plaintiff must adequately allege that such opinions were based on untrue facts or not honestly believed. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015); *Shurkin*, 471 F. Supp. 2d at 1013 (plaintiff must "plead with particularity why the statement of opinion was objectively and subjectively false"). Plaintiffs fail to plead either.

***First***, Plaintiffs do not allege that Mr. Chen or Qihoo did not subjectively believe in the accuracy of their opinion that the Merger was fair and in the best interests of the Company, nor that they disagreed with the projections used or with J.P. Morgan's assessment. Nor did Defendants omit information that would render their statement of belief misleading, particularly because the Company disclosed that a relisting was a possibility. *See supra* I.A.i.

A recent decision, *In re Shanda Games Ltd. Sec. Litig.*, No. 1:18-cv-02463-ALC, 2019 U.S. Dist. LEXIS 171592 (S.D.N.Y. Sept. 30, 2019), addresses similar issues. There, a plaintiff, on behalf of former owners of ADSs, sued a Cayman Islands company with principal offices in China following a going-private transaction. *Id.* at *2. The court found the company's "fairness statements constitute inactionable opinion statements," explaining that even if the amended complaint had satisfied the particularity requirements, it had not alleged facts that indicated that the Company believed the deal was not fair. *Id.* at *19. The Court explained, "the Amended Complaint does not allege that the facts supporting the belief that the deal was fair are untrue—this is true even if the projections were faulty—or that the Defendant [company] omitted information that would make fairness statements about

the deal misleading." *Id.*; *see also Omnicare*, 135 S. Ct. at 1329 (the "presence of [competing] facts is one reason why an issuer may frame a statement as an opinion, thus conveying uncertainty."). So too here. Plaintiffs have failed to allege any facts remotely suggesting that Defendants, and the financial advisor on which they relied, did not believe the Merger was fair and in the Company's best interests.

*Second*, Plaintiffs fail to adequately allege that Defendants' opinions regarding the fairness of the Merger were based on untrue facts. Plaintiffs do not, because they cannot, dispute that the Merger documents accurately disclosed the projections provided to and used by the financial advisor. *See, e.g.*, FAC ¶¶ 161-165; Ex. 3, 12/18/15 Press Release. Instead, Plaintiffs argue that Defendants' opinions regarding "fairness" were misleading because the underlying financial projections used by J.P. Morgan were flawed and because J.P. Morgan compared Qihoo to an improper set of peer companies. The Third Circuit rejected similar allegations in *OFI Asset Management v. Cooper Tire & Rubber*, 834 F.3d 481 (3d Cir. 2016). There, the plaintiff alleged that the Proxy Statement "misled investors about the outlook for the merger by providing misleading projections" because they were different than internal projections. *Id.* at 500. The Court recognized that projections were not statements of fact: "the only relevant statement of fact is that the projections were, in fact, the projections that [the company] provided to [the buyer] and the financing bank during the negotiation of the deal." *Id.* at 501. Because that statement was accurate, the plaintiff did "not pled falsity as it relates to the projections"—even if the underlying projections themselves were "objectively false." *Id.*[7]

Here, the Proxy Statements accurately described which projections were

---

[7] Plaintiffs fail to adequately allege that the projections were flawed or objectively false as there is no requirement that projections must include a *possible* relisting in the future. *See In re Merge Healthcare Inc.*, No. 11388-VCG, 2017 WL 395981, at *12 (Del. Ch. Jan. 30, 2017) (dismissing case, explaining "disclosing a speculative valuation, limited to a hypothetical . . . transaction, not relied on by the banker, would not be helpful to, and may instead mislead, stockholders").

provided to and used by the financial advisor,[8] and none of the projections were worded as "guarantees" or "statements of fact." Quite the opposite. In every instance, Qihoo warned that the projections were ***"not fact"***—they were prepared by the Company and "should not be relied upon as being necessarily indicative of future results, and readers of this document are cautioned not to place undue reliance on the prospective financial information." Ex. 1, 01/11/2016 Proxy at 51. And Qihoo's Proxy Statements was replete with cautionary language. *Id.* ("[I]nformation is not fact and should not be relied upon . . . readers of this document are cautioned not to place undue reliance on the prospective financial information."); *id.* at 52 ("financial projections are not a guarantee of performance."); *id.* ("[F]actors such as . . . expectations regarding . . . any other transaction . . ., all of which are difficult to predict and beyond the control of management, may cause actual future results to differ materially from these projections").[9]

