**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALTIMEO ASSET MANAGEMENT, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> QIHOO 360 TECHNOLOGY CO. LTD., HONGYI ZHOU, XIANGDONG QI and ERIC X. CHEN, <br><br> Defendants. | 1:19-cv-10067-PAE <br><br> Oral Argument Requested |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS QIHOO 360 TECHNOLOGY CO. LTD AND ERIC X. CHEN'S**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED**
**CLASS ACTION COMPLAINT**

DECHERT LLP
Brian C. Raphel
1095 Avenue of the Americas
New York, New York 10036
Tel. (212) 698-3500
brian.raphel@dechert.com

David H. Kistenbroker*
Joni S. Jacobsen*
Angela M. Liu*
35 West Wacker, Suite 3400
Chicago, IL 60601
Telephone: (312) 646-5800
david.kistenbroker@dechert.com
joni.jacobsen@dechert.com
angela.liu@dechert.com

*Attorneys for Qihoo 360 Technology Co.
Ltd. and Eric X. Chen*
*admitted pro hac vice*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 3

ARGUMENT ............................................................................................................... 6

I.   PLAINTIFFS FAIL TO STATE A SECTION 10(b) CLAIM ............................... 7

    A.   Plaintiffs Fail to Adequately Plead A Material Misstatement or Omission........... 7

        1.   Defendants' Statements Were Not False or Misleading ........................... 7

        2.   Qihoo's Statements Concerning Future Plans Following the Merger Are Inactionable Forward-Looking Statements ........................ 10

        3.   Qihoo Expressed Sincerely Held Opinions that the Merger Was Fair and Not Misleading. ....................................................... 11

    B.   Plaintiffs Fail to Adequately Plead Particularized Facts Giving Rise to a Strong Inference of Scienter ............................................................... 15

        1.   Plaintiffs Fail to Plead Motive Adequately............................................ 16

        2.   Plaintiffs Fail to Adequately Plead Strong Circumstantial Allegations of Intent to Defraud. ......................................................... 16

            a.   Allegations of Position Are Insufficient. ..................................... 17

            b.   The Court Should Disregard Plaintiffs' CW1............................. 17

            c.   Unsubstantiated Allegations from Articles Regarding the Buyer Group Do Not Give Rise to Scienter................................. 19

            d.   Post-Class Period Appraisal Proceedings Are Insufficient.......... 20

        3.   Plaintiffs Fail to Adequately Plead Scienter As to the Company. ........... 21

    C.   Plaintiffs Fail to Adequately Plead Reliance ....................................... 22

    D.   Plaintiffs Fail to Adequately Plead Loss Causation............................. 23

II.  PLAINTIFFS FAIL TO STATE A SECTION 20A CLAIM AS TO THE COMPANY............................................................................................... 25

CONCLUSION.............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972)............................................................................................22, 23

*Altayyar v. Etsy, Inc.*,
    242 F. Supp. 3d 161 (E.D.N.Y. 2017) ...................................................................12

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)......................................................................................6

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)..........................................................................................2, 22

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975)................................................................................................22

*Chavin v. McKelvey*,
    25 F. Supp. 2d 231 (S.D.N.Y. 1998)......................................................................22

*In re Citigroup, Inc. Sec. Litig.*,
    330 F. Supp. 2d 367 (S.D.N.Y. 2004)....................................................................21

*City of Taylor Gen. Emps. Ret. Sys. v. Magna Intern. Inc.*,
    967 F. Supp. 2d 771 (S.D.N.Y. 2013)...............................................................6, 25

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)................................................................................................23

*ECA & Local 134 IBEW Joint Pension Trust of Chi v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)...............................................................................7, 16

*In re Elan Corp. Sec. Litig.*,
    543 F. Supp. 2d 187 (S.D.N.Y. 2008)....................................................................17

*Gillis v. QRX Pharma Ltd.*,
    197 F. Supp. 3d 557 (S.D.N.Y. 2016)....................................................................12

*Hershfang v. Citicorp*,
    767 F. Supp. 1251 (S.D.N.Y. 1991).......................................................................19

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)..............................................................................16, 17

*In re Keyspan Corp. Sec. Litig.*,
   383 F. Supp. 2d 358 (E.D.N.Y. 2003) ...........................................................7, 8, 10

*Kleinman v. Elan Corp.*,
   706 F.3d 145 (2d Cir. 2013)....................................................................................8, 25

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005)....................................................................................24

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
   No. 11 CIV. 398 (GBD), 2013 WL 4405538 (S.D.N.Y. Aug. 5, 2013) ............................23, 24

*Lipow v. Net1 UEPS Techs., Inc.*,
   131 F. Supp. 3d 144 (S.D.N.Y. 2015).....................................................................3

*Little Gem Life Scis. LLC v. Orphan Med., Inc.*,
   No. 06-1377-ADM, 2007 WL 541677 (D. Minn. Feb. 16, 2007) ..........................................24

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014).....................................................................17, 18

*Lydon v. Estate of Winston*,
   715 F. Supp. 600 (S.D.N.Y. 1989) .......................................................................9

*Martin v. Quartermain*,
   732 F. App'x 37 (2d Cir. 2018) .........................................................................13

*In re Merge Healthcare Inc.*,
   No. 11388-VCG, 2017 WL 395981 (Del. Ch. Jan. 30, 2017) ..............................................14

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   704 F. Supp. 2d 378 (S.D.N.Y. 2010)...................................................................15

*Mills v. Polar Molecular Corp.*,
   Nos. 91 Civ. 0249(RWS), 91 Civ. 0902, 1992 WL 309592 (S.D.N.Y. Oct. 14,
   1992) .................................................................................................21

*Morrison v. Nat'l Australia Bank*,
   561 U.S. 247 (2010)....................................................................................22

*Nguyen v. New Link Genetics Corp.*,
   297 F. Supp. 3d 472 (S.D.N.Y. 2018)...................................................................24

*In re Nokia Corp. Sec. Litig.*,
   No. 96 Civ. 3752(DC), 1998 WL 150963 (S.D.N.Y. Apr. 1, 1998).......................................10

*OFI Asset Management v. Cooper Tire & Rubber*,
   834 F.3d 481 (3d Cir. 2016)............................................................................14

- iii -

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)..............................................................................................12, 13, 15

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008)......................................................................8

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
    Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010).............................................................19, 20

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004).....................................................................................10

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ...................................................................................21

*In re Sanofi Sec. Litig.*,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015)........................................................................20

*Sfirailala v. Deutsche Bank Aktiengesellschaft*,
    729 F. App'x 55 (2d Cir. 2018) ...............................................................................21

*Shalam v. KPMG, LLP*,
    No. 05CV3602(HB), 2005 WL 2139928 (S.D.N.Y. Sept. 6, 2005)........................24

*In re Shanda Games Ltd. Sec. Litig.*,
    No. 1:18-cv-02463-ALC, 2019 U.S. Dist. LEXIS 171592 (S.D.N.Y. Sept. 30,
    2019) ...............................................................................................13, 21, 22, 23

*Shemian v. Research In Motion Ltd.*,
    No. 11 Civ. 408(RJS), 2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013) ................8, 17

*Stolow v. Greg Manning Auctions Inc.*,
    258 F. Supp. 2d 236 (S.D.N.Y. 2003).....................................................................20

*Stoneridge Inv. Partners v. Scientific-Atlanta*,
    552 U.S. 148 (2008)..................................................................................................23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..........................................................................................2, 3, 16

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016).....................................................................................12

*In re UBS AG Sec. Litig.*,
    No. 07 Civ. 11225(RJS), 2012 WL 4471265, at *9 (S.D.N.Y. Sept. 28, 2012).....16

