**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALTIMEO ASSET MANAGEMENT, Individually and On Behalf of All Others Similarly Situated, <br><br>      Plaintiff, <br><br>  v. <br><br>QIHOO 360 TECHNOLOGY CO. LTD., HONGYI ZHOU, XIANGDONG QI and ERIC X. CHEN, <br><br>      Defendants. | Case No. 1:19-cv-10067-PAE <br><br><br> Oral Argument Requested |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS QIHOO 360 TECHNOLOGY CO.**
**LTD. AND ERIC X. CHEN'S MOTION TO DISMISS PLAINTIFFS'**
**FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................... 1

II.   STATEMENT OF FACTS ................................................................................. 3

    A.    Zhou and Qi Led the Buyer Group in Taking Qihoo Private ................................ 3

    B.    Defendants Planned All Along to Relist Qihoo in China After the Merger ........... 3

    C.    Defendants' False and Misleading Statements About the Merger.......................... 5

    D.    Zhou and Qi Reaped Enormous Profits From the Merger .................................... 6

III.  ARGUMENT ..................................................................................................... 7

    A.    The Complaint Adequately Alleges False and Misleading Statements ................. 7

        1.    Defendants' Statements Concerning the Buyer Group's Plans for Qihoo After the Merger Were Materially False and Misleading .......................... 7

        2.    Defendants' Fairness Statements Were Materially False and Misleading 11

        3.    Defendants' Reasons for the Merger Were Materially False and Misleading.................................................................................................. 13

    B.    The Complaint Pleads a Strong Inference of Scienter ........................................ 13

        1.    The Complaint Adequately Pleads Motive and Opportunity.................... 14

        2.    The Complaint Adequately Pleads Conscious Misbehavior and Recklessness ........................................................................................... 15

            a)    The Complaint Adequately Pleads That the Individual Defendants Acted With Conscious Misbehavior and Recklessness ................ 16

            b)    The Individual Defendants' Roles Strongly Support Their Scienter ...................................................................................... 18

            c)    Other Executives' Scienter is Imputed to Qihoo .......................... 19

        3.    A Holistic View Supports a Strong Inference of Scienter ....................... 19

    C.    The Complaint Adequately Pleads Reliance........................................................ 20

        1.    The Fraud-on-the-Market Presumption Applies...................................... 20

        2.    The Affiliated Ute Presumption Applies ................................................. 22

    D.    The Complaint Adequately Pleads Loss Causation ............................................. 23

    E.    The Complaint Adequately Pleads a Claim Under Section 20A Against Qihoo.. 25

IV.   CONCLUSION.................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. U.S.*,
    406 U.S. 128 (1972)...............................................................................................22, 23

*Altayyar v. Etsy*,
    242 F. Supp. 3d 161 (E.D.N.Y. 2017) .................................................................12

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)...................................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................7

*Black v. Finantra Capital*,
    418 F.3d 203 (2d Cir. 2005)..................................................................................22

*Blank v. TriPoint Glob. Equities, LLC*,
    338 F. Supp. 3d 194 (S.D.N.Y. 2018)..............................................................14, 15

*Bricklayers & Masons Local Union No. 5 v. Transocean Ltd.*,
    866 F. Supp. 2d 223 (S.D.N.Y. 2012)...................................................................12

*Buxbaum v. Deutsche Bank, A.G.*,
    2000 U.S. Dist. LEXIS 5838 (S.D.N.Y. Mar. 6, 2000) .........................8, 10, 15, 24

*Caiola v. Citibank, N.A., N.Y.*,
    295 F.3d 312 (2d Cir. 2002)..................................................................................10

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
    750 F.3d 227 (2d Cir. 2014)....................................................................................7

*Christine Asia Co. v. Ma*,
    718 F. App'x 20 (2d Cir. 2017) .............................................................................19

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin*,
    875 F. Supp. 2d 359 (S.D.N.Y. 2012)...................................................................14

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*,
    423 F. Supp. 2d 348 (S.D.N.Y. 2006)...................................................................18

*Cohen v. Kitov Pharm. Holds., Ltd.*,
    2018 U.S. Dist. LEXIS 45676 (S.D.N.Y. Mar. 20, 2018) ......................................16

*Davis v. Scottish Re Grp.*,
    159 A.D. 3d 528 (1st Dep't 2018) ...................................................................................23

*Doubleline Cap. LP v. Odebrecht Fin.*,
    323 F. Supp. 3d 393 (S.D.N.Y. 2018)............................................................................25

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)................................................................................................23, 24

*Emps.' Ret. Sys. of Gov't of V.I. v. Blanford*,
    794 F.3d 297 (2d Cir. 2015)..........................................................................................14

*Eton Park Fund, L.P. v. Am. Realty Capital Props.*,
    2017 U.S. Dist. LEXIS 129990 (S.D.N.Y. Aug. 14, 2017).........................................25

*Frankel v. Am. Fin.*,
    1980 U.S. Dist. LEXIS 10742 (E.D.N.Y. Mar. 19, 1980).........................................23

*Freedman v. Value Health*,
    958 F. Supp. 745 (D. Conn. 1997)................................................................................12

*Fresno Cty. Emps.' Ret. Ass'n v. comScore, Inc.*,
    268 F. Supp. 3d 526 (S.D.N.Y. 2017)...........................................................................18

*Freudenberg v. E\*Trade Fin. Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010).............................................................................9

*Ganino v. Citizens Utils. Co.*,
    228 F.3d 154 (2d Cir. 2000)....................................................................................10, 15

*Gauquie v. Albany Molecular Research*,
    2016 U.S. Dist. LEXIS 97295 (E.D.N.Y. July 26, 2016) ...........................................18

*Gillis v. QRX Pharma Ltd.*,
    197 F. Supp. 3d 557 (S.D.N.Y. 2016)............................................................................13

*Gordon v. Sonar Capital Mgmt. LLC*,
    2014 U.S. Dist. LEXIS 111543 (S.D.N.Y. July 31, 2014) ..........................................21

*Grace v. Rosenstock*,
    228 F.3d 40 (2d Cir. 2000)............................................................................................21

*Gruber v. Gilbertson*,
    2018 U.S. Dist. LEXIS 45677 (S.D.N.Y. Mar. 20, 2018) ...........................................25

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)................................................................................................20, 21

iii

*Hershfang v. Citicorp.*,
    767 F. Supp. 1251 (S.D.N.Y. 1991)..................................................................................16

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
    398 F. Supp. 2d 244 (S.D.N.Y. 2005)..............................................................................22

*In re Atlas Air Worldwide Holdings, Sec. Litig.*,
    324 F. Supp. 2d 474 (S.D.N.Y. 2004)..............................................................................19

*In re Baan Co. Sec. Litig.*,
    271 F. Supp. 2d 3 (D.D.C. 2002) ........................................................................................3

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
    757 F. Supp. 2d 260 (S.D.N.Y. 2010)..............................................................................10

*In re Bristol Myers Squibb Co. Sec. Litig.*,
    586 F. Supp. 2d 148 (S.D.N.Y. 2008).........................................................................13, 24

*In re Elan Corp. Sec. Litig.*,
    543 F. Supp. 2d 187 (S.D.N.Y. 2008)..............................................................................17

*In re Fairway Grp. Holding Corp. Sec. Litig.*,
    2015 U.S. Dist. LEXIS 5999 (S.D.N.Y. Jan. 20, 2015)...................................................24

*In re ForceField Energy Inc. Sec. Litig.*,
    2015 U.S. Dist. LEXIS 95614 (S.D.N.Y. July 22, 2015) .................................................22

*In re GE Sec. Litig.*,
    857 F. Supp. 2d 367 (S.D.N.Y. 2012)..............................................................................20

*In re Goldman Sachs Grp., Inc.*,
    2018 U.S. Dist. LEXIS 137414 (S.D.N.Y. Aug. 14, 2018) ..............................................21

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2013 U.S. Dist. LEXIS 171110 (S.D.N.Y. Dec. 2, 2013) ................................................18

*In re KeySpan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ................................................................................9

*In re Lehman Bros. Sec. & ERISA Litig.*,
    131 F. Supp. 3d 241 (S.D.N.Y. 2015)..............................................................................11

*In re Livent Sec. Litig.*,
    148 F. Supp. 2d 331 (S.D.N.Y. 2001).........................................................................12, 23

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014)................................................................................17

*In re MCI Worldcom Sec. Litig.*,
    93 F. Supp. 2d 276 (E.D.N.Y. 2000) ................................................................15, 16

*In re Merge Healthcare Inc. Stockholders Litig.*,
    2017 Del. Ch. LEXIS 17 (Jan. 30, 2017) ...............................................................13

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    2011 U.S. Dist. LEXIS 35363 (S.D.N.Y. Mar. 29, 2011) ........................................8

*In re MF Global Holdings Ltd. Sec. Litig.*,
    982 F. Supp. 2d 277 (S.D.N.Y. 2013)................................................................9, 11

