**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ALTIMEO ASSET MANAGEMENT,
Individually and on Behalf of All Others
Similarly Situated,

                                  Plaintiff,

       v.

QIHOO 360 TECHNOLOGY, HONGYI
ZHOU, XIANGDONG QI, and ERIC X.
CHEN,

                                  Defendants.

Case No. 19 Civ. 10067 (PAE)

---

## MEMORANDUM OF LAW IN SUPPORT OF HONGYI ZHOU'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

LATHAM & WATKINS LLP
Eric F. Leon
Jason C. Hegt
Hanyu (Iris) Xie
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

*Attorneys for Defendant Hongyi Zhou*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ....................................................................................................................3

ARGUMENT .........................................................................................................................9

I.      LEGAL STANDARD.................................................................................................9

II.     PLAINTIFFS FAIL TO STATE A SECTION 10(B) CLAIM AGAINST MR.
ZHOU ....................................................................................................................10

      A.     Three of the Four Alleged Misrepresentations Are Not Actionable....................11

            1.     Statements Concerning Fairness of Merger Are Inactionable
Opinions.......................................................................................................11

            2.     Statements Concerning Reasons for the Merger Are Not
Misleading....................................................................................................12

            3.     Statements Concerning Lack of Viable Alternatives Are Not
Misleading....................................................................................................13

      B.     Plaintiffs Fail to Plead Reliance by the Cancelled Shareholders ...........................14

      C.     Plaintiffs Fail to Plead Loss Causation ................................................................15

            1.     Plaintiffs Do Not Allege A Cognizable Loss............................................16

            2.     Plaintiffs Fail to Adequately Plead that the Alleged Misstatements
*Caused* these Unsubstantiated "Losses" .....................................................19

                 a.     Plaintiffs Do Not Allege a Corrective Disclosure.........................20

                 b.     Any Other Causal Link Implied by Plaintiffs is Highly
Attenuated, Speculative, and Conclusory ......................................21

III.    PLAINTIFFS FAIL TO STATE A SECTION 20A CLAIM AGAINST MR.
ZHOU ....................................................................................................................24

CONCLUSION.......................................................................................................................25

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**CASES**

*Aimis Art Corp. v. N. Tr. Secs., Inc.*,
    641 F. Supp. 2d 314 (S.D.N.Y. 2009) ....................................................................... 19

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
    2020 WL 4734989 (S.D.N.Y. Aug. 14, 2020),
    *vacated and remanded*, 19 F.4th 145 (2d Cir. 2021) ................................................... 8

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
    19 F.4th 145 (2d Cir. 2021) ......................................................................... 9, 10, 24

*Altimeo Asset Mgmt. v. WuXi PharmaTech (Cayman) Inc.*,
    2020 WL 6063539 (S.D.N.Y. Oct. 14, 2020) ........................................................... 10

*In re Aratana Therapeutics Inc. Sec. Litig.*,
    315 F. Supp. 3d 737 (S.D.N.Y. 2018) ...................................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 10

*C.D.T.S. v. UBS AG*,
    2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013),
    *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir.
    2015) ....................................................................................................................... 22

*In re Citigroup Auction Rate Sec. Litig.*,
    700 F. Supp. 2d 294 (S.D.N.Y. 2009) ...................................................................... 16

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
    129 F. Supp. 3d 48 (S.D.N.Y. 2015) ....................................................................... 11

*Cohen v. Stevanovich*,
    722 F. Supp. 2d 416 (S.D.N.Y. 2010) ...................................................................... 16

*Collier v. Aksys Ltd.*,
    2005 WL 1949868 (D. Conn. Aug. 15, 2005),
    *aff'd*, 179 F. App'x 770 (2d Cir. 2006) .................................................................... 17

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) .................................................................................. 16, 19, 24

*In re E-House Sec. Litig.*,
 2021 WL 4461777 (S.D.N.Y. Sept. 29, 2021) ....................................................................10

*Feiner Fam. Tr. v. Xcelera.com, Inc.*,
 2008 WL 5233605 (S.D.N.Y. Dec. 15, 2008),
 *aff'd sub nom. Feiner Fam. Tr. v. VBI Corp.*,
 352 F. App'x 461 (2d Cir. 2009) .......................................................................................24

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
 68 F. Supp. 3d 530 (S.D.N.Y. 2014),
 *aff'd*, 639 F. App'x 664 (2d Cir. 2016) ..............................................................................15

*GE Invs., Ret. Plan v. GE Co.*,
 447 F. App'x 229 (2d Cir. 2011) .......................................................................................16

*Gray v. Wesco Aircraft Holdings, Inc.*,
 847 F. App'x 35 (2d Cir. 2021) .............................................................................12, 18, 22

*Gray v. Wesco Aircraft Holdings, Inc.*,
 454 F. Supp. 3d 366 (S.D.N.Y. 2020),
 *aff'd* 847 F. App'x 35 (2d Cir. 2021) ...............................................................................12

*Haideri v. Jumei Int'l Holding Ltd.*,
 2021 WL 4170791 (N.D. Cal. Sept. 14, 2021) .........................................................10, 11, 18

*Halliburton Co. v. Erica P. John Fund, Inc.*,
 573 U.S. 258 (2014) ..........................................................................................................14

*In re Initial Pub. Offerings Sec. Litig.*,
 471 F.3d 24 (2d Cir. 2006), *decision clarified on denial of reh'g sub nom.*
 *In re Initial Pub. Offering Sec. Litig.*,
 483 F.3d 70 (2d Cir. 2007) ................................................................................................15

*Kocourek v. Shrader*,
 391 F. Supp. 3d 308 (S.D.N.Y. 2019) ...............................................................................23

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
 897 F. Supp. 2d 168 (S.D.N.Y. 2012),
 *aff'd sub nom. Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
 543 F. App'x 72 (2d Cir. 2013) .........................................................................................21

*Lentell v. Merrill Lynch & Co.*,
 396 F.3d 161 (2d Cir. 2005) ..................................................................................... *passim*

*Leykin v. AT & T Corp.*,
 423 F. Supp. 2d 229 (S.D.N.Y. 2006),
 *aff'd*, 216 F. App'x 14 (2d Cir. 2007) ...........................................................................20, 21

iv

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
    2013 WL 4405538 (S.D.N.Y. Aug. 5, 2013),
    *aff'd sub nom. IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of
    Scotland Grp., PLC*,
    783 F.3d 383 (2d Cir. 2015).................................................................................21

*In re Ocera Therapeutics, Inc. Sec. Litig.*,
    806 F. App'x 603 (9th Cir. 2020) ..................................................................18, 22

*ODS Cap. LLC v. JA Solar Holdings Co.*,
    2020 WL 7028639 (S.D.N.Y. Nov. 30, 2020)........................................10, 15, 17

*Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*,
    951 F. Supp. 2d 479 (S.D.N.Y. 2013)....................................................................12

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015).................................................................................................11

*In re Omnicom Grp., Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010)....................................................................................20

*Pa. Ave. Funds v. Borey*,
    2009 WL 902070 (W.D. Wash. Mar. 30, 2009) .....................................................25

*Sable v. Southmark/Envicon Cap. Corp.*,
    819 F. Supp. 324 (S.D.N.Y. 1993) .........................................................................15

*Salvani v. ADVFN PLC*,
    50 F. Supp. 3d 459 (S.D.N.Y. 2014),
    *aff'd sub nom. Salvani v. InvestorsHub.com, Inc.*, 628 F. App'x 784 (2d Cir. 2015) ............21

