# EXHIBIT 6

Case 1:19-cv-10067-PAE    Document 116-6    Filed 04/29/22    Page 2 of 11

EX-99.2 3 v427105_ex99-2.htm EXHIBIT 99.2

**Exhibit 99.2**

**Execution Version**

## AGREEMENT AND PLAN OF MERGER

**BY AND AMONG**

**TIANJIN QIXIN ZHICHENG TECHNOLOGY CO., LTD.**
(**天津奇信志成科技有限公司**),

**TIANJIN QIXIN TONGDA TECHNOLOGY CO., LTD.**
(**天津奇信通达科技有限公司**),

**TRUE THRIVE LIMITED**
(**诚盛有限公司**),

**NEW SUMMIT LIMITED**
(**新峰有限公司**)

**QIHOO 360 TECHNOLOGY CO. LTD.,**

**and solely for purposes of** Section 6.19 **hereto,**

**GLOBAL VILLAGE ASSOCIATES LIMITED**

**and**

**YOUNG VISION GROUP LIMITED**

**Dated as of December 18, 2015**

Case 1:19-cv-10067-PAE Document 116-6 Filed 04/29/22 Page 3 of 11

Section 2.6 <u>Directors and Officers</u>.

    (a)    The directors of Merger Sub immediately prior to the Effective Time shall, from and after the Effective Time, be the directors of the Surviving Company until their successors shall have been duly elected or appointed and qualified or until their earlier death, resignation or removal in accordance with the memorandum and articles of association of the Surviving Company.

    (b)    The officers of the Company immediately prior to the Effective Time shall, from and after the Effective Time, be the officers of the Surviving Company until their successors shall have been duly elected or appointed and qualified or until their earlier death, resignation or removal in accordance with the memorandum and articles of association of the Surviving Company.

**ARTICLE III**
**EFFECT OF MERGER ON ISSUED SHARE CAPITAL; MERGER CONSIDERATION; EXCHANGE OF CERTIFICATES**

Section 3.1 <u>Share Capital</u>. Upon the terms and subject to the conditions set forth in this Agreement, at the Effective Time, by virtue of the Merger and without any action on the part of the Parent Parties, the Company or the holders of any of the following securities, the following shall occur:

    (a)    <u>Share Capital of Merger Sub</u>. Each ordinary share, par value $1.00 per share, in the share capital of Merger Sub that is issued and outstanding immediately prior to the Effective Time shall be converted into one validly issued, fully paid and non-assessable ordinary share of the Surviving Company. Such conversion shall be effected by means of the cancellation of each such ordinary shares of Merger Sub, in exchange for the right to receive one such ordinary share of the Surviving Company.

    (b)    <u>Company Shares and ADSs</u>. Each Company Share (including Company Shares represented by ADSs) that is issued and outstanding immediately prior to the Effective Time (other than Excluded Shares) shall be canceled and cease to exist in exchange for the right to receive $51.33 in cash without interest (the "<u>Per Share Merger Consideration</u>"), payable in the manner provided in <u>Section 3.2</u> (or in the case of a Company Share represented by a lost, stolen or destroyed certificate, upon delivery of an affidavit in the manner provided in <u>Section 3.4</u>). For the avoidance of doubt, because each ADS represents 1 1/2 Class A Shares, each ADS that is issued and outstanding immediately prior to the Effective Time (other than ADSs that represent Excluded Shares) shall represent the right to surrender the ADS in exchange for $77.00 in cash without interest (the "<u>Per ADS Merger Consideration</u>") subject to the terms and conditions set forth in this Agreement and in the Deposit Agreement. The register of members of the Company shall be amended accordingly.

18

Case 1:19-cv-10067-RAE   Document 116-6   Filed 04/29/22   Page 4 of 11

Section 6.4     Go Shop.

