**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ALTIMEO ASSET MANAGEMENT, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>QIHOO 360 TECHNOLOGY CO. LTD., HONGYI ZHOU, XIANGDONG QI and ERIC X. CHEN,<br><br>                    Defendants. | Case No. 1:19-cv-10067-PAE<br><br><br>Oral Argument Requested |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT HONGYI ZHOU'S**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................. 1

II.   STATEMENT OF FACTS ............................................................................................. 3

      A.    Zhou Led the Buyer Group in Taking Qihoo Private For Far Below Its Fair Value
            ........................................................................................................................ 3

      B.    Defendants' False and Misleading Statements Concerning the Merger ................. 4

      C.    Qihoo Was Enormously Undervalued in the Merger ............................................ 6

III.  ARGUMENT ................................................................................................................. 7

      A.    Plaintiffs Adequately Allege Misrepresentations Related to the Fairness of the
            Merger, Reasons for the Merger, and Alternatives to the Merger ......................... 7

            1.    Zhou's Fairness Statements Were False and Misleading ........................... 7

            2.    Zhou Misrepresented the Reasons for the Merger ................................... 10

            3.    Zhou Falsely Represented the Alternatives to the Merger ........................ 11

      B.    Plaintiffs Adequately Allege Reliance as to the Tenderers ................................. 11

      C.    Plaintiffs Adequately Alleges Loss Causation ................................................... 15

            1.    Loss Causation is Adequately Pled Based on Fair Value ......................... 15

            2.    Zhou Rejects the Established Authority for Defrauded Sellers ................ 20

      D.    Plaintiffs Adequately Allege Section 20A Claims and Cayman Law Omissions  24

IV.   CONCLUSION .............................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. U.S.*,
406 U.S. 128 (1972)..................................................................................2, 3, 14, 15

*Aimis Art Corp. v. N. Tr. Secs., Inc.*,
641 F. Supp. 2d 314 (S.D.N.Y. 2009)....................................................................23

*Ark. Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
879 F.3d 474 (2d Cir. 2018)...................................................................................12

*Arkansas Tchr. Ret. Sys. v. Goldman Sachs*,
11 F.4th 138 (2d Cir. 2021) ...................................................................................20

*Azar v. Blount Int'l*,
2017 WL 1055966 (D. Or. Mar. 20, 2017)..........................................................8, 16

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)....................................................................................12, 13, 14

*Basile v. Valeant Pharm. Int'l*,
2015 WL 7352005 (C.D. Cal. Nov. 9, 2015).........................................................25

*Baum v. Harman Int'l Indus.*,
408 F. Supp. 3d 70 (D. Conn. 2019)..............................................................8, 9, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................7

*Black v. Finantra Cap., Inc.*,
418 F.3d 203 (2d Cir. 2005)....................................................................................13

*Brown v. Brewer*,
2010 WL 2472182 (D. Del 2010) ...........................................................................17

*Brown v. Papa Murphy's Hold.*,
2021 WL 1574446 (W.D. Wash. Apr. 22, 2021).........................................8, 17, 22

*C.D.T.S. v. UBS AG*,
2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013), *aff'd*, 604 F. App'x 5 (2d Cir.
2015) ........................................................................................................................22

*City of Roseville v. EnergySolutions*,
    814 F. Supp. 2d 395 (S.D.N.Y. 2011)...................................................................................10

*Cohen v. Stevanovich*,
    722 F. Supp. 2d 416 (S.D.N.Y. 2010)..................................................................................20

*Collier v. Aksys Ltd.*,
    2005 WL 1949868 (D. Conn. Aug. 15, 2005) .........................................................................21

*Davis v. Scottish Re Grp.*,
    159 A.D. 3d 528 (1st Dep't 2018) ..................................................................................14, 25

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)....................................................................................................15, 17, 20

*Emergent Cap. Inv. Mgmt. v. Stonepath Grp.*,
    343 F.3d 189 (2d Cir. 2003)...............................................................................................20

*Enzo Biochem v. Harbert Disc. Fund*,
    2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021).........................................................................17

*Fin. Guar. Ins. Co. v. Putnam Adv.*,
    783 F.3d 395 (2d Cir. 2015)................................................................................................19

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
    639 F. App'x 664 (2d Cir. 2016) .........................................................................................14

*Goldman Sachs Gr. v. Ark. Tchr. Ret. Sys.*,
    141 S. Ct. 1951 (2021)........................................................................................................14

*Gordon v. Sonar Cap. Mgmt.*,
    2014 WL 3900560 (S.D.N.Y. Aug. 1, 2014)........................................................................23

*Grace v. Rosenstock*,
    169 F.R.D. (E.D.N.Y.), aff'd, 169 F.R.D. (E.D.N.Y. 1996) ..................................................12

*Gray v. Wesco*,
    454 F. Supp. 3d 366 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021)..............9, 22, 23

*Green v. Hamilton Int'l*,
    437 F. Supp. 723 (S.D.N.Y. 1977) .....................................................................................25

*Gruber v. Gilbertson*,
    2019 WL 4458956 (S.D.N.Y. Sept. 17, 2019).....................................................................24

*Haideri v. Jumei Int'l Hold.*,
    2021 WL 4170791 (N.D. Cal. Sept. 14, 2021) ...........................................................7, 10, 23

*Halliburton Co. v. Erica P. John Fund., Inc.* (*Halliburton II*),
  573 U.S. 258 (2014)......................................................................................................2, 14

*In re Avon Sec. Litig.*,
  2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) ..........................................................................8

*In re Bristol Myers Squibb Co. Sec. Litig.*,
  586 F. Supp. 2d 148 (S.D.N.Y. 2008)......................................................................................20

*In re Citigroup Auction Rate Sec. Litig.*,
  700 F. Supp. 2d 294 (S.D.N.Y. 2009)......................................................................................20

*In re Envision Healthcare Corp.*,
  2019 WL 3494407 (D. Del. Aug. 1, 2019) .......................................................................16, 17

*In re Forcefield Energy Inc. Sec. Litig.*,
  2015 WL 4476345 (S.D.N.Y. July 22, 2015) ..........................................................................13

*In re Hot Topic, Inc. Sec. Litig.*,
  2014 WL 7499375 (C.D. Cal. May 2, 2014) ......................................................................8, 16

*In re IPO Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006)........................................................................................................14

*In re Lehman Bros. Sec. & ERISA Litig.*,
  131 F. Supp. 3d 241 (S.D.N.Y. 2015).......................................................................................9

*In re Mindbody, Inc. Sec. Litig.*,
  489 F. Supp. 3d 188 (S.D.N.Y. 2020)...........................................................................8, 21, 25

*In re Ocera Theraps.*,
  806 F. App'x 603 (9th Cir. 2020) (Mem. ) ..............................................................................23

*In re Priceline.com Inc.*,
  236 F.R.D. 89 (D. Conn. 2006)................................................................................................13

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001).........................................................................................................7

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
  571 F. Supp. 2d 1315 (N.D. Ga. 2007) ....................................................................................13

*In re Seadrill Ltd. Sec. Litig.*,
  2016 WL 3461311 (S.D.N.Y. June 20, 2016) (Mem. ) ...........................................................11

*In re Smith Barney Transfer Agent Litig.*,
  884 F. Supp. 2d 152 (S.D.N.Y. 2012).......................................................................................10

*In re Vale S.A. Sec. Litig.*,
   2022 WL 122593 (E.D.N.Y. Jan. 11, 2022) ..............................................................................23

*In re Willis Towers Watson PLC Proxy Litig.*,
   2020 WL 5361582 (E.D. Va. Sept. 4, 2020)..................................................................16, 22

*Johnson v. Aljian*,
   490 F.3d 778 (9th Cir. 2007) .......................................................................................................24

*Knipe v. Skinner*,
   999 F.2d 708 (2d Cir. 1993).........................................................................................................25

*Kocourek v. Shrader*,
   391 F. Supp. 3d 308 (S.D.N.Y. 2019)........................................................................................22

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
   897 F. Supp. 2d 168 (S.D.N.Y. 2012), *aff'd*, 543 F. App'x 72 (2d Cir. 2013).........................20

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005).........................................................................................................20

*Levie v. Sears Roebuck & Co.*,
   496 F. Supp. 2d 944 (N.D. Ill. 2007) .........................................................................................23

*Lewis v. Termeer*,
   445 F. Supp. 2d 366 (S.D.N.Y. 2006).........................................................................................16

*Leykin v. AT&T*,
   423 F. Supp. 2d 229 (S.D.N.Y. 2006).........................................................................................20

*Lichtenberg v. Besicorp Grp.*,
   43 F. Supp. 2d 376 (S.D.N.Y. 1999)...........................................................................................16

