# EXHIBIT A

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
DOCKET NO.:  20-4268


ODS CAPITAL, LLC,

      Plaintiff-Appellant,

vs.

JA SOLAR HOLDINGS CO., LTD,

      Defendant-Appellees.
_____/


TRANSCRIPT OF DIGITAL RECORDED PROCEEDINGS

ORAL ARGUMENT


BEFORE:          The Honorable Rosemary S. Pooler
                 The Honorable Eunice C. Lee
                 The Honorable Paul A. Engelmayer


PLACE:           Thurgood Marshall United States Courthouse
                 40 Foley Square
                 New York, New York


Transcribed By
Melinda J. McLarnan
Registered Professional Reporter

APPEARANCES


ATTORNEY FOR PLAINTIFF-APPELLANT:


JEREMY A. LIEBERMAN, ESQUIRE

Pomerantz, LLP

600 Third Avenue Avenue, 20th Floor

New York, New York



ATTORNEY FOR DEFENDANT-APPELLEE:


BRADLEY A. KLEIN, ESQUIRE

Skadden, Arps, Slate, Meagher & Flom, LLP

1440 New York Avenue NW

Washington, DC

Oral Argument
October 21, 2021                                         3

P R O C E E D I N G S

JUDGE POOLER:  The next matter on our calender is Altimeo Asset Management and ODS versus JA Solar Holdings.  Thank you.

Before we proceed with argument, Judge Engelmayer wants to respond to the motion for recusal made by Altimeo, I believe.

JUDGE ENGELMAYER:  All right, thank you, Judge Pooler.  The plaintiff-appellant have requested my recusal based on my having resolved in the District Court an unrelated lawsuit involving a different issuer which also involved a claim under Section 10-B of actionable statements regarding relisting.

I decline the request to recuse.  There is no basis for recusal under either 20-A USC Section 47 or Section 455.  I do not have any prior involvement in this case.  I do not have any interest in this case.  I resolved a different case based on different facts involving a different issuer.  That circumstance does not give rise to a reasonable basis to question a judge's impartiality.

JUDGE POOLER:  Thank you, Judge Engelmayer.  We'll hear from Altimeo --

MR. LIEBERMAN:  Sure, thank you, Your Honor.

JUDGE POOLER:  What is before us is your motion

to remand -- well, I denied your request to adjourn since you're all here, but what is before us is the motion to remand.  Were we to grant that motion we wouldn't necessarily get into the merits today.

MR. LIEBERMAN:  Sure.

JUDGE POOLER:  Why don't you argue why remand is necessary.

MR. LIEBERMAN:  Well, sure.  Well, you know, Judge Carter himself has made the case for remand and I think it amply meets the standards of FRAP Rule 12.1. Judge Carter held that this was -- the new evidence presented was something that was -- could have a substantial impact on rulings both on materiality and loss causation and that the Court, you know, that this Court should have the benefit of his ruling on these issues prior to making a ruling on a motion to dismiss and so -- and he held highly relevant to the Second Circuit's consideration of falsely and loss causation.

So really based upon the Court's ruling the question was whether or not we had a concrete plan, whether we had alleged this.  We now do allege, we show that there were significant negotiations in the end of 2017 and then we showed that there is a letter of intent.  In February 7 of 2018 a letter of intent is by -- we believe by definition such a concrete plan.

JUDGE ENGELMAYER:  May I ask you this?

MR. LIEBERMAN:  Sure.

JUDGE ENGELMAYER:  I understand the theory is that essentially with the additional fact you would have a separate bucket of actionable statements.  You have the fairness opinion which Judge Carter has already sided with you on as to its being actionable and you have the -- or at least materially false and you would now contend that with the additional facts the relisting or the no relisting plan representation is also.

How, though, does that effect the either loss causation or reliance elements that with respect to the respective subsets of plaintiffs present other required element?

MR. LIEBERMAN:  Sure, it can.  We would not -- upon remands we would allege, and then it's subject obviously to further investigation, but we would allege the more concrete a plan is, the more that impacts valuation.  And it's shown actually by the allegations in this complaint.  We see the term and class period as the merger became more and more imminent as the tender -- the date became more and more closer to the actual deadline.

JUDGE POOLER:  But what Judge Engelmayer is saying is the Judge already found in your favor on the

fraud claim on the valuation of the shares, so this doesn't change the terrain all that much.

MR. LIEBERMAN:  Of course it changes the terrain.  Whether or not --

JUDGE POOLER:  Tell me why.

MR. LIEBERMAN:  Because first of all if you have -- there's two separate -- separate paths of claims here and one was for (inaudible).  And so they're not one in the same, they're obviously separated by Judge Carter given that he thought they were different in nature, and that can impact damages, that can impact recoverability.  If we have less false statements there's going to be arguments like class certification, about types impact, there's the arguments regarding damages, and it could be and we will allege that there was more damages to investors by them not knowing about this relisting plan.

It's one thing -- there's two issues.  It's one thing to say while your financial projections were depressed, which is what Judge Carter found we had properly alleged, it's another thing to say you knew about a concrete relisting plan and you didn't disclose it to investors.  Those are two different misrepresentations in nature and the damages for those misrepresentations very well can be different.

JUDGE ENGELMAYER:  Isn't the best argument for you a little different which is that the more concrete the relisting plan, the more reasonable it is to cite the relisting price as proof of loss causation.  In other words it moves earlier in time, in effect, the relisting.  The challenge for you is obviously proving loss causation given the absence of a corrective disclosure.  But if the relisting is almost immediate afterwards it becomes a little more reasonable for you to cite the facts surrounding the relisting as evidence of loss causation.

MR. LIEBERMAN:  I agree what Your Honor said. I would, in a sense, rephrase, the more likely it is there's going to be a relisting, the higher the valuation of the stock at a given time.  If I know you may relist in a year, the value of the shares will be different if I know you certainly will relist in a year. And so there's just simply a valuation on that and it's shown -- it's born out during the class period as the merger and the (inaudible) became more realistic the price of the shares went up because they knew it's becoming more and more of a certain as each regulatory hurdle, as the vote progressed it became more and more of certainty and therefore the share price almost equalled the tender price right at the very last day of

the class period.  It's a certainty of something versus the possibility or probability of an event.  So that's why its serving would impact not just materiality but loss causation, really, you know, how material the statement is can impact the damages to investors.

JUDGE POOLER:  What about the reliance issue?

