**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALTIMEO ASSET MANAGEMENT, Individually and on Behalf of All Others Similarly Situated, <br><br>            Plaintiff, <br><br>      v. <br><br> QIHOO 360 TECHNOLOGY, HONGYI ZHOU, XIANGDONG QI, and ERIC X. CHEN, <br><br>            Defendants. | Case No. 19 Civ. 10067 (PAE) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HONGYI ZHOU'S**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

LATHAM & WATKINS LLP
Eric F. Leon
Jason C. Hegt
Hanyu (Iris) Xie
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

*Attorneys for Defendant Hongyi Zhou*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .........................................................................................................................1

I.     PLAINTIFFS FAIL TO STATE A SECTION 10(B) CLAIM AGAINST
      MR. ZHOU ...................................................................................................................1

      A.     Three of the Four Alleged Misrepresentations Are Inactionable.............................1

      B.     Plaintiffs Fail to Allege Reliance by the Cancelled Shareholders .........................3

      C.     Plaintiffs Fail to Allege Loss Causation ................................................................6

           1.     Plaintiffs Offer No Evidence of Loss or Causation ....................................6

           2.     Plaintiffs' Speculative Theories Do Not Show Causation..........................8

II.    PLAINTIFFS FAIL TO STATE A SECTION 20A CLAIM AGAINST
      MR. ZHOU .................................................................................................................10

CONCLUSION......................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
  19 F.4th 145 (2d Cir. 2021) ..................................................................................................2

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)..................................................................................................3, 4, 5

*Black v. Finantra Cap. Inc.*,
  418 F.3d 203 (2d Cir. 2005).........................................................................................5

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)..................................................................................................6, 7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)...................................................................................................4

*In re Forcefield Energy Inc. Sec. Lit.*,
  2015 WL 4476345 (S.D.N.Y. July 22, 2015) ...............................................................5

*GE Invs., Ret. Plan v. GE Co.*,
  447 F. App'x 229 (2d Cir. 2011) ...................................................................................6

*Gray v. Wesco Aircraft Holdings, Inc.*,
  847 F. App'x 35 (2d Cir. 2021) ....................................................................................8

*Gurary v. Winehouse*,
  190 F.3d 37 (2d Cir. 1999)..........................................................................................6

*Haideri v. Jumei Int'l Holding Ltd.*,
  2021 WL 4170791 (N.D. Cal. Sept. 14, 2021) .............................................................3

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)....................................................................................................3

*Kuebler v. Vectren Corp.*,
  412 F. Supp. 3d 1000 (S.D. Ind. 2019), *aff'd*, 13 F.4th 631 (7th Cir. 2021) ..............9

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005).....................................................................................6, 7, 9

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970)..................................................................................................3, 4

*ODS Cap. LLC v. JA Solar Holdings Co.*,
  2020 WL 7028639 (S.D.N.Y. Nov. 30, 2020)........................................................................4

*Schwab v. E\*TRADE Fin. Corp.*,
  752 F. App'x 56 (2d Cir. 2018) .........................................................................................5

*In re Shanda Games Ltd. Sec. Litig. (Shanda I)*,
  2019 WL 11027710 (S.D.N.Y. Sept. 30, 2019).....................................................................4

*In re Shanda Games Ltd. Sec. Litig. (Shanda III)*,
  2022 WL 992794 (S.D.N.Y. Mar. 31, 2022) ..............................................................4, 5, 10

*Tracinda Corp. v. DaimlerChrysler AG*,
  197 F. Supp. 2d 42 (D. Del. 2002).......................................................................................9, 10

*Trahan v. Interactive Intel. Grp., Inc.*,
  308 F. Supp. 3d 977 (S.D. Ind. 2018) ...................................................................................9

*Utts v. Bristol-Myers Squibb Co.*,
  251 F. Supp. 3d 644 (S.D.N.Y. 2017), *aff'd sub nom. Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019)........................................................................7

*Wellton Int'l Express v. Bank of China (Hong Kong)*,
  2020 WL 1659889 (S.D.N.Y. Apr. 3, 2020)..........................................................................7

