**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALTIMEO ASSET MANAGEMENT, Individually and on Behalf of All Others Similarly Situated,<br><br>         Plaintiff,<br><br>  v.<br><br>QIHOO 360 TECHNOLOGY, HONGYI ZHOU, XIANGDONG QI, and ERIC X. CHEN,<br><br>         Defendants. | Case No. 19 Civ. 10067 (PAE) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**LEAD PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION**
**<u>OR, IN THE ALTERNATIVE, TO CERTIFY FOR APPEAL</u>**

LATHAM & WATKINS LLP
Eric F. Leon
Jason C. Hegt
Hanyu (Iris) Xie
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

*Attorneys for Defendant Hongyi Zhou*

DECHERT LLP
David H. Kistenbroker*
Joni S. Jacobsen*
Angela M. Liu*
35 West Wacker, Suite 3400
Chicago, IL 60601
(312) 646-5800
david.kistenbroker@dechert.com
joni.jacobsen@dechert.com
angela.liu@dechert.com

*Attorneys for Qihoo 360 Technology Co.
Ltd. and Eric X. Chen*

*admitted *pro hac vice*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

RELEVANT BACKGROUND .............................................................................................3

     A.     The Court's Dismissal Order ...............................................................................3

          1.     Falsity............................................................................................4

          2.     Loss Causation ..............................................................................4

     B.     Plaintiffs' Motion And Proposed SAC ................................................................7

ARGUMENT........................................................................................................................8

I.     THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR PARTIAL RECONSIDERATION ..................................................................................................8

     A.     The Proposed SAC's Allegations Are Not Based On New Evidence ...................9

     B.     Plaintiffs' Supposed "New Facts" Do Not Cure Plaintiffs' Failure To Allege Loss Causation ......................................................................................11

     C.     Plaintiffs' New Allegations Do Not Even Establish That The Merger Consideration Undervalued Qihoo ....................................................................15

II.     THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL.............................................18

     A.     The Court's Order Does Not Raise A Controlling Question Of Law...................19

     B.     There Is No Substantial Ground For Difference Of Opinion ..............................20

     C.     Interlocutory Review Would Not Materially Advance The Termination Of This Litigation..................................................................................................23

CONCLUSION...................................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Adar Bays, LLC v. Aim Exploration, Inc.*,
310 F. Supp. 3d 454 (S.D.N.Y. 2018) ..................................................................................... 19

*Affiliated Ute Citizens of Utah v. U.S.*,
406 U.S. 128 (1972) ................................................................................................................. 21, 22

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
684 F.3d 36 (2d Cir. 2012) ....................................................................................................... 8

*Assoc. Press v. U.S. Dep't of Def.*,
395 F. Supp. 2d 17 (S.D.N.Y. 2005) ....................................................................................... 10

*Baum v. Harman Int'l Indus., Inc.*,
575 F. Supp. 3d 289 (D. Conn. 2021) ...................................................................................... 13

*In re Bernard L. Madoff Inv. Sec. LLC*,
2011 WL 3897970 (S.D.N.Y. Aug. 31, 2011) ........................................................................ 19

*Brown v. Papa Murphy's Holds.*,
2021 WL 1574446 (W.D. Wash. Apr. 22, 2021) ..................................................................... 22

*Cellular Tech. Servs. Co. v. TruePosition, Inc.*,
609 F. Supp. 2d 223 (D. Conn. 2009) ...................................................................................... 13

*Cohen v. Stevanovich*,
722 F. Supp. 2d 416 (S.D.N.Y. 2010) ..................................................................................... 11

*Consub Del. LLC v. Schahin Engenharia Limitada*,
476 F. Supp. 2d 305 (S.D.N.Y. 2007) ..................................................................................... 19

*In re Digital Island Sec. Litig.*,
223 F. Supp. 2d 546 (D. Del. 2002) ......................................................................................... 13

*Dill v. JPMorgan Chase Bank, N.A.*,
2021 WL 3406192 (S.D.N.Y. Aug. 4, 2021) .......................................................................... 19

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................................................................................. 15

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
343 F.3d 189 (2d Cir. 2003) ..................................................................................................... 14

ii

*In re Envision Healthcare Corp.*,
  2019 WL 3494407 (D. Del. Aug. 1, 2019) ...............................................................22

*Erickson v. Jernigan Cap., Inc.*,
  2022 WL 3028627 (S.D.N.Y. Aug. 1, 2022)..............................................................22

*Evans v. Syracuse City Sch. Dist.*,
  704 F.2d 44 (2d Cir. 1983).......................................................................................10

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 524 (S.D.N.Y. 2014)...........................................................19, 21, 23

*Flor v. BOT Financial Corp.*,
  79 F.3d 281 (2d Cir. 1996).......................................................................................20

*Footbridge Ltd. v. Countrywide Home Loans, Inc.*,
  2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010)..........................................................17

*In re Gildan Activewear, Inc. Sec. Litig.*,
  2009 WL 4544287 (S.D.N.Y. Dec. 4, 2009) .............................................................10

*Goonan v. Fed. Reserve Bank of NY*,
  2013 WL 1386933 (S.D.N.Y. Apr. 5, 2013)..............................................................10

*Grace v. Rosenstock*,
  23 F. Supp. 2d 326 (E.D.N.Y. 1998) .........................................................................13

*Gray v. Wesco Aircraft Holdings, Inc.*,
  454 F. Supp. 3d 366 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021)........18

*Gray v. Wesco Aircraft Holdings, Inc.*,
  847 F. App'x 35 (2d Cir. 2021) ..........................................................................12, 13

*Hart v. Rick's Cabaret Int'l., Inc.*,
  73 F. Supp. 3d 382 (S.D.N.Y. 2014)...........................................................19, 20, 23

*In re Henry Schein, Inc. Sec. Litig.*,
  2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019) ..........................................................11

*Hermes Int'l v. Rothschild*,
  590 F. Supp. 3d 647 (S.D.N.Y. 2022)..................................................................19, 20

*In re Hot Topic, Inc. Sec. Litig.*,
  2014 WL 7499375 (C.D. Cal. May 2, 2014) .............................................................22

*Karp v. First Conn. Bancorp*,
  2019 WL 4643799 (D. Md. Sept. 24, 2019) ..............................................................22

*Katyle v. Penn Nat'l Gaming, Inc.*,
637 F.3d 462 (4th Cir. 2011) ............................................................................................11

*Koehler v. Bank of Bermuda Ltd.*,
101 F.3d 863 (2d Cir. 1996)..............................................................................................23

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
729 F.3d 99 (2d Cir. 2013)........................................................................8, 9, 11, 14

*Kravitz as Tr. of Aegean Litig. Tr. v. Tavlarios*,
2020 WL 3871340 (S.D.N.Y. July 8, 2020), *aff'd*, 2021 WL 5365582 (2d Cir.
Nov. 18, 2021) ...................................................................................................................10

*Kuebler v. Vectren Corp.*,
13 F.4th 631 (7th Cir. 2021) .............................................................................................13

*Lee v. Coughlin*,
26 F. Supp. 2d 615 (S.D.N.Y. 1998)..................................................................................24

*Lentell v. Merrill Lynch & Co., Inc.*,
396 F.3d 161 (2d Cir. 2005)......................................................................................14, 21

*Lewis v. Termeer*,
445 F. Supp. 2d 366 (S.D.N.Y 2006)..................................................................................22

*Low v. Robb*,
2012 WL 173472 (S.D.N.Y. Jan. 20, 2012) .......................................................................17

*Mills v. Electric Auto-Lite Co.*,
396 U.S. 375 (1970)............................................................................................................21

