**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALTIMEO ASSET MANAGEMENT, Individually and On Behalf of All Others Similarly Situated, <br><br>            Plaintiff, <br><br>     v. <br><br> QIHOO 360 TECHNOLOGY CO. LTD., HONGYI ZHOU, XIANGDONG QI and ERIC X. CHEN, <br><br>            Defendants. | Case No. 1:19-cv-10067-PAE |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**LEAD PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION**
**OR, IN THE ALTERNATIVE, TO CERTIFY FOR APPEAL**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT..................................................................................................... 3

      A.   The Court Should Reconsider Its Denial of Leave to Amend.................................... 3

           1.    Leave to Amend is Routinely Granted........................................................ 3

           2.    Loss Causation is Adequately Alleged Based on Intrinsic Value............... 4

           3.    Plaintiffs' New Allegations Adequately Allege That the Merger
                 Consideration Undervalued Qihoo ............................................... 6

      B.   In the Alternative, the Court Should Certify These Issues for Interlocutory Appeal.. 9

           1.    The Court's Order Raises a Controlling Question of Law ......................... 9

           2.    There is Substantial Ground for Difference of Opinion ........................... 9

           3.    Interlocutory Review Would Materially Advance the Litigation ............. 10

III.  CONCLUSION.................................................................................................... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Azar v. Blount Int'l, Inc.*,
   2017 WL 1055966 (D. Or. Mar. 20, 2017)..................................................................................9

*Cellular Tech. Servs. Co. v. TruePosition, Inc.*,
   609 F. Supp. 2d 223 (D. Conn. 2009)........................................................................................5

*City of N.Y. v. Beretta U.S.A. Corp.*,
   234 F.R.D. 46 (E.D.N.Y. 2006)...............................................................................................10

*Cresci v. Mohawk Valley Cmty. Coll.*,
   693 F. App'x 21 (2d Cir. 2017) ................................................................................................4

*Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
   343 F.3d 189 (2d Cir. 2003).....................................................................................................6

*Erickson v. Jernigan Cap.*,
   2022 WL 3028627 (S.D.N.Y. Aug. 1, 2022)...........................................................................10

*Footbridge Ltd. v. Countrywide Home Loans*,
   2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010)..........................................................................6

*Grace v. Rosenstock*,
   23 F. Supp. 2d 326 (E.D.N.Y. 1998), *aff'd*, 228 F.3d 40 (2d Cir. 2000)..................................6

*Hirsch v. Complex Media, Inc.*,
   2018 WL 6985227 (S.D.N.Y. Dec. 10, 2018) ...........................................................................6

*In re Bayou Hedge Fund Litig.*,
   2007 WL 2363622 (S.D.N.Y. Aug. 16, 2007)...........................................................................3

*In re Bear Stearns Mortg. Pass-Through Certifs. Litig.*,
   851 F. Supp. 2d 746 (S.D.N.Y. 2012)........................................................................................6

*In re Digital Island Sec. Litig.*,
   223 F. Supp. 2d 546 (D. Del. 2002)...........................................................................................5

*In re Envision Healthcare Corp.*,
   2019 WL 3494407 (D. Del. Aug. 1, 2019) ................................................................................9

*In re GM*,
   427 F. Supp. 3d 374 (S.D.N.Y. 2019).....................................................................................10

*In re Petrobras Secs.*,
   193 F. Supp. 3d 313 (S.D.N.Y. 2016)......................................................................10

*In re Tangoe, Inc. S'holders Litig.*,
   333 F. Supp. 3d 77 (D. Conn. 2018) ..........................................................................6

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015)........................................................................................4

*Low v. Robb*,
   2012 WL 173472 (S.D.N.Y. Jan. 20, 2012) ...............................................................6

*Mazuma Holding Corp. v. Bethke*,
   21 F. Supp. 3d 221 (E.D.N.Y. 2014) ..........................................................................9

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970).....................................................................................................9

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000).........................................................................................7

*Virginia Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991)...................................................................................................6

**Statutes**

15 U.S.C §78j(b) ...............................................................................................................9

Plaintiffs respectfully submit this Reply Memorandum of Law in Further Support of Their Motion for Partial Reconsideration or, in the Alternative, to Certify for Appeal.[1]

