**Jason C. Hegt**

Direct Dial: +1.212.906.1686

Jason.Hegt@lw.com

1271 Avenue of the Americas

New York, New York  10020-1401

Tel: +1.212.906.1200  Fax: +1.212.751.4864

www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

October 11, 2023

## VIA ECF

Hon. Paul A. Engelmayer

United States District Court

Southern District of New York

40 Foley Square, Room 1305

New York, New York 10007

> Re:    *Altimeo Asset Management v. Qihoo 360 Technology Co. Ltd. et al.*, No. 1:19-cv-
> 10067-PAE (S.D.N.Y.)

Dear Judge Engelmayer:

We write on behalf of Defendants Qihoo 360 Technology Co. Ltd. ("Qihoo"), Eric X. Chen, and Hongyi Zhou ("Defendants") in the above-captioned matter.  We write pursuant to Rule 2.C of the Court's Individual Rules and Practices in Civil Cases to request that the Court compel Plaintiffs to produce documents responsive to certain of Defendants' request for production of documents.  In particular, Defendants seek production of documents about the purported trends and market dynamics alleged in the First Amended Complaint ("FAC") (ECF No. 53).  After initially refusing to produce these document *at all*, Plaintiffs agreed to produce them if they happen to be located using keyword searches that include Qihoo's name or derivations thereof.  However, many of the documents about purported market trends—which Plaintiffs have made directly relevant to this case—will not reference Qihoo by name.  Defendants requested that Plaintiffs apply 23 additional search terms to their custodians' files, but Plaintiffs refused.[1]

The parties attempted to resolve this discovery dispute during the meet and confer on August 31 and September 15, 2023 and through subsequent email exchanges, but were unable to reach a resolution.

## A.    Legal Standard

As a general rule, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"  Fed. R. Civ. P. 26(b)(1).  "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept."  *In re Weatherford Int'l Sec. Litig.*, 2013 WL 2355451, at *3 (S.D.N.Y. May 28, 2013).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1); *Weatherford*, 2013 WL 2355451, at *3.

---

[1] The search terms Defendants requested are "internet security" or China or Chinese or relist* or re-list* or delist* or de-list* or "go* private" or "take private" or "reverse merger" or backdoor or WuXi or WX or Jumei or JMEI or Dangdang or DANG or E-House or EJ or Shanda or GAME or "JA Solar" or JASO (the "Requested Search Terms"). Defendants already agreed that to the extent these terms return documents entirely focused on companies other than Qihoo without any commentary about the market dynamics alleged in the FAC, Plaintiffs need not produce them.

LATHAM&WATKINS LLP

"Once relevance has been shown, it is up to the responding party to justify curtailing discovery." *Fireman's Fund Insurance Co. v. Great American Insurance Co. of New York*, 284 F.R.D. 132, 134 (S.D.N.Y.2012). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Hicks v. Leslie Feely Fine Art, LLC*, 2021 WL 3617208, at *4 (S.D.N.Y. Aug. 13, 2021). Instead, "[a] party resisting discovery has the burden of showing 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive.'" *Id.*

### B.    The At-Issue Requests for Production Are Plainly Relevant to This Action

Defendants' Second Set of Requests for Production of Documents, propounded on both Plaintiffs on July 28, 2023, contains requests for documents and communications about (i) Plaintiffs' research related to Qihoo, other internet security companies, China, and Chinese companies listed on a U.S. stock exchange (RFP 7), (ii) investments Plaintiffs considered in other companies similar to Qihoo (RFP 8), (iii) Plaintiffs' research or analysis of China-based companies that were de-listed from a U.S. stock exchange (RFP 9), and (iv) documents describing the strategy or performance of any investment portfolio that includes the Qihoo securities at issue in this case (RFP 11) (together, the "Four RFPs"). *See* Exhibit A (Plaintiffs' responses and objections).

The Four RFPs speak directly to issues raised by Plaintiffs in the FAC. For example, the FAC alleges that:

- One "reason why Zhou sought to relist Qihoo in China was that technology companies are generally valued more in the Chinese stock market than in the United States." FAC ¶ 152.

- Qihoo's assessments of an "'economic slowdown' and increased government regulation in China" were "faulty assumptions." *Id.* ¶ 9.