When viewed "in light of all its surrounding text," *Omnicare*, 135 S. Ct. at 1330, Qihoo's Proxy Statements were not misleading: They made clear to investors that it "[the Surviving Company] may propose or develop plans and proposals, . . . ***including the possibility of relisting the Surviving Company or a substantial part of its business on another internationally recognized stock exchange.***" Thus, Plaintiffs' disagreement with Defendants' (and J.P. Morgan's) opinions do not state a claim. *See, e.g. In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 392 (S.D.N.Y. 2010) (Companies need not "phrase disclosures in pejorative terms.").[10]

---

[8] Although Plaintiffs make the conclusory allegation that Defendants disclosed more positive financial projections privately to the Buyer Group, *id.* ¶ 159(c), Plaintiffs plead no facts to support such claims.

[9] Moreover, as indicated above (*supra* I.A.ii), forward-looking statements are protected under the PSLRA safe harbor when the projections are identified as forward-looking and accompanied by meaningful cautionary language. *In re Cutera Sec. Litig.*, 610 F.3d at 1111.

[10] Further, other shareholders had sufficient information to decide that the Merger might have undervalued Qihoo's shares. FAC ¶¶ 138-151. Plaintiffs chose not to avail themselves of the fully disclosed appraisal rights they possess in the apparent

Plaintiffs fail to plead an actionable misstatement or omission.[11]

### B.   Plaintiffs Fail to Adequately Plead Particularized Facts Giving Rise to a Strong Inference of Scienter

Plaintiffs must, but fail, to allege with particularity both the facts constituting the alleged violation and facts supporting a "strong inference" that defendants acted with scienter.  *In re Impac Mortg. Holdings Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1090 (C.D. Cal. 2008).  The Ninth Circuit uses a two-step scienter inquiry: "first, [the court] will determine whether any of the plaintiff's allegations . . . alone, are sufficient to create a strong inference of scienter; second, if no individual allegations are sufficient, we will conduct a 'holistic' review . . . to determine whether the insufficient allegations combine to create a strong inference . . . ." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 992 (9th Cir. 2009).  "A court must . . . only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *Id* at 991.   Under the PSLRA, where, as here, Plaintiffs challenge forward-looking statements (e.g., the Company's future plans or forecasts), Plaintiffs must plead that Defendants acted with actual knowledge, not recklessness.  *In re Cutera Sec. Litig.*, 610 F.3d at 1111-12.  This burden is more demanding than the already rigorous scienter standard applicable to other securities claims under the PSLRA.[12]  As demonstrated below,

___

hope for a better outcome.  And while Plaintiffs claim that ADS holder steps were "extra complicated", FAC ¶ 89, these steps simply required dissenters to comply with dissenting procedures applicable under Cayman law and practice.  Plaintiffs chose to invest in a Cayman Islands company headquartered in China and cannot be heard to complain that the applicable procedures of Cayman law are "complicated."

[11]  Mr. Chen's certifications on behalf of Qihoo were likewise not false and misleading.  FAC ¶¶ 227, 229; *see supra* I.A.  Defendants note that Messrs. Zhou and Qi did ***not*** sign the Registration Statements, attaching the Proxy Statements, on behalf of the Company.  Ex. 8, 1/11/16 Reg. Statement at 29-30; Ex. 9, 02/08/16 Reg. Statement at 29-30; Ex. 10, 2/26/16 Reg. Statement at 29-30; Ex. 11, 03/03/16 Reg. Statement at 29-30.

[12] Recklessness is defined as "a highly unreasonable omission [or misrepresentation], involving . . . an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known [or should be known] to the defendant. . .'" *In re Rackable Sys., Inc. Sec. Litig.*, No. C 09-0222 CW, 2010 WL 3447857, at *4 (N.D. Cal. Aug. 27, 2010).  Recklessness is a form of

Plaintiffs have failed to plead Defendants acted with deliberate recklessness, let alone actual knowledge.