*In re Veon Ltd. Sec. Litig.*,
    No. 15-cv-08672, 2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018)............................................25

*Wight v. BankAmerica Corp.*,
    219 F.3d 79 (2d Cir. 2000).........................................................................................................22

*Zech Capital LLC v. Ernst & Young Hua Ming*,
    636 Fed. App'x 582 (2d Cir. 2016)...........................................................................................20

## Statutes and Rules

Fed. R. Civ. P. 8(a) ...............................................................................................................................7

Fed. R. Civ. P. 9(b) ..........................................................................................................................7, 9

Fed R. Civ. P. 12(b)(6).........................................................................................................................3

15 U.S.C. § 78j(b) ..............................................................................................................................22

15 U.S.C. § 78t ...................................................................................................................................25

15 U.S.C. § 78u-4(b) ....................................................................................................................15, 23

28 U.S.C. §1658(b) .............................................................................................................................24

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4.............................................. *passim*

Securities Exchange Act of 1934, § 10(b) ........................................................................... *passim*

Securities Exchange Act of 1934, § 20A ...........................................................................1, 3, 6, 25

Securities Exchange Act of 1934, § 20(a) .........................................................................1, 3, 6, 25

SEC Rule 10b-5 ...........................................................................................................6, 7, 8, 15

## PRELIMINARY STATEMENT

Qihoo Technology Company Ltd. ("Qihoo" or "the Company") is a Cayman Islands corporation headquartered in China.  In 2016, it entered into a "going private" transaction (the "Merger").  The price paid was $77 per American Depositary Share ("ADS").  The Merger was approved by a Special Committee of the Board, led by Defendant Eric Chen and advised by J.P. Morgan.  On July 15, 2016, the Merger closed, and the Company delisted from the New York Stock Exchange ("NYSE").  Over a year and a half later, on February 28, 2018, the post-Merger management team—which did not include Defendants—decided to combine the surviving entity with a publicly-traded Chinese manufacturing company, which Plaintiffs erroneously claim amounted to a "backdoor listing" of Qihoo on the Shanghai Stock Exchange.

Unhappy with the 32% premium they received from the Merger and choosing not to challenge the Merger price in an on-going appraisal action in the Cayman Islands, Plaintiffs—two former ADS holders who have filed several securities class actions—now assert claims under Sections 10(b), 20A, and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  Plaintiffs allege that Defendants concealed an alleged plan to relist Qihoo in order to artificially deflate the Merger price, but their claims are based on hindsight speculation, conjecture, and a blatant disregard for the well-settled disclosure obligations of public companies.  Plaintiffs' First Amended Complaint ("Amended Complaint" or "FAC") is the type of suit by enterprising shareholders that the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "PSLRA"), was intended to guard against and thus should be dismissed for the following reasons:

***First***, the FAC fails to identify any alleged misstatement or omission sufficient to serve as the basis for a securities fraud claim.  Plaintiffs' primary objection is that Qihoo made false and misleading statements when it failed to disclose a definitive plan to relist the Company at a higher

valuation on a different exchange.  But Plaintiffs cannot escape the fact that the proxy statements in question do, in fact, explicitly disclose the possibility of such a relisting, and Plaintiffs fail to allege that Defendants had a duty to disclose more.  This alone dooms Plaintiffs' claims.  While Plaintiffs also object to statements that the Merger was "fair," these are merely opinion statements that are not actionable and are based on forward-looking statements that are protected by the bespeaks caution doctrine.

*Second*, the FAC fails to plead facts giving rise to any inference that Qihoo or Mr. Chen acted with scienter, much less a "strong inference" that is "at least as compelling as any opposing inference," as required by the PSLRA and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  Instead, Plaintiffs rely on generic motives, a lower level confidential witness whose averments must be discounted, and impermissible hindsight pleading, all of which fail to give rise to a strong inference of scienter.  Instead, the only plausible inference to make is that Defendants accurately disclosed the possibility of a later relisting; neither Mr. Chen nor the Company—who were also not a part of the Buyer's Group and not involved post-merger—could accurately predict, let alone control, the future of the surviving company.

*Third*, Plaintiffs fail to plead the essential element of reliance.  Notwithstanding Plaintiffs' express disclaimer of individual reliance, Plaintiffs' claims also fail because they cannot invoke the presumption of reliance for efficient-market transactions set forth in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), as the Merger was a separately negotiated deal approved by Qihoo shareholders, not an open-market transaction.

*Fourth*, Plaintiffs fail to plead loss causation.  Nowhere do Plaintiffs allege that the stock was inflated during the putative class period or that the stock actually dropped upon an issuance of a corrective disclosure.  Plaintiffs instead state that the stock *increased* upon the relisting.

***Last***, Plaintiffs' Section 20A and 20(a) claims must be dismissed, among other reasons, because Plaintiffs have failed to allege a primary violation of Section 10(b).

For these reasons, this lawsuit has no merit.  The FAC should be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

***The Company.***  Qihoo, a leading internet company that provides internet security products, is a Cayman Islands corporation headquartered in Beijing.  FAC ¶¶ 2, 21, 34.  During the putative class period, Qihoo registered ADSs that were listed and traded on the NYSE until it was taken private in a "Merger" on July 15, 2016.  *Id.* ¶ 21.

***Individual Defendants.***  Defendant Eric X. Chen served as a Qihoo Director from January 2014 through the Merger.  Mr. Chen was Chairman of the Special Committee of independent directors that the Company appointed to evaluate the Merger.  FAC ¶¶ 24, 26; Ex. 1, 1/11/16 Proxy at 29.  Defendants Hongyi Zhou and Xiangdong Qi are Qihoo's Co-Founders.  Mr. Zhou served as Qihoo's Chairman and CEO, while Mr. Qi served as Qihoo's President and Director during the putative class period.  FAC ¶¶ 22-23; Ex. 1, 1/11/16 Proxy at 29.  Messrs. Zhou and Qi own shares in certain entities of the Buyer Group, comprised of 36 equity investors.  FAC ¶¶ 29-30; Ex. 2, Merger Agreement at Exhibit B.  Messrs. Zhou and Qi have not yet been served.

***Lead Plaintiffs.***  Lead Plaintiffs are ODS Capital LLC ("ODS"), a Florida limited liability company, and Altimeo Asset Management ("Altimeo"), an independent portfolio management company based in France and approved by the French Financial Authority.  FAC ¶¶ 18-20.

---

[1] Exhibit references ("Ex.") refer to exhibits to the Declaration of Brian C. Raphel, filed with this Motion.  This background is drawn from documents that may be considered on this motion, including (i) the Complaint and documents referenced therein, and (ii) Qihoo's SEC filings.  *See Tellabs*, 551 U.S. at 322 (court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference."); *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 157 (S.D.N.Y. 2015) (court may "consider documents that are referenced in the complaint" and may "take judicial notice of public disclosure documents that must be filed with the [SEC].").  Unless otherwise indicated, all emphasis in text and case citation has been added and internal citations have been omitted.