*In re Nokia Corp. Sec. Litig.*,
    1998 U.S. Dist. LEXIS 4100 (S.D.N.Y. Mar. 31, 1998) ..........................................9

*In re NTL, Inc. Sec. Litig.*,
    347 F. Supp. 2d 15 (S.D.N.Y. 2004)........................................................................8

*In re Petrobras Sec. Litig.*,
    116 F. Supp. 3d 368 (S.D.N.Y. 2015).....................................................................11

*In re Petrobras Sec. Litig.*,
    862 F.3d 250 (2d Cir. 2017).....................................................................................21

*In re Refco, Inc. Sec. Litig.*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007).....................................................................17

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001)..................................................................................7, 17

*In re Sci.-Atlanta Sec. Litig.*,
    571 F. Supp. 2d 1315 (N.D. Ga. 2007) ..................................................................22

*In re Shanda Games Ltd. Sec. Litig.*,
    2019 U.S. Dist. LEXIS 171592 (S.D.N.Y. Sept. 30, 2019)..................12, 14, 15, 20

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2018 U.S. Dist. LEXIS 199809 (S.D.N.Y. Nov. 26, 2018)......................................18

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2019 U.S. Dist. LEXIS 114695 (S.D.N.Y. July 10, 2019) ......................................20

*In re Smith Barney Transfer Agent Litig.*,
    290 F.R.D. 42 (S.D.N.Y. 2013) ..............................................................................23

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008)......................................................................25

v

*In re Trump Hotels S'holder Deriv. Litig.*,
  2000 U.S. Dist. LEXIS 13550 (S.D.N.Y. Sept. 21, 2000)......................................................12

*In re VEON Ltd. Sec. Litig.*,
  2017 U.S. Dist. LEXIS 152240 (S.D.N.Y. Sept. 19, 2017)...............................................15, 19

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016)...............................................................................................9

*In re Vivendi Universal, S.A. Sec. Litig.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003).................................................................................17

*In re Winstar Communs.*,
  2006 U.S. Dist. LEXIS 7618 (S.D.N.Y. Feb. 24, 2006).........................................................8

*Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*,
  620 F.3d 137 (2d Cir. 2010)...............................................................................................9

*Koppel v. 4987 Corp.*,
  167 F.3d 125 (2d Cir. 1999).............................................................................................12

*Laborers' Local #231 Pension Fund v. Cowan*,
  2018 U.S. Dist. LEXIS 110545 (D. Del. July 2, 2018) ....................................................13, 24

*Levie v. Sears Roebuck & Co.*,
  496 F. Supp. 2d 944 (N.D. Ill. 2007) .................................................................................23

*Lewis v. Termeer*,
  445 F. Supp. 2d 366 (S.D.N.Y. 2006).................................................................................23

*Lewy v. Skypeople Fruit Juice*,
  2012 U.S. Dist. LEXIS 128416 (S.D.N.Y. Sept. 7, 2012).....................................................18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015).....................................................................................15, 19, 25

*Lydon v. Estate of Winston*,
  715 F. Supp. 600 (S.D.N.Y. 1989) .....................................................................................10

*Martin v. Quartermain*,
  732 F. App'x 37 (2d Cir. 2018) .........................................................................................12

*McIntire v. China MediaExpress Holdings, Inc.*,
  927 F. Supp. 2d 105 (S.D.N.Y. 2013).................................................................................11

*McIntire v. China MediaExpress Holds.*,
  38 F. Supp. 3d 415 (S.D.N.Y. 2014)...................................................................................22

*Meyer v. JinkoSolar Holdings Co.*,
   761 F.3d 245 (2d Cir. 2014)......................................................................................7, 10, 13

*Muller-Paisner v. TIAA*,
   289 F. App'x 461 (2d Cir. 2008) ............................................................................................7

*Nakamura v. BRF S.A.*,
   2018 U.S. Dist. LEXIS 110187 (S.D.N.Y. July 2, 2018) ......................................................3

*Nakkhumpun v. Taylor*,
   782 F.3d 1142 (10th Cir. 2015) ...........................................................................................13

*NECA-IBEW Pension Tr. Fund v. Precision Castparts*,
   2017 U.S. Dist. LEXIS 165139 (D. Or. Oct. 3, 2017)....................................................13, 24

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)......................................................................................14, 17, 18

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
   834 F.3d 481 (3d Cir. 2016).................................................................................................13

*Omnicare Inc. v. Laborers District Council Construction Industry Pension Fund*,
   575 U.S. 175 (2015)..............................................................................................................11

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*,
   874 F. Supp. 2d 341 (S.D.N.Y. 2012)...................................................................................15

*Plumbers & Pipefitters Local Union No. 630 v. Arbitron Inc.*,
   741 F. Supp. 2d 474 (S.D.N.Y. 2010)..............................................................................17, 18

*Plumbers & Steamfitters Local v. Canadian Imperial Bank*,
   694 F. Supp. 2d 287 (S.D.N.Y. 2010)...................................................................................16

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)...................................................................................................9

*San Antonio Fire & Police Pen. Fund v. Dole Food Co.*,
   177 F. Supp. 3d 838 (D. Del. 2016)......................................................................................23

*Shemian v. Research in Motion*,
   2013 U.S. Dist. LEXIS 49699 (S.D.N.Y. Mar. 28, 2013) .......................................................9

*Simon DeBartolo Grp. v. Richard E. Jacobs Grp.*,
   186 F.3d 157 (2d Cir. 1999)..................................................................................................23

*Speakes v. Taro Pharm. Indus.*,
   2018 U.S. Dist. LEXIS 163281 (S.D.N.Y. Sept. 24, 2018)................................................9, 24

*Tanzanian Royalty Expl. Corp. v. Crede CG III*,
  2019 U.S. Dist. LEXIS 50310 (S.D.N.Y. Mar. 26, 2019) ......................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..........................................................................................................14, 19

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016) ....................................................................................................12

*Tracinda Corp. v. DaimlerChrysler*,
  197 F. Supp. 2d 42 (D. Del. 2002) ..........................................................................................24

*U.S. v. O'Hagan*,
  521 U.S. 642 (1997) .................................................................................................................25

*Villella v. Chem. & Mining Co. of Chile*,
  333 F.R.D. 39 (S.D.N.Y. 2019) ...............................................................................................21

*Vine v. Beneficial Fin. Co.*,
  374 F.2d 627 (2d Cir. 1967) .........................................................................................21, 22, 25

*Wilson v. Great Am. Indus.*,
  855 F.2d 987 (2d Cir. 1988) ..............................................................................................12, 23

## <u>Statutes and Rules</u>

Fed. R. Civ. P. 8(a) ......................................................................................................................7, 24

Fed. R. Civ. P. 9(b) ......................................................................................................................7, 24

Fed. R. Civ. P. 12(b)(6) ...................................................................................................................7

Private Securities Litigation Reform Act.....................................................................................3, 7

Securities Exchange Act of 1934, Section 10(b) ..........................................................7, 10, 13, 25

Securities Exchange Act of 1934, Section 20A ........................................................................23, 25

Securities Exchange Act of 1934, Section 20(a) ............................................................................20

viii

Lead Plaintiffs Altimeo Asset Management ("Altimeo") and ODS Capital LLC ("ODS" and, collectively with Altimeo, "Plaintiffs") respectfully submit this Memorandum of Law in opposition to Defendants Qihoo 360 Technology Co. Ltd. ("Qihoo" or the "Company") and Eric X. Chen's ("Chen," and, together with Qihoo, "Defendants") Motion to Dismiss the First Amended Class Action Complaint (the "Complaint," Dkt. No. 53 and "Motion," Dkt. No. 77).

## I.    INTRODUCTION

In 2016, Qihoo's co-founders and top executives, Hongyi Zhou ("Zhou") and Xiandong Qi ("Qi"), led a group of investors that paid $9.3 billion to take the Company private in the "Merger."  They then turned around and relisted the Company in the Chinese public markets for over $60 billion by merging Qihoo into a company that was already publicly listed in China. These buyers deliberately underpaid Qihoo's investors by tens of billions of dollars.

Many sources that were revealed after the Merger show that Zhou and Qi planned all along to relist Qihoo in China for multiple times the Merger price.  This evidence also shows that Zhou planned the Merger so that Qihoo's business opportunities in China would increase exponentially. Defendants misrepresented both of these facts in the Proxy Materials that they provided to Qihoo's securityholders when soliciting their votes on the Merger.  They warranted that the Buyer Group did not have any "current plans" or agreement to relist Qihoo in China; that the purpose of the Merger was so that Qihoo could be run as a private entity; and that the Merger price was fair to Qihoo's current shareholders.  All of these statements, among others, were false because the buyers planned to relist Qihoo in China for multiple times the Merger price and the Proxy Materials failed to account for Qihoo's vast business opportunities in China.