*In re Sanofi Sec. Litig.*,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015)........................................................................3

*Schwab v. E*TRADE Fin. Corp.*,
    752 F. App'x 56 (2d Cir. 2018) ..............................................................................15

*In re Seadrill Ltd. Sec. Litig.*,
    2016 WL 3461311 (S.D.N.Y. June 20, 2016) ........................................................13

*In re Shanda Games Ltd. Sec. Litig.*,
    2019 WL 11027710 (S.D.N.Y. Sept. 30, 2019),
    *adhered to on reconsideration sub nom.
    In re Shanda Ltd. Sec. Litig.*,
    2020 WL 5813769 (S.D.N.Y. Sept. 30, 2020).................................................12, 15

*In re Shanda Games Ltd. Sec. Litig.*,
    2022 WL 992794 (S.D.N.Y. Mar. 31, 2022) ....................................................18, 24

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)................................................................................3, 11, 12

*Xiaojiao Lu v. Align Tech., Inc.*,
    417 F. Supp. 3d 1266 (N.D. Cal. 2019) .............................................................25

## STATUTES

15 U.S.C.
    § 78t-1(a)........................................................................................................24, 25
    § 78u-4(b)..............................................................................................................10
    § 78u-4(b)(3)........................................................................................................10

## RULES

Fed. R. Civ. P.
    9(b).......................................................................................................................10
    12(b)(6) .................................................................................................................9

## GLOSSARY OF TERMS USED

The following terms are used in this memorandum:

| | |
|---|---|
| ADS | American Depository Shares |
| Board | Board of Directors of Qihoo |
| Buyer Group | Group that acquired Qihoo in the Merger |
| Cancelled Shareholders | Shareholders who owned shares as of the Merger and whose shares were extinguished via the Merger |
| Exchange Act | Securities Exchange Act of 1934 |
| FAC | First Amended Complaint (ECF No. 53), cited as "¶_" and attached as Exhibit 1 |
| J.P. Morgan | J.P. Morgan Securities (Asia Pacific) Limited |
| Merger | Transaction that took Qihoo private on July 15, 2016 |
| NYSE | New York Stock Exchange |
| Plaintiffs | Lead Plaintiffs Altimeo Asset Management and ODS Capital LLC |
| Proxy Statement | Qihoo's Preliminary Proxy Statement issued on January 11, 2016, First Amended Proxy Statement issued on February 8, 2016, Second Amended Proxy Statement issued on February 26, 2016, and Final Proxy Statement issued on March 3, 2016 |
| Qihoo or the Company | Qihoo 360 Technology Co. Ltd. |
| Selling Shareholders | Shareholders who sold their shares during the period from December 18, 2015 through July 15, 2016 |

| | |
|---|---|
| <u>Special Committee</u> | Independent special committee of Qihoo directors formed to evaluate the fairness of the Merger proposal |
| <u>Unaffiliated Holders</u> | Shareholders unaffiliated with the Buyer Group |
| <u>360 Technology</u> | 360 Technology Co. Ltd. |

Defendant Hongyi Zhou respectfully submits this memorandum of law in support of his motion to dismiss Plaintiffs' First Amended Complaint ("FAC") (ECF No. 53) (Ex. 1).[1]

## PRELIMINARY STATEMENT

Two hedge funds who made millions of dollars on their investment in Qihoo now seek "damages" for losses they never suffered.  In 2016, Qihoo, a leading Internet company in China, completed a take-private merger in which Plaintiffs and other Qihoo shareholders received a 32% premium over the trailing 30-day average trading price of Qihoo ADS.  Unsatisfied with this very healthy profit, Plaintiffs now bring a putative class action on behalf of investors who sold their Qihoo ADS on the theory that shareholders "lost" money because, 18 months after the Merger, a reorganized version of Qihoo's business was listed on the Shanghai Stock Exchange with a higher implied value.  The federal securities laws do not authorize this kind of money grab, and these claims find no support in existing Second Circuit law.  In fact, Plaintiffs stand alone in bringing these types of claims—they have filed nearly identical suits against four other Chinese companies—and every single one of them has been dismissed on at least one of the grounds outlined in this motion.  This Court should decline Plaintiffs' invitation to reshape federal securities law to allow this kind of profiteering.

*First*, although the Second Circuit held that Plaintiffs had adequately alleged a misrepresentation concerning Qihoo's intention to relist on a different exchange, Plaintiffs' other three categories of alleged misrepresentations—concerning the lack of strategic alternatives for Qihoo's shareholders, the reasons for the Merger, and the fairness of the Merger consideration—are not actionable.  That is because Plaintiffs do not point to anything false or misleading in

---

[1] Unless otherwise indicated herein, all internal citations and quotation marks are omitted, emphasis is added, and citations to "Ex." refer to exhibits attached to the Declaration of Hanyu Xie, submitted herewith.

Qihoo's statements concerning the lack of strategic alternatives and the reasons for the Merger, and the fairness statements are statements of opinions that Plaintiffs have not alleged were actually false (or believed to be false) when made.  *See* Section II.A.

*Second*, Plaintiffs cannot allege reliance by the Qihoo shareholders who tendered their shares upon consummation of the Merger because Plaintiffs cannot invoke the "fraud-on-the-market" presumption of reliance.  Under this presumption, if a market for securities is efficient, then all information is incorporated into the market price, and investors who trade at the market price are presumed to have traded in reliance on that information.  But the price that the Qihoo shareholders received upon consummation of the Merger was not determined through public trading on an efficient market—it was the result of private negotiations in China *before* the alleged misrepresentations.  No court has extended the presumption of reliance to privately-negotiated transactions like this one that did not take place on an efficient market.  *See* Section II.B.

*Third*, loss causation is a required element of their claim, but Plaintiffs cannot allege either loss or causation.  In terms of loss, there was none.  Plaintiffs earned a profit on their disclosed trades in Qihoo ADS, and the Merger price represented a 32% premium to the publicly traded share price.  So Plaintiffs pivot to alleging the price of Qihoo ADS was "artificially deflated" by the alleged misrepresentations.  The problem with this theory is that the price of Qihoo ADS rose after each alleged misstatement, and there was never a "corrective" disclosure that impacted the price of Qihoo's ADS, so Plaintiffs are left to speculate that the "correct" price was some "far higher" (but unspecified) number.  This fiction rests on an attenuated chain of hypothetical events that *might* have occurred and Plaintiffs' allegation that a different company valued 18 months later was worth more.  Neither of these novel theories is sufficient to plead loss causation under well-established Second Circuit law.  *See* Section II.C.

*Fourth*, Plaintiffs' insider trading claim under Section 20A fails not only because of the flaws in their predicate Section 10(b) claim, but also because they fail to allege the required contemporaneous trading with Mr. Zhou.  *See* Section III.

**BACKGROUND**[2]

Founded in 2005, Qihoo 360 Technology Co. Ltd. was a leading internet company headquartered in Beijing and incorporated in the Cayman Islands.  ¶¶ 2, 21, 32, 34.  Qihoo maintained various business lines, including internet security products and browsers, and online platforms offering third-party products and services.  ¶¶ 34-35, 37-38, 95.  As of December 2015, Qihoo was the largest internet and mobile security provider in China, with hundreds of millions of active users, and the largest provider of PC and mobile internet browsers in China.  ¶¶ 34-36.  Mr. Zhou co-founded Qihoo and served as its Chairman and Chief Executive Officer from August 2006 through the Merger.  ¶ 22.  Qihoo's ADS began trading on the NYSE in 2011.  ¶¶ 21, 33.