(a)      Notwithstanding anything to the contrary set forth in this Agreement, from the date of this Agreement until 11:59 p.m. Hong Kong time on the date which is forty-five (45) days after the date of this Agreement (the "Go-Shop Period End Date"), the Company and the Company Subsidiaries and their respective Representatives shall have the right (acting under the direction of the Special Committee) to directly or indirectly (i) initiate, solicit and encourage Acquisition Proposals, including by way of public disclosure and by way of providing access to non-public information to any person (each, a "Solicited Person") pursuant to one or more Acceptable Confidentiality Agreements; provided, that the Company shall promptly provide to Parent any information concerning the Company or the Company Subsidiaries that it has provided to any Solicited Person which was not previously provided to Parent; and (ii) enter into and maintain discussions or negotiations with respect to Acquisition Proposals or otherwise cooperate with, assist or participate in, facilitate, or take any other action in connection with any such inquiries, proposals, discussions or negotiations. Within forty-eight (48) hours following the Go-Shop Period End Date, the Company shall notify Parent of the material terms and conditions of any proposal or offers regarding an Acquisition Proposal (including any amendments or modifications thereof) received from any Excluded Party (as defined below) and the identity thereof. Except as otherwise expressly provided in Section 6.4(b), the Company shall (x) immediately cease any discussions with any person (other than Parent and any Excluded Party) that are ongoing as of the Go-Shop Period End Date and that relate, or may reasonably be expected, to lead to an Acquisition Proposal, and (y) promptly request each person (other than Parent and any Excluded Party) that has heretofore executed a standstill, confidentiality or similar agreement in connection with such person's consideration of an Acquisition Proposal to return (or if permitted by the applicable agreement, destroy) all information required to be returned (or, if applicable, destroyed) by such person under the terms of the applicable agreement. Except as set forth in Section 6.4(b), immediately after the Go-Shop Period End Date until the Effective Time or, if earlier, the termination of this Agreement in accordance with Article VIII, the Company agrees that neither it nor any of the Company Subsidiaries shall, nor shall the Company or any of the Company Subsidiaries authorize or permit any of their respective Representatives to, directly or indirectly:

(i)      initiate, solicit, propose, encourage (including by providing information) or take any action to knowingly facilitate any inquiries or the making of any proposal or offer that constitutes, or may reasonably be expected to lead to, an Acquisition Proposal;

(ii)      engage in, continue or otherwise participate in any discussions or negotiations regarding, or provide any information or data concerning the Company or any Company Subsidiary to any Person relating to, any Acquisition Proposal or any proposal or offer that could reasonably be expected to lead to an Acquisition Proposal, with the intent to induce the making, submission or announcement of, or the intent to encourage, facilitate or assist, an Acquisition Proposal;

(iii)      grant any waiver, amendment or release under any standstill or confidentiality agreement or any anti-takeover Law, or otherwise knowingly facilitate any effort or attempt by any Person to make an Acquisition Proposal;

(iv)      approve, endorse, recommend, execute or enter into any Alternative Acquisition Agreement or any proposal or offer that could reasonably be expected to lead to an Acquisition Proposal; or

(v)      propose, agree or publicly announce an intention to do any of the foregoing.

54

(b)        Notwithstanding anything to the contrary in this Agreement, at any time prior to the receipt of the Shareholder Approval, the Company, the Company Subsidiaries and the Company's and the Company Subsidiaries' Representatives may, following the receipt of an unsolicited bona fide written Acquisition Proposal that did not result from a breach of this Section 6.4:

(i)        grant a waiver, amendment or release under any standstill or confidentiality agreement or any anti-takeover Law for the purpose of allowing any Person or group of Persons to make an Acquisition Proposal;

(ii)        contact the Person or group of Persons who has made such Acquisition Proposal to clarify and understand the terms and conditions thereof so as to determine whether such Acquisition Proposal constitutes a Superior Proposal or could reasonably be expected to result in a Superior Proposal;

(iii)        provide information (including any non-public information or data concerning the Company or any of the Company Subsidiaries) in response to the request of the Person or group of Persons who has made such Acquisition Proposal, if and only if, prior to providing such information, the Company has received from the Person or group of Persons so requesting such information an executed Acceptable Confidentiality Agreement (a copy of which shall be promptly (in all events within 48 hours) provided to Parent); provided that the Company shall concurrently make available to Parent any non-public information concerning the Company and the Company Subsidiaries that is provided to any Person or group of Persons making such Acquisition Proposal that is given such access and that was not previously made available to Parent or its Representatives; and/or