*Lickteig v. Cerberus Cap. Mgmt.*,
   2020 WL 1989424 (S.D.N.Y. Apr. 26, 2020).............................................................................9

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015).........................................................................................................15

*Malone v. Brincat*,
   722 A.2d 5 (Del. 1998) ..................................................................................................................25

*McIntire v. China MediaExpress Holds.*,
   38 F. Supp. 3d 415 (S.D.N.Y. 2014)...........................................................................................13

*Mendell v. Greenberg*,
   938 F.2d 1528 (2d Cir. 1991).......................................................................................................16

*Meyer v. JinkoSolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014)..............................................................................................7

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970)................................................................................................ *passim*

*NECA-IBEW Pen. Tr. F. v. Prec. Castparts*,
2017 WL 4453561 (D. Or. Oct. 3, 2017)......................................................................9, 19

*ODS Cap. LLC v. JA Solar Holds.*,
2020 WL 7028639 (S.D.N.Y. Nov. 30, 2020)...................................................... *passim*

*ODS v. Qihoo*,
No. 1:19-cv-0501, ECF No. 1 (S.D.N.Y.) ...................................................................23

*Okl. Firefighters Pen. & Ret. Sys. v. Student Loan Corp.*,
951 F. Supp. 2d 479 (S.D.N.Y. 2013).........................................................................9

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pen. Fund*,
575 U.S. 175 (2015).........................................................................................8

*Pa. Ave. Funds v. Borey*,
2009 WL 902070 (W.D. Wash. Mar. 30, 2009) .......................................................25

*Pierre J. LeLandais & Co. v. MDS-Atron*,
543 F.2d 421 (2d Cir. 1976)................................................................................16, 17

*Sable v. Southmark/Envicon*,
819 F. Supp. 324 (S.D.N.Y. 1993) ...........................................................................14

*Salvani v. InvestorsHub.com, Inc.*,
628 F. App'x 784 (2d Cir. 2015) ...............................................................................20

*San Antonio Fire & Police Pen. Fund v. Dole Food Co.*,
177 F. Supp. 3d 838 (D. Del. 2016)...........................................................................15, 21

*Schlick v. Penn-Dixie*,
507 F.2d 374 (2d Cir. 1974).....................................................................................16

*Simon DeBartolo Grp. v. Richard E. Jacobs Grp.*,
186 F.3d 157 (2d Cir. 1999)....................................................................................15

*Stratte-McClure v. Morgan Stanley*,
776 F.3d 94 (2d Cir. 2015).....................................................................................15

*Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*,
2019 WL 1368570 (S.D.N.Y. Mar. 26, 2019) ...........................................................13

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016)................................................................................................9

*Tracinda Corp. v. DaimlerChrysler AG*,
  197 F. Supp. 2d 42 (D. Del. 2002)............................................................................19, 21, 24

*Vine v. Beneficial Fin. Co.*,
  374 F.2d 627 (2d Cir. 1967).............................................................................................25

*Virginia Bankshares, Inc. v. Sandberg*,
  501 U.S. 1083 (1991)......................................................................................................11

*Wilson v. Great Am. Indus.*,
  979 F.2d 924 (2d Cir. 1992).......................................................................................16, 17, 22

## Rules

Rule 4 of the Federal Rules of Civil Procedure ................................................................1

Rule 8 of the Federal Rules of Civil Procedure ..............................................................15

Rule 9 of the Federal Rules of Civil Procedure ................................................................7

Rule 12 of the Federal Rules of Civil Procedure ..............................................................7

## Regulations

17 CFR § 240.13e-100......................................................................................................18

17 CFR § 229.1006...........................................................................................................18

## Other Authorities

Jacobs, Disclosure and Remedies Under the Securities Laws, § 20:53 (Mar. 2020) ....................16

Samuel C. Thompson, Jr., A Lawyer's Guide to Modern Valuation Techniques in
  M&A, 21 J. Corp. L. 457, 460 (1996) ..................................................................................17

Lead Plaintiffs Altimeo Asset Management and ODS Capital LLC (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in opposition to Defendant Hongyi Zhou's Motion to Dismiss the First Amended Complaint (ECF Nos. 114-16).[1]

## I.    INTRODUCTION

Defendants' false denials of their plan to relist Qihoo after the Merger at issue in this action have already been held to be actionable. The Second Circuit ruled that the Complaint adequately alleges that the statement "that 'the Buyer Group does not have any current plans' to relist Qihoo—as well as its omission of any such plan—was misleading." ECF No. 88 at 11. In response, Qihoo and Chen chose to answer rather than to seek dismissal as to the remainder of the Complaint. Zhou then appeared over three years after this action began and only after the Court allowed Plaintiffs to serve him under F.R.C.P. Rule 4(f)(3). ECF Nos. 105, 111.

Zhou's belated motion challenges the falsity of Defendants' remaining statements, reliance only as to shareholders that tendered their Qihoo securities in the Merger ("Tenderers") but not ones that sold before that time ("Sellers"), loss causation, and insider trading. Zhou's falsity and reliance arguments cannot dispose of this action because he does not challenge the relisting statements or reliance as to the Sellers. They also fail for the following reasons.

***Falsity.*** The falsity of statements regarding the fairness of the Merger, the reasons for the Merger, and the availability of alternatives is adequately alleged because, as Zhou explains, this Court held previously that "each of the four categories of alleged misrepresentations rested upon the premise that . . . 'the Buyer group already planned to relist Qihoo at a far-higher valuation.'" (Mem. at 8). While each category of misstatements is actionable for independent reasons, the Complaint also alleges that they were false and misleading because of the relisting plan.

---

[1] ¶ _ references herein are to paragraphs of the First Amended Complaint ("Complaint," ECF No. 53). Zhou's Memo of Law in Support of his Motion (ECF No. 115) is referenced as "Mem." Terms not defined herein have the same meaning as in the Complaint. Internal quotations marks and citations are omitted, and emphases are added, unless noted otherwise.

¶ 159(b)-(d). The Court should reject Zhou's falsity arguments for this reason alone.

Statements about the fairness of the Merger were also false and misleading because they misrepresented Qihoo's fair value. The law is clear that fairness statements are actionable when defendants fail to disclose information showing the company is worth more than what they describe as fair. *See infra* at 8-9. Zhou did that by disclosing to shareholders a weaker set of projections than what he gave to the Buyer Group. Those internal projections supported Qihoo being worth five times the Merger price upon relisting. ¶ 115. The reasons for the Merger similarly described Qihoo's business difficulties when it actually had substantial opportunities.

**Reliance.** Zhou argues that the Tenderers are not entitled to the fraud-on-the-market presumption of reliance because the Merger was a privately negotiated transaction. This argument fails for multiple reasons. **First**, the Supreme Court has held that when minority shareholder votes are needed for a merger, as was the case here (¶ 85), reliance is satisfied without needing to address the fraud-on-the-market presumption. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 384-85 (1970). **Second**, the fraud-on-the-market presumption applies because the Tenderers relied on the market price of Qihoo securities when deciding how to act in connection with the Merger. As the court in *Shanda Games* has held, a plaintiff who traded shares in a merger can show "that he traded in an efficient market." 2022 WL 992794, at *5 (S.D.N.Y. Mar. 31, 2022). **Third**, market efficiency is only an "indirect proxy for price impact." *Halliburton Co. v. Erica P. John Fund., Inc.* (*Halliburton II*), 573 U.S. 258, 281 (2014). There is no need to use an "indirect proxy" when price impact can be shown directly. Plaintiffs can do so here because even Zhou admits that statements about the Merger impacted Qihoo's ADS price. (Mem. at 17). **Fourth**, Plaintiffs are entitled to the *Affiliated Ute* presumption for omissions.

**Loss Causation.** A long line of authority firmly establishes that when investors are

defrauded into selling securities at artificially deflated prices, damages are measured in terms of "the difference between the fair value" that the "seller received and the fair value of what he would have received" absent the fraud. *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 155 (1972). The allegations here easily satisfy Plaintiffs' burden to plausibly allege that all of Defendants' misrepresentations led shareholders to substantially undervalue Qihoo in the Merger. This includes Zhou's plan to relist Qihoo at multiple times the Merger price, which he admitted would "make a fortune" (¶ 126); the secret internal projections that he disclosed to the Buyer Group (¶ 115); Qihoo's true business opportunities (¶¶ 117-29); and Qihoo's relisting for over five times the Merger price (¶¶ 100, 102, 105), among other reasons described below.