MR. LIEBERMAN:  On reliance, Your Honor, a number of matters.  First of all --

JUDGE POOLER:  You're only talking now about the tenderer shareholders --

MR. LIEBERMAN:  The reliance of the tenderer shareholders, so it's a number of matters.  We think that in the Mills Court -- in the Mills Court in the --

JUDGE POOLER:  I don't think the District Court reached Mills or --

MR. LIEBERMAN:  The District Court did not discuss Mills, no.

JUDGE POOLER:  Right.

MR. LIEBERMAN:  And so it's a pre-court precedent and so that clearly is a reason to -- that would be a reason to reverse if there's no discussion --

JUDGE POOLER:  So that's a factual question of how many votes were tendered, how many -- what percentage of the votes tendered voted in favor of the merger.

MR. LIEBERMAN:  Well, I don't think there's any dispute that the -- that there were -- they needed a minority vote in order to -- in order to have the vote succeed, the merger succeed.

JUDGE POOLER:  Well, if they needed minority vote then the tenderers get the reliance, get Mills reliance is what you're arguing.

MR. LIEBERMAN:  That's exactly what we're arguing and --

JUDGE POOLER:  And the District Court never reached that issue.

MR. LIEBERMAN:  The Court never reached that issue, that's certainly grounds for reversal.

JUDGE POOLER:  But that has nothing to do with what the Chinese regulatory agency found, that's a separate issue where you were appealing from the District Court's decision.

MR. LIEBERMAN:  Well, I think, Your Honor, the question would be also, because we do allege it in the complaint, we allege an alternative reliance.  We allege reliance individually and we allege reliance based on foreign market.  We would then also on remand bolster our allegations regarding individual reliance.

JUDGE POOLER:  What is the new finding by the -- what is it called, the CSRC?

Oral Argument
October 21, 2021                          10

MR. LIEBERMAN:  Yes.

JUDGE POOLER:  Some combination of letters?

MR. LIEBERMAN:  Yes, yes.

JUDGE POOLER:  What does that have to do with Mills reliance?

MR. LIEBERMAN:  Well, no, it doesn't have to do with Mills reliance.

JUDGE POOLER:  Right.  So that your motion to remand is just a basic -- this is the basic appeal before us, which if we remand we wouldn't reach.

MR. LIEBERMAN:  Well, you wouldn't reach but you give the Court a full record to deal with materiality and loss causation and then we could address reliance, because ultimately the Court could actually have an opportunity to address Mills.  Of course I don't think you issue an advisory opinion --

JUDGE POOLER:  We don't do that.

MR. LIEBERMAN:  Yeah, this Court doesn't do that.  I think it would be, in nature, advisory because even if the Court would somehow affirm based on -- based on reliance, we would still seek to -- seek leave to amend at the Court below based upon the new fact and we would actually bolster the allegations, particularly with respect to individual reliance and how the new allegations impact material reliance.

JUDGE POOLER:  And tell me succinctly how does relisting finding by the CSRC, if I got the initials right, how that effects the loss causation on behalf of the seller shareholders.

MR. LIEBERMAN:  Because we will allege in an amended complaint how -- and we can do it also with principles of valuation and hire experts as well -- is that if there is an actual definite plan, how that will impact a share price and impact a tender price versus whether some potential or discussed plan or vague plan.

JUDGE POOLER:  So a tour of the piece.

MR. LIEBERMAN:  It's all of the piece, exactly, that is our contention, Your Honor.  We would like the opportunity to fully amend the complaint to address all these issues.  Judge Carter's on record saying this is something that he -- that this Court should allow and then have a full record and we hope -- we are hopeful that if we have that full record we would succeed under the concrete investment standard and therefore have a success for plaintiffs.

JUDGE POOLER:  Thank you.

MR. LIEBERMAN:  Thank you, Your Honor.

JUDGE POOLER:  You reserve some time for rebuttal.  We'll hear from JA Solar.

MR. KLEIN:  Good morning, Your Honors, and may

Oral Argument
October 21, 2021                                    12

it please the Court, Brad Klein for Defendants-Appellees JA Solar.

I think the panel's honed in on the critical issue which is that the new evidence changes nothing with respect to the elements of loss causation or reliance.  They're not alleging a new false statement.  They're not changing the timeline at all.  They're not -- they can't change the fact that the share price --

JUDGE POOLER:  Counsel -- Counsel, I have in front of me your opposition --

MR. KLEIN:  Yes.

JUDGE POOLER:  -- to the motion to remand or adjourn and I'm looking at page 9, item C, and you say with a straight face --

MR. KLEIN:  Yeah.

JUDGE POOLER:  -- the CSRC decision cannot remedy plaintiff's failure to plead an actual concrete pledge relief.  Really?  Is that what you're really saying?

MR. KLEIN:  Yes, Your Honor.

JUDGE POOLER:  Really?

MR. KLEIN:  Well, if you read -- if you read the text of the CSRC decision --

JUDGE POOLER:  Which I did.

MR. KLEIN:  Which you did.

JUDGE POOLER:  It wasn't exactly flowing English, but I read it, yes.

MR. KLEIN:  Yes.  No, what it basically says is that the parties were in the process of engaging in discussions, evaluations of this, and if you look at the timeline of the overall case, it actually supports that. The letter of intent the plaintiffs rely upon that is signed in July of 2018, that still doesn't contain pricing, structure, et cetera --

JUDGE POOLER:  But they deny even being in talks.

MR. KLEIN:  They're in talks, but that's different than a concrete and definite --

JUDGE ENGELMAYER:  Why wouldn't we send this back to Judge Carter to look holistically at the new evidence and make the determination, as he is asking us to do, about whether this dimension of the case is actionable?

MR. KLEIN:  Because no purpose would be served, Your Honor, respectfully, no purpose would be served by sending back a case that has fatal deficiencies in pleading a loss causation and reliance.

JUDGE POOLER:  But he told us he wants to look again at those issues in his order of October 15.  He said he wants to look again specifically at loss

Oral Argument
October 21, 2021                    14

causation.

MR. KLEIN:  Yes, and -- but --

JUDGE POOLER:  Wouldn't we respect the Judge's request?

MR. KLEIN:  Of course we respect the Judge's request but the remand request is discretionary, the case is properly before this Court and there are two substantive -- at least two substantive issues that will be completely unaffected by the resolution of whether the CSRC decision effects a claim of a false statement or not.  The plaintiff's theory of loss causation is no less speculative with this new document than it was before.  And if the District Court -- even if the District Court is --

JUDGE POOLER:  Who are you gonna believe, me or your own eyes, is that what you're saying?