## GLOSSARY OF TERMS USED

The following terms are used in this memorandum:

| | |
|---|---|
| ADS | American Depository Shares |
| Board | Board of Directors of Qihoo |
| Buyer Group | Group that acquired Qihoo in the Merger |
| Cancelled Shareholders | Shareholders who owned shares as of the Merger and whose shares were extinguished via the Merger |
| FAC | First Amended Complaint (ECF No. 53), cited as "¶ _" and attached as Exhibit 1 to the Motion |
| J.P. Morgan | J.P. Morgan Securities (Asia Pacific) Limited |
| Merger | Transaction that took Qihoo private on July 15, 2016 |
| Motion | Memorandum of Law in Support of Mr. Zhou's Motion to Dismiss the FAC (ECF No. 115), cited as "Mot." |
| NYSE | New York Stock Exchange |
| Opposition | Plaintiffs' Opposition to Mr. Zhou' Motion to Dismiss the FAC (ECF No. 128), cited as "Opp." |
| Plaintiffs | Lead Plaintiffs Altimeo Asset Management and ODS Capital LLC |
| Proxy Statement | Qihoo's Preliminary Proxy Statement issued on January 11, 2016, First Amended Proxy Statement issued on February 8, 2016, Second Amended Proxy Statement issued on February 26, 2016, and Final Proxy Statement issued on March 3, 2016 |
| Qihoo or the Company | Qihoo 360 Technology Co. Ltd. |
| Selling Shareholders | Shareholders who sold their shares during the period from December 18, 2015 through July 15, 2016 |

| Special Committee | Independent special committee of Qihoo directors formed to evaluate the fairness of the Merger proposal |
|---|---|
| Unaffiliated Holders | Shareholders unaffiliated with the Buyer Group |
| 360 Technology | 360 Technology Co. Ltd. |

## PRELIMINARY STATEMENT

Rather than respond to the substance of Mr. Zhou's motion to dismiss, Plaintiffs instead argue that his Motion was late (Opp. 1)[1] and then repeatedly ask the Court to ignore the FAC's shortcomings because they hope to find the requisite support for their claims later (*id.* 6 n. 4, 17, 21). Plaintiffs' strategy is unavailing. It was Plaintiffs' burden to adequately allege each of the following elements, and they have failed to do so:

- **Falsity**: Plaintiffs have not articulated any facts that Qihoo or Mr. Zhou had "secret" financial projections, much less that they were more positive than the ones disclosed to investors at the time of the Merger.

- **Reliance**: The Cancelled Shareholders tendered their ADS at a price set off-market and *prior to* the alleged misstatements, so they could not possibly have relied on the alleged misstatements or transacted at a price affected by the alleged misstatements.

- **Causation**: Plaintiffs made millions of dollars from their investment in Qihoo and have no evidence that the price of Qihoo ADS was deflated by the alleged misstatements.

Rather than wrestle with these points, Plaintiffs offer nothing but strawman arguments and novel legal theories that find no support in existing Second Circuit law. The FAC should be dismissed against Mr. Zhou with prejudice.

## ARGUMENT

I.     **PLAINTIFFS FAIL TO STATE A SECTION 10(B) CLAIM AGAINST MR. ZHOU**

A.     **Three of the Four Alleged Misrepresentations Are Inactionable**

Plaintiffs argue that the Second Circuit held that "the falsity of all statements is adequately alleged." Opp. 7 n. 7. Not so. The Second Circuit found only that Plaintiffs plausibly alleged a

---

[1] As the Court noted, Mr. Zhou timely moved once Plaintiffs made alternative service. ECF No. 126 at 2. While Plaintiffs supposedly were considering alternative service in September 2019 (ECF No. 56), Plaintiffs did not effect service on Mr. Zhou until February 2022. Any "delay" is of their own making.

relisting plan and left "all other aspects of the case to the district court to consider in the first instance." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 152 (2d Cir. 2021); *see also* ECF No. 126 at 1 n. 1.[2]    None of the remaining "independent" categories of alleged misrepresentations is actionable.