*Nastasi & Assocs., Inc. v. Bloomberg, L.P.*,
2020 WL 2555281 (S.D.N.Y. May 20, 2020) .....................................................................10

*NRW, Inc. v. Bindra*,
2015 WL 3763852 (S.D.N.Y. June 16, 2015) ....................................................................10

*In re Ocera Therapeutics, Inc. Sec. Litig.*,
806 F. App'x 603 (9th Cir. 2020) ......................................................................................13

*Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*,
483 F. Supp. 3d 195 (S.D.N.Y. 2020)................................................................................14

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) ...........................................................................................11

*Orson, Inc. v. Miramax Film Corp.*,
867 F. Supp. 319 (E.D. Pa. 1994) ....................................................................................24

*Pettiford v. City of Yonkers*,
    2020 WL 1989419 (S.D.N.Y. Apr. 27, 2020)................................................................9

*In re Refco Inc. Sec. Litig.*,
    2014 WL 1302857 (S.D.N.Y. Mar. 19, 2014) ...........................................................24

*In re Resolute Energy Corp. Sec. Litig.*,
    2022 WL 260059 (3d Cir. Jan. 27, 2022) .................................................................13

*Ryan, Beck & Co., LLC v. Fakih*,
    275 F. Supp. 2d 393 (E.D.N.Y. 2003) ......................................................................21

*SEC v. Credit Bancorp, Ltd.*,
    103 F. Supp. 2d 223 (S.D.N.Y. 2000).......................................................................24

*In re Shanda Games Ltd. Sec. Litig.*,
    2019 WL 11027710 (S.D.N.Y. Sept. 30, 2019).........................................................18

*Spiegel v. Trustees of Tufts Coll.*,
    843 F.2d 38 (1st Cir. 1988).......................................................................................24

*Sussman v. I.C. Sys., Inc.*,
    2013 WL 5863664 (S.D.N.Y. Oct. 30, 2013).............................................................24

*In re Tangoe, Inc. Stockholders Litig.*,
    333 F. Supp. 3d 77 (D. Conn. 2018).........................................................................15

*Tantaros v. Fox News Network, LLC.*,
    465 F. Supp. 3d 385 (S.D.N.Y. 2020).......................................................................24

*Tracinda Corp. v. DaimlerChrysler AG*,
    197 F. Supp. 2d 42 (D. Del. 2002)............................................................................23

*Transp. Workers Union of Am., Local 100 v. NYC Transit Auth.*,
    358 F. Supp. 2d 347 (S.D.N.Y. 2005)..................................................................20, 23

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992)......................................................................................9

*Virginia Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991)............................................................................................14, 15

*In re Willis Towers Watson PLC Proxy Litig.*,
    2020 WL 5361582 (E.D. Va. Sept. 4, 2020).............................................................22

## STATUTES

15 U.S.C.
    § 78j(b)..............................................................................................................4
    § 78t–1 ............................................................................................................3
    § 78t(a)............................................................................................................4

28 U.S.C.
    § 1292(b)................................................................................... *passim*

## RULES

Fed. R. Civ. P.
    9(b)................................................................................................................11
    15(a)(1)(B) ....................................................................................................9
    15(a)(2) ..........................................................................................................9
    23(b)(3).........................................................................................................22

Fed. R. Evid. 408(a)(1) .....................................................................................17

## GLOSSARY OF TERMS USED

The following terms are used in this memorandum:

| | |
|---|---|
| ADS | American Depository Shares |
| Buyer Group | Group that acquired Qihoo in the Merger |
| Dismissal Order | March 21, 2022 Opinion and Order (ECF No. 145) |
| Exchange Act | Securities Exchange Act of 1934 |
| FAC | First Amended Complaint (ECF No. 53) |
| J.P. Morgan | J.P. Morgan Securities (Asia Pacific) Limited |
| Merger | Transaction that took Qihoo private on July 15, 2016 |
| Plaintiffs or Lead Plaintiffs | Lead Plaintiffs Altimeo Asset Management and ODS Capital LLC |
| Proxy Statement or Proxy | Qihoo's Preliminary Proxy Statement issued on January 11, 2016, First Amended Proxy Statement issued on February 8, 2016, Second Amended Proxy Statement issued on February 26, 2016, and Final Proxy Statement issued on March 3, 2016 |
| Proposed SAC | Proposed Second Amendment Complaint (ECF No. 157-1) |
| Qihoo or the Company | Qihoo 360 Technology Co. Ltd. |
| Selling Shareholders | Shareholders who sold their shares during the period from December 18, 2015 through July 15, 2016 |
| Special Committee | Independent special committee of Qihoo directors formed to evaluate the fairness of the Merger proposal |
| Tendering Shareholders | Shareholders who owned shares as of the Merger and whose shares were extinguished via the Merger |

Defendants Qihoo 360 Technology Co. Ltd., Hongyi Zhou, and Eric X. Chen respectfully submit this memorandum of law in opposition to Lead Plaintiffs' Motion for Partial Reconsideration, or in the Alternative, to Certify for Appeal ("Mot.") (ECF Nos. 149-50).[1]

## INTRODUCTION

Plaintiffs' motion does not come close to meeting the stringent standards for reconsideration or for interlocutory review.

To warrant reconsideration, Plaintiffs must show that this Court committed a clear error in its March 21, 2023 Dismissal Order (ECF No. 145), that there has been an intervening change in the law, or that new evidence has come to light since the decision was rendered. Plaintiffs do not seriously contend that either of the first two routes are available here. And while they purport to set forth "new" evidence about the "intrinsic value" of Qihoo based on an appraisal proceeding filed by other shareholders in the Cayman Islands, Plaintiffs conveniently omit that those allegations—which merely elaborate on unadjudicated claims from that case, which this Court already rejected as irrelevant—were available *more than a year ago*. Rather than seeking leave to amend after the Cayman proceeding ended in March 2022, Plaintiffs elected to stand on their existing complaint. Plaintiffs cannot now un-do that decision under the guise of reconsideration. Reconsideration is reserved for new factual developments, not additional allegations that a party wishes it had more effectively presented earlier. Plaintiffs' buyer's remorse cannot make old evidence new and worthy of reconsideration.

In any event, Plaintiffs' proposed amendments only confirm the inescapable problem at the heart of their loss causation theory: It rests "on a chain of inferences" that is "far too speculative

---

[1] Unless otherwise indicated herein, all internal citations and quotation marks are omitted, emphasis is added, and citations to "Ex." refer to exhibits attached to the Declaration of Hanyu Xie in support of Mr. Zhou's Motion to Dismiss (ECF No. 116).

and distended to support a [claim]." Dismissal Order at 41. As this Court explained, no facts suggest a realistic possibility of a "superior offer[]" that was more lucrative than the 32.7% premium Plaintiffs received. Plaintiffs make no effort to address that fatal defect. Instead, they spend page after page trying to allege that the supposed "intrinsic value" of Qihoo was higher than the generous Merger consideration they received. These additional allegations do nothing to cure the fundamental defect with Plaintiffs' case—that is, Plaintiffs' inability to show a "demonstrable loss" that is "*causally attributable* to [alleged] misstatements." *Id.* at 39. Regardless of what fractional interests in Qihoo may have been worth in a hypothetical appraisal, there are no particularized facts, either in the FAC or the Proposed SAC, showing that Qihoo's U.S. shareholders would have received this hypothetical value had the alleged relisting plan been disclosed. Plaintiffs' new allegations thus fail to advance their case at all—let alone establish that there was a "clear error" in this Court's prior decision. Reconsideration should be denied.