## I.    INTRODUCTION

Plaintiffs' proposed Second Amended Complaint (ECF No. 157-1, "SAC") contains detailed allegations, based on evidence presented at the Appraisal Action Trial, showing that, when the Proxy was issued, Qihoo's intrinsic value was at least ***37% higher than the Merger consideration***. The Court's decision on Defendant Zhou's motion to dismiss held Plaintiffs did not adequately allege that Qihoo's "intrinsic economics" made it more valuable "in a continuing incarnation as a public entity" than the Merger consideration. (MTD Order at 43, 47). This ruling thus indicated that if Plaintiffs could plausibly allege that Qihoo's intrinsic value was higher than the Merger price, that would support loss causation. That standard is firmly rooted in a long line of authority holding that loss causation is supported in the merger context based on the plausible inference that a company's intrinsic value was higher than the merger price. (Mem. at 14-19).

The new allegations here far surpass the types of evidence that courts typically find to support loss causation in the merger context. (Mem. at 21-25). These allegations are based on the testimony of Qihoo's CFO who prepared the projections in the Proxy and the uncontested descriptions of documents that Qihoo produced in the Appraisal Action. For example, Qihoo's CFO testified that Qihoo did "not have any internal or external data or analysis" supporting the $3.6 billion in capital expenditures for a new cloud computing business that he included in the projections. ¶ 191-93. Adjusting for just this one plainly unsupported expense, while keeping all other components of J.P. Morgan's DCF analysis the same, yields a valuation 27.6% higher than J.P. Morgan's valuation that supported its fairness opinion. ¶ 201.

---

[1] "¶ _" references are to the SAC (ECF No. 157-1). Plaintiffs' opening Memorandum in support of their Motion (ECF No. 150) is referenced as "Mem." Defendants' Opposition (ECF No. 160) is referenced as "Opp." Emphasis is added and internal quotation marks are omitted.

Defendants argue that even if Qihoo's "intrinsic value was higher than the Merger consideration," Plaintiffs have not alleged "that U.S. shareholders had a 'superior opportunity' to obtain that higher price." (Opp. at 12). This argument simply rejects the governing standard that Plaintiffs may support loss causation by plausibly alleging that Qihoo's intrinsic value was higher than the Merger consideration. Moreover, Defendants' invented requirement, that a share's *only* value is the value secured by a sale, is directly at odds with the notion of intrinsic value itself — that share ownership conveys economic value. ¶ 184 & n. 46.

In addition, Defendants argue that Plaintiffs have not adequately alleged a "causal connection" between the alleged misstatements and Qihoo's higher value. (Opp. at 12-13). But the fraudulently induced sales *directly* caused Plaintiffs to suffer the alleged losses. Furthermore, Defendants' argument ignores the nature of the misstatements that the Court upheld. Plaintiffs have adequately alleged that Defendants' relisting statements, and their reasons for the Merger, are actionable because the Buyer Group had a "concrete plan to ***profit significantly*** by relisting Qihoo in China," which was "a central reason to go private." (MTD Order at 27, 29). The portion of that profit that is based on Qihoo's intrinsic value that the Proxy misrepresented is ***directly related*** to these misstatements. The Court also upheld claims as to Defendants' statements that the Merger consideration was "fair." (*Id.* at 27-28). Those misrepresentations are tied to Qihoo's higher fair value, in excess of the Merger price, that Defendants misrepresented by providing artificially deflated projections that were contradicted by Qihoo's internal documents.

In sum, Defendants' main response is to disagree with the Court's ruling, firmly supported by abundant authority, that loss causation may be alleged based on evidence plausibly showing that Qihoo's intrinsic value was higher than the Merger consideration. Plaintiffs should be permitted to file the SAC that submits strong allegations supporting this higher valuation.

Alternatively, if the Court determines that evidence of Qihoo's higher intrinsic value cannot support loss causation, and Plaintiffs must instead allege a specific alternative transaction that would have paid them more than the Merger consideration, the Court should certify for interlocutory appeal whether that is required to allege loss causation in the merger context. There is substantial ground for disagreement with such a ruling given the many cases holding allegations similar to those here, plausibly showing a company's intrinsic value was higher than the merger price, support loss causation. This appeal would materially advance the litigation because it would, if successful, avoid having to redo the case based on this theory of loss.