- "An expert in Chinese and United States M&A and capitals [sic] market transactions has explained [that] . . . [i]t typically takes companies at least a full year" to complete a reverse merger. *Id.* ¶ 108.

- "J.P. Morgan's comparison of Qihoo to the public trading multiples of other companies failed to compare Qihoo to" other unspecified companies that Plaintiffs allege would have been better comparators. *Id.* ¶ 155.

Despite making these extensive allegations about other companies and Chinese markets generally, Plaintiffs now seem to believe they can shield their own views on these topics from discovery and limit their production to only documents that happen to contain the phrase Qihoo (or derivations thereof). This is not the law. *See Barkley v. Olympia Mortg. Co.*, 2007 WL 656250, at *4 (E.D.N.Y. Feb. 27, 2007), *report and recommendation adopted as modified*, 2007 WL 9719071 (E.D.N.Y. Apr. 16, 2007) ("Given the allegations in the complaints, and because the request is otherwise narrowly tailored, the Court finds that the discovery requested is relevant"); *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 2020 WL 91636, at *2 (S.D.N.Y. Jan. 8, 2020) (granting discovery "into facts that have been alleged" in the complaint, "thus putting them presumptively at issue in this action").

LATHAM&WATKINS LLP

Moreover, Plaintiffs are both hedge funds who made millions of dollars on their investment in Qihoo.  Their knowledge on these issues goes directly to the falsity, reliance, and causation issues that remain in dispute.  For instance, Plaintiffs' views on whether certain companies are "valued more" in China and how that factors into potential re-listings will allow Defendants to, as the Court noted, "test [Plaintiffs'] premise" (ECF No. 145 at 53) that the movement in Qihoo's ADS price was the result of the at-issue statements rather than general market perception about the valuation of Chinese technology companies or the other general trends that Plaintiffs label as "faulty assumptions." *See In re Omnicom Grp. Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 553 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010) ("[P]laintiffs must distinguish the alleged fraud from the tangle of other factors that affect a stock's price.").  Likewise, Plaintiffs' views—including comments to their own investors—about how quickly reverse mergers could be accomplished and how likely China-based issuers were to engage in re-listings go directly to the remaining questions of falsity (*i.e.*, was there a concrete plan to relist at the time of the at-issue statements) and causation (*i.e.*, was the market surprised or did market participants, like Plaintiffs, anticipate this possibility).

## C. Plaintiffs Have Not Shown that Defendants' Four Requests for Production Are Overly Broad and Unduly Burdensome

Plaintiffs have never articulated a burden, much less provided the requisite "evidentiary support" that these requests are overly broad or burdensome. *See Sokol v. Wyeth, Inc.*, 2008 WL 3166662, at *4 (S.D.N.Y. Aug. 4, 2008).  Nor could they.  Plaintiffs are demanding that Defendants search the files of as many as 20+ custodians for a multi-year period using dozens of broad search terms.  By contrast, Plaintiff ODS Capital LLC claims to only have one relevant custodian whose files are being searched and Plaintiff Altimeo Asset Management claims to only have three relevant custodians, although it destroyed files for one of those persons and has not yet confirmed plans to conduct other searches to locate the destroyed documents.[2]  In light of this very modest search universe, Plaintiffs did not provide any explanation regarding the burden imposed by the Four RFPs and the Requested Search Terms, offering only a vague assertion that applying the Requested Search Terms would create undue burden, which is "insufficient to exclude discovery of requested information." *Hicks*, 2021 WL 3617208, at *4.

For the foregoing reasons, Defendants respectfully request that the Court compel Plaintiffs to use the Requested Search Terms to locate and produce documents responsive to the Four RFPs.

Respectfully submitted,

/s/ Jason C. Hegt
Jason C. Hegt
of LATHAM & WATKINS LLP

cc:    All Counsel of Record (via ECF)

---

[2] Although the parties have reached agreement on many issues, Plaintiffs have not yet produced any documents, so Defendants may need to seek additional relief with respect to the destroyed documents or Defendants' other requests after reviewing Plaintiffs' initial production.  However, Defendants were required to seek this relief now in light of the January 18, 2024 deadline for their opposition to Plaintiffs' forthcoming class certification motion (and the depositions of Plaintiffs' witnesses that will need to occur sufficiently in advance of that deadline).