### 1.   Plaintiffs Fail to Adequately Plead Motive.

Scienter allegations against each individual defendant must be alleged and evaluated on a defendant-by-defendant basis. *In re A-Power Energy Generation Sys., Ltd. Sec. Litig.*, No. 11-2302-GW, 2012 WL 1983341, at \*12 (C.D. Cal. May 31, 2012) (Rule 9(b) requires plaintiffs to "differentiate their allegations when suing more than one defendant"). Here, however, the FAC is utterly devoid of any allegations concerning Mr. Chen's alleged motive.[13]

### 2.   Plaintiffs Fail to Adequately Plead Strong Circumstantial Allegations of Intent to Defraud.

Unable to allege motive, Plaintiffs attempt to plead circumstantial evidence of conscious misbehavior or recklessness. In the Ninth Circuit, to adequately demonstrate scienter, a complaint must allege that defendants made false or misleading statements "either intentionally or with deliberate recklessness". *Zucco Partners,* 552 F.3d at 991. Moreover, in the absence of compelling motive allegations, "'the strength of [Plaintiffs'] circumstantial allegations must be correspondingly greater.'" *Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1354 (S.D. Cal. 1998). Plaintiffs' allegations do not come close to meeting this high standard.

#### a.   Allegations of Position Are Insufficient.

The only scienter allegations referring to Defendant Chen are wholly insufficient. Plaintiffs allege by virtue of his role as Chairman of the Special

---

"intentional conduct, not merely an extreme form of negligence." *Id.*

[13] With respect to Messrs. Zhou and Qi, Plaintiffs merely allege that as members of the Buyer Group, they had motive and opportunity to defraud the class. FAC ¶¶ 258-264. Not only is it unclear how they could have guaranteed a subsequent relisting a year and a half later would ever be completed or result in a higher price per share, but allegations that they received enormous financial benefits from the Merger are inapposite. FAC ¶¶ 258-263. The Ninth Circuit has explained, "We join our sister circuits and hold that evidence of a personal profit motive on the part of officers and directors contemplating a merger is insufficient to raise a strong inference of scienter. *Glazer Capital Mgmt, LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008).

CASE No. 2:19-CV-1619-JAK-JC
MEM. OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

Committee and a Qihoo Director, Mr. Chen "would also have been apprised of the backdoor listing plans" because he was "heavily involved in" the merger process and the Special Committee was given broad authority. FAC ¶¶ 269-270, 278. Courts routinely have rejected the type of general "access" allegations on which Plaintiffs rely here, particularly where Plaintiffs have not even alleged the existence of *any* contemporaneous definitive information about a pre-existing plan guaranteeing relisting at a higher value that is inconsistent with the public filings. *See, e.g.*, *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1175 (C.D. Cal. 2007) (positions and job titles do not provide strong inference of scienter); *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1079 (C.D. Cal. 2012) ("[M]ere speculation regarding what Defendants' must have known is not an adequate substitute"). Such "must have known" allegations do not meet the rigor of the PSLRA.

### b. The Court Should Disregard Plaintiffs' CW1.

Plaintiffs place great weight on the assertions of a confidential witness, who they refer to as CW1, but CW1's assertions are vague at best, and Plaintiffs fail to allege that he or she was in a position to possess personal knowledge. Under Ninth Circuit law, (i) "the [CWs] whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge;" and (ii) those CW statements "with sufficient reliability and personal knowledge must themselves be indicative of scienter." *Zucco Partners*, 552 F.3d at 995. *Zucco* requires courts to discount allegations of CWs who have "no firsthand knowledge," "base their knowledge on vague hearsay" or "report only conclusory assertions," because they demonstrate that the CW is not reliable. *Id.* at 996-98.

Here, Plaintiffs allege that CW1 worked in Qihoo's PR department at its Beijing headquarters from 2014 through 2017 and that CW1 explained that "by April 2015, employees in CW1's department were *informally* discussing that Qihoo would be relisted in China." FAC ¶ 135. CW1 asserts that Mr. Qi (and *not* Defendant Chen) attended a meeting where alleged "information" about the relisting was "informally

discus[sed]," and that he or she was instructed to keep the information confidential. *Id.* Plaintiffs' allegations are insufficient to raise a strong inference of scienter.