Altimeo and ODS have both served as lead plaintiff in securities class action suits against Chinese companies incorporated in the Cayman Islands in the last three years.  *See, e.g.*, *Fasano, et al. v. Li, et al.*, 1:16-cv-08759 (S.D.N.Y.) (Altimeo as co-lead plaintiff); *ODS Capital LLC v. JA Solar Holdings Co. Ltd.*, No. 1:18-cv-12083 (S.D.N.Y.) (Altimeo and ODS as co-lead plaintiffs); *Altimeo Asset Mgmt. v. Wuxi PharmaTech (Cayman), Inc., et al.*, 1:19-cv-01654 (S.D.N.Y.) (Altimeo as lead plaintiff).[2]

**The Merger.**  The concept of the Merger purportedly first arose in early May 2015, when Defendant Zhou discussed a possible acquisition of Qihoo with a group of investors.  FAC ¶ 41; Ex. 1, 1/11/16 Proxy at 29.  On June 17, 2015, the Board received a preliminary letter from Zhou and a group of investors, offering to take Qihoo private.  FAC ¶ 42; Ex. 1, 1/11/16 Proxy at 29. The Board formed an independent special committee of outside directors, including Mr. Chen, to evaluate and negotiate any deal.  FAC ¶¶ 24, 26, 44; Ex. 1, 1/11/16 Proxy at 29.  The Special Committee members, including Mr. Chen, "are unaffiliated with any member of the Buyer Group [in the Merger at issue]."  Ex. 1, 1/11/16 Proxy at 5.  The Special Committee also retained J.P. Morgan Securities (Asia Pacific) Limited ("J.P. Morgan") as its financial advisor in connection with its review and evaluation of the Merger proposal.  FAC ¶ 45; Ex. 1, 1/11/16 Proxy at 30.

After analyzing and negotiating the Merger, the parties agreed to a price of $77 per ADS and $51.33 per ordinary share, representing a premium of 32.7% to the average closing price of the Company's ADSs on June 16, 2015.  FAC ¶ 162; Ex. 3, 12/18/15 Press Release at 1.  On December 18, 2015, Qihoo issued a press release announcing that the parties had reached an

---

[2] Moreover, ODS has served as lead plaintiff in *In re Diamond Resorts Int'l, Inc. Sec. Litig.*, No. 2:18-cv-1355 (D. Nev.); *Gingello v. Patriot Nat'l, Inc.*, No. 1:17-cv-1866 (S.D.N.Y.).  Combined, the co-lead plaintiffs run afoul of the restrictions on professional plaintiffs under the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(vi) ("Except as the court may otherwise permit . . . a person may be a lead plaintiff . . . in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period").

agreement.  FAC ¶¶ 3, 60; Ex. 3, 12/18/15 Press Release at 1.  Between January 11, 2016 and

March 3, 2016, Qihoo filed Registration Statements, attaching an initial proxy statement in January

2016, as well as two subsequent amendments in February 2016, and a final proxy statement in

March 2016 (the "Proxy Statements").  *Id.* ¶¶ 66-69.  Included in the Proxy Statements were

financial projections prepared by management of the Company to J.P. Morgan.  Ex. 1, 1/11/16

Proxy at 52; Ex. 4, 2/8/16 Proxy at 52; Ex. 5, 2/26/16 Proxy at 52; Ex. 6, 3/3/16 Proxy at 52.  As

the Proxy Statements make clear, the projections were "included solely to give shareholders access

to certain information that was made available to the Special Committee's financial advisor and

are not included for the purpose of influencing any shareholder to make any investment decision

with respect to the Merger. . . ."  *See, e.g.*, Ex. 1, 1/11/16 Proxy at 52.

Importantly, the Proxy Statements make clear under the heading **Plans for the Company**

***after* the Merger**:

> "[S]ubsequent to the consummation of the Merger, the Surviving Company's management
> and Board will continuously evaluate and review the Surviving Company's entire business
> and operations from time to time, and may propose or develop plans and proposals,
> including any of the foregoing actions, ***including the possibility of relisting the Surviving
> Company or a substantial part of its business on another internationally recognized stock
> exchange.***"

FAC ¶ 170; *see also* Ex. 1, 1/11/16 Proxy at 66; Ex. 4, 02/08/16 Proxy at 66; Ex. 5, 02/26/16 Proxy

at 66; Ex. 6, 03/03/16 Proxy at 68.

The Proxy Statements also described the shareholders' right to dissent and seek judicial

appraisals under Cayman Islands law as a Cayman Islands company.  FAC ¶¶ 88, 89; *see also* Ex.

1, 1/11/16 Proxy at 27.  Before the Merger closed, some shareholders—though not Plaintiffs—

dissented and exercised their right to seek a judicial appraisal of their shares in the Cayman Islands.

FAC ¶ 138.  Plaintiffs chose to forgo an appraisal, and instead filed this suit.

On March 30, 2016, Qihoo announced that the Merger passed the shareholder vote that

was held that day.  FAC ¶¶ 4, 83; Ex. 7, 3/30/16 Press Release.  The Merger proceeded to close on July 15, 2016.  FAC ¶ 93.  A year and a half later, the company that emerged from the Merger combined with SJEC, a Chinese manufacturer, which was already listed on the Shanghai Stock Exchange, providing for what Plaintiffs claim as the "backdoor listing" of Qihoo.  *Id.* ¶¶ 96-100.

*Allegations.*  Unhappy with their 32% premium, Plaintiffs assert claims in the United States for Sections 10(b), 20A, and 20(a) of the Exchange Act, alleging Qihoo made false and misleading statements in the December 18, 2015 press release announcing the Merger, and in four subsequent Registration Statements, attaching Proxy Statements.  Plaintiffs claim Qihoo falsely characterized the Merger and failed to disclose that the Company would eventually be relisted on the Shanghai Stock Exchange.  The crux of the FAC centers around the fact that Qihoo's Securityholders were purportedly underpaid in the Merger because Qihoo's alleged "backdoor listing" allowed Qihoo to relist on the Shanghai Stock Exchange at a higher value than the Merger Price.  FAC ¶¶ 10, 12.

## ARGUMENT

To state a claim under § 10(b) of the Securities Exchange Act ("Exchange Act") and Rule 10b-5 promulgated thereunder, a plaintiff must plead with the required particularity facts establishing the following elements: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss, and (6) loss causation.  *See*, *e.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007).

To state a claim under § 20A of the Exchange Act, a plaintiff must plead: (1) a predicate violation of the Exchange Act; (2) contemporaneous trading for the defendant and plaintiff; and (3) that the defendant possessed "material, nonpublic information" at the time the trade.  *See City of Taylor Gen. Emps. Ret. Sys. v. Magna Intern. Inc.*, 967 F. Supp. 2d 771, 800 (S.D.N.Y. 2013).

Plaintiffs must comply with the heightened particularity requirements of Fed. R. Civ. P. 9(b) and the PSLRA, under which "the complaint must 'specify each statement alleged to have been misleading, and the reason or reasons why the statement is misleading' and 'state with particularity facts giving rise to a strong inference that the defendant acted with [scienter.]'" *ECA & Local 134 IBEW Joint Pension Trust of Chi v. JP Morgan Chase Co.,* 553 F.3d 187, 196 (2d Cir. 2009) (affirming dismissal of securities class action).

## I.    PLAINTIFFS FAIL TO STATE A SECTION 10(b) CLAIM

### A.    Plaintiffs Fail to Adequately Plead A Material Misstatement or Omission

Under Rule 10b-5, it is unlawful to (1) "make any untrue statement of material fact," or (2) "omit to state a material fact necessary in order to make the statement made . . . not misleading." Plaintiffs allege that Defendants' disclosures relating to the Merger contained false and misleading statements.[3] Yet Plaintiffs fail to allege particularized facts to support these allegations.

#### 1.    Defendants' Statements Were Not False or Misleading

Plaintiffs' primarily allegation is that Qihoo affirmatively misrepresented the Buyer Group's intentions for the post-Merger entity. Indeed, Plaintiffs specifically allege that the "specific and misleading statements" made by Defendants included: (i) "there were no plans in place for Qihoo to undergo a transaction following the Merger that would cause the Company's structure to be changed," (ii) "there were no alternatives to the Merger that would be more beneficial to Qihoo Securityholders," and (iii) "that the Buyer Group preferred for Qihoo to be a private company so that it would not face the pressures associated with the public markets". *See,*

---

[3] Plaintiffs state that only parts of a statement that are "bolded and italicized" in the FAC are alleged to be false and misleading, FAC ¶ 63 n. 28. But the FAC is riddled with long passages of text that span multiple pages of the FAC, and Plaintiffs repeatedly claim these expansive passages are likewise false and misleading. FAC ¶¶ 161-246. Courts have referred to this tactic as "puzzle-pleading," which does not satisfy Rule 8(a). *See In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 370 (E.D.N.Y. 2003) (dismissing because the complaint consists of "puzzle pleading").