Marketing materials that Zhou used to solicit investors to participate in the Buyer Group secretly disclosed the plan to relist Qihoo in China at multiple times what the group would pay in the Merger. These documents also provided far better financial projections than what Defendants

disclosed to Qihoo's current shareholders in connection with the Merger.  In addition, a confidential witness from Qihoo's Public Relations department recalled a specific meeting in mid-2015 at which Qi exhorted the Company's employees not to disclose any details about the pending relisting plan, which was known throughout the department.  Zhou also admitted to the Chinese media after the Merger that he had been planning for years to take Qihoo private so that the Company would be able to provide internet security services to China's government and to fulfill his vision of "big security."

Qihoo has gone to great lengths in the Appraisal Action that is pending in the Cayman Islands to cover-up the Company's true value. The court in that action called Qihoo's behavior—including its claim that Zhou (one of China's leading technology CEOs) does not use a computer and its denying the existence of basic financial documents that it actually possessed—"odd" and "unfortunate," and concluded that the petitioners are likely to obtain a substantial recovery.

In addition to having knowledge of these facts, Zhou's and Qi's motive to reap billions of dollars in personal profit by underpaying for the Company is enough by itself to establish their scienter, which is imputed to Qihoo by virtue of their roles as its top executives and the leaders of the Buyer Group.  Defendant Chen—the Chairman of the Special Committee that was tasked with representing Qihoo's shareholders in the Merger—was also aware of or recklessly turned a blind eye to the Buyer Group's relisting plan and the Company's true financial condition.

Defendants' main response is to argue that the relisting plan was only speculative at the time of the Merger. That argument is belied by the abundant evidence showing that the Buyer Group had a firm plan to relist Qihoo in China for multiple times the Merger price.  It also improperly asks the Court to draw factual inferences in Defendants' favor.  Finally, this contention is irrelevant because Defendants still represented that no relisting plan existed.

2

## II.    STATEMENT OF FACTS

### A.    Zhou and Qi Led the Buyer Group in Taking Qihoo Private

Qihoo describes itself as one of the leading internet companies in China, with a focus on internet security. ¶¶ 34-38.  In 2016, Defendants Zhou and Qi, Qihoo's co-founders, its CEO and President (respectively), and its two largest shareholders, led a group of investors that paid approximately $9.3 billion to take the Company private (the "Merger"). ¶¶ 22-23, 62-63.[1] Defendant Chen was a Qihoo Director since 2014 and the Chairman of the Special Committee that advised Qihoo to approve the Merger.  ¶¶ 24, 26, 44, 269-70.[2]  Zhou initiated the Merger in May 2015 at a price that was over 36% below the Company's share price just 14 months earlier. ¶¶ 41-42; (Grunfeld Decl. in Support of Plaintiffs' Opposition, Ex. 1 (1/11/16 Proxy) at 45, 61).

Zhou and Qi together owned approximately 25.4% of Qihoo's shares at the March 30, 2016 shareholder vote on the Merger. ¶ 83 n.8. They increased their substantial stakes in Qihoo following the Merger.  ¶¶ 62-64.  After the Merger, the Buyer Group, led by Zhou and Qi, proceeded with a "backdoor listing" by merging Qihoo into SJEC, an elevator company that was already listed on the Shanghai Stock Exchange, so that Qihoo would be relisted in the Chinese public market. ¶¶ 95-100. Immediately upon its relisting on February 28, 2019, Qihoo had a market capitalization of over $60 billion, as compared to just $9.3 billion in the Merger.  ¶ 100.

### B.    Defendants Planned All Along to Relist Qihoo in China After the Merger

A plethora of information that was revealed after the Merger shows that the Buyer Group

---

[1] ¶ _ references are to paragraphs of the Complaint.  Defendants Zhou and Qi have not yet been served but have Hague Requests pending. (Dkt. No. 75)

[2] The number of times that Plaintiffs have served as lead plaintiffs in the last three years, which Defendants note (MTD at 4), is irrelevant at this stage.  Defendants also do not have standing to challenge lead plaintiffs' qualifications. *In re Baan Co. Sec. Litig.*, 271 F. Supp. 2d 3, 8 n.5 (D.D.C. 2002). In addition, Plaintiffs' combined—as opposed to individual—appointments are irrelevant, and the PSLRA provision at issue is "routinely waived" for "qualified institutional investors," as opposed to private individuals. *Nakamura v. BRF S.A.*, 2018 U.S. Dist. LEXIS 110187, at *13 (S.D.N.Y. July 2, 2018) (citation omitted).

planned all along to relist Qihoo in the Chinese public markets after the Merger. The *Financial Times* reported on February 28, 2017 that specific "[m]arketing materials" that were used to solicit investors to participate in the Buyer Group—which was already formed when the Merger was announced at the start of the Class Period—promised that they would multiply their investment "as high as 5 [times]" when Qihoo would be relisted in China. ¶ 115. Other sources confirm that the Buyer Group had a documented plan to relist Qihoo. ¶¶ 110, 113.

In addition, a confidential witness that worked in Qihoo's Public Relations department from 2014 through 2017 ("CW 1") recalls a meeting that took place in mid-2015 at which Defendant Qi explicitly warned attendees not to disclose any information about the planned relisting. ¶ 135. CW 1 reported that by the time of this meeting, everyone in Qihoo's Public Relations department was aware of the plan to relist Qihoo in China following the Merger and that a senior employee in the Public Relations department confirmed the plan. ¶¶ 134-36.[3]

Defendant Zhou admitted in interviews with the Chinese media after the Merger that he took Qihoo private so that it would have enhanced business opportunities once it was no longer listed on a U.S. stock exchange. That would allow Qihoo to play a key role in providing internet security "solutions for many sensitive [Chinese] organizations including the government." ¶ 124. Zhou admitted in November 2017 that *years earlier*, he had multiple conversations with Chinese government officials who explained that "[i]f Qihoo 360 were a foreign company, it couldn't receive the necessary qualifications. So we returned to China to play a more important role in network security" and fulfill his vision of "big security." ¶¶ 125, 128; *see also* ¶¶ 118, 127.

---

[3] Defendants misleadingly describe Qihoo's relisting as occurring "19 months after it went private." (MTD at 9). That ignores the fact that the relisting was announced nearly four months before it became effective. ¶¶ 96-100. Moreover, the time between when the Merger closed on July 15, 2016 and when the relisting was announced on November 2, 2017 is the amount of time that investors in the Merger were secretly told that the relisting would take (¶ 93), is how long it typically takes to reach agreement on a backdoor listing (¶¶ 106-08), and was necessary so that the Company could prepare for its backdoor listing (¶ 109).

4

Because Defendants misrepresented the true nature of the Merger, only a small portion of shareholders exercised their appraisal rights under Cayman Islands law. ¶¶ 83, 138. The information that has come out in that action (the "Appraisal Action") further shows Defendants' efforts to hide Qihoo's true value.  Qihoo claimed that, because of purported "eye issues," Zhou—the CEO of the one of the leading internet companies in China—did not use a computer since he founded the Company in 2006.  ¶ 150.  Qihoo also claimed that regular financial reports and due diligence materials did not exist, even though it had those exact materials. ¶¶ 142-47. The Cayman Islands court found Qihoo's positions to be "unfortunate, (even peculiar)," "odd," and "quite incredible." ¶¶ 148-51.  It also found it telling that Qihoo was willing to give $92 million—over five times the price of the dissenters' shares in the Merger—as a security deposit and concluded that "[o]n any view the Dissenters . . . will receive . . . a substantial sum as fair value."  ¶¶ 140-41.  Defendants call their egregious behavior in the Appraisal Action mere "litigation tactics."  (Defs. Memo of Law in Supp. of Mot. to Dismiss (Dkt. No. 78, "MTD") at 21).  This rings hollow and only raises the question of what "tactics" they are employing here.

### C.    Defendants' False and Misleading Statements About the Merger

Defendants made several types of false and misleading statements in the Proxy Materials for the Merger—which all Defendants signed—to convince Qihoo's ADS holders to vote for the Merger at a price that was far below the Company's true value.  ¶¶ 159-67, 242-46.

***Defendants misrepresented the Buyer Group's plans for Qihoo after the Merger.*** Defendants made many misrepresentations concerning the Buyer Group's plans for Qihoo following the Merger that failed to disclose its plan to relist the Company on the Chinese stock market.  Defendants firmly warranted that "the Buyer Group ***does not have any current plans, proposals or negotiations*** that relate to or would result in an extraordinary corporate transaction involving the Company's corporate structure, business, or management, such as a merger,

5

reorganization, liquidation, relocation of any material operations, or sale or transfer of a material amount of the Company's assets." ¶¶ 72, 159, 170 (emphasis added); *see also* ¶¶ 174, 176. Defendants even went so far as to falsely warrant that there were no "undisclosed agreements or arrangements" among the Buyer Group. ¶ 178. Defendants also assured that Qihoo "will continue its operations as a privately held company." ¶ 168; *see also* ¶ 172. And they falsely stated that there was "no viable alternative" to the Merger. ¶¶ 73, 159, 181, 183, 185, 235-36.