In early May 2015, Mr. Zhou and other investors discussed the possibility of acquiring Qihoo as part of a "going private" transaction.  ¶ 41; Ex. 2, 3/3/16 Proxy at 29.  On June 17, 2015, Mr. Zhou and certain investors (together, the "Buyer Group") submitted a preliminary, non-binding proposal to Qihoo's Board in which companies associated with the Buyer Group offered to acquire Qihoo by paying $77 for each outstanding Qihoo ADS (other than those already owned by the Buyer Group).  ¶ 42; Ex. 2, 3/3/16 Proxy at 29; Ex. 3, 06/17/15 Press Release.  On the same day, Qihoo issued a press release announcing the receipt of this acquisition proposal, and Qihoo's ADS price rose.  ¶ 43; Ex. 3, 06/17/15 Press Release; Ex. 4, Stock Price Chart.

---

[2] This background is drawn from (i) the well pleaded factual allegations in the FAC and documents referenced therein, (ii) Qihoo's SEC filings, and (iii) "information already in the public domain and facts known or reasonably available to the shareholders."  *See In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 517 n. 1, 539 n. 13 (S.D.N.Y. 2015) (Engelmayer, J.), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016).

3

On June 19, 2015, the Qihoo Board formed an independent Special Committee comprised of directors who were not affiliated with the Buyer Group to evaluate the proposal. ¶¶ 26-27, 44. The Special Committee retained J.P. Morgan as its financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP as its legal advisor. ¶ 45; Ex. 2, 3/3/16 Proxy at 30. Following extensive diligence and analysis, J.P. Morgan advised the Special Committee that the cash-out price of $77 per ADS was fair from a financial perspective. ¶¶ 48, 51-53. On December 18, 2015, the Special Committee unanimously recommended that the Board approve the Merger. ¶ 58. The Board approved the Merger the same day, with Mr. Zhou abstaining from the vote given his role in the Buyer Group. ¶¶ 58, 190; *see* Ex. 2, 3/3/16 Proxy at iii.

On December 18, 2015, after the Special Committee and the Board approved the Merger, Qihoo issued a press release, announcing the execution of the Merger Agreement. ¶¶ 60, 161; Ex. 5, 12/18/15 Press Release; Ex. 2, 3/3/16 Proxy at 5. The Press Release stated that at the effective time of Merger, each ADS would be cancelled in exchange for the right to receive $77 in cash—representing "a premium of 32.7% to the average closing price of the Company's ADS during the 30 trading days prior to its receipt of a 'going-private' proposal." Ex. 5, 12/18/15 Press Release at 1; Ex. 6, Merger Agreement § 3.1(b). Qihoo's ADS price again rose upon this announcement. *See* Ex. 4, Stock Price Chart.

The Merger Agreement contained a 45-day "go-shop" provision, pursuant to which the Special Committee could initiate, solicit, and encourage acquisition proposals from other parties. Ex. 6, Merger Agreement § 6.4. Between December 18, 2015, and February 1, 2016, J.P. Morgan, on behalf of the Special Committee, contacted three selected potential strategic bidders, none of whom expressed an interest in an alternative transaction with the Company. Ex. 2, 3/3/16 Proxy at 69. No other party separately approached the Special Committee during this period. *Id.*

With no other potential bidders interested making an offer, Qihoo issued a Preliminary Proxy Statement on January 11, 2016, amended it once on February 8, 2016, again on February 26, 2016, and then issued the Final Proxy Statement on March 3, 2016 (collectively the "Proxy Statements"). ¶¶ 4, 66-69; Ex. 7, 1/11/16 Proxy; Ex. 8, 2/8/16 Proxy; Ex. 9, 2/26/16 Proxy; Ex. 2, 3/3/16 Proxy. All four versions were similar, and the text of the alleged misstatements in each is identical, so the price of Qihoo ADS did not vary significantly once the Merger was announced. Nonetheless, each time Qihoo published a new iteration of the Proxy Statement, Qihoo's ADS price rose the day of, or the day following, publication. *See* Ex. 4, Stock Price Chart.

Qihoo's Proxy Statements provided shareholders with the same financial information that was "made available to the Special Committee's financial advisor." *See, e.g.*, Ex. 2, 3/3/16 Proxy at 52. This information included projections, although the Proxy Statements "cautioned" readers that the projections were "not fact," "should not be relied upon as being necessarily indicative of future results," "were based on numerous assumptions and estimates as to future events . . . all of which are difficult to predict," and that such projections were provided solely to give access to information that was shared with J.P. Morgan in developing its fairness opinion. *Id.* at 51-52. The Proxy Statements made clear that the projections were "not included for the purpose of influencing any shareholder to make any investment decision with respect to the Merger." *Id.* at 52. The Proxy Statements conveyed J.P. Morgan's conclusion that the Merger was fair to shareholders unaffiliated with the Buyer Group ("Unaffiliated Holders") because, among other reasons: (1) the price represented a 32.7% premium to the average closing price of the ADS during the 30 trading days prior to receipt of the proposal; (2) of the lack of alternative acquisition proposal from any other buyers; and (3) of the Special Committee's extensive negotiations with the Buyer Group. *Id.* at 41-43.

Further, the Proxy Statements explained that the purpose of the Merger was to "take advantage of the benefits of the Company being a privately held company," including "greater flexibility . . . on improving long-term profitability without the pressures exerted by the public market's valuation of the Company and its emphasis on short-term period-to-period performance," being "relieved of many of the expenses, burdens and constraints imposed on companies that are subject to the public reporting requirements under the U.S. federal securities laws," and avoiding the costs and potential competitive disadvantages of SEC compliance. *See* ¶¶ 80, 221; Ex. 2, 3/3/16 Proxy at 61. The Proxy Statements disclosed that, as of March 3, 2016, the Buyer Group "does not have any *current* plans" for any extraordinary transactions for Qihoo, but might later propose or develop such plans, "including *the possibility of relisting* the Surviving Company or a substantial part of its business on another internationally recognized stock exchange." ¶¶ 168, 170; Ex. 2, 3/3/16 Proxy at 68.

The Proxy Statements also described the shareholders' right to dissent and seek judicial appraisals under the Cayman Islands Companies Law. ¶¶ 88-91; *see also* Ex. 2, 3/3/16 Proxy at v, 113-14. Before the Merger closed, three Qihoo shareholders—but not Plaintiffs—dissented from the Merger and sought appraisal in the Cayman Islands. ¶ 138.

On March 30, 2016, the Merger was put to a vote of Qihoo shareholders. ¶ 83. Approval of the Merger required at least two-thirds of the voting rights held by shareholders that were present and voting. ¶ 84. Ultimately, shareholders owning 69.3% of the total outstanding voting rights attended the meeting, ¶ 86, a number that necessarily included Unaffiliated Holders given that the Buyer Group collectively owned 61.3% of the voting rights, ¶ 83. And the overwhelming majority of shareholders who attended the meeting—roughly 99.8%—voted in favor of the Merger. ¶ 86.