(iv)        engage or participate through the Special Committee in any discussions or negotiations with the Person or group of Persons who has made such Acquisition Proposal. For the avoidance of doubt, after the Go-Shop Period End Date, the Company may continue to take any of the actions described in Section 6.4(a) with respect to any proposals or offers regarding an Acquisition Proposal submitted by a Solicited Person on or before the Go-Shop Period End Date if the Special Committee determines in good faith (after consultation with its financial advisor and outside legal counsel) that such Acquisition Proposal constitutes, or may reasonably be expected to result in, a Superior Proposal (each such Solicited Person, an "Excluded Party");

provided that prior to taking any action described in Section 6.4(b)(iii) or Section 6.4(b)(iv) above, the Company Board (or the Special Committee) shall have determined in good faith, based on the information then available and after consultation with its financial advisor and outside legal counsel, that such Acquisition Proposal either constitutes a Superior Proposal or is reasonably likely to result in a Superior Proposal.

(c)        except as expressly provided by Section 6.4(d) and Section 6.4 (e), neither the Company Board nor any committee thereof shall:

55

Case 1:19-cv-10067-PAE   Document 116-6   Filed 04/29/22   Page 6 of 11

(i)      (A) withhold, withdraw (or not continue to make), qualify or modify (or publicly propose or resolve to withhold, withdraw (or not continue to make), qualify or modify), in a manner adverse to any Parent Party, the Company Recommendation with respect to the Merger, (B) authorize, approve or recommend, or declare advisable (publicly or otherwise) or propose to authorize, approve or recommend (publicly or otherwise) an Acquisition Proposal, (C) fail to recommend against any Acquisition Proposal subject to Regulation 14D under the Exchange Act in a Solicitation/Recommendation Statement on Schedule 14D-9 within ten (10) Business Days after the commencement of such Acquisition Proposal, (D) fail to include the Company Recommendation in the Proxy Statement or (E) make any other public statement that is inconsistent with the Company Recommendation (any action described in clauses (A) through (E), a "Company Adverse Recommendation Change"); provided, however, that a "stop, look and listen" communication by the Company Board (or the Special Committee) pursuant to Rule 14d-9(f) of the Exchange Act or a statement that the Company Board has received and is currently evaluating an Acquisition Proposal, which did not result from any breach of this Section 6.4, shall not be deemed to be a Company Adverse Recommendation Change; or

(ii)     cause or permit the Company or any Company Subsidiary to enter into any Alternative Acquisition Agreement.

(d)      Notwithstanding anything to the contrary set forth in this Agreement, at any time prior to obtaining the Shareholder Approval, the Company Board (upon recommendation of the Special Committee) may (x) in response to an Intervening Event, effect a Company Adverse Recommendation Change or (y) if the Company has received a bona fide written Acquisition Proposal from any Person that is not withdrawn and that the Company Board (upon recommendation of the Special Committee) concludes in good faith constitutes a Superior Proposal, (i) effect a Company Adverse Recommendation Change with respect to such Superior Proposal and/or (ii) authorize the Company to terminate this Agreement to enter into an Alternative Acquisition Agreement with respect to such Superior Proposal, if and only if:

(i)      (A) with respect to a Company Adverse Recommendation Change in response to an Intervening Event, the Company Board (or the Special Committee) determines in good faith, after consultation with its independent nationally recognized financial advisor and outside legal counsel, that failure to do so would reasonably be expected to be inconsistent with its fiduciary duties under applicable Laws, or (B) with respect to a Company Adverse Recommendation Change or a termination of this Agreement to enter into an Alternative Acquisition Agreement with respect to a bona fide written Acquisition Proposal that did not result from a breach of this Section 6.4, the Company Board (or the Special Committee) determines in good faith that such Acquisition Proposal constitutes a Superior Proposal;

(ii)     the Company shall have complied with its obligations under this Section 6.4;