Zhou's arguments in response are not specific to Qihoo. He instead challenges the basic concept of how courts have established that damages are measured in defrauded seller cases, particularly for going-private transactions. As this Court explained in connection with the *JA Solar* appeal, Zhou's argument "seems like an overreach" because "you're never going to get [a stock drop when] there's a buyout by virtue of the tender offer and so on that theory," a plaintiff, "even if lied to like crazy" will never be able to have a claim. (Grunfeld Decl., Ex. A at 15:9-22).

***Insider Trading.*** Plaintiffs adequately allege an insider trading claim against Zhou under Section 20A. The court in *Shanda Games* recently held that similar allegations sufficed against the company's CEO who was also a member of the Buyer Group. 2022 WL 992794, at *1, 8-9.

In sum, Zhou evaded service for over three years and only now files motion to dismiss raising mostly non-dispositive and entirely meritless arguments. The Court should dispose of his motion so that Zhou does not delay this case any further and the parties can proceed to discovery.

## II.    STATEMENT OF FACTS

### A.    <u>Zhou Led the Buyer Group in Taking Qihoo Private For Far Below Its Fair Value</u>

In 2016, Defendants Zhou and Qi, Qihoo's co-founders, CEO and President, and two

largest shareholders, led the Buyer Group that paid $9.3 billion to take the Company private in the Merger. ¶¶ 3, 22-23, 62-64. They made their offer on June 17, 2015 for 36% below Qihoo's share price just 14 months earlier and just 16.6% above its closing price the prior day. ¶ 42; (Declaration in Support of Zhou's Motion ("Xie Decl.," ECF No. 116), Ex. 1 at 45, 61). Qihoo agreed to the Merger on December 18, 2015 and issued the Proxies for it between January 11, 2016 and March 3, 2016. ¶¶ 60, 66. Even with the entire Buyer Group supporting the Merger, the votes of a significant number of minority shareholders were needed to approve the deal. ¶ 85.[2]

After the Merger closed on July 15, 2016, Zhou proceeded with a "backdoor listing" by merging Qihoo's main businesses into SJEC, an elevator company that was listed on the Shanghai Stock Exchange, so that Qihoo would be relisted on that stock market. ¶¶ 93-100. SJEC announced the relisting on November 2, 2017. ¶ 96. Immediately upon its relisting on February 28, 2018, just the portion of Qihoo that was relisted had a market capitalization of $62 billion, as compared to $9.3 billion in the Merger. ¶¶ 100, 105. Zhou continued to control the newly listed company. ¶ 96. Splitting Qihoo up and relisting only its main businesses meant that Qihoo was worth *even more* than $62 billion at the time of its relisting because that valuation did not account for the Company's businesses that were spun off before the relisting. ¶ 102.

While the Proxy told shareholders that they had the right to pursue an appraisal in the Cayman Islands, only three Qihoo shareholders did so. ¶ 138. Others did not because the misstatements in the Proxy prevented shareholders from making an informed decision. ¶ 282.

**B.    Defendants' False and Misleading Statements Concerning the Merger**

While the Court dismissed the Complaint on August 14, 2020, Plaintiffs appealed and on November 24, 2021, the Second Circuit ruled that the Complaint's "allegations create a plausible

---

[2] Minority shareholders consisting of 5.4% of all voting rights had to vote for the Merger if all shareholders voted. ¶ 85. That amounts to 14% of minority voting rights. *See* ¶¶ 83-84.

4

inference that a concrete plan [to relist] was in place at the time Qihoo issued the Proxy Materials." ECF Nos. 84, 88 at 11. In addition to being false and misleading because of the relisting plan, Zhou's other statements are actionable for the following independent reasons.

*Zhou falsely described the Merger price as "fair."* The Proxy falsely described the Merger price as "fair" to Qihoo's shareholders. Defendants, however, knew at the time that Qihoo's fair value was multiple times the Merger price. ¶¶ 82, 115, 129, 154-58, 159(c), 187-217, 239-41. The Proxy also disclosed the false projections that formed the basis for J.P. Morgan's fairness opinion that, in turn, supported Defendants' affirmations of fairness. ¶¶ 56, 82, 159(c), 196-98, 202. The Proxy represented that these projections were "prepared on a reasonable basis" and "reflects the best currently available estimates" of Qihoo's management. (Xie Decl., Ex. 1 at 51); ¶ 54. The projections did not reflect management's "best currently available estimates" because Zhou had more positive internal estimates that he secretly shared with the Buyer Group. ¶ 115. Defendants also based the public projections on assumptions about Qihoo's business that misrepresented Zhou's business plans for Qihoo. ¶¶ 77, 113, 239-41.

*Zhou misrepresented the reasons for the Merger.* Defendants falsely portrayed the Merger as beneficial for all parties and fair to minority shareholders because Qihoo would be better served as a private company in light of business difficulties that it faced in China, including "increased competition in the Company's industry," "the recent economic slowdown in China and expected sustained macroeconomic challenges," and "government regulation." ¶¶ 75-82, 117-33, 159(d), 218-26, 237-38. These reasons misrepresented that Zhou actually planned to realize far greater value based on Qihoo's increased business opportunities in China. *Id.*

Zhou asserts that "[a]ll four versions [of the Proxy] were similar." (Mem. at 5). This ignores how Defendants made the Proxy even more false and misleading in response to the

SEC's pointed questions about the basis for the Merger's fairness. ¶¶ 234-41.

## C.   Qihoo Was Enormously Undervalued in the Merger

Ample evidence confirms that Qihoo was worth far more at the time of the Merger than the Proxy represented. This includes the internal projections disclosed only to the Buyer Group (¶ 115), Qihoo's increased business opportunities (¶¶ 117-29), the higher value Qihoo would attain upon relisting (¶ 152), and the lengths to which Qihoo went to conceal its value in the Appraisal Action (¶¶ 143-51). Moreover, while this case centers on Qihoo's value in the Merger, it is simply implausible that its value increased over five-fold—by over $50 billion—in less than two years. ¶¶ 100-05. Qihoo's relisting value is suspiciously close to the profit the Buyer Group was told all along they would make in a relisting that was planned to take 1.5 years. ¶¶ 106, 115.

According to Zhou, stocks on China's A-shares market, where Qihoo relisted, "can only be traded by Chinese residents or qualified foreign institutional investors." (Mem. at 7). This leaves out the ability to trade through "Stock Connect programs." (Xie Decl., Ex. 12). In addition, the ability of foreign investors to participate in, or profit from a relisting on, the A-shares market (or any other Chinese stock market where Qihoo could be relisted), raises factual issues far outside the Complaint.

Zhou also asserts that Qihoo's performance in 2017 "far surpassed" its performance prior to the Merger, including an 80.2% increase in net profits. (Mem. at 7).[3] But such a large increase in profits in Qihoo's "first annual fiscal report after listing domestically" (Xie Dec., Ex. 10), if anything, further supports the conclusion that its projections in the Merger were deflated.[4]

---

[3] Zhou notes that Qihoo's share price today is "roughly the same" as at the Merger. (Mem. at 19). Even if the Court were to credit this plainly extrinsic fact, that would *help* Plaintiffs because just the portion of Qihoo that was relisted is worth more than the Merger price for the whole Company. ¶¶ 100-02. However, even Zhou's evidence shows that Qihoo traded much higher than the Merger price until April 2022 (Xie Decl., Ex. 13), and the current price is far less relevant to Qihoo's value at the time of the Merger than its price following the relisting.

[4] Even more evidence will come out in discovery. If the Court is inclined to grant Zhou's

6

## III.    ARGUMENT

When reviewing a motion to dismiss under Rule 12(b)(6), the court must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014). A complaint must allege "enough facts to state a claim . . . that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 9(b) and the PSLRA "do not require the pleading of detailed evidentiary matter in securities litigation." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001).[5]

**A.    Plaintiffs Adequately Allege Misrepresentations Related to the Fairness of the Merger, Reasons for the Merger, and Alternatives to the Merger**

Zhou admits that the Court previously found that all of the "alleged misrepresentations rested upon the premise" of the Buyer Group's relisting plan. (Mem. at 8). The Second Circuit did not need to address whether Plaintiffs adequately alleged other misstatements for independent reasons because Plaintiffs "plausibly alleged that there was a relisting plan" and this Court already ruled that the falsity of the alleged misstatements "all turn on" the relisting plan. ECF No. 88 at 13 n.4.[6] Indeed, the Complaint alleges that all of the misstatements were false in part because of the relisting plan. ¶ 159(b)-(d). The falsity of all of Defendants' misstatements should be sustained for this reason alone, as well as the following additional reasons.

### 1.    Zhou's Fairness Statements Were False and Misleading

Plaintiffs allege that Zhou misrepresented that the Merger price was "fair" to Qihoo's

---

Motion to any extent, Plaintiffs request permission to amend the Complaint based on evidence from the Appraisal Action that recently settled. ECF No. 124 at 1, 3 n.3; ECF No. 121 at 1-2.