MR. KLEIN:  No, Your Honor, I'm saying with respect to loss causation.  So even if you believe that the CSRC decision evidences a concrete plan to relist, that still doesn't change -- that doesn't move the needle at all with respect to loss causation because --

JUDGE ENGELMAYER:  Why is -- why is that?

MR. KLEIN:  Because plaintiff's theory is essentially that having -- because the ADS price didn't move at all in response -- or increased in response to

all the disclosures at issue in this case and since the tendering shareholders got a significant premium over the prevailing market price, any allegation that under different disclosures plaintiff somehow would have received an even greater premium or the ADS price would have increased even more is completely speculative --

JUDGE ENGELMAYER:  Well, look, I --

MR. KLEIN:  Gray v Wesco's on all fours on --

JUDGE ENGELMAYER:  Look, I understand that this is different from the usual corrective disclosure paradon where at least you have the starting point of a stock drop as at least the starting point to measure lost causation.

MR. KLEIN:  Right.

JUDGE ENGELMAYER:  On the other hand the nature of the problem here means you're never going to get that because there's a buyout by virtue of the tender offer and so on that theory, if that's what you're looking for, there's no way a plaintiff in this situation, even if lied to like crazy, enters in a fairness opinion if they sell on the market beforehand is going to be able to have a claim.  That seems like an overreach.

And if you take the view that the relisting statements are more likely to be actionable and that a statement we've got a concrete plan to relist or we're

likely to relist or we've taken the following steps towards relisting would have generally tended to make the stock more attractive, why isn't that something that is -- experts can battle upon in discovery and summary judgment, how can that be resolved in the pleadings?

MR. KLEIN:  Yeah, sure, Your Honor.  Gray v Wesco is explicit, and the other cases, Barrows, et cetera, plaintiffs have to allege a non-speculative theory that the disclosures in this case caused them a loss.  Not that their shares were undervalued in some general sense, there are appraisal actions for that, there's an appraisal action going on in the Cayman Islands as we speak with respect to this merger.

So it's not that they're without recourse if they can't pursue this theory under the disclosure-based securities laws.  So -- and we're not saying that such a theory could never be alleged.  What you could imagine a scenario where there was a stock price drop at some point in response to some disclosure along the way or you could imagine a scenario which goes to the reasoning in Gray v Wesco where there was some pleading of an alternative transaction that was foregone, some more lucrative opportunity that was available that people had to forego because they were lied to --

JUDGE ENGELMAYER:  Wait, sorry.  If the

plaintiff is essentially saying I sold during the tender process but I chose to sell on the market and I agreed to sell at a price that more or less was influenced by the tender offer price because I believed in the negative statements that the company was making that its prospects and because I accepted that there was no relisting plan --

MR. KLEIN:  Right.

JUDGE ENGELMAYER:  -- had I known those things, A, the tender offer price which may have guided the market would likely have been higher, but beyond that I would have held because I would have thought this is valuable.  What's wrong with that theory and why shouldn't the plaintiff be allowed in discovery to test that in fact there was a viable loss?

MR. KLEIN:  Okay.  Well, so I guess the threshold point is that plaintiffs here have not alleged any facts like that.  What you're describing is basically a reliance rationale that if -- that we took this into account, if we had known this, we would have done this or that, we relied on the disclosures in making our purchases.  There's no -- there are no facts pled here whatsoever that goes to actual reliance --

JUDGE ENGELMAYER:  But, no, the plaintiff is saying -- is pleading that we had an eye on the market.

Oral Argument
October 21, 2021                                    18

The plaintiff is pleading that we had an eye on what the disclosure was pertinent to the tender offer, the fairness opinion and the like in deciding to sell.  Is that -- are you saying that the transaction causation isn't pled?

MR. KLEIN:  Transaction causation is not pled as to the tendering shareholders.  We concede the plaintiffs can plead transaction causation with respect to the selling shareholders --

JUDGE ENGELMAYER:  And that's who I'm referring to.

MR. KLEIN:  Yes, they can invoke the basic presumption.  But I think under the precedence in Gray v Wesco, Barrows, et cetera, the allegation that the disclosures they're challenging actually caused them a loss has to be non-speculative, it has to be something -- on something other than just this generalized notion that in some -- under some alternate set of negotiations or disclosures we might have gotten more for their shares.

JUDGE POOLER:  But why doesn't the ruling of the CSRC that there was insider trading change all the facts available.  Why doesn't that by itself give the plaintiffs an opportunity to claim that they relied on misinformation.  There was insider trading going on.

That's what they say, that's the phrase they use.

MR. KLEIN:  That's the phrase they use, but it's insider trading by third parties who have nothing to do with this case, who are not members of JA Solar --

JUDGE POOLER:  Well, Jin --

MR. KLEIN:  -- not members of management, third parties --

JUDGE POOLER:  Jin was the -- wasn't Jin involved in this?

MR. KLEIN:  No.  The third -- the insider trading did not involve --

JUDGE POOLER:  Well, he was talking to the other company that was involved with this.  They were the ones that were insider trading.

MR. KLEIN:  The Defendant -- Defendant Jin was involved in discussions or, you know, evaluations of the potential --

JUDGE POOLER:  Which he disclaimed, which he disclaimed in the proxy material.

MR. KLEIN:  That's right, but we --

JUDGE POOLER:  So he was lying in the proxy material.

MR. KLEIN:  Well, we don't agree with that, Your Honor.  Under this Court's precedent in Azurite, facts have to be pled that there was a definite concrete

plan to relist.  And in this sort of a scenario, disclosure of a half-baked tentative plan that doesn't end up happening could be just as misleading as a failure to disclose a definite plan that does happen.  So it's --

JUDGE LEE:  What was evidence of a concrete plan.  Give me an exaple of what that would look like, what would have to be withheld.

MR. KLEIN:  Yeah, so, yes, Your Honor, so taking the discussion in Azurite as an example, the setting of a price, the determination of a structure for the new organization, a decision as to which exchange the new entity would be listed on, the hiring of advisers, lawyers, investment bankers and the like.  There are many indicia and there's -- there's a long process.