**Fairness Opinions.**    Plaintiffs argue that the fairness opinions are actionable because of the existence of "secret," "more positive internal projections" allegedly shared only with the Buyer Group.    Opp. 9.    But the sole basis for this assertion—a February 28, 2017 *Financial Times* article—reveals no secret projections at all.    That article said that the Buyer Group was told that the return on its investment "may be as high as 5 [times]" by 2019 and was shown "ambitious estimates of future net income" and other financial projections.    ¶ 115.    Plaintiffs do not explain how the projections referenced in this article differ from the bullish projections Qihoo provided to J.P. Morgan and disclosed in the Proxy Statements—projections that estimated a 424% revenue increase by 2019.    *See, e.g.*, Ex. 2 at 51-52.    Plaintiffs are so eager to invent "secret" projections that they claim that "a large increase in profits [in 2017] . . . further supports the conclusion that [the earlier] projections . . . were deflated" (Opp. 6)—seemingly unaware that 2017's strong profits were actually *lower* than what Qihoo projected and disclosed in the Proxy Statement.    *Compare* Ex. 2 at 52 (projecting $758 million in net profit for 2017) *with* Mot. 7 (actual results of $536 million for 2017).    In short, Plaintiffs allege zero facts suggesting that the fairness opinion or the data on which it relied was wrong or undermined by still-unseen "secret" projections.[3]

---

[2]  Plaintiffs ignore their own admission in appellate briefing that the other alleged misrepresentations were "*independent of* whether there was a plan to relist Qihoo."  *Qihoo*, 19 F.4th at 152 n. 4 (citing Appellants' Br. 47-52).  Plaintiffs cannot have it both ways.

[3] Plaintiffs also misstate that all Mr. Zhou did was recuse himself from "the Board's final vote" (Opp. 10), even though the Proxy disclosed that Mr. Zhou "did not participate in or seek to influence the deliberative process of, or the conclusions, of" the Special Committee.  *See* Ex. 2 at

**Reasons for the Merger & Viable Alternatives.**  Plaintiffs cannot decide what was misstated concerning the reasons for the Merger or the existence of viable alternatives, let alone explain why those statements were false.  Plaintiffs first argue that Merger and relisting "were part-and-parcel of the same plan," but just four lines later, Plaintiffs insist that relisting was a standalone "viable alternative" to be disclosed.  Opp. 11.  Plaintiffs' waffling confirms that there were no misrepresentations concerning the purpose of the Merger or strategic alternatives.[4]

**B.      Plaintiffs Fail to Allege Reliance by the Cancelled Shareholders**

Plaintiffs were required to plead that they either read and relied on the statements at-issue when trading Qihoo ADS or transacted at a price that incorporated the statements at-issue.  Mot. 14-15; *see also Basic Inc. v. Levinson*, 485 U.S. 224 (1988).  Plaintiffs cannot do either with regard to the shares that were tendered and cancelled in the Merger,[5] so they instead offer a series of diversions and pleas for expansion of the law, none of which saves their claims.

*First*, Plaintiffs assert that the decision in *Mills v. Elec. Auto-Lite Co.* supplies a "distinct way to satisfy . . . reliance" "separate from the fraud-on-the-market" presumption.  Opp. 11-12 (citing 396 U.S. 375, 382 n.5, 384-85 (1970)).  This is false.  *Mills* itself addresses only the "causal relationship" between the alleged misstatement and the alleged loss by holding that where a loss-

---

39-40, 48.  Given clear disclosures that "the 'fairness opinion at issue was not [the CEO's]'" but "'the [Special] Committee's and the Board's'" and that the CEO was "the buyer on the other side of the transaction," no investor was misled about Mr. Zhou's views on the fairness of the deal. *Haideri v. Jumei Int'l Holding Ltd.*, 2021 WL 4170791, at *18-19 (N.D. Cal. Sept. 14, 2021).