Plaintiffs' request for certification of an interlocutory appeal under 28 U.S.C. § 1292(b) is equally meritless. To justify interlocutory review, Plaintiffs must demonstrate that (i) the Court's Dismissal Order presents a controlling question of law, (ii) a substantial ground for difference of opinion on that question exists, and (iii) an immediate appeal would materially advance the termination of this litigation. This case does not come close to satisfying *any* of those three requirements for interlocutory review. The Court's loss causation ruling involves the application of law to alleged facts, not a pure question of law. The Court based its decision on well-established law, and Plaintiffs' invocation of inapposite, decades-old Supreme Court precedent only underscores that there is no novel question here. And far from spurring this litigation towards a swift conclusion, an interlocutory appeal could only serve to inject *more* uncertainty into the case, and waste yet more time and judicial resources. Plaintiffs may strenuously disagree with this

2

Court's decision—but just like every other litigant who does not like an interim decision, they must wait until final judgment to appeal. Plaintiffs' motion should be denied in full.

## RELEVANT BACKGROUND

The Lead Plaintiffs in this action are two hedge funds who made millions of dollars on their investment in Qihoo, and now seek "damages" for losses they never suffered. *See* ECF No. 115 at 16 n.7. In 2016, Qihoo was taken private via a tender offer in which holders of Qihoo ADS were offered $77 per ADS—a premium of 32.7% to the average closing price during the 30 days immediately prior to the receipt of the offer. Ex. 5, 12/18/15 Press Release at 1; Ex. 6, Merger Agreement § 3.1(b). Hoping to turn this handsome profit into a lottery ticket, Plaintiffs brought this lawsuit on March 15, 2019 on behalf of a putative class of Qihoo shareholders who fall into two categories: (i) those who tendered their ADS for the Merger consideration of $77 per ADS (the "Tendering Shareholders"), and (ii) those who, during the class period, sold their ADS on the open market before the merger closed (the "Selling Shareholders"). Dismissal Order at 2. The "central thesis" of their lawsuit is that "the Merger was motivated by [a] secret plan to relist" Qihoo on a Chinese exchange "at a profit." *Id.* at 29. After the Second Circuit held that statements "denying and not disclosing Qihoo's [alleged] intention to relist" were adequately alleged as misleading, Mr. Zhou moved to dismiss on multiple grounds, including falsity, reliance, and loss causation. *Id.* at 22-23. The Court granted that motion in part and denied it in part. *Id.* at 3.

### A.    The Court's Dismissal Order

On March 21, 2023, the Court dismissed Plaintiffs' claims with prejudice as to the Tendering Shareholders, while sustaining some of the claims as to the Selling Shareholders.[2]

---

[2] The Court dismissed all claims brought pursuant to Section 20A of the Exchange Act, 15 U.S.C. § 78t–1, and dismissed claims brought pursuant to Sections 10(b) and 20(a) of the Exchange Act,

### 1.    Falsity

Given the Second Circuit's determination that Plaintiffs sufficiently alleged misstatements grounded in "Qihoo's intention to relist," the Court found that Plaintiffs also adequately pled that statements presenting the Merger a78t

fair" and statements concerning the reasons for the Merger were false or misleading because they "failed to disclose" the alleged "plan to relist Qihoo publicly, on a Chinese exchange, at a higher valuation."  Dismissal Order at 26, 29.  The Court, however, dismissed Plaintiffs' challenges to remarks "stating that there were no viable alternatives to the Merger," reasoning that "no facts pled suggest[ed]" that "shareholders could have retained their interests in Qihoo once private so as to be able to capitalize on a future relisting."  *Id.* at 31-32.

### 2.    Loss Causation

The Court then turned to the "closely allied concepts" of "reliance, economic loss, and loss causation."  *Id.* at 34.  "At the threshold," the Court observed, "there was no point at which Qihoo's trading price on a public exchange dropped on account of the revelation" of the purported "plan eventually to relist Qihoo at a profit."  *Id.*  Instead, Plaintiffs' theories of reliance, economic loss, and loss causation must be "tailor[ed]" to the "idiosyncratic sequence of events pled here."  *Id.* at 34-35.

Regarding the Tendering Shareholders, the Court assumed "*arguendo*" that reliance could be shown through the following inferential chain:  "votes from at least some of [the tenderer] shareholders were required for approval of the Merger; [] these shareholders would have voted down the Merger had the plan to relist been revealed and the related misstatements not been made; and [] the exchange of shares pursuant to the Merger, including ADS for $77 apiece, would not

---

15 U.S.C. §§ 78j(b), 78t(a), with respect to certain statements.  *See* Dismissal Order at 31-33, 56-59.  Plaintiffs do not challenge those rulings.

4

have occurred." *Id.* at 35. The Court acknowledged this series of events was highly unlikely because "the turnout of minority shareholder[s] voting 'no' would have had to have been overwhelming to deny the Buyer Group"—which "owned approximately 60.6% of voting rights"—"the two-thirds support it required" to complete the take-private transaction. *Id.* at 36-37.

But even crediting Plaintiffs' "shaky premise" that minority shareholders "would have turned out in force to vote down the Merger," *id.* at 40, 44, the Court rejected Plaintiffs' theory that they "thereby suffered a demonstrable loss" that was "causally attributable to the[] misstatements," explaining that it "is far too speculative and conclusory to plausibly state a § 10(b) claim," *id.* at 39. The $77/ADS tender price reflected a substantial "premium" over Qihoo's recent share price on the open market. *Id.* at 39. And there were no "practical options available to Qihoo, in a continuing incarnation as a public entity, at the time when [the] Merger was voted upon," that could have realized a return of more than $77/ADS. *Id.* at 47.

Plaintiffs set forth two hypothetical ways in which "ensuing events [could] have resulted in them receiving more than $77/ADS." *Id.* at 40. "Either the tenderer shareholders would have demanded, as part of a renegotiated going-private transaction, a higher price per-ADS" and "the Buyer Group would have said uncle and acceded to these demands." *Id.* "Or, alternatively, Qihoo would have remained public" and the tenderers "would have sold" their stock after "disclosure of the (foiled) intended plan to relist" had "driven the stock price above $77/ADS share." *Id.* at 40-41. Both theories, however, rely "on a chain of inferences far too speculative and distended to support a plausible theory of loss and loss causation under § 10(b)." *Id.* at 41-42. Critically, no facts suggested that "a superior recovery to $77/ADS," whether from another bidder or on the U.S. exchange absent a take-private transaction, "plausibly awaited the tenderer shareholders had the Merger been rejected by dissatisfied tenderer shareholders." *Id.* at 44. That was especially true

5

because the "special committee" formed to evaluate the merger "did, in fact, repeatedly try to negotiate a higher price per ADS" and "secure superior offers [from outside bidders], before determining that the $77/ADS share price was fair." *Id.* at 43. Thus, the Tendering Shareholders' theory "imagines a chain of events starting with the vote-down of the Merger, and leading, through a series of conjectural events, and potentially playing out of over a period of months or years, to broad sunlit uplands for such shareholders" in which, "by some means," they "would have eventually secured more than $77/ADS share." *Id.* at 54. That theory, at its core, is "impermissibly conjectural." *Id.*

For that reason, the Court concluded that Plaintiffs' allegations regarding the "Cayman Islands appraisal action" could not "support[] a higher share valuation" than the $77/ADS offered in the Merger—much less salvage the Tendering Shareholders' claims. *Id.* at 44. The mere fact that Qihoo "furnished $92 million" in that case "as security" did not "represent[] any party's actual assessment of the value of the shares at issue." *Id.* at 48. And while the FAC parroted "a valuation expert hired by the dissenting shareholders" in the Cayman Islands appraisal action who "opined that their share value was" somehow worth "between $124.40 and $290.49," that reliance was misplaced. *Id.* Not only did the FAC fail to "set out the factual bases for that secondhand opinion," but the "expert's bottom-line conclusion" simply did "not make plausible the FAC's loss-causation thesis that, had the Merger been voted down, the tenderer shareholders would have non-speculatively received more than the $77/ADS share that they in fact garnered." *Id.* at 48.