## II.    ARGUMENT

### A.    The Court Should Reconsider Its Denial of Leave to Amend

#### 1.    Leave to Amend is Routinely Granted

Leave to amend is freely given, particularly in securities cases. (Mem. at 6-8). Defendants focus on whether the new allegations that Plaintiffs seek to raise qualify as "new evidence" that warrants reconsideration. (Opp. at 9-10). Plaintiffs respectfully submit, however, that leave to amend should be granted for the different reason that the Court erred on the narrow question of whether dismissal *with prejudice* was warranted on the ground that Plaintiffs' amendments are futile. Reconsidering that decision so that Plaintiffs may amend the complaint is particularly supported because the Court's partial dismissal "is subject to revision at any time before the entry of judgment adjudicating all" claims. *In re Bayou Hedge Fund Litig.*, 2007 WL 2363622, at *7 (S.D.N.Y. Aug. 16, 2007). Plaintiffs may therefore "freely seek leave to amend" even though the Court's prior Order "denied plaintiffs' request for leave to amend." *Id.*

Defendants also argue that Plaintiffs waited too long to seek to amend. (Opp. at 9-10). This is a new argument, totally distinct from the Court's ruling that amendment would be futile. Moreover, because the new evidence was not available when Plaintiffs filed the prior complaint,

3

it was proper for them to seek leave to amend in opposition to Zhou's motion to dismiss. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."); *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 24-25 (2d Cir. 2017) (same). Indeed, before Defendant Zhou joined this action over three years after it began, the other Defendants chose to start discovery rather than contest loss causation. ECF Nos. 93 at 2-3, 97, 111.

### 2.    <u>Loss Causation is Adequately Alleged Based on Intrinsic Value</u>

The Court dismissed the Tenderers' claims because it held that Plaintiffs did not adequately allege that Qihoo's "intrinsic economics" made it more valuable "in a continuing incarnation as a public entity." (MTD Order at 43, 47). Defendants argue that even if Qihoo's intrinsic value was higher than the Merger consideration, that still would not support loss causation because Plaintiffs did not allege how the Tenderers would have received more than the Merger consideration if the Merger had been rejected. (Opp. at 11-13). This argument ignores the Court's own rationale for dismissal based on its finding that Plaintiffs did not adequately allege that Qihoo's intrinsic value was higher than the Merger consideration. (Mem. at 8-11). Furthermore, abundant authority establishes the rule that loss causation is supported in the merger context where the company's fair value exceeds the merger price. (Mem. at 15-21).

Defendants are also wrong that there is no "causal connection between the challenged misstatements and the alleged harm." (Opp. at 12-13). Plaintiffs have adequately alleged that Defendants' relisting statements and reasons for the Merger were materially false and misleading because the Buyer Group had a "concrete plan to ***profit significantly*** by relisting Qihoo in China" and this was "a central reason to go private." (MTD Order at 27, 29). The Court held that Plaintiffs did not adequately allege whether the source of that profit is cognizable as a loss. But if

the source of that profit (or any portion thereof) was Qihoo's higher intrinsic value, that is plainly recognized as supporting loss causation and is ***directly connected*** to Defendants' statements. This causal connection suffices under the applicable pleading standard (Mem. at 21-22) and the types of statements that courts regularly hold support a claim (*id.* at 16-18, 22-23).

In addition, Defendants ignore that their statements that the Merger consideration was "fair" are also actionable. MTD Order at 27-28. Loss causation is adequately alleged as to fairness statements based on allegations that the merger consideration undervalued the company because the projections used in the valuation were artificially deflated or the defendants omitted key financial information.[2] *See* MTD Opposition (ECF No. 128) at 8-9 (citing cases).[3]

Defendants' alarmist reasoning that on Plaintiffs' theory, "*any* investor who, in hindsight, felt they got a bad deal" could support a claim (Opp. at 15), is simply wrong because it ignores that (1) the loss causation allegations of greater intrinsic value must be plausibly alleged and (2) such a claim must also allege the other elements of fraud. The cases that Defendants cite to argue that evidence of higher intrinsic value cannot support loss causation (Opp. at 12-15) are all

---

[2] While there is no need for the Court to address whether the projections in the Proxy are themselves additional actionable misstatements, the SAC makes clear that they are. ¶ 274. The new allegations in the SAC are limited to the issue of loss causation that was the basis for the Court's dismissal. While it is abundantly clear already how Plaintiffs' losses are connected to Defendants' misstatements, if Plaintiffs may file the SAC, they would include the explanations described above in Section V, listing Defendants' false and misleading statements, to further address Defendants' arguments concerning the causal connection to their misstatements.