To start, Plaintiffs hang their hat on a PR employee removed from management decisions. Indeed, CW1 did not report to *any* Defendants; instead, as Plaintiffs acknowledge, CW1 reported to someone in the PR department, who reported to yet someone else, who then in turn reported to one of the Defendants. FAC ¶ 134. *See, e.g., Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) (CW1's alleged junior role deprives her purported statements of any value because an inference of scienter may not be based upon the "impression of a low-level employee" lacking "substance and context").

Moreover, CW1's assertions are not themselves indicative of scienter. The imprecision of the allegations—"informal" discussions about a relisting (which take place before the class period even begins)—suggests that there was a cloudy recollection of these events in the first place. Similarly, Plaintiffs vaguely argue that "attendees" of a meeting learned of "information" about a potential relisting sometime around "mid-2015" and that CW1 (who is not alleged to have access to Messrs. Chen or Zhou) was instructed not to discuss it. Because CW1 only relies on vague recollections of internal rumors concerning informal discussions, Plaintiffs fail to allege facts supporting an inference that a definitive plan existed *during* the class period. *Intuitive Surgical*, 759 F.3d at 1063 ("Missing are allegations linking specific reports and their contents to the executives, not to mention the link between the witnesses and the executives.").

Thus, no inference of scienter can be gleaned from the allegations attributed to CW1, let alone an inference of fraudulent intent that is strong and at least as compelling as any inference of non-fraudulent intent. The more plausible inference is that CW1 was instructed not to announce informal discussions about a potential relisting internally or externally because the purported "plan" was speculative and not a guarantee at the time—which is entirely consistent with Qihoo's disclosures.

### c.    Unsubstantiated Allegations from Articles Regarding the Buyer Group Do Not Give Rise to Scienter.

Plaintiffs point to Chinese media reports that do not mention Mr. Chen, and for the most part are published after the class period.  *See, e.g.* FAC ¶¶ 265, 271.  These are not—and cannot—form the basis of a claim during the class period.

First, Plaintiffs rely on two newspaper articles in November and December 2015 to claim that the Buyer Group—not Qihoo or Mr. Chen—intended to relist the Company.  FAC ¶¶ 106, 110.  While a Northern California district court has opined that newspaper articles that "corroborate plaintiff's own investigation and provide[] detailed factual allegations" may be used as a basis for an inference of scienter, the *Wet Seal* court cautioned that "newspaper articles should be credited only to the extent that other factual allegations would be—if they are sufficiently particular and detailed to indicate their reliability.  Conclusory allegations of wrongdoing are no more sufficient if they come from a newspaper article than from plaintiff's counsel." *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d at 1172; *see also Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) ("[N]ews articles cited still must indicate particularized facts about a defendant's conduct in order to support [the] claims"). Here, as Plaintiffs concede, these articles consisted of "***rumored*** reports" and "***not*** definitive statements of the Buyer Group's intent."  FAC ¶ 111.[14]

Further, Plaintiffs have pled themselves "out of court by alleging information that defeats [their] claim[s]".  *Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 249 (S.D.N.Y. 2003); *Wilson v. Bank of Am., N.A.*, No. 12-1532-JLR, 2013

---

[14] Plaintiffs resort to generic allegations of law review articles with no reference to the Company to half-heartedly suggest such allegations give rise to an inference of scienter.  FAC ¶ 133.  Such allegations are irrelevant–if such generic sources regarding transactions that do not even relate to the Company could create a strong inference of scienter, then all companies that eventually break up and relist could be sued for securities fraud and no particularized scienter analysis would be necessary. *See Patel v. Parnes*, 253 F.R.D. 531, 548-49 (C.D. Cal. 2008) (declining to take into account news articles about an industry as a whole).

CASE No. 2:19-CV-1619-JAK-JC
MEM. OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