FAC ¶¶ 159(a), (b), (d).  Plaintiffs believe these statements were false when made because Qihoo purportedly knew that the Buyer Group planned on relisting the post-Merger entity on the Chinese stock market at a higher valuation.  However, Plaintiffs are forced to concede that the plain language of the disclosures expressly discloses this possibility:

> [S]ubsequent to the consummation of the Merger, the Surviving Company's management and Board will continuously evaluate and review the Surviving Company's entire business and operations from time to time, and may propose or develop plans and proposals, including any of the foregoing actions, ***including the possibility of relisting the Surviving Company or a substantial part of its business on another internationally recognized stock exchange***.

FAC ¶ 170 (emphasis added); *see also* Ex. 1, 1/11/16 Proxy at 66; Ex. 4, 02/08/16 Proxy at 66; Ex. 5, 02/26/16 Proxy at 66; Ex. 6, 03/03/16 Proxy at 68.  This forthright disclosure appearing in all the Proxy materials defeats Plaintiffs' suggestion that the disclosures were misleading and is fatal to Plaintiffs' claims.  *See Shemian v. Research In Motion Ltd.*, No. 11 Civ. 408(RJS), 2013 WL 1285779, at *20 (S.D.N.Y. Mar. 29, 2013) (dismissing claims when Defendants *did* make disclosures that were purportedly omitted), *aff'd* 570 F. App'x 32 (2d Cir. 2014); *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003) ("[D]ismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed.").

Further, Plaintiffs have failed to allege facts supporting the conclusion that further disclosures were required.  "[A] company is not required to disclose every fact that 'a reasonable investor would very much like to know'."  *Shemian*, 2013 WL 1285779, at *20, *aff'd* 570 F. App'x 32.  Section 10(b) and Rule 10b-5(b) do not create "an affirmative duty to disclose any and all material information."  *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).  Indeed, it is well settled that "[t]he securities laws do not require clairvoyance."  *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 664 (S.D.N.Y. 2008) (granting motion to dismiss Securities Act claims).

This case is directly on point even with pre-PSLRA case law, dismissing under Fed. R. Civ. P. 9(b). In *Lydon v. Estate of Winston*, 715 F. Supp. 600 (S.D.N.Y. 1989), shareholders of Winston Network, Inc. ("Winston"), a publicly held corporation, approved a merger between Winston and another company under terms that required those shareholders to sell their shares. *Id.* at 601. Seventeen months later, the acquiring company then sold Winston for a "substantial profit." *Id.* The former Winston shareholders alleged securities fraud on the basis that the acquirer "failed to also advise that it planned to resell [Winston] stock at a higher price." *Id.* The Court dismissed this claim because "there are no factual allegations that support an inference that the alleged plan to find a buyer in the future had been formulated prior to the merger." *Id.* at 602.

The same is true here. Plaintiffs allege that Qihoo relisted on the Chinese stock market 19 months after it went private, resulting in a substantial profit for anyone who still held an interest in Qihoo. Just like in *Lydon*, Plaintiffs allege they were fraudulently misled to sell their shares because they were not told at the time of the sale of any plan for another major transaction that would eventually occur a year and a half later. And just like in *Lydon*, Plaintiffs fail to allege that this plan was a known guarantee, let alone omitted, at the time of the initial transaction. In fact, Plaintiffs' claims are even weaker than those that were dismissed in *Lydon* because Plaintiffs here are forced to concede that the *possibility* that such a transaction might occur in the future was expressly disclosed. FAC ¶ 170; *see also* Ex. 1, 1/11/16 Proxy at 66; Ex. 4, 02/08/16 Proxy at 66; Ex. 5, 02/26/16 Proxy at 66; Ex. 6, 03/03/16 Proxy at 68. Plaintiffs cannot allege that it was a foregone conclusion at the time of the Merger that Qihoo would one day relist at a higher valuation on an entirely different exchange as a different segment. Even Plaintiffs concede that any relisting would be "particularly complex" (i.e. involve a new surviving company that emerged from the Merger and then would relist on an entirely different exchange as a different segment of the

surviving company) a year and a half after the class period ended.  FAC ¶¶ 12, 108-109.[4]  Thus, Plaintiffs' claims fail.

### 2. Qihoo's Statements Concerning Future Plans Following the Merger Are Inactionable Forward-Looking Statements

Nor can Plaintiffs base their claims on Qihoo's disclosures about what would happen *after* the Merger as such statements are forward-looking statements accompanied by cautionary language and are thus protected by the judicially created "bespeaks caution" doctrine.  Under the bespeaks caution doctrine, "where the totality of statements is generally cautious, projections therein which are however qualified by assorted variables outside the control of speakers, may not be looked to for a cause of action."  *In re Nokia Corp. Sec. Litig.*, No. 96 Civ. 3752(DC), 1998 WL 150963, at *8 (S.D.N.Y. Apr. 1, 1998); *see also Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004) (applying bespeaks caution doctrine and safe harbor provisions to a secondary offering registration statement).  Forward-looking statements "adequately tinged with caution, when considered in the context of the 'total mix of information' available to the market, are not misleading."  *In re Nokia*, 1998 WL 150963, at *8.  This is an independent reason for dismissal.

The FAC is riddled with extended block quotes explaining how, at the time of the Merger, Qihoo *expected* to operate *after* the Merger that are clearly forward-looking.  *See, e.g.*, FAC ¶ 170 (the Surviving Company's management and Board **will** continuously evaluate and review the Surviving Company's entire business and operations from time to time, and may propose or develop plans and proposals, including any of the foregoing actions, *including the possibility of relisting* the Surviving Company or a substantial part of its business on another internationally

---

[4] In any event, Plaintiffs' allegations that any so-called plans were disclosed in public newspaper articles (e.g., FAC ¶¶ 105-110) eviscerates their claims.  *See, e.g.*, *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d at 377 ("Where allegedly undisclosed material information is in fact readily accessible in the public domain, the Second Circuit has found that a defendant may not be held liable for failing to disclose this information.").

recognized stock exchange."); ¶ 172 ("Following the consummation of the Merger, the Buyer Group ***anticipates*** that the Company ***will*** continue to conduct its operations substantially as they are currently being conducted);  ¶ 174 ("an equity investment in Holdco and Parent by the Buyer Group following the Merger ***will*** involve substantial risk. . ."), ¶ 176 ("the Unaffiliated Holders will have no on-going equity participation in the Company following the Merger, and they ***will*** cease to participate in the Company's future earnings or growth . . .").

Not only are these statements identified as forward looking,[5] they are accompanied by meaningful cautionary language that must be considered as part of the "total mix of information available to the market."  *See, e.g.*, 1/11/16 Proxy at 124 ("[T]he forward-looking statements do not reflect the potential impact of any future acquisitions, mergers, . . . or investments made by the parties."); *id.* ("We cannot assure you that the actual results or developments we anticipate will be realized or, if realized, that they will have the expected effects on our business or operations"); *id.* ("[R]eaders should ***not*** place undue reliance on forward-looking statements"); *id.* ([W]e undertake no obligation to update these forward-looking statements to reflect future events or circumstances.").  These statements independently bring any forward-looking statements within the bespeaks caution doctrine.