*Defendants misrepresented the reasons for the Merger.* Defendants represented that the Merger made sense for both Qihoo's ADS holders and the Buyer Group because Qihoo would fare better as a private company in light of difficulties that the Company faced in China—including "increased competition" in the internet security industry and a "recent economic slowdown in China"—and the ability to make long term investments as a private entity. ¶¶ 75, 159, 218-26, 235-41. These reasons were false because the Buyer Group actually conducted the Merger so that it could realize far greater value from the Company's increased business in China and by relisting Qihoo on a Chinese stock exchange. ¶¶ 130-32, 159(d). As the Merger progressed, the SEC questioned the reasons for the Merger. ¶¶ 234-42. Rather than disclose the Buyer Group's true plans, Defendants responded to the SEC by giving false reasons concerning market factors and the desire to run Qihoo as a private company. ¶¶ 161, 166, 233, 243, 245.

*Defendants falsely described the Merger price as "fair."* Defendants' descriptions of the Merger price as "fair" to Qihoo's ADS holders were false because they were based on flawed assumptions and baseless financial projections, as well as J.P. Morgan's fairness opinion that was based on that false information. ¶¶ 82, 130-33, 154-58, 159(c), 187-217, 239-41.

### D.      Zhou and Qi Reaped Enormous Profits From the Merger

Qihoo was worth far more than what Defendants represented in the Merger for several reasons. Technology companies were valued far higher in the Chinese public markets than in the

6

United States. ¶ 152. In addition, Defendants misrepresented Qihoo's true business opportunities in China. This, in turn, rendered inaccurate the assumptions and financial projections that they used to value the Company in the Merger. ¶¶ 115, 118, 124-28, 153-58. These misstatements allowed the buyers to pay only $9.3 billion for Qihoo and to relist its main business for over $60 billion. Zhou alone increased his stake from $1.6 billion to over $13.6 billion, making him the 12th-richest person in China. ¶¶ 101, 105, 260-61; *see also* ¶¶ 64-65.

## III.    ARGUMENT

The elements of a claim under Section 10(b) and Rule 10b-5 are: (1) a material misrepresentation or omission; (2) scienter; (3) the false statement being in connection with a purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014). When reviewing a motion to dismiss under Rule 12(b)(6), the court must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014). A complaint must allege "enough facts to state a claim . . . that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 9(b) and the PSLRA "do not require the pleading of detailed evidentiary matter in securities litigation." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001). Instead, a plaintiff is required to specify the fraudulent statements with specificity "and explain why [they] were fraudulent." *Muller-Paisner v. TIAA*, 289 F. App'x 461, 463 (2d Cir. 2008).

### A.    <u>The Complaint Adequately Alleges False and Misleading Statements</u>

1. <u>Defendants' Statements Concerning the Buyer Group's Plans for Qihoo After the Merger Were Materially False and Misleading</u>

Defendants misrepresented their plans for Qihoo following the Merger. The law is clear that a defendant's statement that it is not planning a certain course of action is false when the

defendant is already planning to do exactly that.  For example, in *Buxbaum v. Deutsche Bank, A.G.*, 2000 U.S. Dist. LEXIS 5838 (S.D.N.Y. Mar. 6, 2000), the court denied defendants' motion to dismiss because "takeover talks were well under way by October 25, 1998," when Deutsche Bank's CEO "falsely and knowingly denied [their] existence."  *Id.* at *51; *see also In re Merrill Lynch Auction Rate Sec. Litig.*, 2011 U.S. Dist. LEXIS 35363, at *11, 26 (S.D.N.Y. Mar. 29, 2011) (holding statements touting ARS market were false in light of the fact that defendants "*contemplated* ending their [market] intervention" (emphasis added)).

Defendants told investors that the Buyer Group did "not have any current plans, proposals or negotiations" to engage in any transaction after the Merger that would materially change the Company's structure. ¶ 170. They also represented that Qihoo would remain a private company; that there were no "undisclosed agreements or arrangements" among the Buyer Group; and that there were "no viable alternative[s]" to the Merger.  (*See supra* at 5-6). These statements were plainly false because when Defendants gave these assurances, the Buyer Group (including Zhou and Qi) already planned—and agreed and was negotiating—to relist Qihoo in China. (*Id.*).[4]

Defendants respond that they did not misrepresent the relisting plan because they disclosed that "subsequent to the" Merger, the Company "may propose or develop plans and proposals, . . . including the possibility of relisting the Surviving Company or a substantial part of its business on another internationally recognized stock exchange."  (MTD at 8; ¶ 170).  This does not shield Defendants from liability because it warned only that the Buyer Group "***may*** propose or develop" relisting plans when, in fact, the Buyer Group *already* planned to do so.  *See*

---

[4] Defendants grossly mischaracterize Plaintiffs' allegations as "puzzle pleading." (MTD at 7 n.3). The Complaint satisfies the pleading standard by identifying which Defendant made each misstatement at issue, when and where it was made, and the reasons why each one is false and misleading. (Complaint § V); *see In re NTL, Inc. Sec. Litig.*, 347 F. Supp. 2d 15, 22-23 & n.28 (S.D.N.Y. 2004) (approving of complaints that "specifically identify the date, publication and speaker" of each statement and explain falsity by "refer[ring] back to earlier paragraphs"); *In re Winstar Communs.*, 2006 U.S. Dist. LEXIS 7618, at *28 n.8 (S.D.N.Y. Feb. 24, 2006).

*Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 144 (2d Cir. 2010) (holding safe-harbor does not apply when risk disclosures "fail[] to disclose that the risk has [already] transpired" (quoting *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004)); *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 193 (S.D.N.Y. 2010) (holding "risk disclosures will not insulate Defendants from liability where the risk allegedly disclosed has already occurred").[5]

For this same reason, Defendants are wrong that their statements about plans for Qihoo after the Merger are forward-looking statements that are protected by the "bespeaks caution" doctrine. (MTD at 10-11). First, Defendants' statements about "*current* plans" (¶¶ 72, 170 (emphasis added))—and other statements about their plans at the time of the Merger—are not forward-looking because they are statements of "present intentions as to future operations[]," which are statements of "present or historical fact." *MF Global*, 620 F.3d at 143-44. Second, these statements are not protected even if they are forward-looking because they were not accompanied by "meaningful cautionary language." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 247 (2d Cir. 2016) ("[v]ague," "boilerplate" warnings do not suffice). None of the purportedly cautionary language that Defendants identify (MTD at 11) disclosed the relisting plan.[6]

In addition, Defendants raise a red herring by arguing that they do not have "an affirmative duty to disclose any and all material information." (MTD at 8). That is not what

---

[5] Defendants are also wrong that the relisting plan was disclosed in news articles prior to the Merger. (MTD at 10 n.4). These articles contained just rumored reports in Chinese publications that Defendants forcefully denied in the Proxy Materials. ¶ 111. *See Speakes v. Taro Pharm. Indus.*, 2018 U.S. Dist. LEXIS 163281, at *29 (S.D.N.Y. Sept. 24, 2018) (industry-wide investigation did not reveal the fraud because "market was unaware of the extent of Taro's *specific* involvement in [the] conspiracy"); (*infra* at 24 n.17). The cases that Defendants cite dealt with situations where defendants disclosed the exact information at issue. (MTD at 8 (citing *Shemian v. Research in Motion*, 2013 U.S. Dist. LEXIS 49699, at *59 (S.D.N.Y. Mar. 28, 2013) (defendants disclosed that product was "Wi-Fi only"); *In re KeySpan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 376 (E.D.N.Y. 2003) (company disclosed regulatory effect of merger)).

[6] The cases that Defendants cite dealt with vague statements that were entirely forward-looking and that had far more specific cautionary language. (*See* MTD at 10 (citing *In re Nokia Corp. Sec. Litig.*, 1998 U.S. Dist. LEXIS 4100, at *17 (S.D.N.Y. Mar. 31, 1998) (addressing statement that positive profit trend "is projected to continue"); *Rombach*, 355 F.3d at 173 (defendants warned that it was "more than likely they [would] continue to underperform in the near-term")).