The Merger closed on July 15, 2016, and Qihoo became a subsidiary of a private company that was owned by the Buyer Group.  ¶ 93.  Qihoo then embarked on a complicated restructuring of its businesses, resulting in the creation of a new entity called 360 Technology and other separate business entities.  ¶ 95; *see also* ¶ 109.  360 Technology's performance far surpassed what Qihoo had been able to achieve prior to the going private transaction.  For example, 360 Technology reported $536 million in net profits for 2017, "up 80.2 percent" from Qihoo's profits in 2016.  *See* Ex. 10, 04/04/18 Shine Article.

Nearly 16 months after the close of the Merger, on November 2, 2017, SJEC, a Chinese manufacturing company listed on the Shanghai Stock Exchange, announced that it would conduct a reverse merger whereby the privately owned 360 Technology would acquire the publicly owned SJEC.  ¶¶ 96-100.  As a result of the reverse merger, 360 Technology would then become publicly listed on the Shanghai Stock Exchange as an A-share company.  *Id.*  "A-shares" are RMB-denominated equity shares of China-based companies that trade on the Shanghai and Shenzhen Stock Exchanges.  A-shares can only be traded by Chinese residents or qualified foreign institutional investors on the Chinese government's roster.[3]  An English article published shortly after SJEC's announcement noted that "based on the differences between US stocks and the A-share [price-earnings ratios], once Qihoo 360 returned to the [Chinese] A-share [stock market], its market value would grow many times over."  ¶ 152; Ex. 11, 11/06/17 *Pandaily* Article.  On February 28, 2018—more than a year and half after the Merger—360 Technology began trading under the name 360 Security Technology Inc. on the Shanghai Stock Exchange after a reverse merger with SJEC.  ¶ 100.

---

[3]  *See* Ex. 12, "Guide to Chinese Share Classes," FTSE RUSSELL, *available at* https://research.ftserussell.com/products/downloads/Guide_to_Chinese_Share_Classes.pdf.

On March 5, 2019, more than two and a half years after the going-private transaction, Lead Plaintiffs Altimeo Asset Management and ODS Capital LLC filed this putative class action on behalf of two types of Qihoo shareholders:  (1) those who sold their shares during the period from December 18, 2015, through July 15, 2016 ("Selling Shareholders"), and (2) those who owned shares as of the Merger and whose shares were extinguished at the close of Merger ("Cancelled Shareholders").  ¶ 298.  Plaintiffs assert claims against Qihoo, Mr. Zhou and two other individual defendants under Section 10(b) of the Exchange Act based upon four categories of alleged false or misleading statements in the Proxy Statements:  (1) statements concerning Qihoo's intention not to relist on a public stock exchange; (2) statements regarding the lack of strategic alternatives that would be more beneficial to Qihoo stockholders; (3) statements that presented the transaction as "fair" to Qihoo stockholders; and (4) statements concerning the reasons for the Merger.  ¶ 159.  Plaintiffs assert that these alleged misrepresentations or omissions caused Qihoo shareholders to "sell" their ADS at a "loss" during the Class Period.  ¶¶ 279-84, 312-22.  Plaintiffs also bring claims under Section 20A of the Exchange Act for insider trading (¶¶ 323-29) and Section 20(a) of the Exchange Act for control person liability (¶¶ 330-39).

On December 23, 2019, Qihoo and an individual defendant moved to dismiss the FAC for failure to plead a material misstatement or omission, scienter, reliance, and loss causation.  ECF No. 78.  On August 14, 2020, this Court dismissed the case on the ground that Plaintiffs did not adequately allege any material misrepresentations or omissions.  More specifically, the Court found that each of the four categories of alleged misrepresentations rested upon the premise that "when these statements were made, the Buyer group already planned to relist Qihoo at a far-higher valuation" in China after the going-private transaction.  *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 2020 WL 4734989, at *8, 17 (S.D.N.Y. Aug. 14, 2020), *vacated and remanded*, 19 F.4th 145

(2d Cir. 2021).   Finding no factual allegations supporting this premise, the Court dismissed Plaintiffs' Section 10(b) claims, and then dismissed the Section 20(a) and 20A claims, both of which require an underlying violation of the Exchange Act.  *Id.* at *17.  In light of its ruling, the Court did not have occasion to consider the other potential pleading defects with Plaintiffs' claims. *Id*.

On November 24, 2021, the Second Circuit reversed on the narrow ground that the FAC sufficiently alleged facts from which the Court could infer, at the motion to dismiss stage, that the Buyer Group planned to relist Qihoo at the time of the Proxy Statements.  *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 147 (2d Cir. 2021).  On appeal, Plaintiffs argued that the other alleged misrepresentations do not hinge upon the existence of a concrete plan to relist Qihoo, but the Second Circuit explicitly noted that it did not reach the sufficiency of these allegations.  *Id.* at 152 n. 4.  Nor did the Second Circuit address whether Plaintiffs adequately pleaded reliance or loss causation.  The court further "le[ft] all other aspects of the case to the district court to consider in the first instance."  *Id.* at 152.

## **ARGUMENT**

## I.   **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A complaint must offer more than 'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action,' or 'naked assertion[s]' devoid of 'further

factual enhancement' in order to survive dismissal." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

To state a claim under Section 10(b) of the Exchange Act, "a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *See Qihoo*, 19 F. 4th at 149. "Because such a claim sounds in fraud, the plaintiff 'must state with particularity the circumstances constituting fraud.'" *Id.* at 150 (citing Fed. R. Civ. P. 9(b)). The PSLRA additionally requires that a plaintiff must "state with particularity" (i) "each act or omission alleged to violate" Section 10(b); (ii) the "reasons why"; and (iii) "facts giving rise to a strong inference" that each defendant acted with the intent to engage in fraud (or scienter). 15 U.S.C. § 78u-4(b). Noncompliance with these rules mandates dismissal. 15 U.S.C. § 78u-4(b)(3); *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 753 (S.D.N.Y. 2018) (Engelmayer, J.).

## II.    PLAINTIFFS FAIL TO STATE A SECTION 10(B) CLAIM AGAINST MR. ZHOU

This is one of the five securities class actions that Plaintiffs have brought against Chinese companies that have delisted from a U.S. stock exchange. Each of the other four cases has been dismissed. *See In re E-House Sec. Litig.*, 2021 WL 4461777, at *18 (S.D.N.Y. Sept. 29, 2021); *Haideri v. Jumei Int'l Holding Ltd.*, 2021 WL 4170791, at *24 (N.D. Cal. Sept. 14, 2021); *ODS Cap. LLC v. JA Solar Holdings Co.*, 2020 WL 7028639, at *15 (S.D.N.Y. Nov. 30, 2020); *Altimeo Asset Mgmt. v. WuXi PharmaTech (Cayman) Inc.*, 2020 WL 6063539, at *7 (S.D.N.Y. Oct. 14, 2020). This case should be dismissed as well.

## A.     Three of the Four Alleged Misrepresentations Are Not Actionable

As a threshold matter, the scope of this case can be narrowed significantly.  The Second Circuit's decision establishes that Plaintiffs have adequately pleaded a Section 10(b) claim based upon one category of alleged misrepresentations—*i.e.*, statements concerning Qihoo's intention not to relist on a public stock exchange.[4]  But neither the Second Circuit nor this Court has yet to address the remaining three categories of alleged misrepresentations:  (i) statements regarding the lack of strategic alternatives that would be more beneficial to Qihoo stockholders, (ii) statements that presented the transaction as "fair" to Qihoo stockholders, and (iii) statements concerning the reason for the Merger.  *See* ¶ 159(b)-(d).  None is actionable.