56

(iii)      prior to effecting a Company Adverse Recommendation Change or terminating this Agreement to enter into an Alternative Acquisition Agreement in accordance with Section 6.4(d)(y), (A) the Company shall have provided prior written notice to Parent at least five (5) Business Days in advance (the "Notice Period"), to the effect that the Company Board has received a *bona fide* written Acquisition Proposal that is not withdrawn and that the Company Board (upon recommendation of the Special Committee) concludes in good faith constitutes a Superior Proposal and, absent any revision to the terms and conditions of this Agreement, the Company Board has resolved to effect a Company Adverse Recommendation Change or terminate this Agreement to enter into an Alternative Acquisition Agreement with respect to such Superior Proposal pursuant to this Section 6.4(d), which notice shall specify the basis for such Company Adverse Recommendation Change or termination of this Agreement, including the identity of the party making the Superior Proposal, the material terms thereof, and (B) prior to effecting such Company Adverse Recommendation Change or terminating this Agreement to enter into such Alternative Acquisition Agreement, the Company shall, and shall cause its financial and legal advisors to, during the Notice Period, (1) provide to Parent and the Parent Representatives any confidential information that has been disclosed to the party making the Superior Proposal and has not been disclosed to Parent or the Parent Representatives, (2) negotiate with Parent and the Parent Representatives in good faith (to the extent Parent desires to negotiate) to make such adjustments in the terms and conditions of this Agreement, so that such Acquisition Proposal would cease to constitute a Superior Proposal, and (3) permit Parent and the Parent Representatives to make a presentation to the Company Board and the Special Committee regarding this Agreement and any adjustments with respect thereto (to the extent Parent desires to make such presentation); provided that in the event of any material revisions to the Acquisition Proposal that the Company Board has determined to be a Superior Proposal, the Company shall deliver a new written notice to Parent and comply with the requirements of this Section 6.4 (including Section 6.4(d)) with respect to such new written notice; and

(iv)      following the end of the Notice Period (and any renewed period thereof), the Company Board (or the Special Committee) shall have determined in good faith (after consultation with its financial advisor and outside legal counsel), after considering the terms of any proposed amendment or modification to this Agreement and/or the Financing Documents, that (1) with respect to a Company Adverse Recommendation Change, failure to effect a Company Adverse Recommendation Change would still reasonably be expected to be inconsistent with the directors' fiduciary duties under applicable Laws or (2) with respect to a termination of this Agreement to enter into an Alternative Acquisition Agreement with respect to an Acquisition Proposal, such Acquisition Proposal continues to constitute a Superior Proposal.

57

Case 1:19-cv-10067-PAE   Document 116-6   Filed 04/29/22   Page 8 of 11

(e)        Nothing contained in this Section 6.4 shall be deemed to prohibit the Company or the Company Board (or the Special Committee) from complying with its disclosure obligations under applicable Laws, including U.S. federal Law, with regard to an Acquisition Proposal, including taking and disclosing to its shareholders a position contemplated by Rule 14d-9 or Rule 14e-2(a) under the Exchange Act (or any similar communication to shareholders); provided that any such disclosure (other than a statement that the Company Board or the Special Committee has received and is currently evaluating such Acquisition Proposal and/or describing the operation of this Agreement with respect thereto, or a "stop, look and listen" communication or similar communication of the type contemplated by Rule 14d-9(f) under the Exchange Act) shall be deemed to be a Company Adverse Recommendation Change unless the Company Board expressly publicly reaffirms the Company Recommendation within two (2) Business Days following any request by Parent.

(f)        Following the Go-Shop Period End Date, the Company shall promptly (and, in any event, within 24 hours) notify Parent if any proposals or offers with respect to an Acquisition Proposal are received by, any non-public information is requested from, or any discussions or negotiations are sought to be initiated or continued with, the Company, the Company Board or any Company Representative indicating, in connection with such notice, the identity of the Person or group of Persons making such offer or proposal, the material terms and conditions of any proposals or offers (including, if applicable, copies of any written proposals or offers, including proposed agreements) and thereafter shall keep Parent reasonably informed, on a reasonably current basis (at least every two Business Days), of the status and terms of any such proposals or offers (including any amendments thereto that are material in any respect) and the status of any such discussions or negotiations. None of the Company, the Company Board or any committee of the Company Board shall enter into any binding agreement or Contract with any Person to limit or not to give prior notice to Parent of its intention to effect a Company Adverse Recommendation Change in light of a Superior Proposal.

(g)        In the event any Company Representative takes any action which, if taken by the Company, would constitute a breach of this Section 6.4, then the Company shall be deemed to be in breach of this Section 6.4.

(h)        Prior to the termination of this Agreement pursuant to Article VIII, the Company shall not submit to the vote of the holders of Company Shares any Acquisition Proposal or propose to do so.