[5] Zhou misleadingly states that other cases against Chinese companies that have delisted have all been dismissed. (Mem. at 10). The court, however, ruled in Plaintiffs' favor on core aspects of the claims in *JA Solar*. *See ODS Cap. LLC v. JA Solar Holds.*, 2020 WL 7028639, at *15 (S.D.N.Y. Nov. 30, 2020); Case No. 1:18-cv-12083, ECF Nos. 96, 101 (S.D.N.Y.). *E-House* is currently on appeal (Second Circuit Case No. 22-0355), and *Jumei* and *WuXi* dealt with very different facts. In other words, each case must be addressed on its particular merits.

[6] If the Second Circuit intended to decline to address these statements at all, it would have said that. Instead, by raising the prior ruling that the falsity of all statements "turn on" the relisting plan, the Second Circuit was explaining that the falsity of all statements is adequately alleged.

minority shareholders. The Proxy also misrepresented the information that formed the basis for that fairness assessment, including Qihoo's financial projections that Defendants described as "reflect[ing] the best currently available estimates and judgments" of Qihoo's management and the assumptions that the fairness assessment were based upon. (*See supra* at 5).

Statements that a transaction is "fair" are false and misleading when they are contradicted by undisclosed information showing the company was actually worth more, such as a better set of projections or relisting plan. *See Baum v. Harman Int'l Indus.*, 408 F. Supp. 3d 70, 88 (D. Conn. 2019) (defendant provided only the better projections to the buyer and used the worse set "solely for the fairness opinion"); *Azar v. Blount Int'l*, 2017 WL 1055966, at *8 (D. Or. Mar. 20, 2017) (explaining "more pessimistic financial projections [were presented] to shareholders to justify a merger"); *In re Hot Topic, Inc. Sec. Litig.*, 2014 WL 7499375, at *2, 6 (C.D. Cal. May 2, 2014) (worse projections relied on "flawed and inaccurate assumptions"); *Brown v. Papa Murphy's Hold.*, 2021 WL 1574446, at *2 (W.D. Wash. Apr. 22, 2021) (holding statements "endorsing" unreasonably prepared projections and "fairness of the Merger" price were actionable); *see also ODS Cap. LLC v. JA Solar Hold.*, 2020 WL 7028639, at *11 (S.D.N.Y. Nov. 30, 2020) (fairness statements were actionable because of "understated and misrepresented" figures); *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 208 (S.D.N.Y. 2020) (promotion of merger price based on outdated projections was misleading).

This standard satisfies *Omnicare* because, as Zhou notes, opinions are actionable if (1) "the speaker did not hold the belief," (2) "the supporting fact[s]" are untrue, or (3) if "the speaker omit[ted] information" that "makes the statement misleading to a reasonable investor." (Mem. at 11 (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pen. Fund*, 575 U.S. 175, 186 (2015))); *see also In re Avon Sec. Litig.*, 2019 WL 6115349, at *17 (S.D.N.Y. Nov. 18,

2019) (holding beliefs are irrelevant when statements conflict with omitted information); *In re Lehman Bros. Sec. & ERISA Litig.*, 131 F. Supp. 3d 241, 253-54, 258-59 (S.D.N.Y. 2015) (holding a valuation is misleading if not supported by "accepted principles and relevant data").

Zhou's fairness statements were false and misleading because he disclosed more positive internal projections to the Buyer Group and misrepresented Qihoo's business opportunities. ¶ 159(c); *see supra* at 5. Even when the SEC directed Defendants to disclose "all preliminary and final projections," they still failed to provide the secret projections. ¶¶ 237-41. Zhou could not possibly have believed the Merger price was fair based on the internal information that he used to support of his plan to relist Qihoo at multiple times the Merger price. ¶¶ 41-42, 123, 126.[7]

In addition to the fairness statements, the projections themselves, their description as "the best currently available," and their business assumptions are actionable. *Supra* at 5; *fairness cases* above and *NECA-IBEW Pen. Tr. F. v. Prec. Castparts*, 2017 WL 4453561, at *11 (D. Or. Oct. 3, 2017) (holding statement that projections "reflected management's most up-to-date and accurate forecasts" was actionable), *adopted*, 2018 WL 533912 (Jan. 24, 2018); *Lickteig v. Cerberus Cap. Mgmt.*, 2020 WL 1989424, at *4, 10-11 (S.D.N.Y. Apr. 26, 2020) (valuation multiple can support a claim where undisclosed information shows it was "grossly understated")

Zhou argues that he "was not among the Board members who opined on the Merger." (Mem. at 11). This is both false and a red herring. Zhou signed the Proxy statement, which stated that "***each*** member of the Buyer Group," which Zhou led, "believes the merger is substantively

---

[7] Zhou's cases dealt with situations where there was no reason to credit the information that the plaintiffs pointed to as supporting a higher price. (Mem. at 12). For example, one court recently distinguished *Gray v. Wesco* as limited to "the particular facts," where the higher projections were "obsolete," implying that a claim should not be rejected when it accounts for "projections that *are* 'sufficiently likely'." *Baum*, 2021 WL 5908929, at *4, 7-8 (D. Conn. Dec. 14, 2021). Zhou's other cases (including *Tongue v. Sanofi*, 816 F.3d 199, 211 (2d Cir. 2016) and *Okl. Firefighters Pen. & Ret. Sys. v. Student Loan Corp.*, 951 F. Supp. 2d 479, 497 (S.D.N.Y. 2013)) did not deal with the merger context or the type of strong evidence alleged here, and the court in *Shanda Games* held that the complaint adequately alleged the falsity of information related to projections. 2019 WL 11027710, at *5-6 (S.D.N.Y. Sept. 30, 2019).

and procedurally fair" to Qihoo's shareholders, including based on the Special Committee's and J.P. Morgan's fairness assessments. ¶¶ 192, 210-11.[8]  Similarly, Zhou signed the Proxy on behalf of Qihoo, as Chairman of its Board, and stated in it that the "Board believe[s]" the Merger is "fair" without excepting himself from that assessment. (Xie Decl., Ex. 2 at vi, 46).[9]

Zhou's assertion is based on his abstention from the Board's final vote. But that is irrelevant to the accuracy of his disclosures.[10] This is not a breach of fiduciary duty suit based on the decision to conduct the Merger; it is a fraud case about the accuracy of Zhou's disclosures.

### 2.    Zhou Misrepresented the Reasons for the Merger

Defendants provided false reasons for the Merger by stating that Qihoo becoming a private company was fair to Qihoo's minority shareholders, and a detriment to the Buyer Group, because of business difficulties that Qihoo faced in China. *See supra* at 5; ¶¶ 130, 194, 225, 237-38. These reasons were false and misleading because the Buyer Group actually conducted the Merger so that it could realize far greater value from the Company's increased business in China and by relisting the Company at a far higher valuation. ¶¶ 117-29, 159(d).

In addition to the cases discussed above regarding fairness statements, providing false "reasons for recommending" a merger is actionable because investors "will think it important to know the directors' beliefs about the course they recommend and their specific reasons for" that

---

[8] *Haideri v. Jumei Int'l Hold.*, 2021 WL 4170791, at *18-19 (N.D. Cal. Sept. 14, 2021), which Zhou cites (Mem. at 11-12) dealt with the separate issue of whether the CEO's scienter could be imputed to the company where the CEO was not a party to the motion. While Zhou's scienter can be attributed to Qihoo, that is plainly not at issue here because Qihoo is not a party to Zhou's motion and he does not make any scienter arguments. The court in *Jumei* expressly declined to address the CEO's personal liability in terms of his role as one of the "Board members who collectively adopted" the fairness opinion. *Id.* at *18.

[9] While Zhou does not raise, and has thus waived, the issue of whether he was the technical "maker" of these statements, he undoubtedly was. *See In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 163-64 (S.D.N.Y. 2012) ("signatories . . . 'made' the statements in those documents"); *City of Roseville v. EnergySolutions*, 814 F. Supp. 2d 395, 417-18 & n.9 (S.D.N.Y. 2011) ("attribution could be 'implicit from surrounding circumstances'").

[10] Zhou's abstention is a typical feature of any merger in which directors have financial interests. It did not indicate that he had information *contradicting* the public disclosures.

10

recommendation. *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090-91 (1991).[11]

Zhou argues that Plaintiffs "conflate" the relisting plan with "the reasons for reorganizing outside the" U.S. (Mem. at 12-13). He ignores that this category of misstatements relates to the reasons for recommending the Merger as fair, ¶¶ 194, 219, 237, and also that the Buyer Group bought Qihoo in order to relist it at multiple times the Merger price. The Merger and relisting were part-and-parcel of the same plan. The business difficulties that the Proxy described were also outrightly false because Qihoo actually had vastly increased opportunities. ¶ 128.