Remember here the LLI which in January -- July 2018, which really is just an agreement to continue to negotiate, sets none of those terms of a new potential relisting.  And then the price for the relisting isn't set until six months later, the following January and the relisting doesn't close until the following July --

JUDGE LEE:  What -- I'm sorry.  What do we make, though, of the timing, the fact that this relisting -- the intent of it happened so quickly after

the merger.  I mean that's one of the things that --

MR. KLEIN:  Well, so a couple points there, Your Honor.  It didn't happen quickly after the diclosures at issue which were in the proxy statement, that was in February.  The letter of intent which we contend essentially, you know, the terms of it basically just is it's an intent to continue to negotiate and evaluate.  None of the key terms or indicia of a concrete plan are there.  That's six months after the proxy in July.  Then the place for the relisting isn't set until six months after that and then the relisting doesn't close until the following December, almost a year after the pricing, almost two years after the proxy.  So we believe that the time on here actually supports our position, Your Honor.

JUDGE POOLER:  But what the Chinese regulatory agency found is that the talks were beginning during the -- when the proxy material came out which, as I said before, were fraudulent.  They said that we have no plans for relisting when they obviously did.

MR. KLEIN:  Your Honor, so we would make the distinction, yes, talks were starting, but those talks were preliminary --

JUDGE POOLER:  But they denied any talks or any intent during the -- in the proxy materials, didn't

Oral Argument
October 21, 2021                                    22

they?

MR. KLEIN:  No, respectfully, Your Honor, no, they denied any current plans or proposals to relist and in the proxy in the same breath explicitly warning and confirmed that the company may relist including on the international --

JUDGE POOLER:  How much did the defendant, Jin, clear after the merger, how much did he wind up with? Was it 2 billion?

MR. KLEIN:  No, it -- I don't believe it was that high, Your Honor.  I don't have a specific figure for you.  I think it's alleged that it was --

JUDGE POOLER:  Okay, I'll ask Altimeo, maybe they know.

MR. KLEIN:  Yeah, but I think it's allegedly a substantial amount.

JUDGE ENGELMAYER:  Can I ask a final from our perspective case management question?  If I were a District Court Judge, which on every other day I am, and a development like this hit, whatever else I would do as to the existing complaint, I would certainly give plaintiffs leave to amend on the theory that the information that came out from -- that's just been disclosed by the Chinese authority may be the tip of the iceberg and plaintiff's counsel are entitled to do some

investigation around it which may further flesh out the fact. If looking down the road here we see an amendment realistically as being -- going to be available from a seasoned case management judge, why not get ahead of it now and remand?

MR. KLEIN: Well, I think actually I would contend, Your Honor, that the considerations actually cut the other way. If there are fatal flaws in this theory, if we have absolute non-starters in terms of loss causation and reliance, better for the District Court to know that now and get ahead of it in that sense. The District Court, if it's going to consider this case further, would benefit greatly from the panel's guidance.

JUDGE POOLER: Thank you, Counsel.

MR. KLEIN: Thank you, Your Honors.

JUDGE POOLER: Mr. Lieberman, how much did Mr. Jin clear when all is said and done?

MR. LIEBERMAN: A mere $440 million, Your Honor. Not the $2 billion that was suggested, but I think 440 million is quite a lot of money.

So when we talk about speculative and we say that, we show a valuation, we allege a valuation of $1.1 billion that was reported after in the one up to the relisting. And so there's not a speculative claim here.

When we're talking about loss causation the first principles we look at Barrow.  And Barrow makes clear there's a myriad of ways to allege a law.  It's not just well, there's only one myopic way, a stock drop, that's when your purchaser may be a stock drop.  There could be -- there's clearly in this situation where you've been duped into selling and you could sell at a higher value or you can get dividends or loss profits that you may not ever see which is --

JUDGE POOLER:  Counsel, would you contemplate requesting of Judge Carter the opportunity to amend the complaint based on this newly received information or are you happy with the complaint as it stands?

MR. LIEBERMAN:  We very much want to amend the complaint, Your Honor.  There's -- obviously there's new allegations and how they relate to loss causation, reliance and materiality are quite consequential and so absolutely we want to have the opportunity to amend and we think that that will impact all on the relevant theories of -- and elements can be claimed in this case.

JUDGE POOLER:  Although you're prepared to go with the complaint as it stands now, but you would like the opportunity to amend.

MR. LIEBERMAN:  If not given the opportunity to amend, we will defend the complaint, we think it states

a claim and we're prepared to defend it, but we think the amendment will materially alter the landscape and Judge Carter agrees.

JUDGE POOLER:  He says it will alter.

MR. LIEBERMAN:  Well, he said it's highly relevant to determination, so he does say it may materially alter the outcome.  Just to plant a discussion on the lines, we discussed Mills and how it wasn't addressed, I just want to address the (inaudible) reliance that we discuss in our briefing which is that even if we didn't plead individual reliance and even if we didn't have the benefit of Mills, you also have just the concepts of Basic and Halliburton and Goldman, you do have reliance as a matter of degree or even where if -- if it were true, first of all there is no finding -- evidentiary finding of an inefficient market.  So Judge Carter didn't go into the analysis of whether or not this market was efficient or not, that's usually -- in the Goldman decision it was contemplated that we know the determinations would be made with the benefit of an evidentiary hearing.  But particularly based on the allegations of our complaint the for the market principle is a proxy to a price impact.  The Court was saying in Basic we don't want to force you to prove price impact, that might be too hard at this stage.

Oral Argument
October 21, 2021                              26

We'll let you do the efficient market hypotheses, if you can show an efficient market, you don't have to go through that strenuous --

JUDGE POOLER:  What is comparable for the tenderer.

MR. LIEBERMAN:  Right.  So here the tenderer itself was clearly a part of the fraud, the price is fraudulent.  So when we're talking about price impact we start alleging our case.  The 7.55 per share fair which was set by (inaudible) to be a fair price was a fraudulent price --

JUDGE POOLER:  Are you arguing that even the tenderer shareholders get the benefit of the basic presumption?

MR. LIEBERMAN:  Yes, under the pricing factor, absolutely, absolutely.

JUDGE POOLER:  And you didn't plead that, of course --

MR. LIEBERMAN:  We did brief that, we did brief that in our -- we did say that that materiality is a question of -- or efficiency is a question of degree and that particularly what the -- the question that's being asked in Basic are is it likely, because it's a sufficient market, that the fraud impacted the price.  That's the question.  But here we've got the direct

allegation clearly the fraud impacted the price, the price is fraudulent.  We don't even need the Basic presumption which we think we can even prove this is an efficient market, but we don't even need it because basically it's asking that fundamental question, can we come up with a proxy for price impact.  Why do I need a proxy when I have price impact in the complaint itself.  I just want to throw out that concept.