[4] Plaintiffs' residual argument that the Shanghai relisting shows that "'continuing to operate' as a 'publicly traded company'" was a 'viable alternative'" (Opp. 11) ignores that the disclosures in the Proxy Statement all focus on the costs of remaining a public company *in the U.S.*  Ex. 2 at 61.

[5] Plaintiffs fail to plead individual reliance, which requires pleading actual reliance on the *alleged misrepresentation*, not on "market price."  Opp. 15 (citing ¶ 310); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).

causing event is accomplished by means of a materially misleading proxy statement, it is fair to assume that the misstatements caused that loss. 396 U.S. at 385. In other words, *Mills* concluded that when soliciting existing owners for their votes, it is fair to assume that misstatements in the solicitation materials impacted their votes. *Id.* ("This objective test will avoid the impracticalities of determining how many votes were affected."). But no court has ever allowed *Mills* to substitute for whether investors reviewed a given statement and decided to buy or sell securities in reliance on that statement. Indeed, when the Supreme Court adopted the fraud-on-the-market presumption that *can* substitute for such reliance, it noted that *Mills* dealt only with the question of whether "misstatements in a proxy statement decisively affected voting." *Basic*, 485 U.S. at 243.

*Second*, Plaintiffs argue that the Cancelled Shareholders can satisfy their own modified version of *Basic* by alleging reliance on the *market* price even though they did not transact at the market price and instead allowed their ADS to be cancelled and received the $77 per ADS *tender* price that was negotiated off-market and *before the alleged misstatements*. Opp. 12-14. That is not the law. The Supreme Court has repeatedly held that the *Basic* presumption applies to those who "buy[] or sell[] stock at the price set by the market" assuming that an efficient market incorporates any misstatements into the market price. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 811 (2011) (citing *Basic*, 485 U.S. at 243). But where an investor transacts at a price negotiated in private before the alleged misstatements, that presumption is inapplicable. *See ODS Cap. LLC v. JA Solar Holdings Co.*, 2020 WL 7028639, at *14 (S.D.N.Y. Nov. 30, 2020) (dismissing for lack of reliance in similar going private transaction); *In re Shanda Games Ltd. Sec. Litig.* (*Shanda I*), 2019 WL 11027710, at *9 (S.D.N.Y. Sept. 30, 2019) (same).[6] Plaintiffs' cases

---

[6] Judge Carter addressed this issue four times in two separate cases, dismissing for lack of reliance three times, but Plaintiffs cite only *Shanda III* (Opp. 12-13), which is inapposite because the operative complaint had detailed allegations for how the tendering shareholders traded at a price

involving other securities priced off-market (Opp. 12-13) do not save their argument because, in each case, the off-exchange price was set *after* the alleged misstatements and thus was pegged to a market price that incorporated the misinformation.[7]  Here, by contrast, the off-market price at which Plaintiffs tendered could not have incorporated any alleged misinformation for the simple reason that the price was established before any of the alleged misstatements.

*Third*, Plaintiffs assert that they need not show an efficient market "when price impact can be shown directly." Opp. 2, 14.  Even if either of Plaintiffs' cited cases contained support for this point (they do not), it is irrelevant here because the Cancelled Shareholders tendered at a price negotiated and announced weeks *before* the alleged misstatements, so there is no possible argument that the $77 per ADS tender price was impacted by those statements.  Mot. 14-15.

*Fourth*, Plaintiffs abandon the *Basic* presumption altogether, claiming that this case involves omissions entitled to the *Affiliated Ute* presumption of reliance.  It does not—Plaintiffs challenged four specific types of statements.  Plaintiffs' logic would recast every misstatement as an omission and turn long-standing precedent on its head.  *See Schwab v. E\*TRADE Fin. Corp.*, 752 F. App'x 56, 59 (2d Cir. 2018) (holding that the presumption applies "only . . . when there are 'no positive statements,' and 'reliance as a practical matter is impossible to prove'").[8]

---

set in an efficient market.  *See In re Shanda Games Ltd. Sec. Litig.*, 2022 WL 992794, at \*5 (S.D.N.Y. Mar. 31, 2022).  Here, Plaintiffs do not even attempt to make such a showing and, in any event, *Shanda III* ultimately dismissed the claims because there was no evidence that the alleged misstatements impacted the price of Shanda's ADS.  *Id.* at \*6.