In other words, the fundamental problem with evidence from the Cayman Islands appraisal case was that it skipped over the question before this Court, which was what losses, if any, were caused by the alleged misstatements. For that reason, "additional allegations about" the Cayman Islands appraisal action "could not plausibly allege reliance and loss causation." *Id.* at 60 n.26.

Whatever else could be said about the Cayman Islands proceeding, Plaintiffs' theory that they "suffered a demonstrable loss, and one causally attributable to the[] misstatements" in dispute, was (and remains) "too speculative" to support a claim. *Id.* at 39. The Court therefore denied leave to amend. *Id.* at 60 n.26.

### B.    Plaintiffs' Motion And Proposed SAC

On April 4, 2023, Plaintiffs moved for partial reconsideration to enable them to add more "allegations from the trial in the Cayman Islands Appraisal Action," purportedly "showing that Qihoo's intrinsic value at the time of the Merger was greater than the Merger consideration." Mot. at 1. Plaintiffs claim that such allegations "would satisfy" the deficiencies identified in "the Court's loss causation analysis." *Id.* at 8. As Plaintiffs acknowledge, however, the Cayman Islands appraisal action "settled" before any judgment was rendered, and so any additional material reflects further elaboration gleaned from the dissenting shareholders' presentation at trial. *Id.* at 7.

"In the alternative," Plaintiffs' motion asks the Court "to certify for interlocutory appeal under 28 U.S.C. § 1292(b) the issue of whether Plaintiffs have adequately alleged loss causation and economic loss for the Tenderers." *Id.* at 1. Specifically, they assert that the Second Circuit should consider, at this early stage, the purportedly "legal question of whether the type of evidence" they have presented (and wish to add) "is ever legally sufficient" to plead loss causation. *Id.* at 13-14.

In response, the Court ordered Plaintiffs to submit a "proposed SAC" to "facilitate informed briefing and assessment of the[ir] motion." ECF. No. 151 at 1. The Court further clarified that any new allegations must "be limited to the discrete subject matter, involving the Cayman Islands Appraisal Action, that plaintiffs state would form the basis for an amended complaint." *Id.* And it authorized "defendants Qihoo and Chen, in addition to Zhou, to respond." *Id.* at 1 n.1.

On April 12, 2023, Plaintiffs submitted their Proposed SAC. The Proposed SAC first alleges that Qihoo executives, additional members of the Buyer Group, and other parties admitted that they "believed that Qihoo was undervalued in the U.S.," Proposed SAC ¶ 174, and "planned to relist Qihoo in China following the Merger to capture that greater value," *id.* ¶ 170. The Proposed SAC then alleges that the trial in the Cayman Islands appraisal action showed that J.P. Morgan's (and by extension Qihoo's) opinions regarding Qihoo's value undervalued the company by: (i) overstating capital expenditures based on a purportedly "made up" plan to create a cloud business and buy unneeded office space, and (ii) omitting future earnings from a new, potentially valuable internet finance business. *Id.* ¶¶ 170-213. Tellingly, Plaintiffs did not amend the section of the complaint setting forth the alleged misstatements—and have not asserted that Qihoo's forward-looking projections were themselves materially misleading or made with the requisite fraudulent intent. Rather, they claim that these additional details "show that Qihoo's intrinsic value, had it remained a public company in the United States, was far higher than the Merger consideration." *Id.* ¶ 20.

## ARGUMENT

### I.   THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR PARTIAL RECONSIDERATION

This Court should reject Plaintiffs' invitation to reconsider the denial of leave to amend. "The standard governing motions for reconsideration 'is strict.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). Reconsideration is appropriate "only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013). Plaintiffs do not seriously contend that there was a "clear error" in this Court's prior decision, nor do they point to

8

any "intervening change" in law. *Id.* Rather, they rely on purportedly "new evidence" from the Cayman Islands appraisal action. *See* Mot. at 7. But the allegations regarding the Cayman Islands appraisal action on which they now rely are not "new"—and, in any event, those allegations only confirm that the Court correctly denied leave to amend.

### A.    The Proposed SAC's Allegations Are Not Based On New Evidence

"Newly discovered evidence must not have been available prior to entry of the judgment leading to reconsideration"—here, this Court's March 21, 2023 Dismissal Order. *Pettiford v. City of Yonkers*, 2020 WL 1989419, at *2 (S.D.N.Y. Apr. 27, 2020); *accord Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). The allegations in the Proposed SAC, however, are drawn entirely from one side's submissions in a trial that took place *over a year ago*, in "February and March 2022." Proposed SAC ¶ 8. Plaintiffs "commissioned" a court reporting service "to produce a transcript of the" trial "based on a live video feed." *Id.* ¶ 167. And "[t]he evidence from the Appraisal Action Trial described" in the Proposed SAC is concededly pulled directly "from this transcript." *Id.* ¶ 167 n.30.

Plaintiffs thus had this evidence in hand more than a year ago and had every opportunity to amend their complaint to include allegations stemming from the Cayman Islands trial. But rather than seek "written consent or the court's leave" to "amend [their] pleading" in light of the trial in that case, Fed. R. Civ. Proc. 15(a)(2), Plaintiffs chose on April 1, 2022 to stand on their FAC and stipulate with Mr. Zhou to a motion-to-dismiss briefing schedule, *see* ECF No. 110. And Plaintiffs doubled down on that decision, electing not to exercise their right to "amend [their] pleading as a matter of course" within "21 days after service of [Mr. Zhou's] motion under Rule 12(b)[6]." Fed. R. Civ. Proc. 15(a)(1)(B). They made that choice in May 2022 even though Mr. Zhou's motion to dismiss, filed on April 29, 2022, detailed the very loss causation defects that Plaintiffs now seek to remedy. *See* ECF No. 115 at 15-24. And Plaintiffs did so even though their

9

FAC had relied on pre-trial disclosures similar to the trial disclosures they cite now, including "the dissenters' valuation expert" in the Cayman Islands appraisal action.  FAC ¶ 140.

Because the allegations in the Proposed SAC based on the Cayman Islands appraisal action "could have been previously advanced" more than a year ago, reconsideration of the denial of leave to amend should be denied.  *Assoc. Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (denying reconsideration); *cf. Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (reversing grant of leave to amend because party was "clearly dilatory and delayed unduly in requesting leave to amend").  This (or similar) information was "in [Plaintiffs'] possession when [they] filed [their] [o]pposition" to Mr. Zhou's motion to dismiss in June 2022, "months before the Court issued its" decision.  *Nastasi & Assocs., Inc. v. Bloomberg, L.P.*, 2020 WL 2555281, at *1 (S.D.N.Y. May 20, 2020).  Yet even then, Plaintiffs *still* "gave no indication of how they intended to amend" the FAC, such as by including the further details from the Cayman proceeding that they now seek to introduce.  *In re Gildan Activewear, Inc. Sec. Litig.*, 2009 WL 4544287, at *5 (S.D.N.Y. Dec. 4, 2009) (denying reconsideration of the denial of leave to amend); *see* ECF No. 128 at 6 n.4, 25.