[3] Plaintiffs' loss of their appraisal rights further supports loss causation, without any requirement that they prove that they (or other investors) would have acted upon those rights had they known the truth. (Mem. at 14 n.9, 20). The cases that Defendants cite in response dealt with situations where minority-shareholder votes were not needed to approve a merger and the plaintiffs were not able to show that they would have succeeded in pursuing an appraisal action. (Opp. at 13 n.4 (citing *Cellular Tech. Servs. Co. v. TruePosition, Inc.*, 609 F. Supp. 2d 223, 240-42, 244-46 (D. Conn. 2009) (plaintiffs need to adequately allege "that they would have succeeded if they had been advised of the truth and had pursued such remedies"); *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 559-60 (D. Del. 2002) ("no affirmative votes were required" and plaintiffs still could have filed an equitable action under Delaware law); *Grace v. Rosenstock*, 23 F. Supp. 2d 326, 334 (E.D.N.Y. 1998), *aff'd*, 228 F.3d 40, 49-50 (2d Cir. 2000) ("minority-shareholder votes were not required" and appraisal action was moot in light of $11 million judgment)). Here, in contrast, minority-shareholder votes were needed and the SAC shows that Plaintiffs would have succeeded in an appraisal action.

readily distinguishable because they dealt with evidence that was not nearly as strong as that presented here or addressed the very different scenario of a defrauded purchaser.[4]

### 3.    Plaintiffs' New Allegations Adequately Allege That the Merger Consideration Undervalued Qihoo

Plaintiffs' new allegations in the SAC plausibly allege that Qihoo's intrinsic value was higher than the Merger consideration while the Merger was pending.[5] Defendants mischaracterize these allegations as being based on "unverified accusations" and "allegations in a complaint" from another case. (Opp. at 17 (quoting *Low v. Robb*, 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012)).[6] This argument is wholly misplaced because Plaintiffs' allegations are based on testimony that Qihoo's CFO gave at trial and documents that it produced in discovery.

Evidence may support a claim when it is reasonable to infer it is accurate based on the context in which it is given. *See Hirsch v. Complex Media, Inc.*, 2018 WL 6985227, at *10 (S.D.N.Y. Dec. 10, 2018) (holding "there is no bright-line rule prohibiting citations to allegations from other proceedings"); *In re Bear Stearns Mortg. Pass-Through Certifs. Litig.*, 851 F. Supp. 2d 746, 768 n.24 (S.D.N.Y. 2012) (explaining "[i]t makes little sense to say" information plaintiffs "could unquestionably rely on" from "a news clipping or public testimony—is

---

[4] *See* Mem. at 3-4, 17-21 & n.17 (discussing *Gray v. Wesco*, *In re Resolute Energy*, *Kuebler v. Vectern Corp.*, *In re Ocera Theraps.*, and *Baum v. Harman*). The other cases that Defendants cite are irrelevant for the same reasons. *See Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197-99 (2d Cir. 2003) (addressing a defrauded purchaser, where the decline in value was not related to any misstatements and the plaintiff adequately alleged loss causation on its separate "pump and dump" theory); *In re Tangoe, Inc. S'holders Litig.*, 333 F. Supp. 3d 77, 109 (D. Conn. 2018) (plaintiff did not allege why the company, which was already delisted because of financial-reporting errors, was worth more as a standalone company). *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), is completely inapposite because it held merely that transaction causation was not adequately alleged where, unlike here, "minority-shareholder votes were not required." *Grace*, 228 F.3d at 49.

[5] While the Merger consideration was a premium to Qihoo's ADS price before the deal was announced (Opp. at 16), that is typically the case for a target company and does not negate the claim that Qihoo's intrinsic value was significantly higher than the Merger consideration that Defendants misrepresented as "fair." (*See* MTD Opposition (ECF No. 128) at 21).

[6] *See also Footbridge Ltd. v. Countrywide Home Loans*, 2010 WL 3790810, at *5 (S.D.N.Y. Sept. 28, 2010) (Opp. at 17) (addressing allegations from "pleadings and settlements").

immaterial simply because it is" from "an unadjudicated complaint"). Even allegations from unnamed sources (*i.e.*, "confidential witnesses") are accepted when described "with sufficient particularity to support the probability that a person in" their position would have the information. *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000). The new allegations here, based on evidence presented in open court in the Appraisal Action Trial, are immeasurably stronger than the types of allegations that courts regularly credit on a motion to dismiss.