WL 275018, at *6 (W.D. Wash. Jan. 24, 2013) (Plaintiffs "have argued themselves out of court by asserting facts demonstrating they have no fraud claim"). Indeed, while Plaintiffs allege these newspaper articles characterize the relisting as a possibility, they do not speak about the relisting as a guarantee or foregone conclusion at the time of the Merger and are entirely consistent with Defendants' disclosures. *See, e.g.*, FAC ¶ 112 ("The article commented that these developments *paved the way* for the Company's relisting"); 114 ("On August 25, 2016, *Caixin* reported that in Defendant Zhou's August 22 interview . . . he "threw cold water on that talk" of relisting the Company in China"); ¶¶ 120-121 (Zhou claiming uncertainty in backdoor listing in the Chinese stock market). And on February 28, 2017, which is months *after* the Merger, when the *Financial Times* discussed the Company's subsequent return to the Chinese stock market, the article merely speculated that marketing materials seen by the FT stated that the return to investors "*may* be as high as 5 [times]", further emphasizing the speculative nature of a return to the Shanghai Stock Exchange. The articles do not raise an inference that Mr. Chen or the Company acted with scienter.[15]

### d. Post-Class Period Appraisal Proceedings Are Insufficient.

Plaintiffs chose not to avail themselves of the appraisal rights they possess under Cayman law, which, as Plaintiffs acknowledge, were fully disclosed to them. FAC ¶¶ 88-89. Now, in an attempt to manufacture scienter, Plaintiffs point to post-Class Period appraisal proceedings to show that Defendants *knew* that the projections were flawed when created. But the "complaint must contain allegations of specific

---

[15] Plaintiffs' reliance on post-class period articles does not plead contemporaneous facts that show what Defendants knew at the time of the alleged statements. *See, e.g.*, FAC ¶¶ 113-116, 118-128. Impermissible "fraud by hindsight" pleading does not mean that Mr. Chen or Qihoo had a plan that would guarantee relisting Qihoo during the class period beyond the already disclosed possibility that a relisting may occur. *See Ronconi v. Larkin*, 253 F.3d 423, 430 n.12 (9th Cir. 2001) ("[f]raud by hindsight is not actionable").

CASE NO. 2:19-CV-1619-JAK-JC
MEM. OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

*contemporaneous* statements or conditions that demonstrate the intentional or the deliberate reckless false or misleading nature of the statements when made." *Ronconi*, 253 F.3d at 432.  And while Plaintiffs only point to Qihoo's litigation tactics in the appraisal proceeding, FAC ¶ 11, Plaintiffs have not (because they cannot) allege that the appraisal proceeding determined the value of the stock was wrong. The PSRLA requires far more.  *See, e.g.*, *In re Shanda Games*, 2019 U.S. Dist. LEXIS 171592, at *2-3 (dismissing going-private Exchange Act suit despite Cayman Islands Court awarding dissenters higher amounts per ADS in appraisal suit); *see also In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) ("the federal securities laws do not require a company to accuse itself of wrongdoing").

### 3. Plaintiffs Fail to Adequately Plead Scienter As to the Company.

To state a claim for securities fraud against a corporate defendant, a plaintiff must adequately allege scienter on the part of a corporate officer or director whose intent can be imputed to the company. *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 744-45 (9th Cir. 2008) (rejecting notion that "so long as any employee at [the company] had knowledge of the violation of any law, scienter could be imputed to the company as a whole").  The FAC contains no specific allegations of scienter as to Chen or Qihoo; rather the FAC alleges vague allegations of scienter as to Defendants generally.  *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d at 1157 (noting that courts in the Ninth Circuit require an "analy[sis of] scienter separately for each alleged misrepresentation and each defendant" because group pleading "did not survive the PSLRA [and, a]s such, the individual defendants cannot be liable for false statements found in the complaint on a group-pleading theory.").  Having pled no scienter on the part of Mr. Chen, or any corporate officer or director,[16] Plaintiffs

---

[16] To the extent Plaintiffs were able to allege a strong inference of scienter with respect to the individuals in the Buyer Group (who stood on the opposite side of the Merger with Qihoo), it would be nonsensical to impute such personal motives to the Company.  *See Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966 (N.D. Cal. 2015)

have failed to plead scienter as to the Company.