### 3. Qihoo Expressed Sincerely Held Opinions that the Merger Was Fair and Not Misleading.

Plaintiffs also attempt, but fail, to allege that Defendants' statements that the Merger was "fair" or in the "best interest of the company" were somehow false and misleading.  FAC ¶¶ 187-212.  More specifically, Plaintiffs argue that: (i) the merger was not "fair" because the financial

---

[5] Qihoo's public filings contained language similar to the following:  "Certain statements in this proxy statement, the documents attached hereto and the documents incorporated by reference in this proxy statement are forward-looking statements based on estimates and assumptions.  These include statements as to such things as … forward-looking statements relating to the Merger."  *See, e.g.*, Ex. 1, 1/11/16 Proxy at 123.

projections and J.P. Morgan's financial analysis were flawed and J.P. Morgan compared Qihoo to an improper set of peer companies; and (ii) Defendants purportedly disclosed more positive financial projections privately to the Buyer Group. *Id.* ¶ 159(c).[6]  In other words, Plaintiffs' theory appears to be that they may now second-guess the subjective opinion, held by Defendants and their financial advisors (and apparently Plaintiffs) on the date of the Merger, that the $77 per ADS cash-out price was "fair" because subsequent events purportedly suggest that a "fair" amount could have been higher.  Notably, the Exchange Act "does not allow investors to second-guess inherently subjective and uncertain assessments." *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) ("[T]he provision is not . . . an invitation to Monday morning quarterback an issuer's opinions"); *see also Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 174 (E.D.N.Y. 2017) (dismissing Exchange Act claims).  Further, "[i]t is not sufficient . . . to allege that an opinion was unreasonable, irrational, excessively optimistic, [or] not borne out by subsequent events." *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 577 (S.D.N.Y. 2016).

Statements like those here, which represent "a view, not certainty," are opinions. *Omnicare*, 575 U.S. at 184.  To state a fraud claim based on an opinion that is later proven incorrect, a plaintiff must adequately allege that such opinions were based on untrue facts or not honestly believed.  *Id.* at 183; *see also Tongue v. Sanofi*, 816 F.3d 199, 209-10 (2d Cir. 2016) (holding statements of opinion do not give rise to liability unless "the speaker did not hold the belief she professed" or "the supporting fact[s] she supplied were untrue.").  Indeed, "meeting the [*Omnicare*] standard . . . is no small task for an investor." *Id.* at 210.  This is because "'[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts and input."

---

[6] Although Plaintiffs make the conclusory allegation that Defendants disclosed more positive financial projections privately to the Buyer Group, *id.* ¶ 159(c), Plaintiffs plead no facts to support such claims.

*Martin v. Quartermain*, 732 F. App'x 37, 41 (2d Cir. 2018) (affirming dismissal of securities fraud claims).  Plaintiffs fall woefully short of meeting this standard.

**First**, Plaintiffs do not allege that Mr. Chen or Qihoo did not subjectively believe in the accuracy of their opinion that the Merger was fair and in the best interests of the Company, nor that they disagreed with the projections used or with J.P. Morgan's assessment.  Nor did Defendants omit information that would render their statement of belief misleading, particularly because the Company disclosed that a relisting was a possibility.  *See supra* I.A.i.

A recent decision, *In re Shanda Games Ltd. Sec. Litig.*, No. 1:18-cv-02463-ALC, 2019 U.S. Dist. LEXIS 171592 (S.D.N.Y. Sept. 30, 2019), addresses similar issues.  There, a plaintiff, acting on behalf of former owners of ADSs, sued a Cayman Islands company with principal offices in China following a going-private transaction.  *Id.* at *2.  The court found the company's "fairness statements constitute inactionable opinion statements," explaining that even if the amended complaint had satisfied the particularity requirements, it had not alleged facts that indicated that the Company believed the deal was not fair.  *Id.* at *19.  The Court explained, "the Amended Complaint does not allege that the facts supporting the belief that the deal was fair are untrue— this is true even if the projections were faulty—or that the Defendant [company] omitted information that would make fairness statements about the deal misleading."  *Id.*; *see also Omnicare*, 575 U.S. at 190 (the "presence of [competing] facts is one reason why an issuer may frame a statement as an opinion, thus conveying uncertainty.").  So too here.  Plaintiffs have failed to allege any facts remotely suggesting that Defendants, and the financial advisor on which they relied, did not believe the Merger was fair and in the Company's best interests.

**Second**, Plaintiffs fail to adequately allege that Defendants' opinions regarding the fairness of the Merger were based on untrue facts.  Plaintiffs do not, because they cannot, dispute that the

Merger documents accurately disclosed the projections provided to and used by the financial advisor.  *See, e.g.*, FAC ¶¶ 161-165; Ex. 3, 12/18/15 Press Release.  Instead, Plaintiffs argue that Defendants' opinions regarding "fairness" were misleading because the underlying financial projections used by J.P. Morgan were flawed and because J.P. Morgan compared Qihoo to an improper set of peer companies.  The Third Circuit rejected similar allegations in *OFI Asset Management v. Cooper Tire & Rubber*, 834 F.3d 481 (3d Cir. 2016).  There, the plaintiff alleged that the Proxy Statement "misled investors about the outlook for the merger by providing misleading projections" because they were different than internal projections.  *Id.* at 500.  The Court recognized that projections were not statements of fact: "the only relevant statement of fact is that the projections were, in fact, the projections that [the company] provided to [the buyer] and the financing bank during the negotiation of the deal."  *Id.* at 501.  Because that statement was accurate, the plaintiff had "not pled falsity as it relates to the projections"—even if the underlying projections themselves were "objectively false."  *Id.*[7]

Here, the Proxy Statements accurately described which projections were provided to and used by the financial advisor, and none of the projections were worded as "guarantees" or "statements of fact."  Quite the opposite.  In every instance, Qihoo warned that the projections were ***"not fact"***—they were prepared by the Company and "should not be relied upon as being necessarily indicative of future results, and readers of this document are cautioned not to place undue reliance on the prospective financial information."  *See, e.g.*, Ex. 1, 01/11/2016 Proxy at 51. And Qihoo's Proxy Statements were replete with cautionary language.  *Id.* ("[I]nformation is not

---

[7] Plaintiffs fail to adequately allege that the projections were flawed or objectively false as there is no requirement that projections must account for a *possible* future relisting.  *See In re Merge Healthcare Inc.*, No. 11388-VCG, 2017 WL 395981, at *12 (Del. Ch. Jan. 30, 2017) (explaining "disclosing a speculative valuation, limited to a hypothetical . . . transaction, not relied on by the banker, would not be helpful to, and may instead mislead, stockholders").

fact and should not be relied upon … [R]eaders of this document are cautioned not to place undue reliance on the prospective financial information."); *id.* at 52 ("financial projections are not a guarantee of performance."); *id.* ("[F]actors such as … expectations regarding … any other transaction …, all of which are difficult to predict and beyond the control of management, may cause actual future results to differ materially from these projections").