Plaintiffs allege. Rather, once Defendants chose to speak about the plans for Qihoo after the Merger, they had an obligation under Section 10(b) to "tell the whole truth," even if they had no "independent duty to disclose [such] information." *JinkoSolar*, 761 F.3d at 250; *see also Caiola v. Citibank, N.A., N.Y.*, 295 F.3d 312, 330-31 (2d Cir. 2002) (holding that "[w]hether Citibank had [a duty to disclose] in the first instance is irrelevant" because "[o]nce Citibank chose to discuss its hedging strategy, it had a duty to be both accurate and complete"); *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 757 F. Supp. 2d 260, 297 (S.D.N.Y. 2010) (same as to bonus payments). The Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), addressed this exact situation, holding that even if there is no independent duty to disclose merger negotiations, a defendant is not permitted to falsely deny their existence. *Id.* at 235-39.[7]

Defendants similarly invoke the wrong legal standard when they argue repeatedly, under multiple guises, that the relisting was not a "guarantee" or "a foregone conclusion at the time of the Merger." (MTD at 9; *id.* at 2, 14-15, 16 n.10, 19-20 & n.12, 24). This argument misses the point. Defendants' representations denying and contradicting any plan to relist were plainly false regardless of whether the plan was absolutely guaranteed to succeed.[8] Questions concerning the plan's significance or stage of development are issues of fact that cannot be decided at this stage. *Basic*, 485 U.S. at 239 (holding that "[w]hether merger discussions in any particular case are material . . . depends on the facts"); *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162-63 (2d Cir. 2000) (holding the materiality of "negotiations depends on the [case-]specific facts"); *Buxbaum*, 2000 U.S. Dist. LEXIS 5838, at *47-48 (same). Moreover, the evidence discussed above (*supra*

---

[7] The principal case that Defendants cite, *Lydon v. Estate of Winston*, 715 F. Supp. 600 (S.D.N.Y. 1989), highlights their error. The plaintiff there alleged only that the defendant failed to "advise that it planned to resell" stock at a higher price, but did not allege any affirmative statement denying the plan's existence or that hidden "negotiations were underway." *Id.* at 601.

[8] Defendants' argument that the *specific value* that Qihoo would fetch in the relisting was not guaranteed is even farther afield because that relates to loss causation. (*See infra* at 23-24).

10

at 3-5) shows that the Buyer Group firmly planned, agreed, or negotiated before the Merger to relist Qihoo in China.  Defendants' contrary interpretation strains credulity and improperly asks the Court to interpret facts in their favor.  *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 125 (S.D.N.Y. 2013) (holding "Defendants conflate pleading and proof").

### 2.    Defendants' Fairness Statements Were Materially False and Misleading

Defendants' many statements that the Merger price was "fair" to Qihoo's ADS holders were false and misleading because they did not account for Qihoo's increased business opportunities in China, its true financial projections that were disclosed to the Buyer Group, or the buyers' plan to relist Qihoo's main business on the Chinese stock market.  (*See supra* at 6).

Defendants argue that their statements about the fairness of the Merger are inactionable opinion statements under *Omnicare Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015).  (MTD at 12-15).  Even if these are statements of opinion, they are false under *Omnicare* because 1 – Defendants did not honestly believe these statements since they knew that the Buyer Group planned to relist Qihoo for over five times the Merger price and 2 – they conflicted with Qihoo's true valuation and financial projections that Defendants failed to disclose.  *See Omnicare*, 575 U.S. at 183-85, 188-92 (holding opinions are false when not honestly held, when they conflict with a reasonable investor's understanding, or when they do not "fairly align[]" with the issuer's information); *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 380-81 (S.D.N.Y. 2015) (holding awareness of contrary information suffices "to infer that the Company disbelieved" its statements); *In re Lehman Bros. Sec. & ERISA Litig.*, 131 F. Supp. 3d 241, 254, 258-59 (S.D.N.Y. 2015) (a valuation is misleading if it is not supported by "relevant data"); *In re MF Global Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 314-15 (S.D.N.Y. 2013) (defendants did not honestly believe statements that they knew were not sufficiently supported by "the positive evidence on which they relied").

11

The statement in the Proxy Materials that Defendants point to saying that their financial projections were not "guarantees" of future performance (*see* MTD at 14-15) does not absolve them of disclosing one set of projections to Qihoo's ADS holders and a different, more favorable set based on Qihoo's true business opportunities to the investors that bought Qihoo in the Merger. (*See supra* at 4).[9]  The law is clear that when proxy materials misrepresent the basis for an affirmation of fairness, they support a claim under the Exchange Act.  *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999) (holding a merger recommendation is actionable when based on analysis that fails to account for known financial situation); *Wilson v. Great Am. Indus.*, 855 F.2d 987, 996-97 (2d Cir. 1988) (holding that "at the time of the merger, Chenango's stock was worth considerably more than the value placed upon it in the proxy statement"); *Bricklayers & Masons Local Union No. 5 v. Transocean Ltd.*, 866 F. Supp. 2d 223, 244 (S.D.N.Y. 2012) (fairness statement relied on false and misleading information); *In re Livent Sec. Litig.*, 148 F. Supp. 2d 331, 346, 366 (S.D.N.Y. 2001) ("In rendering the Fairness Opinion . . . , [defendant] did not disclose its own secret side agreement[.]"); *In re Trump Hotels S'holder Deriv. Litig.*, 2000 U.S. Dist. LEXIS 13550, at *43-48 (S.D.N.Y. Sept. 21, 2000) (defendants should have known information that "formed the basis of the Fairness Opinion, would not take place"); *Freedman v. Value Health*, 958 F. Supp. 745, 752-53, 758-59 (D. Conn. 1997).[10]  Affirmations

---

[9] The *Financial Times* article discussed above plainly rebuts Defendants' argument that the Complaint does not adequately plead that they "disclosed more positive financial projections privately to the Buyer Group." (MTD at 12 n.6).  That article describes specific "marketing materials . . . seen by the FT . . . contain[ing] ambitious estimates of future net income and other" metrics that "were not nearly [as] bright" as what Qihoo disclosed to its shareholders. ¶ 115.

[10] The Court in *In re Shanda Games Ltd. Sec. Litig.*, 2019 U.S. Dist. LEXIS 171592, at *19 (S.D.N.Y. Sept. 30, 2019), which Defendants cite (MTD at 13), did not address a situation where the defendants were alleged to have had a secret, conflicting set of projections that the buyer group used as a basis for its relisting plan.  Defendants' other cases are also not on point because they dealt with puffery and did not address misrepresentations of a company's business opportunities. (*See* MTD at 12-15 (citing *Tongue v. Sanofi*, 816 F.3d 199, 207 n.8, 211 (2d Cir. 2016) (defendants' projections were "consistent with the FDA's" requirements); *Martin v. Quartermain*, 732 F. App'x 37, 41 (2d Cir. 2018) (defendants relied on "'unbiased' . . . independent expert"); *Altayyar v. Etsy*, 242 F. Supp. 3d 161, 173-74 (E.D.N.Y. 2017) ("values

12

of fairness are particularly misleading when they fail to account for a company's future plans, as Defendants failed to do here. *Laborers' Local #231 Pension Fund v. Cowan*, 2018 U.S. Dist. LEXIS 110545, at \*29 (D. Del. July 2, 2018) (fairness statement misleadingly relied on projections that "did not account for acquisition based growth"); *NECA-IBEW Pension Tr. Fund v. Precision Castparts*, 2017 U.S. Dist. LEXIS 165139, at \*22 (D. Or. Oct. 3, 2017) (same).

> 3.  Defendants' Reasons for the Merger Were Materially False and Misleading

Defendants falsely claimed that the Buyer Group sought to take Qihoo private, and that the Merger was in the best interests of Qihoo's shareholders, because the Company would be better served as a private entity in light of the difficulties that it faced in China. (*See supra* at 6). Defendants notably do not even address this category of misstatements. (*See* MTD Section I.A).

The law is clear that providing false—or even incomplete—reasons for one's conduct is actionable under Section 10(b). *See JinkoSolar*, 761 F.3d at 250 (holding "once a company speaks on an issue or topic, there is a duty to tell the whole truth"); *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1148-49 (10th Cir. 2015) (holding "[t]he existence of multiple explanations is what made [the] statement misleading"); *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 159-60 (S.D.N.Y. 2008) (holding a defendant's statements must be "truthful, accurate, and complete"). Defendants' stated reasons for the Merger were patently false and misleading because they were not the Buyer Group's or the Company's actual reasons for the Merger.

> **B.      The Complaint Pleads a Strong Inference of Scienter**

Scienter may be pled either by alleging facts (a) showing "defendants had both motive and opportunity to commit fraud" or (b) "that constitute strong circumstantial evidence of

---

statements" were puffery); *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 577, 589 (S.D.N.Y. 2016) (plaintiffs did not have "any reason to expect" they would not receive FDA approval); *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 501 (3d Cir. 2016) (plaintiff did not allege that a "different set of projections" existed); *In re Merge Healthcare Inc. Stockholders Litig.*, 2017 Del. Ch. LEXIS 17, at \*37 (Jan. 30, 2017) (a "hypothetical" transaction that was not actually planned did not need to be disclosed))).

conscious misbehavior or recklessness." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). Recklessness exists if one "knew facts or had access to information suggesting that their public statements were not accurate." *Emps.' Ret. Sys. of Gov't of V.I. v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015). The test is "whether *all* of the facts alleged, taken collectively" support a strong inference of scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-24 (2007). These allegations need not be "of the 'smoking-gun' genre"; they must be only "cogent and at least as compelling as any opposing inference." *Id.*  A tie therefore goes to the plaintiff. *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin*, 875 F. Supp. 2d 359, 372 (S.D.N.Y. 2012).