### 1.     Statements Concerning Fairness of Merger Are Inactionable Opinions

Statements that something is "fair" are actionable only if "'the speaker did not hold the belief she professed' . . . 'the supporting fact[s] she supplied were untrue' . . . [or if] the speaker omit[ted] information whose omission makes the statement misleading to a reasonable investor." *Sanofi*, 816 F.3d at 210 (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015)); *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 71 (S.D.N.Y. 2015) (applying *Omnicare* standard to directors' statements about the fairness of a transaction).  Plaintiffs cannot satisfy this standard.

As a threshold matter, Mr. Zhou did not sit on the Special Committee, and the Proxy Statements expressly disclosed that Mr. Zhou was not among the Board members who opined on the Merger, *see, e.g.*, Ex. 2, 3/3/16 Proxy at 5, so Plaintiffs have not pleaded how Mr. Zhou's opinion could be actionable.  *See Haideri*, 2021 WL 4170791, at *18-19 (dismissing claims

---

[4] Mr. Zhou adopts the arguments that Qihoo made with respect to the alleged misrepresentation regarding a relisting plan, *see* ECF No. 78 at 7-11, but acknowledges for purposes of this motion that the Second Circuit has already decided that issue.

because "the 'fairness opinion at issue was not Chen's [the CEO/buyer]" but "the [Special] Committee's and the Board's" and investors understood CEO was "the buyer on the other side of the transaction").  In any event, Plaintiffs fail to allege any facts supporting an inference that Mr. Zhou disbelieved in the fairness of the Merger or with the financial analysis underlying J.P. Morgan's fairness opinion.  *See Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, 951 F. Supp. 2d 479, 497 (S.D.N.Y. 2013) ("plaintiffs allege no facts whatsoever to support their argument that defendants did not honestly believe their [statements] when made").  Nor do Plaintiffs adequately allege that the fairness opinion was based on untrue facts.  At most, Plaintiffs suggest that alternative projections might have supported a higher price, but that is insufficient to render the fairness opinion false or misleading.  *See, e.g.*, *In re Shanda Games Ltd. Sec. Litig.*, ("*Shanda I"*), 2019 WL 11027710, at *7 (S.D.N.Y. Sept. 30, 2019) (opinion that going-private transaction was "fair" was not misleading despite alleged undisclosed projections and the fact that a Cayman appraisal action later found the going-private price should have been 35% higher), *adhered to on reconsideration sub nom. In re Shanda Ltd. Sec. Litig.* ("*Shanda II*"), 2020 WL 5813769 (S.D.N.Y. Sept. 30, 2020); *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 400-401 (S.D.N.Y. 2020) (potentially more favorable projections insufficient to allege fairness opinion false), *aff'd*, 847 F. App'x 35 (2d Cir. 2021); *see also Sanofi*, 816 F.3d at 211 ("Plaintiffs are sophisticated investors, no doubt aware that projections provided by issuers are synthesized from a wide variety of information, and that some of the underlying facts may be in tension with the ultimate projection set forth by the issuer.").

### 2.    Statements Concerning Reasons for the Merger Are Not Misleading

The statements regarding the Buyer Group's reasons for the Merger (¶ 159(d)) are not actionable for the simple reason that there are no facts suggesting these statements were false or

misleading.  *See In re Seadrill Ltd. Sec. Litig.*, 2016 WL 3461311, at *11 (S.D.N.Y. June 20, 2016)

("The [alleged misstatements] are not actionable as they are accurate, and the Complaint does not

allege otherwise.").  As the Proxy Statement explained, the Buyer Group believed Qihoo may have

"greater flexibility . . . on improving long-term profitability without the pressures exerted by the

public market's valuation of the Company and its emphasis on short-term period-to-period

performance," and would benefit from being "relieved of many of the expenses, burdens and

constraints" of U.S. public company securities reporting requirements and SEC compliance.  *See*

Ex. 2, 3/3/16 Proxy at 61.  Plaintiffs cannot—and do not—plead that any of these reasons were

untrue.  Instead, Plaintiffs argue that these statements did not disclose the Buyer Group's "true

motivation" for the Merger, namely to relist Qihoo in China.  Plaintiffs conflate two distinct

concepts:  the alleged undisclosed plan to *relist* Qihoo outside the United States, and the reasons

for *reorganizing* outside the United States via the Merger, which allegedly enabled the relisting

plan.  While Plaintiffs may have alleged sufficient facts to raise an inference of an undisclosed

relisting plan, no alleged facts suggest that the Proxy Statement concealed the true reasons for the

Merger.  To the contrary, the Proxy Statements disclosed, in detail, the very reasons why the Buyer

Group sought to consummate the Merger and reorganize Qihoo in China, including the opportunity

to improve "long-term profitability" and escape the "expenses, burdens and constraints" of the

U.S. regulatory scheme.  *Id.*

### 3. Statements Concerning Lack of Viable Alternatives Are Not Misleading

Plaintiffs also challenge statements indicating that there was no viable alternative to the

Merger that would have been more beneficial to the shareholders, ¶¶ 159(b), but not a single fact

is pleaded in support of this allegation.  That is unsurprising—from the date Qihoo received the

Merger proposal on June 17, 2015 to the close of go-shop period on February 1, 2016, no other

buyers showed interest in an alternative transaction with Qihoo. *See* Ex. 2, 3/3/16 Proxy at 43, 69. Plaintiffs' suggestion that relisting on a Chinese stock exchange was an *alternative* that should have been disclosed is a non-sequitur. According to Plaintiffs, relisting Qihoo in China was contingent on the Merger, not an alternative to the Merger. *See, e.g.*, ¶¶ 260, 264.

### B.   Plaintiffs Fail to Plead Reliance by the Cancelled Shareholders

As noted, Plaintiffs purport to represent two different groups of Qihoo shareholders: the Selling Shareholders, who sold their shares prior to consummation of the Merger, and the Cancelled Shareholders, who held shares until the end of the Class Period and were paid $77 per ADS when the Merger closed and their shares were cancelled. As to the Cancelled Shareholders, Plaintiffs' claims fail because Plaintiffs cannot allege that these shareholders made any transactions in reliance on any of the at-issue statements.

Plaintiffs concede, as they must, that they cannot allege actual reliance on any of the alleged misrepresentations. *See* Pl's Opp. to Mot. to Transfer, at 8 (ECF No. 40) ("[t]he Complaint expressly disclaims any individual reliance by the plaintiffs . . . ."). So, instead, Plaintiffs seek to invoke the rebuttable presumption of reliance using the "fraud-on-the-market" theory. ¶¶ 308-10. The "fraud on the market" theory posits "that 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations.'" *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014). But the problem for the Cancelled Shareholders is that they did not sell their ADS at a price established by public trading on an efficient market. Rather, as is always the case in a going-private transaction, the Cancelled Shareholders sold their ADS at a price established through private negotiations between the company (Qihoo) and the acquiror (the Buyer Group). It is for precisely this reason that courts consistently have held that the fraud-on-the-market presumption does not apply to transactions at

prices negotiated off-market.[5]  Indeed, in at least two other recent cases—one of which was brought by Plaintiffs—courts have rejected near-identical attempts to invoke the fraud-on-the-market presumption in going-private transactions.  *See JA Solar*, 2020 WL 7028639, at *14 ("allegations here regarding the Tenderer Shareholders fail to demonstrate the open and developed market that would support market efficiency under the *Basic* presumption"); *Shanda I*, 2019 WL 11027710, at *9 (a "forced sale of shares through a merger does not constitute an efficient market" because "the share price was negotiated as opposed to being driven by trading volume or external analysis or reporting").  Plaintiffs may not like the price the Cancelled Shareholders received—and may wish for even more than a 32% premium to the market price—but the fact remains that the price the Cancelled Shareholders received was set in private negotiations *before* any of the alleged misrepresentations, so those statements could not possibly have impacted the price at which the Cancelled Shareholders transacted.  This precludes them from invoking the "fraud on the market" theory, and, as a result, they cannot plead reliance.[6]