58

Case 1:19-cv-10067-PAE   Document 116-6   Filed 04/29/22   Page 9 of 11

Section 6.16 <u>No Amendment to Buyer Group Contracts</u>. The Parent Parties shall not, and each shall cause its respective controlled Affiliates not to amend or modify any Buyer Group Contract.

Section 6.17 <u>Management</u>. In no event shall Parent or Merger Sub or any of their respective Affiliates, enter into or seek to enter into any arrangements that are effective prior to the Closing with any member of the Company's management or any other Company employee that contain any terms that prohibit or restrict such member of management or such employee from taking any action that the Company is permitted to take pursuant to Section 6.4.

Section 6.18 <u>Actions Taken at Direction of Parent or Chairman</u>. Notwithstanding anything herein to the contrary, the Company shall not be deemed to be in breach of any representation, warranty, covenant or agreement hereunder, if the alleged breach is the proximate result of action or inaction taken by the Company at the express direction of any officer or director of Parent, including Mr. Hongyi Zhou, without the approval or direction of the Company Board (acting with the concurrence of the Special Committee) or the Special Committee.

Section 6.19 <u>Obligations of Founder Securityholders</u>. At the Company Shareholders Meeting and any other meeting of the shareholders of the Company called to seek the Shareholder Approval or in any other circumstances upon which a vote, consent or other approval (including by written consent) with respect to this Agreement, the Merger or any other transaction contemplated hereby is sought, each Founder Securityholder shall, and shall cause its Affiliates to, vote all Company Shares held or otherwise beneficially owned by it in favor of granting the Shareholder Approval, and waive any Dissenter Rights or appraisal rights it may have under the Cayman Companies Law. Each Founder Securityholder agrees that it shall not, and shall cause its Affiliates not to, sell, transfer or otherwise dispose of any Company Shares held or otherwise beneficially owned by it between the date of this Agreement and the earliest to occur of (a) the Effective Time, (b) the termination of this Agreement in accordance with Article VIII under circumstances in which the Parent Termination Fee would not become due and payable pursuant to Section 8.2(c) hereof, and (c) the termination of the Escrow Agreement in the event that this Agreement is terminated in accordance with Article VIII under circumstances in which the Parent Termination Fee would become due and payable pursuant to Section 8.2(c) hereof.

**ARTICLE VII**
**CLOSING CONDITIONS**

Section 7.1 <u>Conditions to Obligations of Each Party Under This Agreement</u>. The respective obligations of each Party to effect the Merger and the other transactions contemplated herein shall be subject to the satisfaction, or waiver (in the case of the Company, upon the approval of the Special Committee), at or prior to the Closing Date of the following conditions:

    (a)      <u>Shareholder Approval</u>. The Shareholder Approval shall have been obtained.

67

IN WITNESS WHEREOF, the Parent Parties and the Company have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

Tianjin Qixin Zhicheng Technology Co., Ltd.
(天津奇信志成科技有限公司)

By: /s/ Hongyi Zhou [Company Stamp of Tianjin Qixin Zhicheng Technology Co., Ltd.]
Name: Hongyi Zhou
Title: Legal Representative

Tianjin Qixin Tongda Technology Co., Ltd.
(天津奇信通达科技有限公司)

By: /s/ Hongyi Zhou [Company Stamp of Tianjin Qixin Tongda Technology Co., Ltd.]
Name: Hongyi Zhou
Title: Legal Representative

True Thrive Limited
(诚盛有限公司)

By: /s/ Hongyi Zhou
Name: Hongyi Zhou
Title: Director

New Summit Limited
(新峰有限公司)

By: /s/ Hongyi Zhou
Name: Hongyi Zhou
Title: Director

Qihoo 360 Technology Co. Ltd.

By: /s/ Eric X. Chen
Name: Eric X. Chen
Title: Director

[*Signature Page to Agreement and Plan of Merger*]

Case 1:19-cv-10067-PAE   Document 116-6   Filed 04/29/22   Page 11 of 11

solely for purposes of Section 6.19 hereto

Global Village Associates Limited

By: /s/ Hongyi Zhou
_____
Name: Hongyi Zhou
Title: Authorized Representative

Young Vision Group Limited

By: /s/ Xiangdong Qi
_____
Name: Xiangdong Qi
Title: Director

[*Signature Page to Agreement and Plan of Merger*]