### 3.    Zhou Falsely Represented the Alternatives to the Merger

The Proxy falsely stated that there were no "viable alternatives" to the Merger when conducting a backdoor listing was precisely such an alternative. ¶ 159(b), 180-86. Zhou argues that the relisting "was contingent on the Merger, not an alternative to" it. (Mem. at 14). This misses the context of these statements. The Proxy discussed alternatives to the Merger to explain that none of them "was reasonably likely . . . to create greater value for" shareholders or to more favorably "enhance[e] shareholder value." ¶¶ 181-83. The relisting would "create greater value" for shareholders. It also was false that "continuing to operate" as a "publicly traded company" was not a "viable alternative" when the relisting plan was premised on doing just that. ¶¶ 183-85.

### B.    Plaintiffs Adequately Allege Reliance as to the Tenderers

Zhou concedes that reliance is adequately pled as to Qihoo securityholders "who sold their shares prior to" the Merger's closing. (Mem. at 14). He argues only that "Plaintiffs cannot allege" reliance as to the "Cancelled Shareholders" (or Tenderers) who "were paid $77 per ADS when the Merger closed." (*Id.*). This argument fails for the following five independent reasons.

*First*, under the long-standing controlling authority of *Mills v. Elec. Auto-Lite Co.*, 396

---

[11] *In re Seadrill Ltd. Sec. Litig.*, 2016 WL 3461311, at *11 (S.D.N.Y. June 20, 2016) (Mem. at 13) stands for the uncontroversial proposition that "accurate" statements are not actionable.

U.S. 375 (1970), reliance need not be pled or proven when minority votes are needed to approve a merger and votes are solicited through a proxy containing material misstatements or omissions. *Id.* at 382 n.5, 384-85. That was the case here, where minority votes were required. ¶ 85.

The Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), recognized that *Mills* provides a distinct way to satisfy the reliance requirement in the merger context, separate from the fraud-on-the-market presumption, "because the proxy solicitation itself" serves as the "requisite causal connection." *Id.* at 243-44. The Second Circuit confirmed, in *Grace v. Rosenstock*, that *Mills* applies to Section 10(b) claims where a "vote, sale of shares, or other action was required" for a merger (though the rule did not apply because minority votes were not needed). 228 F.3d 40, 47-48 (2d Cir. 2000). Reliance is thus presumed for the Tenderers.

Zhou's argument is premised on how Qihoo and the Buyers set the Merger price, which, he admits, "is always the case in a going-private transaction." (Mem. at 14). Yet he inexplicably does not even address the basis for reliance that was established for precisely this situation.

***Second***, it is well established that the fraud-on-the-market presumption applies to *all* investors that trade securities of a company where the company's stock trades in an efficient market, not just those who trade on the exchange. Under *Basic*, there is a presumption that both "[1] the price of stock traded in an efficient market reflects all public, material information— including misrepresentations—and [2] that investors rely on the integrity of the market price when they choose to" transact. *Ark. Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 483 (2d Cir. 2018). Zhou concedes that the *Basic* presumption applies to the Sellers, and therefore concedes that an efficient market existed before the Merger closed. His attempt to argue that the Tenderers did not rely on the integrity of that market price is contrary to law.

On highly analogous facts, the court in *Shanda Games* held, in a recent decision that

12

Zhou simply ignores (*see* Mem. at 15), that a plaintiff who tendered in a merger could rely on *Basic*, upon adequate allegations that the security traded in an efficient market before the merger closed. 2022 WL 992794, at *5.[12] Many other courts hold that plaintiffs in a wide variety of circumstances are presumed to rely on the integrity of the market price even when they engage in private transactions. In *Black v. Finantra Cap.*, the Second Circuit held that a negotiated, private, and off-exchange transaction would be entitled to the *Basic* presumption because it is presumed that all investors rely on (*i.e.*, are at least partially informed by) the price set by a separate efficient market for the company's stock. 418 F.3d 203, 205-06, 210 (2d Cir. 2005).

Similarly, *In re Forcefield Energy Inc. Sec. Litig.,* 2015 WL 4476345, at *4 (S.D.N.Y. July 22, 2015), held that purchasing "through off-market transactions is irrelevant" because *Basic* "depends on the existence of an efficient market whose price signals may be relied upon to inform an investor's choices." The *Basic* presumption also applies to traders of derivative securities because they rely on the efficient market for the stock underlying the derivatives. *See, e.g.*, *McIntire v. China MediaExpress Holds.*, 38 F. Supp. 3d 415, 433-44 (S.D.N.Y. 2014).[13]

The Tenderers' reliance on the market price of Qihoo's ADS on the NYSE is particularly compelling because, as Zhou concedes, the Merger price was one of the most important factors affecting Qihoo's ADS price during the Class Period. (Mem. at 17). By July 15, 2016, the last day of Qihoo's trading on the NYSE, the price was $76.92 per ADS—just 0.1% less than the Merger price of $77. (Grunfeld Decl., Ex. B). It makes no sense for there to be a distinction in how *Basic* applies to open-market transactions and the exchange of securities in the Merger

---

[12] In *JA Solar*, Judge Carter, recognized that his earlier *Shanda* ruling was based "unique facts" and does not hold that the *Basic* presumption can never apply to a going-private transaction. 2020 WL 7028639, at *14.

[13] *See Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*, 2019 WL 1368570, at *11 (S.D.N.Y. Mar. 26, 2019) (applying presumption to warrants); *In re Priceline.com Inc.*, 236 F.R.D. 89, 99 (D. Conn. 2006) (same as to options); *In re Sci.-Atlanta, Inc. Sec. Litig.,* 571 F. Supp. 2d 1315, 1330 (N.D. Ga. 2007) (same).

when the Merger price was supported by the same misstatements and resulted in virtually the same price in what was undisputedly an efficient market the moment before the Merger closed.[14]

*Third*, market efficiency is only an "indirect proxy for price impact," which is the fundamental basis for the *Basic* presumption. *Halliburton II*, 573 U.S. at 278, 281. Ordinarily, "plaintiffs need not directly prove price impact." *Goldman Sachs Gr. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1962-63 (2021). But the presumption applies if plaintiffs show price impact directly because "an indirect proxy should not preclude direct evidence." *Halliburton II*, 573 U.S. at 281.

The *Basic* presumption applies because Defendants' misrepresentations directly impacted the price at which the Tenderers exchanged their securities in the Merger. Defendants promoted the Merger price as a premium to the recent ADS price. ¶¶ 162, 213-16. They then supported that price through their misrepresentations in the Proxy. Zhou concedes that Qihoo's ADS price reacted to announcements about the Merger. (Mem. at 17). If Defendants had disclosed the truth, they would have been forced to raise the Merger price to prevent shareholders from voting against the Merger or seeking appraisal. ¶¶ 87, 310, 319-20. Defendants' misstatements thus not only impacted, but directly set, the Merger price, firmly establishing price impact. As such, the *Basic* presumption is not required. At a minimum, price impact raises factual issues that require expert evidence at class certification, and is inappropriate for adjudication at this phase of the litigation. *See Goldman Sachs*, 141 S. Ct. at 1960-61; *Halliburton II*, 573 U.S. at 272.

*Fourth*, the *Affiliated Ute* presumption for claims alleging "primarily a failure to disclose," 406 U.S. at 153, applies because Defendants had independent duties to disclose the truth under Cayman Islands law and Section 20A. ¶¶ 293-94, 315, 327; *Davis v. Scottish Re*

---

[14] Zhou's cases dealt with different situations. *See* Mem. at 15 (citing *In re IPO Sec. Litig.*, 471 F.3d 24, 27 (2d Cir. 2006) (addressing market at time of IPO, before any efficient market existed upon which to base investing decisions); *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 639 F. App'x 664, 669-70 (2d Cir. 2016) (addressing claims against broker-dealer and affirming on other grounds); *Sable v. Southmark/Envicon*, 819 F. Supp. 324, 338-39 (S.D.N.Y. 1993) (allegations "directly contradicted" by "clear language" of offering memorandum)).

14

*Grp.*, 159 A.D. 3d 528, 529 (1st Dep't 2018) (describing Cayman duty to disclose "sufficient information"); *Simon DeBartolo Grp. v. Richard E. Jacobs Grp.*, 186 F.3d 157, 173 (2d Cir. 1999) (insider trading). These duties are the basis for Section 10(b) liability and thus support the *Affiliated Ute* presumption. *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 102 (2d Cir. 2015).