JUDGE LEE:  Thank you very much.

MR. LIEBERMAN:  Thank you, Your Honor.

JUDGE POOLER:  Thank you both.  We will reach our decision on whether to remand or not shortly.  Thank you.

(Proceeding Concluded)

CERTIFICATE OF REPORTER

I, Melinda J. McLarnan, certify that I was authorized to and did transcribe the foregoing audio recorded proceedings and that the transcript is a true and complete record of my stenographic notes from an audio recording and was transcribed to the best of my ability.

Dated this 22nd day of October, 2021.

_____
Melinda J. McLarnan
Registered Professional Reporter

**$**

$1.1  23:23
$2  23:20
$440  23:19

**1**

10-B  3:12
12.1  4:10
15  13:24

**2**

2  22:9
20-A  3:15
2017  4:23
2018  4:24
  13:8 20:18

**4**

440  23:21
455  3:16
47  3:15

**7**

7  4:24
7.55  26:9

**9**

9  12:13

**A**

absence  7:7
absolute  23:9
absolutely
  24:18 26:16
accepted  17:6
account  17:20

action  16:12
actionable
  3:13 5:5,7
  13:18 15:24
actions  16:11
actual  5:22
  11:8 12:17
  17:23
additional
  5:4,9
address
  10:13,15
  11:14 25:9
addressed
  25:9
adjourn  4:1
  12:13
ADS  14:24
  15:5
advisers
  20:14
advisory
  10:16,19
affirm  10:20
agency  9:15
  21:17
agree  7:12
  19:23
agreed  17:2
agreement
  20:18
agrees  25:3
ahead  23:4,11
allegation
  15:3 18:14
  27:1
allegations
  5:19 9:23
  10:23,25
  24:16 25:22
allege  4:21
  5:16,17 6:15
  9:19,20,21
  11:5 16:8
  23:23 24:3
alleged  4:21
  6:21 16:17

17:17 22:12
allegedly
  22:15
alleging  12:6
  26:9
allowed  17:14
alter  25:2,4,
  7
alternate
  18:18
alternative
  9:20 16:22
Altimeo  3:3,
  7,23 22:13
amend  10:22
  11:14 22:22
  24:11,14,18,
  23,25
amended  11:6
amendment
  23:2 25:2
amount  22:16
amply  4:10
analysis
  25:17
appeal  10:9
appealing
  9:16
appraisal
  16:11,12
argue  4:6
arguing  9:7,9
  26:12
argument  3:5
  7:1
arguments
  6:13,14
Asset  3:3
attractive
  16:3
authority
  22:24
Azurite  19:24
  20:10

**B**

back  13:15,21
bankers  20:14
Barrow  24:2
Barrows  16:7
  18:14
based  3:10,18
  4:19 9:21
  10:20,22
  24:12 25:21
basic  10:9
  18:12 25:13,
  24 26:13,23
  27:2
basically
  13:3 17:19
  21:6 27:5
basis  3:15,20
battle  16:4
beginning
  21:17
behalf  11:3
believed  17:4
benefit  4:15
  23:13 25:12,
  20 26:13
billion  22:9
  23:20,24
bolster  9:22
  10:23
born  7:19
Brad  12:1
breath  22:4
briefing
  25:10
bucket  5:5
buyout  15:17

**C**

calender  3:2
called  9:25
Carter  4:9,11
  5:6 6:10,20

13:15 24:11
25:3,17
**Carter's**
11:15
**case** 3:17,18
4:9 13:6,17,
21 14:7 15:1
16:9 19:4
22:18 23:4,13
24:20 26:9
**cases** 16:7
**causation**
4:14,18 5:12
7:4,7,11 8:4
10:13 11:3
12:5 13:22
14:1,11,18,21
15:13 18:4,6,
8 23:10 24:1,
16
**caused** 16:9
18:15
**Cayman** 16:12
**certainty**
7:24 8:1
**certification**
6:13
**cetera** 13:9
16:8 18:14
**challenge** 7:6
**challenging**
18:15
**change** 6:2
12:8 14:20
18:22
**changing** 12:7
**Chinese** 9:15
21:16 22:24
**chose** 17:2
**Circuit's**
4:18
**circumstance**
3:19
**cite** 7:3,10
**claim** 3:12
6:1 14:10
15:22 18:24

23:25 25:1
**claimed** 24:20
**claims** 6:7
**class** 5:20
6:13 7:19 8:1
**clear** 22:8
23:18 24:2
**close** 20:22
21:12
**closer** 5:22
**combination**
10:2
**company** 17:5
19:13 22:5
**comparable**
26:4
**complaint**
5:20 9:20
11:6,14 22:21
24:12,13,15,
22,25 25:22
27:7
**completely**
14:9 15:6
**concede** 18:7
**concept** 27:8
**concepts**
25:13
**Concluded**
27:14
**concrete**
4:20,25 5:18
6:22 7:2
11:19 12:17
13:13 14:19
15:25 19:25
20:6 21:9
**confirmed**
22:5
**consequential**
24:17
**consideration**
4:18
**considerations**
23:7
**contemplate**
24:10

**contemplated**
25:19
**contend** 5:9
21:6 23:7
**contention**
11:13
**continue**
20:18 21:7
**corrective**
7:7 15:10
**counsel** 12:9
22:25 23:15
24:10
**couple** 21:2
**Court** 3:11
4:14,15 8:13,
14,16 9:10,12
10:12,14,18,
20,22 11:16
12:1 14:7,13,
14 22:19
23:11,12
25:23
**Court's** 4:19
9:17 19:24
**crazy** 15:20
**critical** 12:3
**CSRC** 9:25
11:2 12:16,23
14:10,19
18:22
**current** 22:3
**cut** 23:8

---

**D**

---

**damages** 6:11,
15,16,24 8:5
**date** 5:22
**day** 7:25
22:19
**deadline** 5:23
**deal** 10:12
**December**
21:12
**deciding** 18:3