[7] *See Black v. Finantra Cap. Inc.*, 418 F.3d 203, 205-10 (2d Cir. 2005) (plaintiff made trades at a specific discount to the market price that allegedly reflected the misinformation); *In re Forcefield Energy Inc. Sec. Lit.*, 2015 WL 4476345, at \*4 (S.D.N.Y. July 22, 2015) ("the market's efficient valuation" set and informed the price at which Plaintiff exercised her options).

[8] All of Plaintiffs' cited cases (Opp. 14-15) either involved classic omission claims where no statements were made on the relevant topic or did not involve federal securities claims at all.

### C.      Plaintiffs Fail to Allege Loss Causation

#### 1.      Plaintiffs Offer No Evidence of Loss or Causation

Plaintiffs do not dispute that they made millions of dollars from their investment in Qihoo ADS. Mot. 1, 16 n. 7. Plaintiffs' opposition instead debates various loss causation theories without addressing their failure to plead a "causal link between the alleged misconduct and the economic harm" they claim to have suffered. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005); Mot. 15-24 (citing *GE Invs., Ret. Plan v. GE Co.*, 447 F. App'x 229, 232 (2d Cir. 2011) ("loss causation [is] a *sine qua non* of a claim for securities fraud")).[9]

*First,* because the price of Qihoo ADS rose after each of the alleged misstatements and was never "corrected" (Mot. 16-19), Plaintiffs lack the typical link between the alleged misstatements and the price of Qihoo ADS. Plaintiffs argue instead that they need not show a "corrective disclosure" (Opp. 20) or that the ADS price reacted to the alleged misstatements at all (*id*. at 21) because "fair value . . . damages" are available in an amount to be proven in discovery (*id*. at 17). This puts the cart before the horse:  To survive dismissal,  Plaintiffs must plead some facts suggesting "economic losses that [the] misrepresentations actually cause[d]."[10] *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344-45 (2005).  Plaintiffs claim that they need only "show that Defendants' misrepresentations caused Qihoo to be undervalued in the Merger." Opp. 17.  That

---

[9] Plaintiffs' claim (Opp. 18-19) that the Second Circuit's ruling somehow forecloses loss causation arguments is baseless.  A false statement does not necessarily impact market price or cause a loss. *See Lentell*, 396 F.3d at 175.

[10] Illustrating the problem in pursuing claims for such an elusive "loss" is Plaintiffs' insistence (Opp. 23) that "in and out" traders (who both bought *and* sold the ADS at allegedly deflated prices) are within the universe of investors somehow harmed by the alleged misstatements.  The Second Circuit has rejected this exact theory of loss causation as "anomalous." *Gurary v. Winehouse*, 190 F.3d 37, 46 (2d Cir. 1999) ("[I]t would be anomalous indeed to permit a plaintiff to recover damages where the characteristic that made the conduct complained of unlawful, here the allegedly artificial depression of the price, worked to plaintiff's benefit.").

6

is incorrect.  This is not a state law appraisal case in which the Court makes a holistic determination of Qihoo's fair value.  Plaintiffs could have brought that claim in the Cayman Islands, but decided not to do so.  This is a disclosure case where Plaintiffs must plead facts showing that the Qihoo ADS price would have been higher absent the alleged misrepresentations.  *Lentell*, 396 F.3d at 175 (no loss causation unless false statements are "the cause of the *decline* in stock value that plaintiffs claim as their loss").  A promise to find this evidence later (Opp. 17, 21) is not enough.[11]

*Second*, Plaintiffs similarly protest that they need not show competing offers to prove that the Qihoo ADS were "undervalued" and that the lack of competing offers during the go-shop period "does not automatically insulate defendants from liability."  Opp. 23.  To be sure, Mr. Zhou never argued that the lack of competing offers *automatically* precluded liability, but Plaintiffs' inability to plead *any* set of plausible facts showing that the price of Qihoo ADS were undervalued due to the alleged misstatements precludes Plaintiffs from showing loss causation.  Mot. 16-19.