The Court should "not tolerate [Plaintiffs'] efforts to obtain a second bite at the apple," just because they now regret repeatedly standing on their FAC, rather than amending at the appropriate time.  *Goonan v. Fed. Reserve Bank of NY*, 2013 WL 1386933, at *2 (S.D.N.Y. Apr. 5, 2013); *see also NRW, Inc. v. Bindra*, 2015 WL 3763852, at *1 (S.D.N.Y. June 16, 2015).  Pleading is not "an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable claim emerges."  *Kravitz as Tr. of Aegean Litig. Tr. v. Tavlarios*, 2020 WL 3871340, at *12 (S.D.N.Y. July 8, 2020), *aff'd*, 2021 WL 5365582 (2d Cir. Nov. 18, 2021).  Plaintiffs' request for reconsideration should be denied on that ground alone.

10

B.    **Plaintiffs' Supposed "New Facts" Do Not Cure Plaintiffs' Failure To Allege Loss Causation**

In their Motion, Plaintiffs "submit that it was premature to determine that any possible amendments to the Complaint showing Qihoo's [supposed] fair value at the time of the Merger would be futile." Mot. at 6. But a review of Plaintiffs' Proposed SAC demonstrates that the Court's futility determination was 100-percent spot-on. Plaintiffs' new allegations regarding the Cayman Islands appraisal action are just more of the same—scattershot allegations purportedly showing "that Qihoo's intrinsic value, had it remained a public company in the United States, was far higher than the Merger consideration" of $77/ADS. Proposed SAC ¶ 20. As the Court portended, these allegations fail to cure the fatal defect identified in this Court's sound Dismissal Order: The Tendering Shareholders cannot show "a demonstrable loss" that is "*causally attributable to the[] misstatements*." Dismissal Order at 39.[3] The Court thus did not commit a "clear error" in denying leave to amend as futile. *Kolel Beth*, 729 F.3d at 104.

In the Dismissal Order, this Court rejected Plaintiffs' theory of loss causation because it rested "on a chain of inferences" that is "far too speculative and distended" for Plaintiffs to have adequately alleged "that the tenderer shareholders stood to profit above $77/share had the Merger been rejected." Dismissal Order at 41-44. Nothing has changed in the Proposed SAC. Like the FAC, the Proposed SAC contains no factual allegations showing "that the tenderer shareholders stood to profit above $77/share had the Merger been rejected." *Id.* at 42, 44. In particular, the

---

[3] Although the Second Circuit has "yet to weigh in" on the issue, *In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *25 (E.D.N.Y. Sept. 27, 2019), several circuits have correctly held that loss causation must be pled with particularity under Federal Rule of Civil Procedure 9(b). *See, e.g.*, *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011); *accord Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 432 n.9 (S.D.N.Y. 2010). Plaintiffs' disagreement on that point is immaterial, however, because their loss causation theory fails regardless of the pleading standard applied here.

11

Proposed SAC still does not allege that there were any "superior offers" on the table—from the Buyer Group or anyone else—that could have yielded a better result than the 32% premium over the average market price for Qihoo ADS during the 30 days prior to the offer.  *Id.* at 42-43.  And Plaintiffs are still baselessly suggesting that "shareholders could have retained their interests in Qihoo once private so as to be able to capitalize on a future relisting." *Id.* at 31-32.  Thus, Plaintiffs' loss causation theory again rests upon the idea that they somehow, someway *would* have received a higher price but for the non-disclosure of an alleged secret plan to re-list in China—a theory this Court rightly rejected as "speculative." *Id.* at 41.

Plaintiffs' new allegations based on the Cayman Islands appraisal action do not even *try* to fix that fundamental problem, much less address the crux of this Court's reasoning.  Instead, all the new allegations purport to show is "that Qihoo's intrinsic value, had it remained a public company in the United States, was far higher than the Merger consideration" of $77/ADS.  Proposed SAC ¶ 20.  But even assuming the company's intrinsic value was higher than the Merger consideration, that does not mean that U.S. shareholders had a "superior opportunity" to obtain that higher price either from an alternate transaction or on the U.S. exchange—let alone that one would have materialized, but for the non-disclosure of an alleged secret plan to re-list in China.  That is fundamentally the same "speculative" theory this Court rightly rejected. *Id.* at 41.

As this Court already explained, "[t]he assembled case law has not looked kindly on similarly attenuated theories of economic loss when articulated in securities fraud lawsuits."  Dismissal Order at 41.  For example, in *Gray v. Wesco Aircraft Holdings, Inc.*, 847 F. App'x 35 (2d Cir. 2021), the plaintiff alleged that the defendants' statements "misleadingly portrayed [the company's] future financial performance and valuation in a depressed light in order to induce shareholders to approve the inadequate merger." *Id.* at 36.  That allegation at least had an arguable

causal connection between the challenged misstatements and the alleged harm.  Even so, the Second Circuit dismissed the *Wesco* plaintiffs' loss causation theory as "speculative" because of "what potential buyers in fact offered" and the lack of allegations plausibly suggesting "that shareholders faced a genuine choice between the Merger and the achievement of" the alleged "intrinsic[]" value alleged.  *Wesco*, 847 F. App'x at 37.  Other appellate decisions have similarly dismissed loss causation theories because the plaintiffs failed to:  (1) "allege a plausible path by which [company] stockholders could have obtained the supposed 'actual value' of their" shares, *In re Resolute Energy Corp. Sec. Litig.*, 2022 WL 260059, at *3 (3d Cir. Jan. 27, 2022); (2) "allege the existence of a viable superior offer" to the merger consideration, *Kuebler v. Vectren Corp.*, 13 F.4th 631, 647 (7th Cir. 2021); and (3) show that plaintiffs who knew of undisclosed projections would have "held out for a hypothetical better offer than that received from the only remaining bidder," after several other potential buyers "lost interest in acquiring" the company, *In re Ocera Therapeutics, Inc. Sec. Litig.*, 806 F. App'x 603, 605 (9th Cir. 2020).  So have numerous well-reasoned district court decisions cited by this Court.  *See* Dismissal Order at 41-42 (collecting cases); *cf. id.* at 43 (citing *Baum v. Harman Int'l Indus., Inc.*, 575 F. Supp. 3d 289, 299 (D. Conn. 2021), as a counterexample where the defendant *had* received a specific offer for its shares that was higher than the merger consideration).  Under these cases, Plaintiffs' loss causation theory is "far too contingent and anchored in guesswork to support a viable § 10(b) claim."  *Id.* at 47.[4]

---

[4] The Court also rejected Plaintiffs' argument that their forfeiture of appraisal rights states a claim in its own right.  It explained that an appraisal-rights theory of loss would only "have potential for an individual investor who had attested to actual reliance on the proxy materials in making these decisions"—something Plaintiffs have "foresworn."  Dismissal Order at 37 n.18; *see also id.* at 48 n.21 (noting the difficulties, expense, and risk involved in seeking appraisal).  That conclusion was correct.  *See, e.g.*, *Cellular Tech. Servs. Co. v. TruePosition, Inc.*, 609 F. Supp. 2d 223, 244-46 (D. Conn. 2009); *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 560 (D. Del. 2002); *Grace v. Rosenstock*, 23 F. Supp. 2d 326, 334 (E.D.N.Y. 1998).  And Plaintiffs have waived any argument

13

Rather than engage with this fundamental defect, Plaintiffs suggest that they do not need to plead *any* superior opportunity to accepting the Merger consideration. Mot. 15-19. They claim instead that they "suffered an immediate loss equal to the fair value of their ADS minus the price at which they sold." Proposed SAC ¶ 357. That is, Plaintiffs assert they can show loss causation just by alleging "a 'purchase-time value disparity' between the price [of] a security and its 'true investment quality.'" *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 174 (2d Cir. 2005). But far from establishing a "clear error" in this Court's decision that warrants reconsideration, *Kolel Beth*, 729 F.3d at 104, Plaintiffs' theory has been squarely foreclosed by Second Circuit precedent—as this Court already recognized. Dismissal Order at 47 (quoting *Lentell*, 396 F.3d at 174); *accord Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 198 (2d Cir. 2003). As the Second Circuit explained in *Lentell*, asserting that you transacted in stock at a price less than its purported intrinsic value "does not speak to the relationship between the fraud and the loss of the investment." 396 F.3d at 174. That is, it might show loss, but it does not show loss *causation*. And in any securities case, whether a traditional stock-drop case like *Lentell* or a case involving alleged stock price deflation like this one, suffering a demonstrable loss is not enough; a complaint must plead that the loss was caused by the defendants' alleged misstatements. Dismissal Order at 39.