The SAC shows that J.P. Morgan's fairness opinion was based on projections of Qihoo's performance, and information about its business, that were inaccurate in at least three basic ways. *First*, these projections included $3.6 billion in capital expenditures for a cloud computing business that Qihoo did not actually plan to pursue. ¶¶ 188-98. Qihoo's internal documents did not mention this purported business at all, much less that Qihoo planned to spend $3.6 billion on it, and Qihoo's CFO who provided the projections to J.P. Morgan admitted that he assessed the cost of this business for the first time when he created the projections. *Id.* He even admitted that Qihoo "does not have any internal or external data or analysis in relation to the Cloud capex" and that Zhou and Qi abandoned the supposed cloud business before the shareholder vote on the Merger. ¶¶ 191-93. *Second*, Qihoo included capital expenditures for an office construction project that contemporaneous internal documents showed to be inflated by at least $129 million. ¶¶ 205-07. *Third*, Qihoo failed entirely to account for an internet finance business that was worth at least $821 million when the fairness assessment was made. ¶¶ 210-12.

J.P. Morgan's DCF valuation, which was the primary tool used to assess the fairness of the Merger consideration, was based on Qihoo's management projections that contained these inaccuracies. ¶¶ 70-71, 183-84, 187. Keeping J.P. Morgan's DCF valuation exactly the same except for these three metrics yields a value that is 36.9% above the Merger consideration (or

27.6% greater after removing the cloud capex, 1.5% greater after correcting the office capex, and 7.9% greater after accounting for the internet finance business). ¶ 213; *see also* ¶¶ 201, 208.[7]

Defendants' argument that J.P. Morgan's DCF analysis presented a "wide range" of potential values (Opp. at 16) ignores the fact that J.P. Morgan concluded that the $77 per ADS Merger consideration fell in the middle of these values. (Zhou MTD Ex. 2 (Proxy, ECF No. 116-2) at 56; ¶ 187). If Qihoo's accurate financial metrics were plugged into J.P. Morgan's DCF model, both the low and high end of its valuation range would have been significantly higher to account for the Company's more-favorable metrics. To conclude that J.P. Morgan would have reached the same fairness opinion if its model showed that Qihoo was actually worth 37% more would render meaningless the whole endeavor of assessing the fairness of Zhou's offer.

The qualifications and cautionary language that Defendants point to related to the projections are irrelevant to the *issue of loss causation*. (Opp. at 17-18). The Court has already held that Defendants' statements are actionable. The question here is whether Plaintiffs have adequately alleged that Qihoo's intrinsic value was higher than the Merger consideration.[8] Qihoo's management projections were the primary input in J.P. Morgan's valuation. The fact that those projections were contradicted by information that Qihoo produced in the Appraisal Action concerning its capex and internet finance business renders the valuation inaccurate.[9]

---

[7] These calculations are in comparison to J.P. Morgan's $10.425 billion valuation, which it described as within 1.8% of the Merger consideration. ¶ 187. Using a different set of J.P. Morgan's assumptions would yield the same result because the point of this exercise is to do an apples-to-apples comparison by adjusting only the three items that Defendants misrepresented and keeping all other factors the same.

[8] Even if analyzed under the rubric of falsity, the projections are actionable because they were contradicted by information Defendants omitted. *See* MTD Order at 26-28. And even if Qihoo did not usually disclose projections, once it did in the Merger, it had a duty to do so accurately.

[9] For example, Defendants' notion that it was "premature" to ascribe value to the internet finance business (Opp. at 18) is belied by the fact that Qihoo's management projections went out to 2025 and included projections for both Qihoo's "traditional" and "emerging" businesses. ¶¶ 187, 197. Qihoo could have accounted for the internet finance business either by including its metrics in the financial projections or ascribing an overall value to its interest in the

**B.**      **In the Alternative, the Court Should Certify These Issues for Interlocutory Appeal**

**1.**      **The Court's Order Raises a Controlling Question of Law**

If the Court rules that Plaintiffs cannot possibly allege loss causation based on facts showing that Qihoo's intrinsic value was lower than the Merger consideration, and holds that Plaintiffs must instead allege how Plaintiffs would have received higher value under a specific alternative transaction, that would raise a controlling question of law that is well-suited for appellate review. (Mem. at 13-14 (citing *In re GM*, 427 F. Supp. 3d 374, 392 (S.D.N.Y. 2019)).