### C. Plaintiffs Fail to Adequately Plead Reliance

Plaintiffs' claims with respect to putative class members who received payments through the Merger also fail because they do not allege facts showing actual reliance on the alleged misstatements.[17] Plaintiffs fail in their attempt to invoke the "fraud on the market" presumption set forth in *Basic Inc.*, 485 U.S. at 241. Under *Basic*, courts presume that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price" because most publicly available information is reflected in the market price. *Id.* at 247. To plead reliance based on such a presumption, Plaintiffs must allege that the relevant market was open and developed, *i.e.* efficient. *ScripsAmerica, Inc.*, 119 F. Supp. 3d at 1250 (explaining fraud on the market presumption). As explained in *Shanda Games*, "IPOs and private transaction[s] are generally treated as inefficient" thus a "forced sale of shares through a merger does not constitute an efficient market" for reliance purposes. *In re Shanda Games*, 2019 U.S. Dist. LEXIS 171592, at *25. Here, any ADSs were not even sold but rather "canceled and cease to exist". Ex. 2, Merger Agreement § 3.1(b) ("Each Company Share (including Company Shares represented by ADSs) . . . shall be canceled or cease to exist").[18]

(granting dismissal in part when CEO acted outside the scope of employment).

[17] Plaintiffs do not plead actual reliance and in fact expressly disclaim any individual reliance. Pl's Opp. to Mot. to Transfer, at 8 (Dkt. 40).

[18] In addition, because of the "cancellation" of shares upon the Merger, Plaintiffs have not pled an essential element of the claim, connecting a "purchase or sale" to the alleged wrongdoing at the time of the Merger. 15 U.S.C. § 78j(b) (Section 10(b) and reach manipulation or deception only "in connection with the purchase or sale of any security"); *see also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737-42 (1975) (holding that only purchasers or sellers have standing to bring a claim). Similarly, because Plaintiffs' shares were cancelled through the Merger, the alleged misrepresentations or omissions did not occur in connection with a sale on a domestic exchange and therefore, should be dismissed under *Morrison v. Nat'l Australia Bank*, 561 U.S. 247, 265 (2010) (§ 10(b) does not apply to foreign transactions unless the "purchase or sale" of securities took place (i) on a U.S. exchange or (ii) in an off-exchange transaction that occurred in the U.S.). *But see Shanda Games*, 2019 U.S. Dist. LEXIS 171592, *11 (finding §10(b) is applicable and finding that plaintiffs did not assert a "merely listing" theory).

Nor does the presumption for reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), apply. The *Affiliated Ute* presumption is available only "if there is an omission of a material fact by one with a duty to disclose." *Stoneridge Inv. Partners,* 552 U.S. at 159; *see also Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666 (9th Cir. 2004) (holding that allegations that cannot be characterized as claims of omission are not entitled to presumption of reliance). Here, Plaintiffs allege primarily affirmative misstatements, not omissions. *In re Shanda Games Ltd.*, 2019 U.S. Dist. LEXIS 171592, at n.2; *see also e.g.* FAC ¶ 159(a) ("assurances . . . were false and misleading because when these statements were made, the Buyer Group already planned to relist Qihoo at a far-higher valuation); ¶ 159(b) ("statements were false and misleading because they did not mention the alternative of relisting Qihoo on a Chinese stock exchange or paying Qihoo Securityholders fair value in light of that alternative plan"); ¶ 159(c) ("These statements are false and misleading because they conveyed that the Merger consideration of $77 per ADS or $51.33 per ordinary share was a fair price . . ."); ¶ 159(d) ("These statements were false because the Buyer Group did not intend for Qihoo to remain a private company."). Plaintiffs' reliance allegations fail.

### D. Plaintiffs Fail to Adequately Plead Loss Causation

Under the PSLRA, Plaintiffs "have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). In other words, to establish a securities claim, Plaintiffs must plead that the stock was *inflated* due to the alleged fraud and that disclosure of the alleged fraud "caused" the Company's stock price to fall by a material amount. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (plaintiff must allege that "share price fell significantly after the truth became known"); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008) ("complaint must allege that the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses").

Typically, loss causation is shown by the drop in share price due to a misstatement or omission by the defendant and a subsequent "disclosure of actual wrongdoing". *Loos v. Immersion Corp.*, 762 F.3d 880, 890 & n.3 (9th Cir. 2014). In addition, post-class period revelations that occur ***after*** the purported economic harm could not have ***caused*** the harm. *See Lloyd v. CVB Fin. Corp.*, No. CV 10 -06256-MMM, 2012 WL 12883517, at *26 (C.D. Cal. Aug. 21, 2012) ("It is unclear how [company's] post-class period revelations can support a finding of loss causation, since, as alleged by plaintiff, the class period ended a month earlier.").