When viewed "in light of all its surrounding text," *Omnicare*, 575 U.S. at 190, Qihoo's Proxy Statements were not misleading:   They made clear to investors that "[the Surviving Company] may propose or develop plans and proposals, . . . ***including the possibility of relisting the Surviving Company or a substantial part of its business on another internationally recognized stock exchange.***"   Thus, Plaintiffs' disagreement with Defendants' (and J.P. Morgan's) opinions do not state a claim.   *See, e.g. In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 392 (S.D.N.Y. 2010) (companies need not "phrase disclosures in pejorative terms.").[8] Plaintiffs fail to plead an actionable misstatement or omission.[9]

## B.   Plaintiffs Fail to Adequately Plead Particularized Facts Giving Rise to a Strong Inference of Scienter

Plaintiffs must, but fail, to allege with particularity both the facts constituting the alleged violation and facts supporting a "strong inference" that defendants acted with scienter.  15 U.S.C. § 78u-4(b)(2).   Under Section 10(b) and Rule 10b-5, in the Second Circuit, "[t]he requisite scienter can be established by alleging facts to show either (1) that defendants had the motive and

---

[8] Other shareholders had sufficient information to decide whether an appraisal might lead to a higher valuation of Qihoo's shares.  FAC ¶¶ 138-151.  Plaintiffs chose not to avail themselves of their fully disclosed appraisal rights in the apparent hope for a better outcome.  While they claim the applicable procedures under Cayman law were "extra complicated", *id.* ¶ 89, Plaintiffs chose to invest in a Cayman Islands company and cannot now complain that the applicable procedures of Cayman law are too "complicated."

[9] Mr. Chen's certifications on behalf of Qihoo were likewise not false and misleading.  FAC ¶¶ 227, 229; *see supra* I.A.  Defendants note that Messrs. Zhou and Qi did ***not*** sign the Registration Statements, attaching the Proxy Statements, on behalf of the Company.  Ex. 8, 1/11/16 Reg. Statement at 29-30; Ex. 9, 2/8/16 Reg. Statement at 29-30; Ex. 10, 2/26/16 Reg. Statement at 29-30; Ex. 11, 3/3/16 Reg. Statement at 29-30.

opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA & Local 134 IBEW Joint Pension Tr. of Chi.*, 553 F.3d at 198.  The resulting inference "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs,* 551 U.S. at 314.  Under the PSLRA, "[r]ecklessness is defined as 'at the least,…an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it'." *ECA & Local 134 IBEW Joint Pension Tr. of Chi.*, 553 F.3d at 198.  As is demonstrated below, Plaintiffs have failed to plead that *any* Defendant acted with anything close to requisite scienter.

### 1.   Plaintiffs Fail to Plead Motive Adequately.

Scienter allegations against each individual defendant must be alleged and evaluated on a defendant-by-defendant basis. *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225(RJS), 2012 WL 4471265, at *9 (S.D.N.Y. Sept. 28, 2012).  Plaintiffs must "state with particularity facts giving rise to a strong inference that *each defendant* acted with scienter." *aff'd*, *City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).  But the FAC is utterly devoid of any allegations concerning Mr. Chen's alleged motive.[10]

### 2.   Plaintiffs Fail to Adequately Plead Strong Circumstantial Allegations of Intent to Defraud.

Unable to allege motive, Plaintiffs attempt to plead circumstantial evidence of conscious misbehavior or recklessness.  In the absence of compelling motive allegations, "the strength of

---

[10] With respect to Messrs. Zhou and Qi, Plaintiffs merely allege that as members of the Buyer Group, they had motive to defraud the class.  FAC ¶¶ 258-264.  Not only is it unclear how they could have guaranteed a subsequent relisting a year and a half later would ever be completed or result in a higher price per share, but general allegations that the Buyer Group intended to profit from the Merger—as would be expected in *any* corporate transaction—do not establish motive.  *Id.* ¶¶ 258-263.  As the Second Circuit explains, "[m]otives that are generally possessed by most corporate directors and officers do not suffice" to establish scienter.  *See Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).

[Plaintiff's] circumstantial allegations must be correspondingly greater."  *Kalnit v. Eichler*, 264 F.3d 131, 142 (2nd Cir. 2001).  Plaintiffs' allegations do not come close to this standard.

### a.    Allegations of Position Are Insufficient.

The only scienter allegations referring to Defendant Chen are wholly insufficient. Plaintiffs allege that, by virtue of his role as Chairman of the Special Committee a Qihoo Director, Mr. Chen "would also have been apprised of the backdoor listing plans" because he was "heavily involved in" the merger process and the Special Committee was given broad authority.  FAC ¶¶ 269-270, 278.  Courts routinely have rejected this type of general "access" allegations.  *See, e.g.*, *Shemian*, 2013 WL 1285779 at *17 (rejecting position-based inference argument because it is "well established that 'accusations founded on nothing more than a defendant's corporate position are entitled to no weight'"), *aff'd* 570 F. App'x 32 (2d Cir. 2014).  Such "must have known" allegations do not meet the rigor of the PSLRA.

### b.    The Court Should Disregard Plaintiffs' CW1.

Plaintiffs' scienter allegations as to the other Defendants are impermissibly based upon the vague purported assertion of a confidential witness, who they refer to as CW1 and does not appear to have been in a position to possess personal knowledge about what was known by the Defendants.  Such uninformed and vague anonymous allegations are regularly disregarded.  *See, e.g., In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 579-80 (S.D.N.Y. 2014) (dismissing complaint that "does not contain the kind of required specific factual allegations (by CWs or otherwise) that suggest if, when, or how [defendants], or any of the makers of the statements knew about the issue (or its magnitude) at any time prior to" the allegedly false statement.); *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 220-21 (S.D.N.Y. 2008) ("Plaintiffs do not allege any facts indicating that [the CW] was in a position to have knowledge regarding communications with Elan senior management or the conclusions reached by Elan senior management.").  CW1's purported

allegations are nothing more than rank hearsay from an uninformed alleged witness.

Here, Plaintiffs allege that CW1 worked in Qihoo's PR department at its Beijing headquarters from 2014 through 2017. FAC ¶ 135. As Plaintiffs acknowledge, CW1 did not report to *any* Defendants; instead, CW1 reported to someone in the PR department, who reported to yet someone else, who then in turn reported to one of the Defendants. *Id.* ¶ 134. CW1's junior position within the company is further confirmed by Plaintiffs' implicit concession that CW1 had no knowledge whatsoever of any formal plan for operating the company after the Merger. *See, e.g., id.* ¶ 135 (alleging CW1 explained that "by April 2015, employees in CW1's department were *informally* discussing that Qihoo would be relisted in China."). CW1 asserts that Mr. Qi (and *not* Defendant Chen) attended a meeting where alleged "information" about the relisting was "informally discus[sed]," and that CW1 was instructed to keep the information confidential. *Id.* Plaintiffs' allegations of informal discussions by non-Defendants about a *possible* future outcome do not demonstrate any conscious misbehavior by any Defendant and thus are insufficient to raise a strong inference of scienter.

Moreover, CW1's assertions are not themselves indicative of scienter. The imprecision of the allegations—"informal" discussions about a relisting (which take place before the class period even begins)—suggests a cloudy recollection of these events. Similarly, Plaintiffs vaguely argue that "attendees" of a meeting learned of "information" about a potential relisting sometime around "mid-2015" and that CW1 (who is not alleged to have had access to Messrs. Chen or Zhou) was instructed not to discuss it. Such vague recollections of internal rumors concerning informal discussions fail to support an inference that a definitive plan existed during the class period. *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d at 579-80 (dismissing securities action where "[n]o CW sets forth facts that suggest that any of the alleged statements were false *when they were made*").

- 18 -

Thus, no inference of scienter can be gleaned from the allegations attributed to CW1, let alone an inference of fraudulent intent that is strong and at least as compelling as any inference of non-fraudulent intent.  Indeed, if low-level employees like CW1 were speculating about a potential relisting, then this would only confirm that this possibility was one a reasonable investor could too figure out on their own.  The more plausible inference is that CW1 was instructed not to announce informal discussions about a potential relisting because any purported "plan" was speculative and not a guarantee at the time—which is entirely consistent with Qihoo's disclosures.

> ### c.   Unsubstantiated Allegations from Articles Regarding the Buyer Group Do Not Give Rise to Scienter.