### 1.    The Complaint Adequately Pleads Motive and Opportunity

Zhou and Qi—whose scienter is imputed to Qihoo (*see infra* at 15-16)—had an exceedingly strong motive to mislead Qihoo's ADS holders.  A motive to commit fraud exists when a defendant has a financial incentive to make false and misleading statements to investors. *See Blank v. TriPoint Glob. Equities, LLC*, 338 F. Supp. 3d 194, 214-15 (S.D.N.Y. 2018) (holding that incentive to obtain commissions constitutes motive).  A Court in this district dealing with the same situation as here recently held that the company involved in a merger "had motive and opportunity to commit fraud" because its CEO and Director, "as members of Buyer Group, had the motive and opportunity to secure a low transaction price and that their scienter can be imputed to Defendant Shanda." *Shanda*, 2019 U.S. Dist. LEXIS 171592, at *21-22.

Zhou reaped over \$12 billion from the Merger and relisting.  ¶¶ 260-61.  Qi also received billions of dollars in profits.  ¶ 263.  Zhou and Qi also had the opportunity to commit fraud because they controlled Qihoo, were its largest shareholders, and led the Merger process. ¶¶ 62, 96-98, 258-60, 262. In response, Defendants rehash their argument concerning the existence of the relisting plan (*see supra* at 7-11), and argue perfunctorily that "general allegations that the Buyer Group intended to profit" do not establish motive.  (MTD at 16 n.10).  The law is clear,

14

however, that when defendants buy a company based on false information that allows them to substantially underpay, they have a motive to commit fraud. *Shanda*, 2019 U.S. Dist. LEXIS 171592, at *21-22; *Buxbaum*, 2000 U.S. Dist. LEXIS 5838, at *36, 50 (holding the "buyer of a company, if he thinks he can save money by lying[,] has all the motive and the opportunity"); *Buxbaum*, 196 F. Supp. 2d 367, 376 (S.D.N.Y. 2002) (denying summary judgment based on motive); *In re MCI Worldcom Sec. Litig.*, 93 F. Supp. 2d 276, 283-85 (E.D.N.Y. 2000).

This unusually strong motive by itself adequately alleges scienter. *See Ganino*, 228 F.3d at 170 ("Complaint need only plead scienter by alleging either motive and opportunity, *or* conscious or reckless misbehavior" (emphasis added)); *Shanda*, 2019 U.S. Dist. LEXIS 171592, at *22 (finding scienter based on motive alone); *Blank*, 338 F. Supp. 3d at 215. Defendants' conscious misbehavior and recklessness thus serve as an independent basis for scienter.

2.    The Complaint Adequately Pleads Conscious Misbehavior and Recklessness

A corporation's scienter is adequately alleged where "high-level employees" knew of the facts making statements misleading. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177-78 (2d Cir. 2015). The person "whose knowledge is imputed to the corporation [need not] also 'make' the material misstatement." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 372 (S.D.N.Y. 2012). In addition, "the scienter of 'management level' employees can be attributed to the corporation." *In re VEON Ltd. Sec. Litig.*, 2017 U.S. Dist. LEXIS 152240, at *31 n.3 (S.D.N.Y. Sept. 19, 2017).

Defendants do not dispute that Zhou's and Qi's scienter is attributable to Qihoo by virtue of their roles as its top executives, Directors, and leaders of the Buyer Group. (MTD at 21); *see Shanda*, 2019 U.S. Dist. LEXIS 171592, at *22 (imputing scienter of CEO and Director to the company because their "seniority," "respective responsibilities," and "role as buyers" made them "management level employees"). In addition, Chen's scienter is attributable to Qihoo because he

15

signed the Proxy Materials on its behalf.  ¶¶ 166, 233, 243-45.

a)      *The Complaint Adequately Pleads That the Individual Defendants Acted With Conscious Misbehavior and Recklessness*

The Complaint pleads abundant evidence showing that Zhou, Qi, and Chen each knew of or were reckless as to the Buyer Group's relisting plan and the Company's true financial condition.  News articles in reputable publications discuss specific "marketing materials" and a documented agreement among the Buyer Group laying out the plan to relist Qihoo in China at multiple times the Merger price.  (*See supra* 4).  Zhou was aware of this plan because he discussed his role leading the Merger, including his preference for a specific type of investor to participate in the Buyer Group.  ¶¶ 123, 126.  He also admitted after the Merger that he had a years'-long plan to return Qihoo to China so that it could capitalize on increased opportunities in the internet security business and fulfill his vision of "big security."  (*See supra* at 4).

Defendants incorrectly argue that courts reject "the use of newspapers to plead scienter." (MTD at 19). Courts regularly find that news articles—which are a basic source of information—that reveal a defendant's prior knowledge support scienter.  *See Cohen v. Kitov Pharm. Holds., Ltd.*, 2018 U.S. Dist. LEXIS 45676, at *24 (S.D.N.Y. Mar. 20, 2018) (scienter was supported by an article revealing defendant's knowledge); *MCI Worldcom*, 93 F. Supp. 2d at 285. The articles at issue here are particularly compelling because they describe Zhou's own statements and documents that the authors reviewed.  ¶¶ 106, 110, 113, 115, 118-28.[11]  These articles do not allege "fraud by hindsight" (MTD at 20 n.12), because they describe events that took place prior to the Merger and also indicate what Defendants knew earlier in time. Excluding

---

[11] The cases that Defendants cite hold that news articles may support a plaintiff's allegations, but the particular articles at issue did not contain sufficiently specific information.  (MTD at 19 (citing *Plumbers & Steamfitters Local v. Canadian Imperial Bank*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) (holding "a plaintiff may use" news articles with "particularized facts"); *Hershfang v. Citicorp.*, 767 F. Supp. 1251, 1255-56 (S.D.N.Y. 1991) (holding articles containing "analysts' opinions" could not "reasonably be inferred to have originated with defendants")).

16

this evidence would "reward [defendants] for their successful concealment of their wrongdoing." *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 181 (S.D.N.Y. 2003); *see also In re Scholastic Corp.*, 252 F.3d at 72 (post-class period evidence  may "confirm what a defendant should have known"); *Plumbers & Pipefitters Local Union No. 630 v. Arbitron Inc.*, 741 F. Supp. 2d 474, 491 (S.D.N.Y. 2010) (CEO's post-class period admissions support scienter).

In addition, CW 1 establishes a strong inference of Qi's scienter.  CW 1, a Public Relations employee, described a specific meeting that CW 1 attended where Qi expressly warned employees not to reveal the relisting plan publicly.  (*See supra* at 4).  This identifies CW 1 "with sufficient particularity to support the probability that" this individual "would possess the information alleged." *Novak*, 216 F.3d at 314.  Indeed, Defendants do not deny that this meeting took place.[12]  CW 1 also cites other evidence corroborating the relisting plan.  ¶¶ 135-37.

Because the law is not on their side, Defendants try to spin the facts in their favor by claiming that Qi's admonition shows that "any purported 'plan' was speculative." (MTD at 19). That is not what CW 1 described.  The clear import of Qi's speech—which is *at least as strong* (and far stronger than) Defendants' inference—is that Qi sought to keep the relisting secret. Moreover, the plan's precise stage of development is irrelevant, as explained above. (*Supra* at 10-11).  Zhou also discussed the Merger with Qi at the start of the transaction.  ¶¶ 41-42, 266.

Qihoo's absurd position in the Appraisal Action that Zhou never used a computer because of "eye issues" also shows his scienter.  ¶ 150.  *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 648, 658-59 (S.D.N.Y. 2007) (holding "suspicious" circumstances support scienter).  Furthermore, Zhou's vehement denials to Chinese media of the relisting plan further

---

[12] The cases that Defendants cite dealt with witnesses that, unlike here, did not know information contradicting the defendants' public statements and that did not attend meetings with defendants. (MTD at 17-18 (citing *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 580-81 (S.D.N.Y. 2014) (CWs did not show "that the company was not doing" what it said or "what specific contradictory information" defendants had); *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 221 (S.D.N.Y. 2008) (no allegation that CW "participate[d] in discussions with" the executive))).

17

support a strong inference of scienter.  ¶¶ 114, 116, 119-22; *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 U.S. Dist. LEXIS 199809, at \*48 (S.D.N.Y. Nov. 26, 2018) (holding defendants' attempts to placate concerns raised by analysts supported an inference of scienter); *Fresno Cty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 552-53 (S.D.N.Y. 2017) (same); *Arbitron, Inc.*, 741 F. Supp. 2d at 491 (finding recklessness in CEO "speaking so positively"). Similarly, the fact that all of the Defendants guaranteed the accuracy of their statements and that they complied with the securities laws precludes them from disavowing those statements.  ¶¶ 227-32.