### C.    Plaintiffs Fail to Plead Loss Causation

Loss causation is essential to the maintenance of an action under Section 10(b) because private securities fraud actions exist "to protect [investors] against those economic losses that

---

[5] *See, e.g.*, *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006), *decision clarified on denial of reh'g sub nom. In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007) (rejecting fraud-on-the-market presumption because "the market for IPO shares is not efficient"); *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 540 (S.D.N.Y. 2014) (no presumption of reliance because "[t]he debentures were privately offered to a limited number of qualified investors and did not trade on an efficient impersonal market"), *aff'd*, 639 F. App'x 664 (2d Cir. 2016); *Sable v. Southmark/Envicon Cap. Corp.*, 819 F. Supp. 324, 339 (S.D.N.Y. 1993) (no presumption of reliance "because the partnerships were offered privately and were not traded actively in a large public market").

[6] Plaintiffs' attempt to invoke the *Affiliated Ute* presumption of reliance is similarly unavailing. *See* ¶ 307.  The *Affiliated Ute* presumption "applies only . . . when there are 'no positive statements,' and 'reliance as a practical matter is impossible to prove.'" *Schwab v. E*TRADE Fin.*

*misrepresentations actually cause.*"  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

Here, however, Plaintiffs are unable to demonstrate *either* the existence of any loss *or* the causal

link between any alleged loss and the allegedly false and misleading statements.  *Lentell v. Merrill*

*Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005).  "Accordingly, plaintiffs [have] failed adequately

to plead loss causation, a *sine qua non* of a claim for securities fraud."  *GE Invs., Ret. Plan v. GE*

*Co.*, 447 F. App'x 229, 232 (2d Cir. 2011).

### 1.      Plaintiffs Do Not Allege A Cognizable Loss

As an initial matter, Plaintiffs cannot plead a discernable economic harm.  *First*, Plaintiffs

did not sustain any actual loss in selling or tendering their shares.  The "loss chart" that Plaintiffs

submitted reveals the opposite:  both Plaintiffs consistently disposed of Qihoo shares at prices well

above what they paid—including the shares cancelled in the Merger, which Plaintiffs admit were

tendered at a 32.7% market premium.  *See* ECF No. 12-D, Loss Chart of Altimeo & ODS; ¶ 162.[7]

This failure to plead economic loss is fatal to Plaintiffs' attempt to establish loss causation.  *See*

*Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 431 (S.D.N.Y. 2010) (dismissing claim for failure to

allege legally cognizable loss given that "all of the information concerning Plaintiffs' stock

transactions is plainly available to Plaintiffs"); *In re Citigroup Auction Rate Sec. Litig.*, 700 F.

---

*Corp.*, 752 F. App'x 56, 59 (2d Cir. 2018).  Here, Plaintiffs' allegations are primarily based on affirmative misrepresentations.  Where the alleged "omissions" are "simply the inverse of the [p]laintiffs' misrepresentation allegations"—*i.e.*, Plaintiffs' claim that Defendants "omitted" to state that they did plan to relist—that is a misrepresentation claim and the *Affiliated Ute* presumption does not apply.  *Id.*

[7] According to the sworn statements Plaintiffs submitted to the Court when seeking to be appointed as lead plaintiffs, Plaintiffs purchased roughly $11.9 million of Qihoo ADS, received approximately $6.7 million when they sold ADS during the Class Period, and retained approximately 148,000 ADS at the time of the Merger, which were tendered at $77 each for a total of roughly $11.3 million.  *See* ECF No. 12-C, Shareholder Certifications of Altimeo & ODS; ECF No. 12-D, Loss Chart of Altimeo & ODS.  In other words, Plaintiffs purchased the Qihoo ADS for $11.9 million and received roughly $18 million.

Supp. 2d 294, 307 (S.D.N.Y. 2009) ("Plaintiff has failed to allege that he suffered any specific economic harm as result of Defendants' conduct and, thus, he has not alleged loss causation sufficiently.").

In a vain attempt to establish a "loss," Plaintiffs resort to speculative and conclusory allegations that Qihoo's ADS price was "artificially deflated" by an unspecified amount. ¶ 280. However, Qihoo's ADS price increased on December 18, 2015, when the Merger was announced, and increased again when Qihoo issued the Preliminary Proxy on January 11, 2016, the Amended Proxy on February 8, 2016, the Second Amended Proxy on February 26, 2016, and the Final Proxy on March 3, 2016. *See* Ex. 4, Stock Price Chart. It is pure speculation to claim a "loss" from an artificially deflated stock price when the stock price increased after each repetition of the alleged misstatements. *See JA Solar*, 2020 WL 7028639, at *15 ("Plaintiffs' allegations that [the company] depressed the price of [its ADS] during the class period are bel[i]ed by the fact that [its] stock price rose or remained roughly the same during the relevant class period."); *Collier v. Aksys Ltd.*, 2005 WL 1949868, at *11 (D. Conn. Aug. 15, 2005) (failure to plead economic loss based on alleged artificial deflation when "the price of [company] stock rose dramatically throughout most of the class period"), *aff'd*, 179 F. App'x 770 (2d Cir. 2006).

With no facts to substantiate their conclusory allegation that the price of Qihoo's NYSE-traded ADS was artificially deflated during the Class Period, Plaintiffs instead attempt to establish a loss by pointing to a different company (360 Technology) trading on a different market (the Shanghai Stock Exchange)[8] with a different capital structure (a Chinese "A-share" company whose RMB-denominated shares could generally only be held by Chinese residents) at a different

---

[8] Plaintiffs expressly acknowledge that "technology companies are generally valued more in the Chinese stock market than in the United States." ¶ 152.

point in time (18 months later).   According to Plaintiffs, "[t]he far higher price that [360 Technology] was valued at in its relisting shows that the Class members did not receive fair value for their [Qihoo] shares in the Merger."   ¶ 279.   No court has ever adopted such a speculative theory of "loss."   *See Gray v. Wesco Aircraft Holdings, Inc.*, 847 F. App'x 35, 37 (2d Cir. 2021) ("the allegation that the [true value of the shares] is higher than the [merger share price] is inadequate because it is speculative and conclusory"); *In re Ocera Therapeutics, Inc. Sec. Litig.*, 806 F. App'x 603, 605 (9th Cir. 2020) ("The suggestion that the analysts' opinions of what the shares might be worth were different from what was actually received, let alone that they represented the shares' true value, is too speculative to plead with particularity that shareholders experienced losses.").