**Fifth**, Zhou is wrong that Plaintiffs "expressly disclaim[ed] any individual reliance." (Mem. at 14). The Complaint states that Plaintiffs "in fact did rely on that market price." ¶ 310.

## C.     Plaintiffs Adequately Alleges Loss Causation

A securities fraud plaintiff's burden to plead loss causation "is not a heavy one" and requires only "some indication of the loss and the causal connection that the plaintiff has in mind." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 187, 189 (2d Cir. 2015) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) and noting that "the vast majority of courts" require only "the notice requirements of Rule 8" for loss causation).

### 1.     Loss Causation is Adequately Pled Based on Fair Value

This is a seller case, where damages are based on "the sale of shares at an artificially depressed price." *San Antonio Fire & Police Pen. Fund v. Dole Food Co.*, 177 F. Supp. 3d 838, 839-40 (D. Del. 2016). The Supreme Court has firmly established that plaintiffs that are defrauded into selling securities in a merger at artificially deflated prices are entitled to receive damages based on "***the fairness of the terms of the merger at the time it was approved.***" *Mills*, 396 U.S. at 378, 389. The Supreme Court in *Affiliated Ute* then endorsed this fair value measure in the context of ordinary securities sales, holding that where defendants' material omissions "reasonably could have been expected to influence their decisions to sell," the "***correct measure of damages . . . is the difference between the fair value of all that the . . . seller received and the fair value of what he would have received***" absent the fraud. 406 U.S. at 153-55. Treatises therefore explain that a defrauded seller is entitled to "out of pocket" losses measured in terms of

15

"the fair value of the security he sold minus the fair value of the consideration he received." Jacobs, Disclosure and Remedies Under the Securities Laws, § 20:53 (Mar. 2020).

The Second Circuit has confirmed repeatedly that damages for defrauded sellers are based on the fair value of their securities at the time of sale. *See Wilson v. Great Am. Indus.*, 979 F.2d 924, 931-33 (2d Cir. 1992) (loss causation can be based on "an unfair exchange ratio"); *Mendell v. Greenberg*, 938 F.2d 1528, 1529 (2d Cir. 1991) (permitting trial of § 14(a) claim as to "fair value" based on "recognized methods of valuation"); *Pierre J. LeLandais & Co. v. MDS-Atron*, 543 F.2d 421, 424-26 (2d Cir. 1976) (noting damages could have been proven based on "'fair cash value,' *i.e.*, the appraisal value"); *Schlick v. Penn-Dixie*, 507 F.2d 374, 380 (2d Cir. 1974) (loss causation for § 10(b) can be shown "rather easily" based on unfair exchange ratio).

District Courts also consistently apply the fair value measure of damages to the element of loss causation in cases arising out of going-private transactions. Damages in this context "compares the value of what the plaintiff received and the fair value of the shares." *Baum*, 2021 WL 5908929, at *7;[15] *see also Lewis v. Termeer*, 445 F. Supp. 2d 366, 371 (S.D.N.Y. 2006) (loss causation supported by allegation that transaction consideration "did not reflect the true value"); *Lichtenberg v. Besicorp Grp.*, 43 F. Supp. 2d 376, 389-90 (S.D.N.Y. 1999) (holding "loss causation is established when a proxy" results in an "unfair" merger); *In re Envision Healthcare Corp.*, 2019 WL 3494407, at *8 (D. Del. Aug. 1, 2019) (complaint adequately alleged that misstatements "led the stockholders to accept the Merger as a fair transaction"), *adopted*, 2019 WL 4536554 (D. Del. Sept. 19, 2019); *Azar*, 2017 WL 1055966, at *11 (economic loss based on "intrinsic value exceed[ing]" merger price); *In re Hot Topic*, 2014 WL 7499375, at *10 (same); *In re Willis Towers Watson PLC Proxy Litig.*, 2020 WL 5361582, at *9, 11 (E.D. Va. Sept. 4,

---

[15] *Baum* held earlier that loss causation was supported by allegation that investors "were misled into approving" a deal "that undervalued the company." 408 F. Supp. 3d 70, 92 (D. Conn. 2019).

16

2020) (measuring damages "by the difference between the Merger consideration and the true value"); *Papa Murphy's*, 2021 WL 1574446, at *4 (misstatements led to "undervalued" offer).[16]

All that is required for Plaintiffs to allege loss causation is to plausibly show that Defendants' misrepresentations caused Qihoo to be undervalued in the Merger. Those allegations give Defendants "some indication of the loss and the causal connection that the plaintiff has in mind." *Dura*, 544 U.S. at 347. Even the theory that misrepresentations in a proxy caused the company to expend unnecessary "resources in waging the proxy contest" adequately allege loss causation. *Enzo Biochem*, 2021 WL 4443258, at *9. Alleging losses based on the company's value is a far-more-established method of showing loss causation under controlling authority.

Further proof of Qihoo's fair value at the time of the Merger can be shown through standard "valuation methods" that require expert testimony. *Wilson*, 979 F.2d at 931-33; *see also Pierre*, 543 F.2d at 424-46 (there is "no dearth of corporate valuation experts" to opine on fair value); *Brown v. Brewer*, 2010 WL 2472182, at *25 (D. Del 2010) (permitting appraisal expert on fair value). For example, valuation experts often conduct a Discounted Cash Flow ("DCF") analysis to measure present fair value by estimating future "earning potential." *See Mills*, 396 U.S. at 378 (discussing "a reduction of the earnings or earnings potential"); *Wilson*, 855 F.2d 987, 996 (2d Cir. 1988) (damages should account for valuation of "future earning power").[17]

The Complaint alleges substantial facts supporting the inference that the fair value of Qihoo's ADS at the time of the Merger was significantly higher than the Merger price. This includes the internal projections disclosed to the Buyer Group to support a return "as high as 5"

---

[16] While some cases cited above dealt with § 14(a), the same loss causation standard applies under § 10(b). *See Grace*, 228 F.3d at 47 (equating loss causation under §§ 10(b) and 14(a)); *Enzo Biochem v. Harbert Disc. Fund*, 2021 WL 4443258, at *9 (S.D.N.Y. Sept. 27, 2021) (applying § 10(b) standard to § 14(a)); *Envision Healthcare*, 2019 WL 3494407, at *8 (same).

[17] *See* Samuel C. Thompson, Jr., A Lawyer's Guide to Modern Valuation Techniques in M&A, 21 J. Corp. L. 457, 460 (1996) (explaining DCF model in terms of "present value of [expected] cash flows" discounted to "properly reflect[] the risk" of the investment).

17

times the Merger price (¶ 115), Qihoo's increased business opportunities (¶¶ 117-29), its substantial effort to hide its value in the Appraisal Action (¶¶ 143-51), Defendants' misstatements even after the SEC directed them to provide more information (¶¶ 236-41), "China's richer tech valuations" (¶ 152), and the fact that Qihoo relisted just a part of the Company less than two years after the Merger for over five times the Merger price (*see supra* at 6). The Complaint alleges that these facts caused Plaintiffs' losses because Defendants' misrepresentations caused Plaintiffs "to sell their shares at a depressed price" below their "fair value." ¶¶ 279-81, 283-84. The misrepresentations also caused Plaintiffs "to (1) vote in favor of the Merger and (2) forego their right to dissent prior to the" vote and seek appraisal. ¶ 282.

Plaintiffs adequately plead a causal connection between the amount by which Qihoo was undervalued in the Merger and each of the categories of misrepresentations here, including (1) statements denying the Buyer Group's relisting plans or alternatives to the Merger, (2) statements falsely describing the Merger price as "fair," and (3) the reasons for the Merger. Statements about the fairness of the Merger and the reasons for the Merger relate to Qihoo's fair value at the time of the Merger for the reasons described above. (*See supra* at 5-11).

Zhou's relisting statements also relate to Qihoo's fair value because the whole point of the relisting plan was "to relist Qihoo at a far-higher valuation" in short order based on Qihoo's value at the time of the Merger so that the Buyer Group could "make a fortune." ¶¶ 115, 126, 159(a). Moreover, the Second Circuit held that the relisting plan was adequately alleged to be material. ECF No. 88 at 11-13.[18] If shareholders knew of the plan, that would have told them that Qihoo was worth more than the Merger price. As this Court noted in connection with the *JA Solar* appeal, if investors had known of the relisting plan, that "would have generally tended to

---

[18] The regulatory requirement to disclose plans for a company after a merger also shows the importance of this information to investors. *See* 17 CFR § 240.13e-100 (referencing Item 6 and Regulation M-A, 17 CFR § 229.1006 (requiring the disclosure of "plans or proposals")).

18

make the stock more attractive" and the offer price "would likely have been higher" because investors would think "this is valuable." (Grunfeld Dec., Ex. A at 15:23-16:5, 16:25-17:15).