**decision** 9:17
12:16,23
14:10,19
20:12 25:19
27:12
**decline** 3:14
**defend** 24:25
25:1
**defendant**
19:15 22:7
**Defendants-**
**appellees**
12:1
**deficiencies**
13:21
**definite** 11:8
13:13 19:25
20:4
**definition**
4:25
**degree** 25:14
26:21
**denied** 4:1
21:24 22:3
**deny** 13:10
**depressed**
6:20
**describing**
17:18
**determination**
13:16 20:11
25:6
**determinations**
25:20
**development**
22:20
**diclosures**
21:4
**dimension**
13:17
**direct** 26:25
**disclaimed**
19:18,19
**disclose** 6:22
20:4
**disclosed**
22:24

disclosure
  7:8 15:10
  16:19 18:2
  20:2
disclosure-
based  16:15
disclosures
  15:1,4 16:9
  17:21 18:15,
  19
discovery
  16:4 17:14
discretionary
  14:6
discuss  8:17
  25:10
discussed
  11:10 25:8
discussion
  8:21 20:10
  25:8
discussions
  13:5 19:16
dismiss  4:16
dispute  9:2
distinction
  21:22
District  3:10
  8:14,16 9:10,
  17 14:13,14
  22:19 23:10,
  12
dividends
  24:8
document
  14:12
drop  15:12
  16:18 24:4,5
duped  24:7

**E**

earlier  7:5
effect  5:11
  7:5
effects  11:3
  14:10

efficiency
  26:21
efficient
  25:18 26:1,2
  27:4
element  5:14
elements  5:12
  12:5 24:20
end  4:22 20:3
engaging  13:4
Engelmayer
  3:6,8,22 5:1,
  3,24 7:1
  13:14 14:22
  15:7,9,15
  16:25 17:9,24
  18:10 22:17
English  13:2
enters  15:20
entitled
  22:25
entity  20:13
equalled  7:25
essentially
  5:4 14:24
  17:1 21:6
evaluate  21:8
evaluations
  13:5 19:16
event  8:2
evidence  4:11
  7:10 12:4
  13:16 20:6
evidences
  14:19
evidentiary
  25:16,21
exaple  20:7
exchange
  20:12
existing
  22:21
experts  11:7
  16:4
explicit  16:7
explicitly
  22:4

eye  17:25
  18:1
eyes  14:16

**F**

face  12:14
fact  5:4
  10:22 12:8
  17:15 20:24
  23:2
factor  26:15
facts  3:18
  5:9 7:10
  17:18,22
  18:23 19:25
factual  8:22
failure  12:17
  20:4
fair  26:9,10
fairness  5:6
  15:20 18:3
false  5:8
  6:12 12:6
  14:10
falsely  4:18
fatal  13:21
  23:8
favor  5:25
  8:24
February  4:24
  21:5
figure  22:11
final  22:17
financial
  6:19
finding  9:24
  11:2 25:15,16
flaws  23:8
flesh  23:1
flowing  13:1
force  25:24
forego  16:24
foregone
  16:22
foreign  9:22

found  5:25
  6:20 9:15
  21:17
fours  15:8
FRAP  4:10
fraud  6:1
  26:7,24 27:1
fraudulent
  21:19 26:8,11
  27:2
front  12:10
full  10:12
  11:17,18
fully  11:14
fundamental
  27:5

**G**

general  16:11
generalized
  18:17
generally
  16:2
give  3:20
  10:12 18:23
  20:7 22:21
Goldman
  25:13,19
Good  11:25
grant  4:3
Gray  15:8
  16:6,21 18:14
greater  15:5
greatly  23:13
grounds  9:13
guess  17:16
guidance
  23:14
guided  17:10

**H**

half-baked
  20:2

| | | | |
|---|---|---|---|
| **Halliburton** 25:13 | **I** | **international** 22:6 | 21,24 13:1, 10,14,15,23 |
| **hand** 15:15 | | **investigation** 5:17 23:1 | 14:3,15,22 15:7,9,15 |
| **happen** 20:4 21:3 | **iceberg** 22:25 | **investment** 11:19 20:14 | 16:25 17:9,24 18:10,21 |
| **happened** 20:25 | **imagine** 16:17,20 | **investors** 6:16,23 8:5 | 19:5,8,12,18, 21 20:6,23 |
| **happening** 20:3 | **imminent** 5:21 | **invoke** 18:12 | 21:16,24 22:7,13,17,19 |
| **happy** 24:13 | **impact** 4:13 6:11,14 8:3,5 | **involve** 19:11 | 23:4,15,17 24:10,11,21 |
| **hard** 25:25 | 10:25 11:9 | **involved** 3:12 19:9,13,16 | 25:3,4,17 26:4,12,17 |
| **hear** 3:23 11:24 | 24:19 25:23, 25 26:8 27:6, 7 | **involvement** 3:16 | 27:9,11 |
| **hearing** 25:21 | **impacted** 26:24 27:1 | **involving** 3:11,19 | **judge's** 3:21 14:3,5 |
| **held** 4:11,17 17:12 | **impacts** 5:18 | **Islands** 16:13 | **judgment** 16:5 |
| **high** 22:11 | **impartiality** 3:21 | **issue** 8:6 9:11,13,16 | **July** 13:8 20:17,22 |
| **higher** 7:14 17:11 24:7 | **inaudible** 6:8 7:20 25:9 | 10:16 12:4 15:1 21:4 | 21:10 |
| **highly** 4:17 25:5 | 26:10 | **issuer** 3:11, 19 | **K** |
| **hire** 11:7 | **including** 22:5 | **issues** 4:16 6:18 11:15 | **key** 21:8 |
| **hiring** 20:13 | **increased** 14:25 15:6 | 13:24 14:8 | **Klein** 11:25 12:1,11,15, |
| **hit** 22:20 | **indicia** 20:15 21:8 | **item** 12:13 | 20,22,25 13:3,12,19 |
| **Holdings** 3:4 | **individual** 9:23 10:24 | **J** | 14:2,5,17,23 15:8,14 16:6 |
| **holistically** 13:15 | 25:11 | **JA** 3:3 11:24 12:2 19:4 | 17:8,16 18:6, 12 19:2,6,10, |
| **honed** 12:3 | **individually** 9:21 | **January** 20:17,21 | 15,20,23 20:9 21:2,21 22:2, |
| **Honor** 3:24 7:12 8:7 9:18 | **inefficient** 25:16 | **Jin** 19:5,8,15 22:7 23:18 | 10,15 23:6,16 |
| 11:13,22 12:20 13:20 | **influenced** 17:3 | **judge** 3:2,5, 8,9,22,25 | **knew** 6:21 7:21 |
| 14:17 16:6 19:24 20:9 | **information** 22:23 24:12 | 4:6,9,11 5:1, 3,6,24,25 | **knowing** 6:16 |
| 21:3,15,21 22:2,11 23:7, | **initials** 11:2 | 6:5,10,20 7:1 8:6,9,14,18, | **L** |
| 20 24:15 27:10 | **insider** 18:22,25 | 22 9:5,10,14, 24 10:2,4,8, | **landscape** 25:2 |
| **Honors** 11:25 23:16 | 19:3,10,14 | 17 11:1,11, 15,21,23 | **law** 24:3 |
| **hope** 11:17 | **intent** 4:24 13:7 20:25 | 12:9,12,16, | **laws** 16:16 |
| **hopeful** 11:17 | 21:5,7,25 | | **lawsuit** 3:11 |
| **hurdle** 7:23 | **interest** 3:17 | | |
| **hypotheses** 26:1 | | | |