*Third*, Plaintiffs' repeated references (Opp. 6, 18) to 360 Technology's 2018 valuation do not show that Qihoo ADS was "worth more" during the 2015-2016 class period than what the Buyer Group paid because Plaintiffs are comparing different companies listed on different exchanges eighteen months apart.  *See Dura*, 544 U.S. at 342–43 (loss causation not alleged where the "price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other

---

[11] *See Wellton Int'l Express v. Bank of China (Hong Kong)*, 2020 WL 1659889, at *4 n.4 (S.D.N.Y. Apr. 3, 2020) ("Because 'discovery is not a fishing expedition for Plaintiffs to try to obtain information to try to create claims that do not already exist . . . Plaintiffs need to have adequate information in their possession at the time they file their complaint.'"); *Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 673 (S.D.N.Y. 2017) ("The motion to dismiss . . . exists to prevent plaintiffs from conducting fishing expeditions to see if they can cobble together . . . claims."), *aff'd sub nom. Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019).

events, which taken separately or together account for some or all of that . . . price").

*Fourth*, the claim that the "secret" projections for 360 Technology were rosier in some unspecified way (Opp. 17) does not establish any cognizable loss. *See Gray v. Wesco Aircraft Holdings, Inc.*, 847 F. App'x 35, 37 (2d Cir. 2021). In *Wesco*, the Second Circuit found that (i) contemporaneous research analyst estimates that bidders would have offered a higher price and (ii) initial projections showing a higher valuation still did not support a plausible inference that the "true value of Wesco was necessarily higher than the merger consideration" and were also "too speculative to plead economic loss." *Id.* at 37. Here, Plaintiffs have not offered a single fact suggesting that Qihoo's NYSE-listed business at the time was worth more than the Buyer Group paid—a 32.7% premium over the market price prior to the Merger proposal. ¶ 162.[12]

### 2. Plaintiffs' Speculative Theories Do Not Show Causation

Plaintiffs essentially give up on showing any evidence that the price of Qihoo ADS was deflated—much less deflated due to the alleged misstatements—and instead offer a range of theories far too attenuated to plead loss causation under well-established Second Circuit precedent.

Plaintiffs claim that if they had only known that 360 Technology would be more profitable in China than Qihoo was when it was listed in the US—of course, the Proxy Statement disclosed this very possibility, *see supra* Section I.A—then they would have held the Company hostage and only voted for the Merger if the Buyer Group paid, in essence, a ransom for the ADS. *See* Opp. 18, 21 n. 22; ¶ 282. For this "ransom plan" to have led to a higher price for Qihoo ADS, the market would have had to be confident that at least 86% of the Unaffiliated Holders would vote "no" on the Merger; that the Unaffiliated Holders could then re-negotiate the deal at some still unspecified

---

[12] Plaintiffs' claim (Opp. 22) that their "loss" could be their alleged "forfeiture of appraisal rights" is without merit because, as the FAC admits, other shareholders did exercise these rights. ¶ 138.

higher ransom price; and that the Buyer Group would have agreed to these new hypothetical terms. *See* Mot. 22-23. Plaintiffs attempt to side-step this "long causal chain" (Opp. 21), but they do not—and cannot—dispute that it accurately depicts the many steps that would need to occur for alleged misstatements to have changed the price of Qihoo ADS. Courts considering this precise chain of "what ifs" have rejected it wholesale. *See, e.g.*, *Trahan v. Interactive Intel. Grp., Inc.*, 308 F. Supp. 3d 977, 1000 (S.D. Ind. 2018) ("Absent an allegation of a definite, immediately available, superior alternative to the Merger consideration (a higher competing offer, for example), [Plaintiff's] allegation depends on the marketplace eventually valuing Interactive at higher than $60.50 per share at some indeterminate future date when Trahan still held his shares and was willing to sell them . . . And that is not enough."); *Kuebler v. Vectren Corp.*, 412 F. Supp. 3d 1000, 1011 (S.D. Ind. 2019), *aff'd*, 13 F.4th 631 (7th Cir. 2021) ("That there might have been a better future prospect at some point in time had the shareholders held on to their shares is too speculative to state a claim."); *see also Lentell*, 396 F.3d at 174 ("if the connection is attenuated, . . . a fraud claim will not lie").