Plaintiffs' position also cannot be reconciled with *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991). The minority shareholders in *Virginia Bankshares*, much like Plaintiffs here, alleged that there was a significant disparity between the "intrinsic value" of a company and the merger price they received. Nevertheless, the Supreme Court held that the minority

---

that actual reliance was not required by failing to dispute the point. *See Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020).

shareholders failed to establish loss causation because there was no causal link between their alleged loss and the challenged statements. *Id.* at 1102. In *Virginia Bankshares*, there was no causal link because plaintiffs could not show that their votes were required to authorize the merger that was the subject of the proxy solicitation. *Id*. at 1102. There likewise is no causal link here: Plaintiffs simply cannot show that "the alleged omissions" regarding the purported relisting plan "somehow prevented shareholders from realizing" additional value "if [Qihoo] remained a standalone company" listed in the U.S. *In re Tangoe, Inc. Stockholders Litig.*, 333 F. Supp. 3d 77, 109 (D. Conn. 2018).

At bottom, the Proposed SAC merely expands on the FAC's allegation that there is supposedly a significant difference between Qihoo's stock's price and its purported "intrinsic value." That is simply not enough to establish loss causation. Were the law otherwise, *any* investor who, in hindsight, felt they got a bad deal could claim to have established loss causation. The Supreme Court rejected that approach in *Virginia Bankshares* and has repeatedly reaffirmed that the securities laws do not exist "to provide investors with broad insurance against market losses." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005). They are meant "to protect" investors "against those economic losses that misrepresentations *actually* cause." *Id*. Because Plaintiffs cannot possibly establish loss causation, the Court correctly determined that any proposed amendment would be futile.

### C.    Plaintiffs' New Allegations Do Not Even Establish That The Merger Consideration Undervalued Qihoo

Although not necessary to warrant denial of Plaintiffs' Motion, it is worth noting that the Proposed SAC does not even plausibly allege that the $77/ADS price undervalued the Qihoo ADS traded in the United States at the time of the Merger.

15

Plaintiffs first allege that "[t]hose involved in the Merger, from Defendants Zhou and Qi, other Qihoo executives and members of the Buyer Group, and financial advisors involved in the Merger, all viewed Qihoo as undervalued when it was publicly listed in the United States." Proposed SAC ¶ 9. That is entirely unremarkable. Every buyer believes he or she is obtaining good value and will be able to extract even more value from the company in the future. Plaintiffs' new allegations about the Buyer Group believing Qihoo was worth more than the then-current price on the U.S. exchange is consistent with the Buyer Group offering a "premium of 32.7% to the average closing price of the Company's ADSs during the 30 trading days prior to" this "going-private proposal." Dismissal Order at 7. Indeed, on the very same day that Mr. Zhou stated that he and others "believe[d] the current valuation of [Qihoo]" of $8 billion in the U.S. failed "to fully reflect the value of [the] company," he offered to buy Qihoo's outstanding shares based on a significantly higher valuation of "$9.3 billion." Proposed SAC ¶ 171. Even the Proxy Statement at issue in this lawsuit informed investors that the discounted cash flow ("DCF") analysis performed by JP Morgan yielded a wide range of "per ADS equity values," up to as high as "$91.61." Ex. 2, 3/3/16 Proxy at 56. In short, investors were aware that the $77/ADS offer was just that—an offer—and that different opinions placed the potential value of the ADS even higher.

Furthermore, Plaintiffs concede that "technology companies are *generally* valued more in the Chinese stock market than in the United States." Proposed SAC ¶ 224. That across-the-board phenomenon was likewise no secret. *See id.* And if even some believed that Qihoo's market capitalization on a Chinese exchange could exceed $25 billion over time, *id.* ¶ 174, or that "four years after privatization" Qihoo "would be worth $51 billion," *id.* ¶ 176, these prognostications refer only to potential *future* value rather than Qihoo's value when the Tendering Shareholders had their shares cancelled in the Merger in July 2016. The fact that Qihoo expected to grow its

16

business substantially was publicly disclosed—in the Proxy Statement, Qihoo projected growth of over 323% from 2015 through 2019, and of more than 521% from 2015 through 2025. Ex. 2, 3/3/16 Proxy at 52. The belief that Qihoo might be worth more in the future matches these growth plans; by their own terms, these allegations say nothing about what Qihoo was worth in July 2016.[5]

Plaintiffs' last gasp is to piggyback on the dissenting shareholders' submission in the Cayman Islands appraisal action, which accused Qihoo of overstating its capital expenditures and not accounting for an early-stage internet finance business. Proposed SAC ¶¶ 170-213. But the case settled before those (baseless) accusations were ever adjudicated, and "Second Circuit law" is clear that all "allegations in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial." *Low v. Robb*, 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012); *accord Footbridge Ltd. v. Countrywide Home Loans, Inc.*, 2010 WL 3790810, at *5 (S.D.N.Y. Sept. 28, 2010).[6] Plaintiffs' copycat allegations fail as a matter of law for that reason alone.

In any event, even if these unverified third-party submissions were properly before the Court, they fail to advance Plaintiffs' case. The Proxy Statement explicitly told investors that Qihoo "cannot assure you that the projections," including as to capital expenditures and future earnings, "will be realized." Ex. 2, 3/3/16 Proxy at 52. It cautioned that Qihoo "does not as a matter of course make public projections as to future sales, earnings, or other results"—let alone over a decade-long time horizon. *Id.* at 51. So far from being "an incredible admission," Proposed

---

[5] Plaintiffs also point to a purported "$60 billion" valuation from "a leading Chinese investment bank." Proposed SAC ¶ 177. But they concede that this figure was part of an unsolicited "pitch[]" designed to attract Qihoo's business. *Id.*

[6] Plaintiffs' assertion that the fact of the settlement "*alone*" demonstrates "that Qihoo's intrinsic value was significantly higher than the [m]erger price," Proposed SAC ¶ 218, violates the prohibition on using settlements "to prove or disprove the validity or amount of a disputed claim," Fed. R. Evid. 408(a)(1).