**2.**      **There is Substantial Ground for Difference of Opinion**

If the Court does not allow Plaintiffs to file the SAC because they have not shown how they would have received higher value under specific counterfactual scenarios, that would raise an issue about which there is substantial ground for difference of opinion given the many decisions that hold loss causation is supported in the merger context where plaintiffs plausibly allege the company's fair value was higher than the merger consideration. (Mem. at 14-21).

Defendants blatantly misread the Supreme Court's ruling in *Mills* as addressing damages rather than loss causation. (Opp. at 21-22). *Mills* made clear that it addressed the issue of whether there was "a sufficient showing of causal relationship between the violation and the injury." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970); *see also Azar v. Blount Int'l, Inc.*, 2017 WL 1055966, at *11 (D. Or. Mar. 20, 2017) (citing *Mills* for the ruling that loss causation was supported based on allegation that company was undervalued in a merger); *In re Envision Healthcare Corp.*, 2019 WL 3494407, at *8 (D. Del. Aug. 1, 2019) (same). Similarly, the Court in *Affiliated Ute* addressed what constitutes an "economic loss" under Section 10(b). *Mazuma Holding Corp. v. Bethke*, 21 F. Supp. 3d 221, 235 (E.D.N.Y. 2014).

Moreover, Plaintiffs' position is firmly supported by many Second Circuit and district

---

business, as Qihoo did with other items that J.P. Morgan accounted for in its DCF analysis. *See* ¶ 187; Zhou MTD Ex. 2 (ECF No. 116-2) at 51 (projections), 56 (description of DCF analysis).

court cases that consistently address loss causation in the merger context by assessing whether the company was undervalued. (Mem. at 15-19). Defendants do not meaningfully differentiate the facts of these cases as compared to those alleged in the proposed SAC. (Opp. at 22 n.8). These cases do not require plaintiffs to show counterfactual transactions in which they could have achieved greater value (Mem. at 19-21), or even the specific source of the value that the defendants artificially deflated (*id.* at 23-25). To the extent that the Court rules that certain cases require Plaintiffs to "offer far more specific information about economic loss at the pleading stage," that would create a substantial ground for difference of opinion because one court has already determined that such rulings differ from the weight of authority in the Second Circuit. *Erickson v. Jernigan Cap.*, 2022 WL 3028627, at *4 (S.D.N.Y. Aug. 1, 2022).

### 3. <u>Interlocutory Review Would Materially Advance the Litigation</u>

Under Defendants' purported standard, interlocutory appeal would never be allowed for plaintiffs who had certain claims sustained and others dismissed, because such an appeal of only the dismissed claims would never be able to "dispose of all issues," end the litigation, or even reduce the number of remaining issues. (Opp. at 23-24). Rather, interlocutory review is warranted where it will make the litigation far-more efficient and promote "the interests of judicial economy." *In re GM*, 427 F. Supp. 3d at 393. That is very much the case here, where allowing an appeal would avoid potentially having to redo the litigation for the Sellers.[10]

### III.   CONCLUSION

For the reasons described above, the Court should allow Plaintiffs to file the proposed SAC or, in the alternative, certify the issues noted above for interlocutory appeal.

---

[10] If the Court certifies an interlocutory appeal, proceedings in this Court should continue. *See In re Petrobras Secs.*, 193 F. Supp. 3d 313, 316-318 (S.D.N.Y. 2016) (denying stay while interlocutory appeal was pending); *City of N.Y. v. Beretta U.S.A. Corp.*, 234 F.R.D. 46, 50 (E.D.N.Y. 2006) (holding "the district court has continuing authority to proceed").

Dated: May 3, 2023

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Michael Grunfeld*
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
          mgrunfeld@pomlaw.com

*Lead Counsel for Lead Plaintiffs
Altimeo Asset Management and ODS
Capital LLC*

**LABATON SUCHAROW LLP**

Carol C. Villegas
David J. Schwartz
Jake Bissell-Linsk
140 Broadway, 34th Floor
New York, NY 10005
Telephone: (212) 907-0700
Email: cvillegas@labaton.com
          dschwartz@labaton.com
          jbissell-linsk@labaton.com

*Additional Counsel for Lead Plaintiff
ODS Capital LLC*

11