Here, Plaintiffs claim that they sold their shares at a speculative "depressed value" and that "but for the fraud, the market price for Qihoo Securities would have more closely reflected their true value." FAC ¶¶ 279-280, 281. Nowhere do Plaintiffs allege that the stock was inflated during the putative class period or that the stock actually dropped upon an issuance of a corrective disclosure.[19] Plaintiffs allege the opposite, stating that the stock *increased* upon the relisting on the Shanghai Stock Exchange. *Id.* ¶ 283. As currently alleged, these statements fail to clearly specify 'what the relevant economic loss might be or . . . what the causal connection might be' between the loss and the omission." *See, e.g.*, *Little Gem Life Scis. LLC v. Orphan Med., Inc.*, No. 06-1377-ADM, 2007 WL 541677, at *7 (D. Minn. Feb. 16, 2007) (failing to adequately plead loss causation when complaint alleges that had "defendants disclosed in the Proxy Statement the omission described herein, the . . . stockholders . . . would have elected to exercise their right of appraisal. . . .").

Further, any attenuated argument regarding a causal connection between a purported material misrepresentation and the loss makes no sense. Again, Plaintiffs

---

[19] To the extent Plaintiffs imply that post-class period articles, such as the February 28, 2017 *Financial Times* article, are corrective disclosures, their claims are time-barred since the Complaint was filed on March 5, 2019. *See* 28 U.S.C. §1658(b); *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164 (C.D. Cal. 2011) (§10(b) claim must be filed "within two years of the date Plaintiff either knew, or through exercise of reasonable diligence should have known 'the facts constituting the violation.')".

CASE No. 2:19-CV-1619-JAK-JC
MEM. OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

admit the Company conducted a complicated restructuring after the Merger; the relisting took a year and a half; the Company was listed on a different stock exchange; and there was no guarantee that the stock price upon relisting would be higher. FAC ¶¶ 12, 95; *supra* §I.A. Plaintiffs' loss causation arguments fail.

## II. PLAINTIFFS FAIL TO STATE A SECTION 20A CLAIM AS TO THE COMPANY

For the reasons discussed above, Plaintiffs failed to plead that any of the defendants violated 10(b), and therefore Plaintiffs have failed to allege the required "predicate violation" of the Exchange Act. A 20A claim requires a predicate Exchange Act violation. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002). Plaintiffs have failed to plead it as explained above.

Further, a party can be held liable under Section 20A only if it "purchasing or selling a security while in the possession of material, nonpublic information." *See* 15 U.S.C. § 78t-1. The FAC pleads no allegations of specific material, nonpublic information that Qihoo had from the Buyer Group—the possibility of relisting was explicitly disclosed. *Supra* I.A; *In re Arrowhead Research*, 2016 WL 6562066, at *11 (dismissing 20A claims), *aff'd*, 711 F. App'x 434. While Plaintiffs allege Qihoo purchased shares, FAC ¶ 287, Plaintiffs' claims are about the Merger, in which the *Buyer Group*, not Qihoo, purchased shares; Qihoo was the *object* of the deal. *See* Ex. 8, 1/11/16 Reg. Statement at 3 (through the Merger, Qihoo will become a "wholly owned subsidiary of Midco"). Plaintiffs' Section 20A claim must be dismissed.[20]

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss the FAC, with prejudice, in its entirety.

---

[20] To establish "control person" liability under Section 20(a), Plaintiff must establish primary violations of Section 10(b). *See, e.g.*, *In re Cutera Sec. Litig.*, 610 F.3d at 1113 (§ 20(a) requires § 10(b) violations). Since Plaintiffs cannot establish a primary violation, their "control person" claims against Mr. Chen must fail.

DATED:  October 11, 2019

**DECHERT LLP**

By: */s/ Nathan M. McClellan*
Nathan M. McClellan

David H. Kistenbroker (*pro hac vice*)
Email: david.kistenbroker@dechert.com
Joni S. Jacobsen (*pro hac vice*)
Email: joni.jacobsen@dechert.com
Angela M. Liu (*pro hac vice*)
Email: angela.liu@dechert.com
35 West Wacker, Suite 3400
Chicago, IL 60601
Telephone: (312) 646-5800

*Counsel for Defendants Qihoo Technology
Co. Ltd. & Eric Chen*