Plaintiffs point to Chinese media reports that do not mention Mr. Chen, and for the most part are published after the class period.  *See, e.g.* FAC ¶¶ 265, 271.  These are not—and cannot—form the basis of a claim during the putative class period.

First, Plaintiffs rely on two newspaper articles in late 2015 to claim that the Buyer Group—not Qihoo or Mr. Chen—intended to relist the Company.  FAC ¶¶ 106, 110.  Courts in this Circuit have repeatedly rejected the use of newspapers to plead scienter.  *See Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) ("[N]ews articles cited still must indicate particularized facts about a defendant's conduct in order to support [the] claims"); *Hershfang v. Citicorp*, 767 F. Supp. 1251, 1259 (S.D.N.Y. 1991) (granting motion to dismiss when "[p]laintiffs have stitched together a patchwork of newspaper clippings and proclaimed the result a tale of securities fraud").  Here, as Plaintiffs concede, these articles consisted of "***rumored*** reports" and "***not*** definitive statements of the Buyer Group's intent."  FAC ¶ 111.[11]

---

[11] Plaintiffs resort to allegations of law review articles with no reference to the Company to suggest such allegations give rise to an inference of scienter.  FAC ¶ 133.  If such generic sources regarding transactions that do not even relate to the Company could create even an inference of scienter, then all companies that eventually break up and relist could

Further, Plaintiffs have pled themselves "out of court by alleging information that defeats [their] claim[s]".  *Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 249 (S.D.N.Y. 2003).  Indeed, while Plaintiffs allege these newspaper articles characterize the relisting as a possibility, they do not speak about the relisting as a guarantee or foregone conclusion at the time of the Merger and are entirely consistent with Defendants' disclosures.  *See, e.g.*, FAC ¶ 112 ("The article commented that these developments *paved the way* for the Company's relisting"); ¶ 114 ("On August 25, 2016, *Caixin* reported that in Defendant Zhou's August 22 interview . . . he "threw cold water on that talk" of relisting the Company in China"); ¶¶ 120-121 (Zhou claiming uncertainty in backdoor listing in the Chinese stock market).  And on February 28, 2017, which is months *after* the Merger, when the *Financial Times* discussed the Company's subsequent return to the Chinese stock market, the article merely speculated that marketing materials seen by the FT stated that the return to investors "***may*** be as high as 5 [times]", further emphasizing the speculative and hypothetical nature of a return to the Shanghai Stock Exchange.  The articles do not raise an inference that Mr. Chen or the Company acted with scienter.[12]

### d.  Post-Class Period Appraisal Proceedings Are Insufficient.

Plaintiffs chose not to avail themselves of the appraisal rights they possess under Cayman law, which, as Plaintiffs acknowledge, were fully disclosed to them.  FAC ¶¶ 88-89.  Now, in an attempt to manufacture scienter, Plaintiffs point to post-Class Period appraisal proceedings in a

---

be sued for securities fraud and no particularized scienter analysis would be necessary.  *See Plumbers & Steamfitters Local 773 Pension Fund*, 694 F. Supp. 2d at 300 (declining to take into account generic articles about subprime crisis).

[12] Plaintiffs' reliance on post-class period articles, including those with interviews with Zhou, is inapposite.  The FAC does not plead contemporaneous facts that show Mr. Chen or Qihoo had a plan that would guarantee relisting Qihoo during the class period beyond the already disclosed possibility that a relisting *may* occur in the future.  *See, e.g.*, FAC ¶¶ 113-116, 118-128.  *See Zech Capital LLC v. Ernst & Young Hua Ming*, 636 Fed. App'x 582, 585 (2d Cir. 2016) ("[t]his court has rejected similar attempts to establish scienter through hindsight evaluations of a defendant's conduct."); *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 528, 545 (S.D.N.Y. 2015) ("The Second Circuit has firmly rejected th[e] 'fraud by hindsight' approach.").

misguided attempt to show that Defendants knew that the Merger undervalued the company. But the "complaint must contain allegations of specific '***contemporaneous*** statements or conditions' that demonstrate the intentional or the deliberate reckless false or misleading nature of the statements when made." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001); *see also Mills v. Polar Molecular Corp.*, Nos. 91 Civ. 0249(RWS), 91 Civ. 0902, 1992 WL 309592, at *7 (S.D.N.Y. Oct. 14, 1992) ("[P]laintiffs have not pointed to any fact contemporaneous . . . which demonstrates malice or deliberate intent to defraud"). While Plaintiffs only point to Qihoo's litigation tactics in the appraisal proceeding, FAC ¶ 11, Plaintiffs do not (because they cannot) allege that the appraisal proceeding determined the value of the stock was wrong. The PSLRA requires far more. *See In re Shanda Games*, 2019 U.S. Dist. LEXIS 171592, at *2-3 (dismissing going-private Exchange Act suit despite Cayman Islands Court awarding dissenters higher amounts in appraisal suit); *see also In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) ("the federal securities laws do not require a company to accuse itself of wrongdoing").

### 3. Plaintiffs Fail to Adequately Plead Scienter As to the Company.

To state a claim for securities fraud against a corporate defendant, a plaintiff must adequately allege scienter on the part of a corporate officer or director whose intent can be imputed to the company. *Sfirailala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55, 58 (2d Cir. 2018) ("[T]he pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter."). The FAC contains no specific allegations of scienter as to Mr. Chen or Qihoo; rather the FAC provides only vague allegations of scienter as to Defendants generally. Having pled no scienter on the part of Mr. Chen, or any corporate officer or director,[13] Plaintiffs have failed to plead scienter as to the Company.

---

[13] To the extent Plaintiffs were able to allege a strong inference of scienter with respect to the individuals in the Buyer Group (who stood on the opposite side of the Merger with Qihoo), it would be nonsensical to impute such personal

### C.        Plaintiffs Fail to Adequately Plead Reliance

Plaintiffs' claims with respect to putative class members who received payments through the Merger also fail because they do not allege facts showing actual reliance on the alleged misstatements.[14]   Plaintiffs fail in their attempt to invoke the "fraud on the market" presumption set forth in *Basic*, 485 U.S. at 241.   Under *Basic*, courts presume that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price" because most publicly available information is reflected in the market price.   *Id.* at 247.   To plead reliance based on such a presumption, Plaintiffs must allege that the relevant market was open and developed, *i.e.* efficient.   *See, e.g.*, *Chavin v. McKelvey*, 25 F. Supp. 2d 231, 238 (S.D.N.Y. 1998) (rejecting fraud-on-the-market presumption where plaintiffs engaged "in the course of face-to-face negotiations with [the defendant], not in the course of any open market transaction"), *aff'd*, 182 F.3d 898 (2d Cir. 1999).   As explained in *Shanda Games*, "IPOs and private transaction[s] are generally treated as inefficient" thus a "forced sale of shares through a merger does not constitute an efficient market" for reliance purposes.   *In re Shanda Games*, 2019 U.S. Dist. LEXIS 171592, at *25.   Here, any ADSs were not even sold but rather "canceled and cease to exist".   Ex. 2, Merger Agreement § 3.1(b) ("Each Company Share (including Company Shares represented by ADSs) . . . shall be canceled or cease to exist").[15]

Nor does the presumption for reliance under *Affiliated Ute Citizens of Utah v. United*

---

motives to the Company.   *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 87 (2d Cir. 2000) ("where an agent, though ostensibly acting in the business of the principal, is really committing a fraud for his own benefit, he is acting outside of the scope of his agency, and it would therefore be most unjust to charge the principal with knowledge of it").

[14] Plaintiffs expressly disclaim any individual reliance.   Pl's Opp. to Mot. to Transfer, at 8 (Dkt. 40).