The Complaint also pleads a strong inference of Defendant Chen's scienter because he was given free reign as Chairman of the Special Committee to consider all evidence and take any action necessary to assess the Merger on behalf of Qihoo's shareholders.  ¶ 270.  Chen participated in a December 9, 2015 meeting where Qihoo's management discussed their financial projections. ¶ 270. He also had access to all of the Company's and Buyer Group's information. *Id.* The Appraisal Action highlights the importance of the Special Committee's role—and documents—in determining Qihoo's fair value.  ¶¶ 146, 277.  These allegations support a strong inference that Chen knew or ignored the falsity of the Proxy Materials.  *See City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F. Supp. 2d 348, 361 (S.D.N.Y. 2006) (holding an "egregious refusal to see the obvious" supports scienter (quoting *Novak*, 216 F.3d at 308)); *Lewy v. Skypeople Fruit Juice*, 2012 U.S. Dist. LEXIS 128416, at \*47-48 (S.D.N.Y. Sept. 7, 2012) (holding the defendant "overlooked or ignored" contrary information).

b)    *The Individual Defendants' Roles Strongly Support Their Scienter*

A plaintiff may base scienter allegations "on the 'core operations doctrine,' which permits an inference that a company and its senior executives have knowledge of information concerning the 'core operations' of a business." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 U.S. Dist. LEXIS 171110, at \*72 (S.D.N.Y. Dec. 2, 2013); *Gauquie v. Albany Molecular*

18

*Research*, 2016 U.S. Dist. LEXIS 97295, at \*5 (E.D.N.Y. July 26, 2016) (core operations supported scienter as to issues at key laboratory); *In re Atlas Air Worldwide Holdings, Sec. Litig.*, 324 F. Supp. 2d 474, 490 (S.D.N.Y. 2004) (imputing knowledge from core operations).

Zhou's and Qi's roles in charge of Qihoo, the Buyer Group, and the relisting support a strong inference of scienter. (*See supra* at 3-4; ¶¶ 22-27, 41-42, 62-64, 98, 247-54, 258-60, 266, 270). The relisting plan was the whole reason that they were able to convince investors to participate in the Merger and to mortgage Qihoo's headquarters to complete the deal. ¶¶ 105-06, 110-15, 124. It is not only "virtually inconceivable," but actually impossible, that Zhou and Qi did not know about the plan. *Christine Asia Co. v. Ma*, 718 F. App'x 20, 23 (2d Cir. 2017) (holding it was "virtually inconceivable" that executives did not receive key business information). Chen—as the Director that was tasked with representing Qihoo's shareholders in the Merger—either knew about this plan or failed to see the obvious by ignoring the Buyer Group's documented plan and valuation of the Company.

### c) Other Executives' Scienter is Imputed to Qihoo

The Complaint alleges that Qihoo's CFO, Alex Zuoli Xu, was aware of its true valuation. Xu presented Qihoo's financial projections to the Special Committee as part of its due diligence on the Merger. ¶¶ 47, 270. He also advanced Qihoo's evasive strategy in the Appraisal Action. ¶ 143, 278. Xu also served as Qihoo's representative, including by signing its announcement of the Merger. ¶ 161. His awareness of the falsity of the Proxy Materials is attributable to the Company. *See Loreley*, 797 F.3d at 177-78; *VEON*, 2017 U.S. Dist. LEXIS 152240, at \*31 n.3.

### 3. A Holistic View Supports a Strong Inference of Scienter

The inference of scienter need only be "at least as compelling" as any non-culpable inference when assessed on a "holistic" basis. *Tellabs*, 551 U.S. at 324-26. A common-sense

19

review of the Complaint as a whole creates an inference that is at least as strong as Defendants' assertion that they did know about or ignore the relisting plan, the true reasons for the Merger, or Qihoo's actual value. *See In re GE Sec. Litig.*, 857 F. Supp. 2d 367, 394-98 (S.D.N.Y. 2012).

### C.    The Complaint Adequately Pleads Reliance

#### 1.    The Fraud-on-the-Market Presumption Applies

Defendants argue that "claims with respect to putative class members who received payments through the Merger" do not adequately allege reliance. (MTD at 22). Defendants thus concede that Plaintiffs' claims as to the sale of Qihoo securities during the Class Period and *before* the Merger are entitled to the fraud-on-the-market presumption of reliance. The Complaint alleges that both Plaintiffs sold Qihoo ADS during the Class Period (in addition to the securities that they sold in the Merger). ¶¶ 19-20; *see also* Dkt. No. 9, Exs. C-D. The fraud-on-the-market presumption indisputably applies to these transactions because they took place on the NYSE, which was the only market where Qihoo's ADS traded.  ¶¶ 308-11.

In addition, Defendants are wrong that the Qihoo securities that Plaintiffs sold in the Merger were not traded in an "efficient market."  (MTD at 22-23 (quoting *Shanda*)).[13]  This argument ignores the Supreme Court's ruling that "[t]he 'fundamental premise' underlying the [*Basic*] presumption is that an investor presumptively relies on a misrepresentation so long as it was reflected in the market price at the time of his transaction."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 278 (2014) ("*Halliburton II*").  Market efficiency is only an "indirect proxy for price impact," which is the basis for the presumption. *Id.* at 281; *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 U.S. Dist. LEXIS 114695, at *29 (S.D.N.Y. July 10, 2019) (same).

The fraud-on-the-market presumption applies because Plaintiffs can show directly that Defendants' misrepresentations impacted the price at which they sold their Qihoo securities in

---

[13] The court in *Shanda* did not address the arguments discussed in this section.

the Merger. Defendants touted the Merger by promoting the Merger price as a premium to Qihoo's recent trading price. ¶¶ 162, 213-16. They then supported that price through many misrepresentations in the Proxy Materials. If Defendants had disclosed the true plans for Qihoo or its true financial projections and business opportunities, they would have been forced to raise the Merger price to reflect Qihoo's true value. That, in turn, would have impacted the market price of Qihoo's ADS leading up to the Merger and the price at which Plaintiffs sold their securities in the Merger. That is the *sine qua non* of the *Basic* presumption. *Halliburton II*, 573 U.S. at 281. Plaintiffs therefore relied on the integrity of the price of Qihoo's ADS when they chose to sell their securities in the Merger rather than seek a higher price from the buyers, vote against the Merger, dissent and seek appraisal, or sell their shares during the Class Period. ¶¶ 87, 93, 310, 319-20; *In re Petrobras Sec. Litig.*, 862 F.3d 250, 279 (2d Cir. 2017) (affirming "reliance on the market price"); *Villella v. Chem. & Mining Co. of Chile*, 333 F.R.D. 39, 57 (S.D.N.Y. 2019) (same); *Gordon v. Sonar Capital Mgmt. LLC*, 2014 U.S. Dist. LEXIS 111543, at *9 (S.D.N.Y. July 31, 2014) (same as to trades "outside the market range").

Defendants have not offered any evidence that the market for Qihoo securities in the Merger was not efficient. At a minimum, the question of price impact raises factual issues that require expert evidence and a hearing. *See In re Goldman Sachs Grp., Inc.*, 2018 U.S. Dist. LEXIS 137414, at *6 (S.D.N.Y. Aug. 14, 2018); *Halliburton II*, 573 U.S. at 272 ("market efficiency is a matter of degree," and thus "a matter of proof" of the extent of price impact).

In addition, the reliance requirement is satisfied when a buyer obtains the ability to execute a merger through deceptive conduct. *Vine v. Beneficial Fin. Co.*, 374 F.2d 627, 635 (2d Cir. 1967). This "forced sale" doctrine applies when a plaintiff's "vote, sale of shares, or other action[,] was required" for a merger. *Grace v. Rosenstock*, 228 F.3d 40, 48-49 (2d Cir. 2000).

That was the case here, where approval of minority shareholders at the March 30, 2016, shareholder vote was required. ¶ 85. The "forced sale" doctrine is thus an independent basis for the proposed Class's reliance. This doctrine also rebuts Defendants' argument that Plaintiffs did not "sell" their ADS in the Merger.  (MTD at 22).  The exchange of shares in a merger is a "sale" because the shareholders "as a practical matter . . . become a party to a 'sale.'"  *Vine*, 374 F.2d at 634-35. This is an "exception to the classic purchase and sale definitions."  *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 398 F. Supp. 2d 244, 260 n.12 (S.D.N.Y. 2005).