The claim that the value of Qihoo ADS was significantly higher than what the Buyer Group paid is particularly unsupported where, as here, the Special Committee engaged in a "go-shop" process and received no other offers.   *See Haideri*, 2021 WL 4170791, at *23 (finding that "allegations about [the company]'s 'true value' are rendered speculative by the lack of competing offers that the company received before and after [CEO of the company] made his tender offer"); *In re Shanda Games Ltd. Sec. Litig.*, ("*Shanda III*"), 2022 WL 992794, at *6 (S.D.N.Y. Mar. 31, 2022) (finding "no allegations substantiating how or why the material misstatements . . . would have (i) affected the integrity of the market price and (ii) thus caused a subsequent economic loss"); Ex. 6, Merger Agreement § 6.4; Ex. 2, 3/3/16 Proxy at 69.   Indeed, Section 28(a) of the Exchange Act "prevents courts from awarding 'speculative recoveries'" premised on the purported loss of

hypothetically uncaptured gains. *Aimis Art Corp. v. N. Tr. Secs., Inc.*, 641 F. Supp. 2d 314, 320-21 (S.D.N.Y. 2009).

Moreover, by Plaintiffs' own admission, 360 Technology in February 2018 is not a good proxy for the value of Qihoo in July 2016. According to the FAC, Qihoo engaged in a "particularly complex" "restructuring of its business" following the Merger in which it shed peripheral businesses lines. ¶¶ 95, 109. Following this restructuring, the newly reconstituted 360 Technology was significantly more profitable than the old Qihoo, with 360 Technology's profits for 2017 increasing by 80.2% compared to what the former Qihoo earned in 2016. Ex. 10, 04/04/18 Shine Article. Plaintiffs' attempt to establish "loss" by reference to 360 Technology is also the product of blatant temporal cherry-picking. While Plaintiffs point to 360 Technology's share price at the time of its initial listing in Shanghai, 360 Technology's share price has declined since then, and today it has roughly the same market capitalization ($8.8 billion) as Qihoo did at the time of delisting ($9.3 billion).[9] That aside, the fact remains that the securities laws require Plaintiffs to plead that the value of the securities *they held* were understated as a result of the alleged misstatements *at the time* they sold such securities. *Dura*, 544 U.S. at 342-48. Merely alleging that a different company had a different value at a different time is not sufficient. *Id.*

### 2. Plaintiffs Fail to Adequately Plead that the Alleged Misstatements *Caused* these Unsubstantiated "Losses"

Plaintiffs not only fail to establish loss, they likewise fail to establish a causal link to the alleged misrepresentations. *Lentell*, 396 F.3d at 172. "[L]oss causation has to do with the relationship between the plaintiff's investment loss and the information misstated or concealed by

---

[9] *Compare* ¶¶ 3, 215, *with* Ex. 13, "360 Security Technology Inc, 601360:SHH Summary," Financial Times, https://markets.ft.com/data/equities/tearsheet/summary?s=601360:SHH (last accessed April 26, 2022).

the defendant.  If that relationship is . . . attenuated, or if the plaintiff fails to demonstrate a causal connection between the content of the alleged misstatements or omissions and 'the harm actually suffered', a fraud claim will not lie." *Id.* at 174.  To plead this causal link, Plaintiffs  must allege facts showing (a) "the existence of cause-in-fact on the ground that the market reacted negatively to a corrective disclosure of the fraud"; or (b) that the loss was "a foreseeable materialization of the risk concealed by the fraudulent statement." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010).

Failure to identify a purportedly corrective disclosure that reveals the falsity of the challenged statements "is fatal under Second Circuit precedent." *Lentell*, 396 F.3d at 175; *see also Leykin v. AT & T Corp.*, 423 F. Supp. 2d 229, 243-47 (S.D.N.Y. 2006) (dismissing the complaint because the alleged corrective disclosures "did not reveal to the market any" prior misstatements and "ma[de] no showing that the concealed risk materialized so as to cause [the] stock price to fall"), *aff'd*, 216 F. App'x 14 (2d Cir. 2007).  Here, there was no corrective disclosure to which the market reacted, which should put an end to the loss causation inquiry.  *Omnicom*, 597 F. 3d at 511.

### a.    Plaintiffs Do Not Allege a Corrective Disclosure

Plaintiffs speculate that if the market had known the "truth" about the alleged false statements, then the price of Qihoo ADS on the NYSE would have risen astronomically to some price that approximates what 360 Technology was worth 18 months later in Shanghai.  *See* ¶¶ 279-84.  The problem with this theory, however, is that 360 Technology's listing in Shanghai occurred more than a year and a half after Qihoo delisted its ADS, and the market (*i.e.*, the NYSE) could not have reacted positively or negatively to this event.  Numerous courts in this District have concluded that a purported "corrective disclosure" after the alleged class period cannot show loss

causation because it does not link the false statement to any impact on stock price during the relevant period.[10]  Plaintiffs' claims here highlight why such a requirement is so critical.  Qihoo disclosed "the possibility of relisting [the reorganized Qihoo] or a substantial part of its business on another internationally recognized stock exchange," ¶ 170, but Plaintiffs assert that Qihoo should have disclosed that it allegedly had a definitive plan to relist Qihoo in China after the Merger.  Absent a "corrective disclosure" during the time when Qihoo ADS were still trading on the NYSE, Plaintiffs are simply speculating that the difference between the *possibility* of a future relisting and the *certainty* of a future relisting had any impact on the price of Qihoo ADS at all.  As a result, Plaintiffs cannot show that any investor transacted at an artificially deflated price, which means they cannot plead loss causation.  *See Lentell*, 396 F.3d at 161; *Salvani v. ADVFN PLC*, 50 F. Supp. 3d 459, 476 (S.D.N.Y. 2014) (no loss causation where "Plaintiffs claim that it was the false statement itself—not a risk previously concealed or a subsequent revealing event— that led to the decline in [the company's] stock price"), *aff'd sub nom. Salvani v. InvestorsHub.com, Inc.*, 628 F. App'x 784 (2d Cir. 2015).

> **b.** <u>Any Other Causal Link Implied by Plaintiffs is Highly Attenuated, Speculative, and Conclusory</u>

Plaintiffs do not even attempt to walk the traditional path in a disclosure case of alleging that corrective disclosures impacted the price of Qihoo ADS.  Instead, they allege that Defendants' "course of conduct" is what moved markets.  ¶ 279 (alleging that "[t]his course of conduct misled

---

[10] *See Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp.*, PLC, 2013 WL 4405538, at *10 (S.D.N.Y. Aug. 5, 2013), *aff'd sub nom. IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383 (2d Cir. 2015); *Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 178 (S.D.N.Y. 2012) (dismissing with prejudice where purported corrective disclosures "were released years after the end of the Class Period and thus do not help establish loss causation"), *aff'd sub nom. Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72 (2d Cir. 2013); *Leykin*, 423 F. Supp. 2d at 243 (similar).

the Class members and caused them to sell their shares at a depressed price."). Even if the Court were inclined to explore this novel theory to the end, it would not find a causal link along the way. Plaintiffs offer no explanation as to how the alleged concealment of a *definitive* plan to relist in China deflated the stock price when the *possibility* of such a relisting was disclosed. *Compare* ¶ 168, *with* ¶ 170; *see also* Ex. 2, 3/3/16 Proxy at 68. Not surprisingly, even a cursory look at the circumstances surrounding the disposition of the Qihoo ADS by both the Selling Shareholders and the Cancelled Shareholders shows no causal link between the alleged misstatement(s) and the prices at which investors sold. This is fatal to Plaintiffs' claims. *See Gray*, 847 F. App'x at 37; *Ocera*, 806 F. App'x at 605.