According to Zhou, there is no difference between planning at the time of the Merger to relist and the possibility of a future relisting that was disclosed. (Mem. at 22). This contradicts the Second Circuit's ruling, which held the relisting statements are actionable even though the Proxy stated that "subsequent to" the Merger, the Company "may propose or develop plans and proposals, . . . including the possibility of relisting" Qihoo. ECF No. 88 at 5. Zhou's argument also does not make sense because the relisting plan meant that the Buyer Group already had a plan to profit based on information that existed at the time, as opposed to the possibility of a future relisting depending on how things turned out in the future.

Zhou also argues that if technology companies are valued higher in China, then Qihoo's higher valuation in the relisting does not relate to Qihoo's value to shareholders at the time of the Merger. (Mem. at 17). That is wrong because if shareholders knew of that part of the relisting plan, they would have demanded a higher "acquisition premium" based on the "true nature of the transaction." *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 53, 68 (D. Del. 2002) (holding loss causation adequately pled based on claim that defendants "planned from the onset to mount a concealed take-over"); *Prec. Castparts*, 2017 WL 4453561, at *6-7, 9 (holding loss causation supported because defendants misrepresented "plan for the Company" after the merger, and fairness opinion relied on forecast "that assumed a non-acquisition strategy").

All of the factual bases for loss causation described above therefore relate to Qihoo's value at the time of the Merger. But even if only certain of these causes apply, Plaintiffs are not required at this stage to identify "the exclusive cause of" their losses. *Fin. Guar. Ins. Co. v. Putnam Adv.*, 783 F.3d 395, 404 (2d Cir. 2015). They also do not have "to ascribe the actual

amount of loss to one cause or another." *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 166 (S.D.N.Y. 2008); *Emergent Cap. Inv. Mgmt. v. Stonepath Grp.*, 343 F.3d 189, 197 (2d Cir. 2003) (whether loss was caused by intervening event "not to be decided" at this stage).

### 2.     Zhou Rejects the Established Authority for Defrauded Sellers

Zhou's other arguments against loss causation are not specific to this case. Rather, they challenge the whole premise of damages based on the fair value of shares that investors are defrauded into selling at deflated prices. That theory of damages, however, is firmly established by the controlling authority described above. As this Court explained in the *JA Solar* appeal, "the nature of the problem here means you're never going to get [a stock drop] because there's a buyout . . . and so on that theory," even if a plaintiff is "lied to like crazy," they will not "have a claim. That seems like an overreach." (Grunfeld Decl., Ex. A at 15:9-22).

Zhou is therefore wrong to assert that Plaintiffs must allege a "corrective disclosure." (Mem. at 20-21).[19] Furthermore, loss causation for purchaser claims and seller claims are inherently different because a defrauded purchaser alleging a company's stock was artificially *inflated* does not suffer any losses until that inflated price falls in reaction to the fraud. *Dura*, 544 U.S. at 342. In a defrauded seller case, in contrast, there is no requirement for a corrective disclosure because the plaintiff suffers a loss immediately upon selling for less than fair value.[20]

---

[19] Zhou's cases dealt with purchaser claims or other scenarios outside out of going-private transactions. *See* Mem. at 21 (citing *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005) (addressing allegations that stock prices were purchased at "artificially inflated" prices); *Salvani v. InvestorsHub.com, Inc.*, 628 F. App'x 784, 786 n.1 (2d Cir. 2015) (market manipulation case that declined to address loss causation); *Lighthouse Fin.* Grp. *v. Royal Bank of Scotland Grp.*, 2013 WL 4405538, at *9-10 (S.D.N.Y. Aug. 5, 2013) (purchaser case), *aff'd on other grounds*, 783 F.3d 383 (2d Cir. 2015); *Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 173, 177 (S.D.N.Y. 2012) (same), *aff'd*, 543 F. App'x 72 (2d Cir. 2013); *Leykin v. AT&T*, 423 F. Supp. 2d 229 (S.D.N.Y. 2006) (same)); *see also* Mem. at 16-17 (citing *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 431 (S.D.N.Y. 2010) (market manipulation case where plaintiffs did not allege their specific transactions); *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 307 (S.D.N.Y. 2009) (same)).

[20] There also is no need to "link the false statement to any impact on stock price" (Mem. at 21), because false statements can simply **maintain** an artificial price. *See Arkansas Tchr. Ret. Sys.*

Similarly, Zhou's argument that "Plaintiffs cannot plead a discernible legal harm" (Mem. at 16-17) ignores the controlling law described above establishing that being defrauded into selling at a price below fair value is a proper measure of damages. Zhou's argument again challenges the entire scenario of going-private transactions, where shares prices typically rise after a buyout offer but can still be undervalued based on information that is misrepresented.[21] *See Mindbody*, 489 F. Supp. 3d at 207, 216 (if the truth was disclosed, it could have "reduc[ed] the premium"); *Dole*, 177 F. Supp. 3d at 840 (holding absence of "a loss in the traditional sense is not dispositive" where claim is based on "the sale of shares at an artificially depressed price").

Zhou also misstates the significance of the price reaction here. (Mem. at 17). His price chart omits the many points after the Merger offer—which was 36% below the market price 14 months earlier (*supra* at 4)—and acceptance when the market price was far below the $77 deal price. (Grunfeld Decl., Ex. B). Moreover, the analysis of price reactions is a "fact intensive matter[] usually requiring expert testimony."[22] *Tracinda*, 197 F. Supp. 2d at 67-68 (rejecting argument that plaintiffs got a 34% premium and "price actually rose" after the announcement).[23]

Both the Tenderers and Sellers adequately allege loss causation because they both sold Qihoo securities at artificially deflated prices. ¶ 284; *see also* ¶¶ 279-83. For both groups, Zhou concocts a long causal chain that he asserts would have to occur for them to suffer losses. (Mem.

---

*v. Goldman Sachs*, 11 F.4th 138, 141 n.3 (2d Cir. 2021).

[21] The decision in *JA Solar*, which has been remanded, does not support Zhou (*see* Mem. at 17), because Qihoo's stock price reacted differently than JA Solar's and the *JA Solar* decision does not address the long line of authority explaining the loss causation standard for seller cases. The same goes for *Shanda Games*, 2022 WL 992794, at *6 (Mem. at 18), which the plaintiff is seeking to appeal. No. 1:18-CV-2463, ECF Nos. 107-08.

[22] While there is no requirement to show what the market price for Qihoo ADS would have been had the truth been disclosed, it stands to reason that if Defendants disclosed the truth, they would have been forced to offer a higher Merger price. And if they disclosed the truth without offering a higher price, the Merger would have been rejected and Qihoo's share price would then have moved to its fair market value based on those disclosures.

[23] *Collier v. Aksys Ltd.*, 2005 WL 1949868, at *11-12 (D. Conn. Aug. 15, 2005), which Zhou cites (Mem. at 17), dealt with a short seller whose claim that shares were undervalued failed because it was contradicted by the stock price *dropping* after the truth was revealed.

21

at 22-23). But these steps apply to all seller cases arising out of going-private transactions.

Zhou's argument is also misplaced because it is premised on enough shareholders voting against the Merger to prevent the transaction. (Mem. at 22-23).[24] But the ability of shareholders to vote against the Merger is relevant to **reliance**. (*See supra* at 11-12). The Supreme Court has held that "there is no need to supplement" allegations that a proxy was misleading with "proof of whether the defect actually had a decisive effect on voting," because that counter-factual involves the "impracticalities of determining how many votes were affected." *Mills,* 396 U.S. at 385; *see also Willis Towers*, 2020 WL 5361582, at *9 (rejecting argument at class certification that plaintiff did not offer evidence that "the Merger would not have been approved").

Furthermore, none of the causal steps that Zhou raises change the core issue of whether Plaintiffs sold their Qihoo securities at artificially deflated prices. Zhou's disagreement as to whether Sellers would receive more in "an appraisal action under Cayman law" (Mem. at 23) is also oblivious to the fact that the Appraisal Action has now settled. (*See supra* at 6 n.4).[25] Moreover, courts recognize that "the forfeiture of appraisal rights" supports a claim. *Wilson*, 979 F.2d at 932-33; *see also Papa Murphy's*, 2021 WL 1574446, at *4 (same).