lawyers   20:14
leave   10:21
  22:22
LEE   20:6,23
  27:9
letter   4:23,
  24 13:7 21:5
letters   10:2
Lieberman
  3:24 4:5,8
  5:2,15 6:3,6
  7:12 8:7,11,
  16,19 9:1,8,
  12,18 10:1,3,
  6,11,18 11:5,
  12,22 23:17,
  19 24:14,24
  25:5 26:6,15,
  19 27:10
lied   15:20
  16:24
lines   25:8
listed   20:13
LLI   20:17
long   20:15
loss   4:14,18
  5:11 7:4,7,11
  8:4 10:13
  11:3 12:5
  13:22,25
  14:11,18,21
  16:10 17:15
  18:16 23:10
  24:1,8,16
lost   15:13
lot   23:21
lucrative
  16:23
lying   19:21

**M**

made   3:7 4:9
  25:20
make   13:16
  16:2 20:24
  21:21

makes   24:2
making   4:16
  17:5,22
management
  3:3 19:6
  22:18 23:4
market   9:22
  15:3,21 17:2,
  11,25 25:16,
  18,22 26:1,2,
  24 27:4
material   8:4
  10:25 19:19,
  22 21:18
materiality
  4:13 8:3
  10:13 24:17
  26:20
materially
  5:8 25:2,7
materials
  21:25
matter   3:2
  25:14
matters   8:8,
  12
means   15:16
measure   15:12
meets   4:10
members   19:4,
  6
mere   23:19
merger   5:21
  7:20 8:25 9:4
  16:13 21:1
  22:8
merits   4:4
million
  23:19,21
Mills   8:13,
  15,17 9:6
  10:5,7,15
  25:8,12
minority   9:3,
  5
misinformation
  18:25

misleading
  20:3
misrepresentat
  ions   6:24,25
money   23:21
months   20:21
  21:9,11
morning   11:25
motion   3:6,25
  4:3,16 10:8
  12:12
move   14:20,25
moves   7:5
myopic   24:4
myriad   24:3

**N**

nature   6:11,
  24 10:19
  15:15
necessarily
  4:4
needed   9:2,5
needle   14:21
negative   17:5
negotiate
  20:19 21:7
negotiations
  4:22 18:18
newly   24:12
non-
  speculative
  16:8 18:16
non-starters
  23:9
notion   18:17
number   8:8,12

**O**

October   13:24
ODS   3:3
offer   15:17
  17:4,10 18:2

opinion   5:6
  10:16 15:20
  18:3
opportunity
  10:15 11:14
  16:23 18:24
  24:11,18,23,
  24
opposition
  12:10
order   9:3
  13:24
organization
  20:12
outcome   25:7
overreach
  15:22

**P**

panel's   12:3
  23:14
paradon   15:11
part   26:7
parties   13:4
  19:3,7
paths   6:7
people   16:23
percentage
  8:24
period   5:20
  7:19 8:1
perspective
  22:18
pertinent
  18:2
phrase   19:1,2
piece   11:11,
  12
place   21:10
plaintiff
  15:4,19 17:1,
  14,24 18:1
plaintiff's
  12:17 14:11,
  23 22:25

| | | | |
|---|---|---|---|
| **plaintiff-appellant** 3:9 | 26:4,12,17 27:11 | **probability** 8:2 | **————————** |
| **plaintiffs** 5:13 11:20 13:7 16:8 17:17 18:8,24 22:22 | **position** 21:15 | **problem** 15:16 | **R** |
| | **possibility** 8:2 | **proceed** 3:5 | **————————** |
| | **potential** 11:10 19:17 20:19 | **proceeding** 27:14 | **rationale** 17:19 |
| **plan** 4:20,25 5:10,18 6:17, 22 7:3 11:8, 10 14:19 15:25 17:7 20:1,2,4,7 21:9 | | **process** 13:4 17:2 20:16 | **reach** 10:10, 11 27:11 |
| | **pre-court** 8:19 | **profits** 24:8 | **reached** 8:15 9:11,12 |
| | **precedence** 18:13 | **progressed** 7:23 | **read** 12:22 13:2 |
| **plans** 21:20 22:3 | **precedent** 8:20 19:24 | **projections** 6:19 | **realistic** 7:20 |
| **plant** 25:7 | **preliminary** 21:23 | **proof** 7:4 | **realistically** 23:3 |
| **plead** 12:17 18:8 25:11 26:17 | **premium** 15:2, 5 | **properly** 6:21 14:7 | **reason** 8:20, 21 |
| | **prepared** 24:21 25:1 | **proposals** 22:3 | **reasonable** 3:20 7:3,9 |
| **pleading** 13:22 16:21 17:25 18:1 | **present** 5:13 | **prospects** 17:6 | **reasoning** 16:20 |
| | **presented** 4:12 | **prove** 25:24 27:3 | **rebuttal** 11:24 |
| **pleadings** 16:5 | **presumption** 18:13 26:14 27:3 | **proving** 7:6 | **received** 15:5 24:12 |
| **pled** 17:23 18:5,6 19:25 | | **proxy** 19:19, 21 21:4,10, 14,18,25 22:4 25:23 27:6,7 | **record** 10:12 11:15,17,18 |
| **pledge** 12:18 | **prevailing** 15:3 | | **recourse** 16:14 |
| **point** 15:11, 12 16:19 17:17 | **price** 7:4,21, 24,25 11:9 12:8 14:24 15:3,5 16:18 17:3,4,10 20:11,20 25:23,25 26:7,8,10,11, 24 27:1,2,6,7 | **purchaser** 24:5 | **recoverability** 6:12 |
| **points** 21:2 | | **purchases** 17:22 | **recusal** 3:6, 10,15 |
| **Pooler** 3:2,9, 22,25 4:6 5:24 6:5 8:6, 9,14,18,22 9:5,10,14,24 10:2,4,8,17 11:1,11,21,23 12:9,12,16, 21,24 13:1, 10,23 14:3,15 18:21 19:5,8, 12,18,21 21:16,24 22:7,13 23:15,17 24:10,21 25:4 | | **purpose** 13:19,20 | **recuse** 3:14 |
| | | **pursue** 16:15 | **referring** 18:10 |
| | **pricing** 13:9 21:13 26:15 | **————————** | **regulatory** 7:22 9:15 21:16 |
| | **principle** 25:23 | **Q** | **relate** 24:16 |
| | **principles** 11:7 24:2 | **————————** | **relevant** 4:17 24:19 25:6 |
| | **prior** 3:16 4:16 | **question** 3:20 4:20 8:22 9:19 22:18 26:21,22,25 27:5 | **reliance** 5:12 8:6,7,11 9:6, 7,20,21,23 10:5,7,14,21, 24,25 12:6 |
| | | **quickly** 20:25 21:3 | |