Plaintiffs try to make their "loss" more concrete by arguing that they lost an "acquisition premium" they supposedly would have received had the market known that relisting in Shanghai was a certainty. Opp. 19. As an initial matter, this ignores that the Buyer Group *did pay an acquisition premium*: The merger tender price represented a 32.7% premium over the ADS price prior to the receipt of the Merger proposal. Ex. 5 at 1; ¶ 162. Plaintiffs' demand years later for a bigger one does not show they "lost" anything. Plaintiffs' own authority underscores the speculative nature of this purported "loss" here. In *Tracinda Corp. v. DaimlerChrysler AG* (cited in Opp. 19), the merger between Chrysler and Daimler-Benz was allegedly misrepresented as a "merger of equals," and the parties denied that a "change of control premium would be paid to

9

either side," even though their intent was allegedly for Chrysler to become a division of Daimler-Benz.  197 F. Supp. 2d 42, 51, 61 (D. Del. 2002).  In other words, Chrysler shareholders were able to point to a direct causal link between the mischaracterization of the merger and Chrysler shareholders not being compensated for their loss of control of the company.  Here, by contrast, Plaintiffs—who were prohibited by law from being shareholders in a Shanghai-listed company (*see* Mot. 7; Opp. 6)—have identified nothing that they "lost" by virtue of the alleged misrepresentations other than the "opportunity" to extract unspecified ransom pricing from the Buyer Group before they returned Qihoo to China.  That is not enough.

## II.    PLAINTIFFS FAIL TO STATE A SECTION 20A CLAIM AGAINST MR. ZHOU

Plaintiffs' Section 20A claim should be dismissed.  *First*, Plaintiffs concede that the Selling Shareholders did not trade contemporaneously with Mr. Zhou, a threshold standing requirement for any Section 20A claim.  *See* Opp. 24; Mot. 24-25.  *Second*, Plaintiffs continue to ignore their own allegations in arguing that the Cancelled Shareholders traded the same class of securities contemporaneously with Mr. Zhou.  Opp. 24-25.  The FAC makes clear that the Cancelled Shareholders' ADS ceased to exist at the time of Merger.  Mot. 22-23.[13]  *Finally*, this claim fails because Plaintiffs have not established the requisite predicate violation.  *Id.* at 24-25.[14]

---

[13] Plaintiffs' cited cases (Opp. 25) either do not even address Section 20A claims, much less the "contemporaneous trading" requirement (*Vine* and *Green*), or stands for the unremarkable proposition that trading the same class of securities through a broker is sufficient (*Valeant*).

[14] In *Shanda III*, the court dismissed the Section 10(b) misstatements claim, but found that the plaintiff established a predicate Section 10(b) insider trading violation on which a Section 20A claim could be premised.  2022 WL 992794, at *7-9.  Plaintiffs have not pled, much less established such a violation here, and their passing reference to Mr. Zhou's duty of disclosure under "Cayman law" (Opp. 25) fails to explain how such a duty—if it existed at all—supports their insider trading claim.

10

**CONCLUSION**

For the foregoing reasons, Mr. Zhou respectfully requests that the Court dismiss the claims asserted against him with prejudice.

Dated:  June 24, 2022
        New York, New York

Respectfully Submitted,

LATHAM & WATKINS LLP


/s/ Jason C. Hegt
Eric F. Leon
Jason C. Hegt
Hanyu (Iris) Xie
1271 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Email:  eric.leon@lw.com
Email:  jason.hegt@lw.com
Email:  iris.xie@lw.com

*Attorneys for Defendant Hongyi Zhou*

11