17

SAC ¶ 191, the fact that Qihoo's then-CFO and others came up with estimates of future financial figures, including capital expenditures, was itself disclosed in the Proxy.  Similarly, one statement that "Qihoo did not need a significant amount of additional headcount" *as of 2015* does not undermine the reasonableness of estimating that the company would need to spend around $300 million on additional office space to accommodate personnel needs *over the next ten years*.  *Id.* ¶¶ 204-05.  And omitting a single preliminary valuation of a nascent "internet finance business," *id.* ¶ 212, was exactly the kind of uncertain "assumption[]" about "future events" that Qihoo warned investors was involved in sketching out the uncertain future of a rapidly evolving tech company, Ex. 2, 3/3/16 Proxy at 52.[7]

## II.    THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL

Plaintiffs also contend that this Court's decision merits the extraordinary measure of interlocutory review by the Second Circuit under 28 U.S.C. § 1292(b).  But this case plainly does not present the kind of "exceptional circumstances" that might warrant a departure from the

---

[7] In a courthouse filled with cases accusing companies of too hastily ascribing lofty valuations to nascent businesses, it is notable that Plaintiffs' claim here is that significant value should be disclosed prematurely.  Likewise, with regard to projected capital expenditures on a potential cloud computing business, Proposed SAC ¶¶ 185-203, Plaintiffs ignore that the Proxy also cautioned that, while these and other "projections are presented with numerical specificity," they "were based on numerous assumptions and estimates as to future events"—and were "not included for the purpose of influencing any shareholder to make any investment decision with respect to the Merger."  Ex. 2, 3/3/16 Proxy at 52.  In light of these disclosures and the law in this Circuit, as well as an utter lack of particularized allegations of scienter with regard to these statements, Plaintiffs were correct not to allege that these projections were themselves actionable misstatements.  *See, e.g.*, *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 386-87, 400-01 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (holding that projections were inactionable forward-looking statements); *In re Shanda Games Ltd. Sec. Litig.*, 2019 WL 11027710, at *7 (S.D.N.Y. Sept. 30, 2019) (similar).  It would defy common sense to permit Plaintiffs to use these allegations as proof that Qihoo's value was misrepresented for purposes of alleging loss causation when the very same statements would not on their own be sufficient to allege a false statement on that topic.

18

ordinary rule that interlocutory decisions are reviewable only after final judgment. *Hart v. Rick's Cabaret Int'l., Inc.*, 73 F. Supp. 3d 382, 393 (S.D.N.Y. 2014) (Engelmayer, J.).

"Few presumptions are as integral to judicial efficiency in the federal courts as the one against granting interlocutory review." *Hermes Int'l v. Rothschild*, 590 F. Supp. 3d 647, 649 (S.D.N.Y. 2022). Interlocutory review is "strongly disfavored," and "is not intended as a vehicle to provide early review of difficult rulings in hard cases." *Adar Bays, LLC v. Aim Exploration, Inc.*, 310 F. Supp. 3d 454, 456 (S.D.N.Y. 2018). In particular, decisions about "the sufficiency of pleadings are [considered] generally inappropriate for interlocutory review." *In re Bernard L. Madoff Inv. Sec. LLC*, 2011 WL 3897970, at *7 (S.D.N.Y. Aug. 31, 2011). "Under Section 1292(b), a district court may certify an order for interlocutory appeal [only] when it is 'of the opinion that such order [i] involves a controlling question of law [ii] as to which there is substantial ground for difference of opinion and [iii] that an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Dill v. JPMorgan Chase Bank, N.A.*, 2021 WL 3406192, at *3 (S.D.N.Y. Aug. 4, 2021). "The movant bears the burden of demonstrating that all three of the substantive criteria are met." *Id.* And "even where the three legislative criteria" are met, "district courts retain 'unfettered discretion to deny certification' if other factors counsel against it." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014). Plaintiffs flunk all three prongs of this test.

### A.    The Court's Order Does Not Raise A Controlling Question Of Law

To warrant certification, the issue presented must be "'a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.'" *Hart*, 73 F. Supp. 3d at 393; *see also Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007). The text of 28 U.S.C. § 1292(b) explicitly imposes that requirement, permitting interlocutory appeals only on "a controlling question of law," *not* a factual or mixed

19

question. *Hermes*, 590 F. Supp. 3d at 652. As a result, "questions that are dependent on the particular facts of a case" are not "suited for interlocutory appeal" under 28 U.S.C. § 1292(b). *Id.*

The Court's loss causation determination in this case "involves the application of law to alleged facts," not "purely legal" questions and is therefore unfit for interlocutory review. *Id.* The Court held that Plaintiffs' particular theories of loss causation are too speculative on these particular allegations and lack the requisite causal connection to these particular misstatements. *See* Dismissal Order at 39. Its ruling thus involves precisely the kind of "mixed question of law and fact" that has long been considered unsuitable for interlocutory review under 28 U.S.C. § 1292(b). *Hart*, 73 F. Supp. 3d at 394. That is reason enough to deny certification.

**B.      There Is No Substantial Ground For Difference Of Opinion**

Nor is there any "substantial ground for difference of opinion" regarding the issues in this case. 28 U.S.C. § 1292(b). To satisfy this requirement, it is not enough that "a party can cite to a few cases for their position." *Hermes*, 590 F. Supp. 3d at 656; *see also Flor v. BOT Financial Corp.*, 79 F.3d 281, 284 (2d Cir. 1996). Rather, certification of an interlocutory appeal is "reserved for the exceptional case in which the law is fundamentally uncertain." *Transp. Workers Union of Am., Local 100 v. NYC Transit Auth.*, 358 F. Supp. 2d 347, 354 (S.D.N.Y. 2005). For that to be so, courts must be "in clear conflict with one another on the subject," *and* the issue must be the "particularly difficult and of first impression for the [Second Circuit]." *Hermes*, 590 F. Supp. 3d at 651. This case does not come close to that high bar.

In support of its holding that Plaintiffs' loss causation theory is too "speculative and distended" to support a claim, the Court marshaled appellate cases from four circuits—including the Second Circuit—and a slew of thorough, on-point district court opinions. *See supra* at 12-13; Dismissal Order at 41-42 (collecting cases). Against that wall of authority, Plaintiffs muster two off-point Supreme Court cases and smattering of similarly irrelevant district court decisions—none

20

of which render the governing law "fundamentally uncertain." *In re Facebook*, 986 F. Supp. 2d at 531-32. That is patently insufficient. *See, e.g.*, *Ryan, Beck & Co., LLC v. Fakih*, 275 F. Supp. 2d 393, 397 (E.D.N.Y. 2003) (finding no substantial ground for difference of opinion where the plaintiff's cases were "distinguishable and/or failed to analyze the [relevant] question").

Plaintiffs first assert that *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970), held that loss causation can be established merely by alleging that "there is a 'defect in the proxy solicitation' and 'the merger resulted in a reduction of the earnings or earnings potential of their holdings.'" Mot. at 15 (quoting *Mills*, 396 U.S. at 389). That assertion confuses loss causation with damages: The portion of *Mills* that Plaintiffs cite addressed "the form of relief to which [plaintiffs] may be entitled" after proving their case, cautioning that such damages "question[s], of course, [we]re for decision in the first instance by the District Court." *Id.* at 386. And the rest of *Mills*, at best, lightens Plaintiffs' burden in establishing "*transaction* causation"—that is, "reliance"—not loss causation. Dismissal Order at 35. Showing the former (i.e., that "but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction"), does not establish the latter (i.e., "that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered"). *Lentell*, 396 F.3d at 172-73. *Mills* does not help Plaintiffs at all—and clearly does not establish any "difference of opinion" as to the questions raised in this case.

Plaintiffs make a similar mistake regarding *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972). In their view, that case says that loss causation can be shown just by pointing to "recognized methods of valuation" suggesting that the "price of the[ir] shares" was "depressed." Mot. at 15. But once again, the portion of *Affiliated Ute* on which Plaintiffs rely concerns damages, not loss causation: It explained that "the correct measure of damages" there would be "the

difference between the fair value" of what the "seller[s] received" and "the fair value of what [they] would have received had there been no fraudulent conduct."  406 U.S. at 155.  And the remainder of the decision merely held that, on the facts before the Court, "positive proof of *reliance* [wa]s not a prerequisite to recovery."  *Id.* at 153.  Nothing in *Affiliated Ute* frees Plaintiffs from the burden of demonstrating that their alleged losses were proximately caused by the challenged statements in this case—a requirement that is hornbook law.