[15] In addition, because of the "cancellation" of shares upon the Merger, Plaintiffs have not pled an essential element of the claim, connecting a "purchase or sale" to the alleged wrongdoing at the time of the Merger.   15 U.S.C. § 78j(b) (Section 10(b) and reach manipulation or deception only "in connection with the purchase or sale of any security"); *see also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737-42 (1975) (holding that only purchasers or sellers have standing to bring a claim).   *Cf. Morrison v. Nat'l Australia Bank*, 561 U.S. 247, 265 (2010).

*States*, 406 U.S. 128 (1972), apply.  The *Affiliated Ute* presumption is available only "if there is an omission of a material fact by one with a duty to disclose."  *Stoneridge Inv. Partners v. Scientific-Atlanta,* 552 U.S. 148, 159 (2008).  Here, Plaintiffs allege primarily affirmative misstatements.  *In re Shanda Games Ltd.*, 2019 U.S. Dist. LEXIS 171592, at n.2; *see also, e.g.*, FAC ¶ 159(a) ("assurances . . . were false and misleading because when these statements were made, the Buyer Group already planned to relist Qihoo at a far-higher valuation); ¶ 159(b) ("statements were false and misleading because they did not mention the alternative of relisting Qihoo on a Chinese stock exchange or paying Qihoo Securityholders fair value in light of that alternative plan"); ¶ 159(c) ("These statements are false and misleading because they conveyed that the Merger consideration of $77 per ADS or $51.33 per ordinary share was a fair price . . ."); ¶ 159(d) ("These statements were false because the Buyer Group did not intend for Qihoo to remain a private company.").  Additionally, as demonstrated *supra*, Defendants had no duty to further disclose the *possibility* of a post-Merger relisting.  Plaintiffs' reliance allegations fail.

### D.    Plaintiffs Fail to Adequately Plead Loss Causation

Under the PSLRA, Plaintiffs "have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages."  15 U.S.C. § 78u-4(b)(4).  Plaintiffs must plead that the stock was *inflated* due to the alleged fraud and that disclosure of the alleged fraud "caused" the Company's stock price to fall by a material amount.  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (plaintiff must allege that "share price fell significantly after the truth became known").  "The Second [C]ircuit has outlined two possible methods of pleading loss causation, the 'corrective disclosure' theory, and the 'materialization of concealed risk' theory" which both require Plaintiffs to establish a post-transaction depreciation of the stock price caused by, respectively, either the issuance of a corrective disclosure or the materialization of a previously concealed risk.  *Lighthouse Fin. Grp.*

*v. Royal Bank of Scotland Grp., PLC*, No. 11 CIV. 398 (GBD), 2013 WL 4405538, at *9 (S.D.N.Y. Aug. 5, 2013) (collecting cases), *aff'd sub nom.*, 783 F.3d 383 (2d Cir. 2015); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 n.4 (2d Cir. 2005).  And post-class period revelations that occur **after** the purported economic harm could not have **caused** the harm.  *Lighthouse Fin. Grp.*, 2013 WL 4405538, at *10

Here, Plaintiffs claim that they sold their shares at a speculative "depressed value" and that "but for the fraud, the market price for Qihoo Securities would have more closely reflected their true value." FAC ¶¶ 279-280, 281.  Nowhere do Plaintiffs allege that the stock was inflated during the putative class period or that the stock actually dropped upon an issuance of a corrective disclosure or the materialization of an unknown risk.[16]  "As currently alleged, these statements fail to clearly specify 'what the relevant economic loss might be or . . . what the causal connection might be' between the loss and the omission."  *See, e.g.*, *Little Gem Life Scis. LLC v. Orphan Med., Inc.*, No. 06-1377-ADM, 2007 WL 541677, at *7 (D. Minn. Feb. 16, 2007) (failing to plead loss causation when complaint alleges that had "defendants disclosed in the Proxy Statement the omission described herein, the [stockholders] would have elected to exercise their right of appraisal. . . ."); *Nguyen v. New Link Genetics Corp.*, 297 F. Supp. 3d 472, 499 (S.D.N.Y. 2018) (no loss causation when the risk that materialized was disclosed).

Any causal connection between a purported misrepresentation and the loss makes no sense. Plaintiffs admit the Company conducted a complicated restructuring after the Merger; the relisting took over a year on a different exchange; and there was no guarantee that the stock price upon

---

[16] Plaintiffs allege the opposite, stating that the stock *increased* upon the relisting on the Shanghai Stock Exchange. *Id.* ¶ 283.  To the extent Plaintiffs imply that post-class period articles, such as the February 28, 2017 *Financial Times* article, are corrective disclosures, their claims are time-barred since the Complaint was filed on March 5, 2019.  *See* 28 U.S.C. §1658(b); *Shalam v. KPMG, LLP*, No. 05CV3602(HB), 2005 WL 2139928, *2 (S.D.N.Y. Sept. 6, 2005) ("A plaintiff must bring a [§] 10(b) claim within '2 years after the discovery of the facts constituting the violation'").

relisting would be higher.  FAC ¶¶ 12, 95; *supra* §I.A.  Plaintiffs' loss causation arguments fail.

## II.   PLAINTIFFS FAIL TO STATE A SECTION 20A CLAIM AS TO THE COMPANY

As discussed, Plaintiffs failed to plead a Section 10(b) claim, and therefore Plaintiffs have failed to allege the required predicate violation of the Exchange Act.  A 20A claim requires such a predicate violation.  *City of Taylor,* 967 F. Supp. 2d at 800.  Plaintiffs have failed to plead it.

Further, a party can be held liable under Section 20A only if it is "purchasing or selling a security while in the possession of material, nonpublic information."  *See* 15 U.S.C. § 78t-1.  The FAC pleads no allegations of specific material, nonpublic information that Qihoo had from the Buyer Group—the possibility of relisting was explicitly disclosed.  *Supra* I.A. While Plaintiffs allege Qihoo purchased shares, FAC ¶ 287, Plaintiffs' claims are about the Merger, in which the *Buyer Group*, not Qihoo, purchased shares; Qihoo was the *object* of the deal.  *See* Ex. 8, 1/11/16 Reg. Statement at 3 (through the Merger, Qihoo will become a "wholly owned subsidiary of Midco").  Plaintiffs' Section 20A claim must be dismissed.[17]

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss the FAC, with prejudice, in its entirety.

DATED:  December 23, 2019

**DECHERT LLP**

By: */s/ Brian C. Raphel*
Brian C. Raphel
1095 Avenue of the Americas

---

[17] To establish "control person" liability against Defendant Chen under Section 20(a), Plaintiff must establish primary violations of Section 10(b).  15 U.S.C. §78t(a); *see, e.g., Kleinman*, 706 F.3d 145 at n.14 (affirming dismissal of § 20(a) claims for failure to plead predicate violation).   Since Plaintiffs cannot establish a primary violation, their "control person" claims against Mr. Chen must fail.  *Id.*  And because culpable participation is essentially the same as scienter, the allegations likewise fail for the reasons discussed above in Part I.B.  *In re Veon Ltd. Sec. Litig.*, No. 15-cv-08672, 2018 WL 4168958, at *21-22 (S.D.N.Y. Aug. 30, 2018) (dismissing § 20(a) claim for failure to plead culpable participation because plaintiffs have failed to plead scienter).

New York, New York  10036
Tel. (212) 698-3500
brian.raphel@dechert.com

David H. Kistenbroker*
Joni S. Jacobsen*
Angela M. Liu*
35 West Wacker, Suite 3400
Chicago, IL 60601
Telephone: (312) 646-5800
david.kistenbroker@dechert.com
joni.jacobsen@dechert.com
angela.liu@dechert.com

*Attorneys for Qihoo 360 Technology Co. Ltd. and
Eric X. Chen*

*admitted *pro hac vice*