The presumption of reliance also applies for the independent reason that what matters under *Basic* is that the plaintiff transacts in securities that are tied to securities that trade in an efficient market, not that the securities at issue themselves trade in an efficient market.  *See In re ForceField Energy Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 95614, at *13-14 (S.D.N.Y. July 22, 2015) (plaintiff "plausibly relied on the market[]" price in an off-market exchange). For example, the *Basic* presumption applies to privately negotiated transactions even if the price of the publicly traded stock was just "one of several factors taken into account" in the private transaction.  *Black v. Finantra Capital*, 418 F.3d 203, 205-06, 209-10 (2d Cir. 2005). Similarly, the presumption applies to options because investors rely on the integrity of the market price of the underlying stock even though the options are not traded in the same market. *McIntire v. China MediaExpress Holds.*, 38 F. Supp. 3d 415, 433 (S.D.N.Y. 2014).[14]  Plaintiffs are entitled to the *Basic* presumption because they chose based on the market price of Qihoo ADS during the Class Period to sell their securities in the Merger rather than take alternative action.

2.    The *Affiliated Ute* Presumption Applies

The *Affiliated Ute* presumption applies when a claim is predicated on a material omission

---

[14] *See also Tanzanian Royalty Expl. Corp. v. Crede CG III*, 2019 U.S. Dist. LEXIS 50310, at *31 (S.D.N.Y. Mar. 26, 2019) (applying presumption to warrants); *In re Sci.-Atlanta Sec. Litig.*, 571 F. Supp. 2d 1315, 1330 (N.D. Ga. 2007) (applying presumption to options).

22

that the defendant had an independent duty to disclose, even if affirmative misstatements are also alleged. *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 131 (1972); *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 48 (S.D.N.Y. 2013). Defendants argue that "Plaintiffs allege primarily affirmative misstatements." (MTD at 22-23). This ignores their independent duties under Cayman Islands law and Section 20A to disclose information about the relisting and Qihoo's financial condition. ¶¶ 293-94, 315, 327; *Simon DeBartolo Grp. v. Richard E. Jacobs Grp.*, 186 F.3d 157, 173 (2d Cir. 1999) (applying presumption to insider trading); *Davis v. Scottish Re Grp.*, 159 A.D. 3d 528, 529 (1st Dep't 2018) (describing Cayman duty to disclose).

### D.        The Complaint Adequately Pleads Loss Causation

Defendants argue that Plaintiffs have not adequately pled loss causation because they "must plead that the stock was inflated due to the alleged fraud and that disclosure . . . 'caused'" the "price to fall by a material amount." (MTD at 24). Defendants are plainly wrong as a matter of law. Courts regularly hold that plaintiffs adequately plead loss causation when defendants "systematically withheld positive information . . . with the express intention of artificially depressing the [stock] price." *Lewis v. Termeer*, 445 F. Supp. 2d 366, 371 (S.D.N.Y. 2006); *see also Frankel v. Am. Fin.*, 1980 U.S. Dist. LEXIS 10742, at *4-6 (E.D.N.Y. Mar. 19, 1980) (applying "economic loss" to "the defrauded seller situation"). That was the situation in *Basic*, where plaintiffs alleged they were injured by selling "shares at artificially depressed prices." 485 U.S. at 228, 245.[15] Moreover, the Second Circuit has held that plaintiffs may recover damages based on a claim that "at the time of the merger, [the] stock was worth considerably more than" what the proxy disclosed. *Wilson*, 855 F.2d at 996; *In re Livent*, 148 F. Supp. 2d at 366.[16]

---

[15] *See also San Antonio Fire & Police Pen. Fund v. Dole Food Co.*, 177 F. Supp. 3d 838, 839-40 (D. Del. 2016) (discussing recovery for "the sale of shares at an artificially depressed price"); *Levie v. Sears Roebuck & Co.*, 496 F. Supp. 2d 944, 948 (N.D. Ill. 2007) (same).

[16] The Supreme Court in *Dura* declined to address "a claim that a share's higher price is lower

Defendants are also wrong that Plaintiffs have not pled "[a]ny causal connection" between Defendants' misrepresentations and Plaintiffs' loss. (MTD at 24). "Allegations of loss causation are evaluated under [Rule 8(a)'s] notice pleading standard." *In re Fairway Grp. Holding Corp. Sec. Litig.*, 2015 U.S. Dist. LEXIS 5999, at *43 (S.D.N.Y. Jan. 20, 2015). But regardless of whether Rule 9(b) or Rule 8(a) applies, "the securities fraud plaintiff's burden is not a heavy one" and requires only "some indication of the loss and the causal connection." *Speakes*, 2018 U.S. Dist. LEXIS 163281, at *27-28 (quoting *Dura*, 544 U.S. at 347); *see also Bristol Myers*, 586 F. Supp. 2d at 166 (holding it is not necessary "to ascribe the actual amount of loss to one cause or another"). The Complaint easily satisfies this standard. Plaintiffs allege that Defendants misrepresented Qihoo's true value at the time of the Merger by misrepresenting 1 – the Buyer Group's plan to relist Qihoo at multiple times the Merger price and 2 – Qihoo's true business opportunities and financial projections. ¶¶ 152-58, 279.

In *Tracinda Corp. v. DaimlerChrysler*, 197 F. Supp. 2d 42 (D. Del. 2002), the court held that "had Defendants revealed the allegedly true nature of the [merger] as a take-over," then they may have paid "a higher acquisition premium." *Id.* at 68. Just as in *DaimlerChrysler*, where defendants "planned from the onset to mount a concealed take-over," *id.* at 53, Defendants here misrepresented what the Buyer Group planned to do with Qihoo after the Merger and that the buyers would have paid more based on their true plans. *See also Cowan*, 2018 U.S. Dist. LEXIS 110545, at *29; *Precision Castparts*, 2017 U.S. Dist. LEXIS 165139, at *22. Courts also regularly hold that misrepresenting information about a merger can be the basis for a securities fraud claim. *Basic*, 485 U.S. at 239; *Buxbaum*, 2000 U.S. Dist. LEXIS 5838, at *47-48, 51.[17]

---

than it would otherwise have been." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 343 (2005).

[17] The post-class period articles that the Complaint cites do not run afoul of the statute of limitations. (*See* MTD at 24 n. 16). The Complaint alleges many key facts that were revealed within two years before the initial complaint was filed, including the relisting announcement and

E.      **The Complaint Adequately Pleads a Claim Under Section 20A Against Qihoo**

Defendants argue that that Qihoo is not liable under Section 20A because the Complaint fails to plead a predicate violation of Section 10(b).  (MTD at 25).  The law is clear, however, that trading based on inside information violates Section 10(b) and may form the basis of a Section 20A claim.  *See U.S. v. O'Hagan*, 521 U.S. 642, 652 (1997) (holding insider trading violates Section 10(b)); *Gruber v. Gilbertson*, 2018 U.S. Dist. LEXIS 45677, at *52 (S.D.N.Y. Mar. 20, 2018) (trading based on inside information constitutes a predicate violation under Section 20A); *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 310 n.50 (S.D.N.Y. 2008) (same). But even if an additional violation is required, the Complaint adequately pleads that Defendants violated Section 10(b) for the reasons described above.

Defendants are also wrong that Qihoo did not "purchase[] shares" in the Merger.  (MTD at 25).  The Proxy Materials stated that "the Company" coordinated the procedures for Plaintiffs' exchange of ADS in the Merger.  ¶ 288.  Moreover, under the "forced seller" doctrine, the company in a merger is a "purchaser" of shares.  *Vine*, 374 F.2d at 634-35 (holding investors should not have their rights obstructed by a merger's "needless formalit[ies]"); (*supra* at 22).[18]

IV.   **CONCLUSION**

Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety for the reasons described above.[19]

---

Zhou's statements that were reported in November 2017.  ¶¶ 96-101, 116, 124-29, 132-37, 142-51; *Eton Park Fund, L.P. v. Am. Realty Capital Props.*, 2017 U.S. Dist. LEXIS 129990, at *9 (S.D.N.Y. Aug. 14, 2017) (holding limitations period begins only when plaintiffs "reasonably could have discovered . . . *all* elements of their Section 10(b) claim" (emphasis added)); *Doubleline Cap. LP v. Odebrecht Fin.*, 323 F. Supp. 3d 393, 435-39, & nn. 6-7, 458 (S.D.N.Y. 2018) (holding "Defendants carry the burden" on timeliness issues).  Moreover, Zhou's denials of the relisting prevented the limitations period from starting because they "could have allayed a reasonable investor's concerns." *Doubleline*, 323 F. Supp. 3d at 438; ¶¶ 114-16, 119-22.

[18] Plaintiffs plead a Section 20(a) claim against Chen because they adequately plead Section 10(b) and Section 20A claims against Qihoo, which he controlled.  ¶¶ 330-39; (MTD at 25 n.17).

[19] If the Court grants the Motion, Plaintiffs respectfully request leave to amend to correct any perceived deficiencies. *See Loreley*, 797 F.3d at 190.

25

Dated: January 31, 2020

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Michael Grunfeld*
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: mgrunfeld@pomlaw.com

*Counsel for Lead Plaintiffs Altimeo
Asset Management and ODS Capital
LLC*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 31, 2020, a copy of the foregoing was filed electronically via the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties whose counsel has appeared in this action, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Michael Grunfeld*
Michael Grunfeld