**Cancelled Shareholders:** Pursuant to the Merger Agreement, anyone who held Qihoo ADS on the date when the Merger closed would receive $77 per ADS. ¶ 93. This price was negotiated *before* any of the allegedly misleading statements were made and was dependent only on shareholders' approval of the Merger. As Plaintiffs admit, the most that was needed to approve the Merger was for the Buyer Group (as shareholders) and "approximately 5.4%" of the Unaffiliated Holders to vote in favor. ¶ 85. Put another way, Plaintiffs' causation theory is that, had the Proxy Statements disclosed a definitive plan to relist: (1) 95% or more of the Unaffiliated Holders would have voted to block the Merger; (2) the Special Committee and the Buyer Group would have renegotiated the Merger consideration and agreed on an unspecified, but exponentially higher, price; (3) Qihoo's Board would have approved that new merger; and (4) Qihoo's shareholders would have approved that new merger. There are no factual allegations anywhere in the FAC to support this string of speculation. "[I]f the connection [between the fraudulent statements and the actual loss suffered] is attenuated . . . a fraud claim will not lie." *Lentell*, 396 F.3d at 174; *see also C.D.T.S. v. UBS AG*, 2013 WL 6576031, at *8 (S.D.N.Y. Dec. 13, 2013)

22

("There can be little doubt that it would take a significant number of steps to tie the alleged misstatements and omissions to the diminution in UBS's stock price that occurred. . . . This is too speculative to support the type of loss causation needed to sustain a claim of securities fraud."), *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015).

**Selling Shareholders:**  Plaintiffs' causation allegations as to the Selling Shareholders are even more attenuated.  Plaintiffs allege that "but for the fraud, the market price for Qihoo Securities would have more closely reflected their true value, including because the ability to dissent from the Merger and seek appraisal as a remedy would have prevented the deal price from serving as a ceiling limiting the upper-price of the Qihoo Securities."  ¶ 281.  As such, Plaintiffs contend that, if Qihoo shareholders only knew that a relisting was a definite plan (rather than a possibility), this disclosure would have caused Qihoo's ADS to trade significantly above the price negotiated by the Special Committee on the conjecture that either (i) the vast majority were going to vote "no" on a merger offering a 32% premium in the hope that a superior price would eventually be negotiated or (ii) an appraisal action under Cayman law was likely to pay a judgment in excess of the current market price.  Again, there is not a single factual allegation in the FAC to support such speculation.  *See Kocourek v. Shrader*, 391 F. Supp. 3d 308, 332 (S.D.N.Y. 2019) (dismissing for lack of loss causation because any loss "must be based on the bargain that was actually struck, not on a bargain whose terms must be supplied by hypothesis about what the parties would have done if the circumstances surrounding their transaction had been different").

In addition, Plaintiffs seek to bring claims on behalf of Selling Shareholders (like Plaintiffs) who *purchased and sold* after the allegedly misleading statements.  An investor who purchased Qihoo ADS after the allegedly misleading Proxy Statement but sold prior to the Merger purchased at an allegedly deflated price and sold at an allegedly deflated price.  These shareholders suffered

no damages that can be causally linked to the alleged misstatements because the prices of the ADS were (according to Plaintiffs) artificially deflated both when they bought and sold the securities. To allow shareholders to recover on these facts runs directly counter to the Supreme Court's limits on these claims.  *See Dura*, 544 U.S. at 342 ("if . . . the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss").[11]

### III.    PLAINTIFFS FAIL TO STATE A SECTION 20A CLAIM AGAINST MR. ZHOU

A claim for insider trading under Section 20A requires pleading:  (1) a predicate insider trading violation of the Exchange Act and (2) sufficient facts showing that the defendant traded the securities at issue and "of the same class" contemporaneously with the plaintiff.  15 U.S.C. § 78t–1(a); *Feiner Fam. Tr. v. Xcelera.com, Inc.*, 2008 WL 5233605, at *6 (S.D.N.Y. Dec. 15, 2008), *aff'd sub nom. Feiner Fam. Tr. v. VBI Corp.*, 352 F. App'x 461 (2d Cir. 2009).  First, because there is no predicate violation under § 10(b), the § 20A claim also fails.  *See Qihoo*, 19 F. 4th at 152 ("Actions under [Section 20A] require an independent violation of the Exchange Act.").[12]

Moreover, Plaintiffs fail to allege any facts showing that either the Selling Shareholders or the Cancelled Shareholders traded the same type of securities contemporaneously with Mr. Zhou.  *See* ¶¶ 285-95, 323-29; 15 U.S.C. § 78t-1(a).  Plaintiffs do not—and cannot—allege that they traded "contemporaneously with" Mr. Zhou.  By definition, the Selling Shareholders, sold in the

---

[11] Because Plaintiffs' § 10(b) claim fails, their control person claim under § 20(a) against Mr. Zhou also must be dismissed for failure to allege a predicate violation.  *See Qihoo*, 19 F. 4th at 152 ("Actions under [Section 20(a)] require an independent violation of the Exchange Act.").

[12] In *Shanda III*, Judge Carter dismissed a Section 20A claim against all defendants except the delisted company's CEO.  *See* 2022 WL 992794, at *7-9.  There, the plaintiff alleged a Section 10(b) claim for insider trading as a predicate violation for the Section 20A claim.  *Id*.  Here, by contrast, Plaintiffs make no such claim and premise their 20A claim on a deficient Section 10(b) misstatements claim that is the subject of the balance of this Motion.  *See* ¶¶ 312-29.

open market *prior to* the close of the Merger.  Mr. Zhou, by contrast, was prohibited from trading in the market as of the signing of the Merger Agreement on December 18, 2015, the first day of the Class Period.  *See* Ex. 6, Merger Agreement § 6.19 (prohibiting the entity through which Mr. Zhou held his interest in Qihoo from "sell[ing], transfer[ring] or otherwise dispos[ing] of" its shares until the completion of the Merger).  In other words, it is simply not possible for the Selling Shareholders to have traded contemporaneously with Mr. Zhou and, as such, they cannot pursue a Section 20A claim.  *See Shanda II*, 2020 WL 5813769, at *3 ("Section 20A expressly limited standing to contemporaneous investors in securities of the same class.") (citing 15 U.S.C. § 78t-1(a)); *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1283 (N.D. Cal. 2019) (finding that trades that "predated" the alleged insider trading did not satisfy the contemporaneous requirement).  Nor can the Cancelled Shareholders claim contemporaneous trading when they made no trades at all—their ADS simply ceased to exist at the completion of Merger.  *See Pa. Ave. Funds v. Borey*, 2009 WL 902070, at *13 (W.D. Wash. Mar. 30, 2009) (dismissing insider trading claim where plaintiff "fail[ed] to allege that it traded at all" and instead alleged only that "it held . . . shares at the time of the merger").  Plaintiffs' insider trading claim should be dismissed entirely.

## CONCLUSION

Mr. Zhou respectfully requests that the FAC be dismissed against him with prejudice.

Dated:  April 29, 2022
   New York, New York

Respectfully Submitted,

**LATHAM & WATKINS LLP**

<u>/s/ Jason C. Hegt</u>
Eric F. Leon
Jason C. Hegt
Hanyu (Iris) Xie
1271 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Email:  eric.leon@lw.com
Email:  jason.hegt@lw.com
Email:  iris.xie@lw.com

*Attorneys for Defendant Hongyi Zhou*