In addition, Zhou's argument that Plaintiffs' losses are "speculative" (Mem. at 17) fails because the cases that he cites dealt with situations where there was no factual support for the allegation of higher value. *See Gray v. Wesco*, 454 F. Supp. 3d 366, 400-01 (S.D.N.Y. 2020) (holding projections that supported the merger seemed to be "the most accurate"), *aff'd*, 847 F. App'x 35, 37 (2d Cir. 2021) (indicating loss causation would be supported if alternative

---

[24] Zhou cites an irrelevant purchaser case (Mem. at 22-23), where the plaintiff did not allege an adequate causal connection, falsity or scienter. *C.D.T.S. v. UBS AG*, 2013 WL 6576031, at *8 (S.D.N.Y. Dec. 13, 2013), *aff'd*, 604 F. App'x 5 (2d Cir. 2015) (affirming on other grounds).

[25] *Kocourek v. Shrader*, 391 F. Supp. 3d 308 (S.D.N.Y. 2019), which Zhou cites (Mem. at 23), dealt with a very different situation, where partners brought claims related to the sale of a private company and failed to allege that the company was worth more to the buyer than what was disclosed. *Id.* at 332; *see also id.* at 325, 328 (discussing "outdated" projections).

projections were "sufficiently likely" or "true value" was "higher than the merger" price).[26]

Zhou also argues that Plaintiffs cannot bring claims on behalf of Sellers who purchased after the Final Proxy on March 3, 2016 "but sold prior to the Merger." (Mem. at 23-24). But the "rationale behind excluding 'in-and-out' traders" does not apply to defrauded sellers because they still "sold at a price that was artificially" deflated "[r]egardless of the price" they paid. *Levie v. Sears Roebuck & Co.*, 496 F. Supp. 2d 944, 948 (N.D. Ill. 2007). Moreover, any issues related to "in-and-out" trades at most relate to damages calculations and cannot be decided at this stage (or even class certification). *See In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *20 (E.D.N.Y. Jan. 11, 2022) (rejecting argument that in-and-out traders "should be excluded" from the class as "'unnecessary' and 'premature'"), *adopted*, 2022 WL 969724 (Mar. 31, 2022); *Gordon v. Sonar Cap. Mgmt.*, 2014 WL 3900560, at *3 (S.D.N.Y. Aug. 1, 2014) (same on motion to dismiss).[27]

Lastly, Zhou argues that the absence of any better offers from the Special Committee's "go shop" process means that Qihoo's ADS were not undervalued in the Merger. (Mem. at 18). But the existence of a "go shop" process does not automatically insulate defendants from liability because requiring "the immediate availability of an alternative, more favorable transaction" would "impose too high a burden on the plaintiff." *Gray*, 454 F. Supp. 3d at 406-07. Rather, "it is not logically or legally impossible that the decision to be acquired could cause a loss compared to the decision to remain independent." *Id.* at 407.[28] Zhou's argument also fails to account for the higher "acquisition premium" that minority shareholders would have demanded based on the

---

[26] *In re Ocera Theraps.*, 806 F. App'x 603, 605 (9th Cir. 2020) (Mem. at 18), similarly held that the allegations of loss causation were too speculative based on the specific facts alleged.

[27] In addition, Zhou does not even suggest that this argument applies to all of Plaintiffs' transactions, which makes his argument even less relevant at this stage. Plaintiffs describe their transactions in Qihoo securities in the Complaint. ¶¶ 19-20; *see also* ECF No. 1 at 22-23; *ODS v. Qihoo*, No. 1:19-cv-0501, ECF No. 1 at 23 (S.D.N.Y.).

[28] The cases that Zhou cites dealt with very different situations. *See* Mem. at 18-19 (citing *Jumei*, 2021 WL 4170791, at *24 (plaintiff did not allege information supporting a higher valuation) and *Aimis Art Corp. v. N. Tr. Secs., Inc.*, 641 F. Supp. 2d 314, 320-21 (S.D.N.Y. 2009) (plaintiff already received rescission damages and did not allege higher value).

"true nature of the transaction." *Tracinda*, 197 F. Supp. 2d at 53, 68. The cursory "go shop" process here is especially unavailing because the Special Committee contacted only three "potential strategic bidders" and no information is provided on what they considered. (Xie Decl., Ex. 2 at 38, 40, 49, 69). It is not surprising that these three unnamed parties did not "explor[e] an alternative transaction" if they were provided the same false information as Plaintiffs, as well as the hurdles they would face given the limited 45-day "go shop" period, the Buyer Group's substantial ownership stake, and the $112.5 million termination fee that would be owed. *Id.*

**D.      Plaintiffs Adequately Allege Section 20A Claims and Cayman Law Omissions**

Zhou argues that the Section 20A claims fail because the Complaint did not allege a separate Section 10(b) insider trading count. (Mem. at 24). However, as Zhou recognizes, § 20A requires a predicate *violation* not a predicate *claim. Id.*; *see also Gruber v. Gilbertson*, 2019 WL 4458956, at *3 (S.D.N.Y. Sept. 17, 2019) (recognizing there is no requirement of "pleading of a § 10(b) claim" because § 20A requires only "an underlying violation of § 10(b)"); *Johnson v. Aljian*, 490 F.3d 778, 781 (9th Cir. 2007) (same).

Zhou's argument also fails because, contrary to his assertion, Plaintiffs' Section 10(b) count includes insider trading claims. (*Compare* Mem. at 24 n.12 *with* ¶ 315 (Defendants omitted facts that insider-trading law required them disclose) *and* ¶¶ 285-95 (describing insider trading)).

Zhou also challenges standing. However, Plaintiffs establish standing based on their allegation that those who tendered their ADS in the Merger traded contemporaneously with Zhou, who purchased in the Merger. Indeed, Zhou recognizes that *Shanda* upheld standing on this basis, and his only attempt to distinguish *Shanda* is his prior failed, irrelevant argument about the predicate violation. (*See* Mem. at 24 n.12 (citing *Shanda*, 2022 WL 992794, at *7-9). Peculiarly, ***while Zhou was Qihoo's CEO***, the Company argued in its motion to dismiss that the *Buyer Group* (which Zhou led) "purchased" through the Merger. ECF No. 58 at 25.

24

In response, Zhou quotes language plucked out of context from a single out-of-circuit opinion. (Mem. at 25 (citing *Pa. Ave. Funds v. Borey*, 2009 WL 902070, at \*13 (W.D. Wash. Mar. 30, 2009)). The *Borey* plaintiff *did not allege* insider trading claims based on tendering, and the court merely held that the plaintiff's tender could not give standing *to represent* others who traded contemporaneously with *earlier* trades by the defendant. In contrast, numerous cases confirm that Zhou cannot avoid insider trading liability through the technical structure of the Merger. *See Basile v. Valeant Pharm. Int'l*, 2015 WL 7352005, at \*6-7 (C.D. Cal. Nov. 9, 2015) (one cannot "avoid [insider trading] liability" by trading through "third parties"); *Vine v. Beneficial Fin. Co.*, 374 F.2d 627, 634-35 (2d Cir. 1967) (holding the exchange of shares in a merger constitutes a sale under the Exchange Act); *Green v. Hamilton Int'l*, 437 F. Supp. 723, 727-29 (S.D.N.Y. 1977) (holding issuer's redemption of bonds supported insider trading).

Finally, Zhou did not address the duty to disclose "sufficient information" about the Merger under Cayman law. ¶¶ 294, 315. Zhou has thus waived any challenge to these claims at this stage. *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in" reply.). These omission claims should be sustained. *See Davis*, 159 A.D.3d at 529 (citing *Sharp v. Blank*, [2015] EWHC 3220 [Ch], ¶5) (recognizing Cayman law duty))[29]; *Mindbody*, 489 F. Supp. 3d at 209-10 n.13 (finding actionable omission under § 10(b) where defendant allegedly violated fiduciary duty to disclose all material information prior to merger).

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court deny Zhou's Motion in its entirety. If the Court grants the Motion, Plaintiffs respectfully request leave to amend, including to add allegations based on evidence from the Appraisal Action trial. *See Loreley*, 797 F.3d at 190.

---

[29] This duty is similar to that imposed by U.S. states. *See, e.g., Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998) (Delaware law imposes a "duty" requiring "directors to provide the stockholders with accurate and complete information material to a transaction").

Dated: June 10, 2022

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Michael Grunfeld_____*
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        mgrunfeld@pomlaw.com

*Lead Counsel for Lead Plaintiffs*
*Altimeo Asset Management and ODS*
*Capital LLC*

**LABATON SUCHAROW LLP**

Carol C. Villegas
David J. Schwartz
Jake Bissell-Linsk
140 Broadway, 34th Floor
New York, NY 10005
Telephone: (212) 907-0700
Email: cvillegas@labaton.com
        dschwartz@labaton.com
        jbissell-linsk@labaton.com

*Additional Counsel for Lead Plaintiff*
*ODS Capital LLC*

CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2022, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties whose counsel has appeared in this action, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

/s/ Michael Grunfeld
Michael Grunfeld

27