13:22 17:19,
23 23:10
24:17 25:10,
11,14
**relied**  17:21
18:24
**relief**  12:18
**relist**  7:16,
17 14:19
15:25 16:1
20:1 22:3,5
**relisting**
3:13 5:9,10
6:17,22 7:3,
4,6,8,10,14
11:2 15:23
16:2 17:7
20:20,22,25
21:10,11,20
23:25
**rely**  13:7
**remand**  4:1,3,
6,9 9:22
10:9,10 12:12
14:6 23:5
27:12
**remands**  5:16
**remedy**  12:17
**Remember**
20:17
**rephrase**  7:13
**reported**
23:24
**representation**
5:10
**request**  3:14
4:1 14:4,6
**requested**  3:9
**requesting**
24:11
**required**  5:13
**reserve**  11:23
**resolution**
14:9
**resolved**
3:10,18 16:5

**respect**  5:12
10:24 12:5
14:3,5,18,21
16:13 18:8
**respectfully**
13:20 22:2
**respective**
5:13
**respond**  3:6
**response**
14:25 16:19
**reversal**  9:13
**reverse**  8:21
**rise**  3:20
**road**  23:2
**Rule**  4:10
**ruling**  4:15,
16,19 18:21
**rulings**  4:13

----

**S**

----

**scenario**
16:18,20 20:1
**seasoned**  23:4
**Section**  3:12,
15,16
**securities**
16:16
**seek**  10:21
**sell**  15:21
17:2,3 18:3
24:7
**seller**  11:4
**selling**  18:9
24:7
**send**  13:14
**sending**  13:21
**sense**  7:13
16:11 23:12
**separate**  5:5
6:7 9:16
**separated**  6:9
**served**  13:19,
20

**serving**  8:3
**set**  18:18
20:21 21:11
26:10
**sets**  20:19
**setting**  20:11
**share**  7:24
11:9 12:8
26:9
**shareholders**
8:10,12 11:4
15:2 18:7,9
26:13
**shares**  6:1
7:16,21 16:10
18:20
**shortly**  27:12
**show**  4:21
23:23 26:2
**showed**  4:23
**shown**  5:19
7:19
**sided**  5:7
**signed**  13:8
**significant**
4:22 15:2
**simply**  7:18
**situation**
15:19 24:6
**Solar**  3:3
11:24 12:2
19:4
**sold**  17:1
**sort**  20:1
**speak**  16:13
**specific**
22:11
**specifically**
13:25
**speculative**
14:12 15:6
23:22,25
**stage**  25:25
**standard**
11:19
**standards**
4:10

**stands**  24:13,
22
**start**  26:9
**starting**
15:11,12
21:22
**statement**  8:5
12:6 14:10
15:25 21:4
**statements**
3:13 5:5 6:12
15:24 17:5
**states**  24:25
**steps**  16:1
**stock**  7:15
15:12 16:3,18
24:4,5
**straight**
12:14
**strenuous**
26:3
**structure**
13:9 20:11
**subject**  5:16
**subsets**  5:13
**substantial**
4:13 22:16
**substantive**
14:8
**succeed**  9:4
11:18
**success**  11:20
**succinctly**
11:1
**sufficient**
26:24
**suggested**
23:20
**summary**  16:4
**supports**  13:6
21:15
**surrounding**
7:10

**T**

taking  20:10
talk  23:22
talking  8:9
  19:12 24:1
  26:8
talks  13:11,
  12 21:17,22,
  24
tended  16:2
tender  5:21
  7:25 11:9
  15:17 17:1,4,
  10 18:2
tendered
  8:23,24
tenderer
  8:10,11 26:5,
  6,13
tenderers  9:6
tendering
  15:2 18:7
tentative
  20:2
term  5:20
terms  20:19
  21:6,8 23:9
terrain  6:2,4
test  17:14
text  12:23
theories
  24:20
theory  5:3
  14:11,23
  15:18 16:9,
  15,17 17:13
  22:22 23:9
thing  6:18,
  19,21
things  17:9
  21:1
thought  6:10
  17:12
threshold
  17:17

throw  27:8
time  7:5,15
  11:23 21:14
timeline  12:7
  13:6
timing  20:24
tip  22:24
today  4:4
told  13:23
tour  11:11
trading
  18:22,25
  19:3,11,14
transaction
  16:22 18:4,6,
  8
true  25:15
types  6:14

**U**

ultimately
  10:14
unaffected
  14:9
understand
  5:3 15:9
undervalued
  16:10
unrelated
  3:11
USC  3:15
usual  15:10

**V**

vague  11:10
valuable
  17:13
valuation
  5:19 6:1
  7:15,18 11:7
  23:23
versus  3:3
  8:1 11:9

viable  17:15
view  15:23
virtue  15:17
vote  7:23
  9:3,6
voted  8:24
votes  8:23,24

**W**

Wait  16:25
warning  22:4
ways  24:3
Wesco  16:7,21
  18:14
Wesco's  15:8
whatsoever
  17:23
wind  22:8
withheld  20:8
words  7:5
wrong  17:13

**Y**

year  7:16,17
  21:13
years  21:13