Plaintiffs' distinguishable district court decisions do not inject any uncertainty into the law governing the standard for pleading loss causation, either.  One is an irrelevant class-certification decision assessing "whether Plaintiffs' damages model satisfies the predominance requirement" under Rule 23(b)(3).  *In re Willis Towers Watson PLC Proxy Litig.*, 2020 WL 5361582, at *9, 11 (E.D. Va. Sept. 4, 2020).  The rest involve alleged misstatements that directly obscured non-speculative value available to shareholders, such that district courts could defensibly hold that, but for those misstatements, the plaintiffs could have readily captured the same additional value.[8]

This case is nothing like that.  As explained, there is a clear causal disconnect here:  The alleged secret relisting plan did not obscure any additional value that could be realized by U.S. shareholders.  *Supra* at 4-5, 11-12.  And Plaintiffs' loss causation theories are impermissibly

---

[8] For example, in *Erickson v. Jernigan Cap., Inc.*, 2022 WL 3028627 (S.D.N.Y. Aug. 1, 2022), the defendants falsely claimed there was "limited interest" from other parties in "acquiring" the company, when in fact "a leading" enterprise financed the "going-private transaction" by contributing "one third of the approximate $900 million value of the entire transaction." *Id.* at *1. In *Lewis v. Termeer*, 445 F. Supp. 2d 366 (S.D.N.Y 2006), a company "intentionally withheld" positive information about a "'blockbuster' medical product," *id.*at 368-69, and the defendant did not even dispute "loss causation," *id.* at 371.  And in *In re Hot Topic, Inc. Sec. Litig.*, 2014 WL 7499375 (C.D. Cal. May 2, 2014), like in Plaintiffs' other cases, the challenged statements "moderated [the company's] financial projections downward to underestimate the financial value of [its] stock" and depress the market price, and thus directly "harmed the earning potential of" U.S. shares.  *Id.* at *6-10; *see also Brown v. Papa Murphy's Holds.*, 2021 WL 1574446, at *2 (W.D. Wash. Apr. 22, 2021); *Karp v. First Conn. Bancorp*, 2019 WL 4643799, at *3-4 (D. Md. Sept. 24, 2019); *In re Envision Healthcare Corp.*, 2019 WL 3494407, at *8 (D. Del. Aug. 1, 2019).

22

speculative because—even though the market knew that Chinese technology companies were valued more highly on Chinese exchanges, Proposed SAC ¶ 224—the Special Committee was unable to convince the Buyer Group or a third party bidder to pay a higher price than $77/ADS, Dismissal Order at 43. The only cases resembling this one are the decisions that this Court cited—all of which rejected similarly speculative theories of loss causation. *See* Dismissal Order at 41-42. There is no difference of opinion here.[9]

## C.    Interlocutory Review Would Not Materially Advance The Termination Of This Litigation

Plaintiffs also cannot satisfy 28 U.S.C. § 1292(b)'s third requirement "that an immediate appeal from the order" at issue "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Here, an immediate appeal would do the opposite.

The "use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation." *Hart*, 73 F. Supp. 3d at 393; *accord Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996). Certifying this Court's dismissal of a subset of claims on loss causation grounds would "not dispose of all issues" and thus "would not end" this case, regardless of the outcome of Plaintiffs' appeal. *In re Facebook*, 986 F. Supp. 2d at 531-32. If Plaintiffs were to prevail on appeal, the result would *increase*, not reduce, the uncertainty in this litigation going forward. *See Sussman v. I.C. Sys., Inc.*, 2013 WL 5863664, at *3 (S.D.N.Y. Oct. 30, 2013)

---

[9] Plaintiffs point to *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 68 (D. Del. 2002), in support of the notion that U.S. Qihoo shareholders could have squeezed more money out of the Buyer Group had they known about an alleged relisting plan. Mot. at 24. But *Tracinda* "acknowledged that the mere claim that one would have been entitled to a 'better [acquisition] premium'" if the defendants had disclosed their post-merger plans "is insufficient to sustain a claim." 197 F. Supp. 2d at 68-69. What rendered such a theory non-speculative in *Tracinda* was that the defendants *explicitly* "admitted that they would have paid more" if pressed about their post-merger plans. *Id.* at 69. Passing language in a parenthetical stating that the *Tracinda* plaintiffs could arguably have survived dismissal (but not summary judgment), without that key fact does not render the governing law "fundamentally uncertain." *Transp. Workers*, 358 F. Supp. 2d at 354.

(denying certification because an interlocutory appeal "would not significantly reduce the issues remaining in the case"); *see also Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 322 (E.D. Pa. 1994) (same).  On the other hand, if the Court's dismissal is affirmed, nothing will have been gained.  The parties will have wasted time and expense litigating an unnecessary appeal, and the Second Circuit will have expended precious judicial resources deciding it.  *See In re Refco Inc. Sec. Litig.*, 2014 WL 1302857, at *1 (S.D.N.Y. Mar. 19, 2014) (noting that interlocutory appeals "prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records").  Thus, as to the "institutional efficiency of the federal court system"—which "is among the chief concerns underlying Section 1292(b)"—an interlocutory appeal here is a lose-lose proposition.  *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 226-27 (S.D.N.Y. 2000).

Plaintiffs counter that "resolution of [the tenderers'] claims" would be "substantially delay[ed]" if they don't get an appeal now.  Mot. at 25.  But that is always true when a lawsuit is partially dismissed.  "To entertain an early appeal just because reversal of a ruling made by the district court *might* transpire and *might* expedite a particular appellant's case would" invite "piecemeal appellate review" in any case where a litigant is disappointed by a dispositive decision in district court—which is to say, *every* dispositive decision that does not result in final judgment. *Spiegel v. Trustees of Tufts Coll.*, 843 F.2d 38, 46 (1st Cir. 1988).[10]  That is not the law.  Plaintiffs' request for interlocutory review is meritless, and should be rejected.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion.

---

[10]  If the Court certifies an interlocutory appeal, it should stay all proceedings in this Court until the appeal is resolved.  *See, e.g.*, *Tantaros v. Fox News Network, LLC.*, 465 F. Supp. 3d 385, 393 (S.D.N.Y. 2020); *Lee v. Coughlin*, 26 F. Supp. 2d 615, 638 (S.D.N.Y. 1998).

24

Dated:  April 26, 2023

Respectfully Submitted,

**LATHAM & WATKINS LLP**

/s/ Jason C. Hegt

Eric F. Leon
Jason C. Hegt
Hanyu (Iris) Xie
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: eric.leon@lw.com
Email: jason.hegt@lw.com
Email: iris.xie@lw.com

*Attorneys for Defendant Hongyi Zhou*

**DECHERT LLP**

/s/ David H. Kistenbroker

David H. Kistenbroker*[11]
Joni S. Jacobsen*
Angela M. Liu*
35 West Wacker, Suite 3400
Chicago, IL 60601
Telephone: (312) 646-5800
Email: david.kistenbroker@dechert.com
Email: joni.jacobsen@dechert.com
Email: angela.liu@dechert.com

*Attorneys for Qihoo 360 Technology Co.
Ltd. and Eric X. Chen*

**admitted pro hac vice*

---

[11]  Hongyi Zhou uses electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.