NBG8ALTC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ALTIMEO ASSET MANAGEMENT,

                Plaintiff,

        v.                              19 Cv. 10067 (PAE)

QIHOO 360 TECHNOLOGY CO. LTD.,
*et al.*,

                Defendants.             Remote Conference

------------------------------x

                                        November 16, 2023
                                        3:00 p.m.

Before:

                    HON. PAUL A. ENGELMAYER,

                                        District Judge

                        APPEARANCES

POMERANTZ LLP
     Attorneys for Plaintiff
BY:  MICHAEL GRUNFELD

LABATON & SUCHAROW LLP
     Attorneys for Plaintiff
BY:  JAKE E. BISSELL-LINSK

LATHAM & WATKINS
     Attorneys for Defendants
BY:  JASON C. HEGT

NBG8ALTC

(The Court and parties appearing telephonically)

THE COURT:  Good afternoon, everyone.

This is Judge Engelmayer, calling the case of *Altimeo Asset Management and ODS Capital LLC v. Qihoo 360 Technology, et al.*, 19-CV-10067.

Who do I have for the plaintiff Altimeo?

MR. GRUNFELD:  Good afternoon, your Honor.  Michael Grunfeld, from Pomerantz, for the plaintiffs.

THE COURT:  And I gather from the appearance sheet you are joined by Jake Bissell-Linsk?

MR. BISSELL-LINSK:  Yes, your Honor.

THE COURT:  Good afternoon to you as well.

Who do I have for the defendant Qihoo.

MR. HEGT:  Good afternoon, your Honor.  Jason Hegt, from Latham & Watkins, for all defendants.

THE COURT:  Good afternoon, Mr. Hegt.

We are here really because on the case management plan that I approved, the plan provided for a conference originally set for November 15, and later modified to November 16, for a broad topic titled, "Status conference with the Court on issues regarding discovery."

I confess I have not received any update or preview of what all that means.  I am happy to have you all on the line, but I am starting really from ground zero here.

Let me begin with you, Mr. Grunfeld.  What brings us

NBG8ALTC

together today, what is the purpose of the conference?

MR. GRUNFELD:  Yes.  Thank you, your Honor.

So, we originally called the conference for this date when we set the case schedule because defendants had raised issues that they thought they would need to address, in terms of regulatory approval for foreign discovery, and so we wanted to have this date set to make sure that discovery was proceeding apace.  I can give your Honor a brief update on where we are at in discovery and what --

THE COURT:  Mr. Grunfeld, before you do, just to cut to the end of the story here, is there going to be some productive purpose for me to serve?  I don't need an update if things on moving on track.

MR. GRUNFELD:  There's two sort of action items.

One is that -- and this is not something for your Honor to address on this conference, on this call, but just as a preview -- plaintiffs are planning to file a motion to compel, that we are planning to file today.  We actually had it ready yesterday.  We just thought that it didn't make sense to file the day before the conference when defendants wouldn't have had a chance to respond yet.  So your Honor can deal with that in due course.

THE COURT:  A motion to compel.  If this is discovery, I assume you're following my rules regarding discovery disputes.  Tell me what the motion to compel is.

MR. GRUNFELD:  Yes, your Honor.  We would be filing in accordance with your Honor's rules.  And basically we have had extensive correspondence with defense counsel over plaintiffs' document requests to defendants, and we have made a lot of progress.  We are pretty far along in agreeing on a lot of parameters, but there are certain discovery parameters that we have not been able to agree to.

The crux of the dispute, as our motion that we are planning to file lays out, is basically that the plaintiffs are seeking from defendants a combination of materials, that includes documents from the Cayman Islands appraisal action that has been referenced in this case, as well as independent discovery efforts that we think defendants should undertake, and defendants have pushed back on not any single request in particular, but on the combination of items that the plaintiffs are requesting from them.

THE COURT:  So that's fine and good.  Usually when I get a discovery dispute, though, we don't have a phone call in advance of it.  Instead, my individual rules provide for a short back-and-forth exchange of three-page, single-spaced letters on the discovery disputes after meeting and conferring has failed to fully solve the problem.  I am happy to receive that, and if you're going to be filing today or tomorrow, the defense will have three business days and I will deal with it as I usually do.  Ordinarily, there is no reason to have a

NBG8ALTC

phone conversation about it.

I inferred that the line item here in the plan had to do with something different, for example, what you originally suggested, something about regulatory approval.

MR. GRUNFELD:  Right.

THE COURT:  You said there were two action items.  One of which, which sounds like a fairly garden variety discovery dispute, I am delighted to take up, but don't need to by phone.

What is the second item?

MR. GRUNFELD:  The second item, really, you're right, your Honor, we don't have anything to resolve at this conference.  It was on the calendar and so we appeared for it. But we would request that your Honor set another conference at some point in the near future, maybe two months from now, because we expect that by that point in time the sort of parameters of discovery will be resolved, and we do continue to want to make sure that there won't be any undue delays because of these regulatory concerns that defendants have continued to raise through the meet-and-confer process.

THE COURT:  Let me see if I understand this.

Item one is a garden variety sounds like discovery dispute.  I think We can table that till I see what is in writing.

The second issue involves something about regulatory approval, and that had been the purpose of our getting together

NBG8ALTC

today, as I understand it.  But what you're telling me is it's premature to discuss that now, but you would like to, in effect, push this conference two months later to take up issues with regard to regulatory approval.  Am I about reading that right.

MR. GRUNFELD:  That's right, your Honor, unless there is anything defendants are able to say now about how long it will take them to produce documents once the parameters of discovery that are currently in dispute are set.

THE COURT:  I have got a discovery schedule.  I haven't changed it.  I don't have any disposition to change it.  Nobody is seeking to change it.  So I don't think I need to call the defendants to account.  They haven't moved to change the discovery schedule.  They are bound by it.  The regulatory approval issue is a separate thing, and that is of different character than sometimes arises because most discovery tends to not involve foreign regulators.

So, you're nibbling around the suggestion that you suspect the defendants are going to be invoking regulatory issues to change the discovery schedule or something like that.  Spit it out.  Is there some concern you have here, or should I just turn to the defendants?

MR. GRUNFELD:  We do have that concern, but it also might be premature for the reasons your Honor noted.  We do think it would make sense to hear from the defendants on this

NBG8ALTC

as well, but also to set a conference a couple of months out and we could let your Honor know in advance of that, within a week or so in advance, whether it's still necessary based on how discovery is proceeding.

THE COURT:  Mr. Hegt, let me turn to you.

On the first item involving the motion to compel, I take it there is nothing -- you each have your opinions about it, but there is nothing out of the ordinary.  That can be handled, I take it, without the need for a premotion conference, which I do not generally invite in discovery disputes, correct?

MR. HEGT:  That's right.  And in full transparency, there may be a motion from our side as well.  I think it's also in the category of a garden variety discovery dispute that we don't need to discuss today.

THE COURT:  That's fine.  Perhaps confer with Mr. Grunfeld so that if I am dealing with a pair of discovery disputes, even if they are unrelated, I suppose there would be little value in their being litigated contemporaneously, and whether I am resolving those in an order or a telephone order, I will be happy to engage with it at the same time.

So, perhaps you can confer together and both agree on a schedule, in which you each file your opening letter on your distinct affirmative issue on the same day and your response the same day, and I will probably resolve those as a package.

NBG8ALTC

The separate issue, Mr. Hegt, just involves this regulatory approval.  And I had made a note that that was out there as a thing.  Is that an issue?

MR. HEGT:  So right now I don't believe it's an issue. I guess I can give you an update of what I know.  And, of course, none of us can predict the future.

So, we are doing essentially a two-step review here. Documents are first reviewed in China for compliance with either the data privacy and national security laws.  And then, when approved for export, then we are doing the sort of typical U.S. review that would be done, with some sort of limited exceptions of categories that won't be reviewed at all in the U.S.  But, in general, first step is a China review.  And we are 70,000 documents through that review, with 200-some-odd that were flagged as requiring regulatory approval before production to the U.S.  And we are working on that process now.

As you heard from Mr. Grunfeld, we haven't landed on the final parameters.  So, of course, more documents are going to end up going through the process, and I am certain -- I don't know if the exact ratio will be similar, but I am hoping it is going to be roughly similar proportions, maybe because of the time period a few more will get caught up in the regulatory approval process.  But we are talking, honestly, a rounding error on at least what has been reviewed to date.  I only know what I can know today.  We haven't even finished the terms of

NBG8ALTC

agreement, but we are moving forward and I don't have any issue to raise today about it.

THE COURT:  Let me see if I have got this right, Mr. Hegt.  Based on the agreed-upon terms so far, 70,000 documents have been collected, of which about 2,000 will require regulatory review that hasn't occurred yet.

MR. HEGT:  200.

THE COURT:  200 or 2,000?

MR. HEGT:  200.

THE COURT:  Then, in addition, some additional documents are apt to be generated, to the extent that either the parties agree on broadened search parameters or the Court orders broadened search parameters.  And you assume, but don't know, that a roughly similar ratio of whatever is yielded by those broadened parameters would require regulatory approval. Am I so far correct?

MR. HEGT:  That's right.  The one addition is just that there are already terms we have agreed on that just haven't gone through the whole process yet.  In other words, we are feeding things in constantly, and so it's an iterative process.  But we have some stuff we are collecting.  I assume we will end up collecting a bit more.  I just don't know where we are in terms of the agreed collection to date.  And then my guess is that roughly the same percentages, although the one wrinkle is, in later periods, after the company was no longer

NBG8ALTC

listed in the U.S., it's possible that there may be more documents that would be subject to that review.  I just don't know.

THE COURT:  So, once the regulatory review gets underway, are you going to warehouse it so that you will save up all of the documents that require regulatory review and submit them in bulk or is that a rolling process too?

MR. HEGT:  I think it's probably a hybrid.

So the first set, that 200-some-odd will go as a set, and then -- we are not going to write to the ministry of justice every week, for the same reasons we wouldn't do that here with a government agency, but it's rolling batches, is probably the right way to say it.

THE COURT:  What, if any, role does the U.S. court typically play in a case where you are seeking Chinese government regulatory review?  Where does that all fit in?

MR. HEGT:  Well, hopefully there is no burden that we have to put on the U.S. court.  Hopefully we receive prompt approval.  We produced to the outside world as if -- we did a whole lot of work, but hopefully it's completely invisible to everyone else.  We will just make a document production.  We have had instances where Chinese foreign regulators have asked for some modification to a protective order, or sometimes it's helpful to get an order from the court in some manner.  I don't have any belief that we will need that here, but we are

NBG8ALTC

awaiting feedback on that.

THE COURT:  Do you have a sense, Mr. Hegt, when you are likely making reasonable assumptions to be done collecting the material that is potentially subject to regulatory review?

MR. HEGT:  It depends a little on how soon we finalize the parameters, but I guess setting aside the holidays, usually it's only a couple of weeks.  If people are traveling, maybe it's a touch longer.  But collecting is not the issue.  The collection I would anticipate is a normal, whatever the speed of technology and finding people and that kind of thing is.

THE COURT:  So back to you, Mr. Grunfeld.

What is the context in which the Court's intercession based on regulatory review might be needed?  I fully understand that this regulatory approval process has the capacity to delay things.  Less clear is what yours truly can do to get the Chinese Ministry of Justice to motivate.  What is it that you have in mind engaging me in in what now appears to be a couple of months relating to that?

MR. GRUNFELD:  If it proceeds apace, then we would not need your Honor's intervention.  But if it comes to a point where defendants were to take the position that they don't have approval to produce something, or that there is going to be an undue or indefinite delay, then the U.S. court does have the power to order that production is still required from the perspective of U.S. law because the U.S. rules and discovery

NBG8ALTC

obligations still apply.  So we could potentially end up seeking that type of order from the Court, although hopefully we would not need to.

THE COURT:  I'm sorry.  Let me make sure I understand this.  One thing you're saying is, if the defendants are dragging their feet, you can get the Court to crack down.  But I thought, but didn't hear, you're saying that I could order the defendants to violate Chinese law by producing something that the Chinese regulators contend requires approval to be produced, as to which such approval has been denied.  Is that something you're saying?

MR. GRUNFELD:  It's a little premature to be delving into those arguments.  We would want to research it further.  But our impression is, yes, the U.S. court can order a party in U.S. litigation that they are still required to produce documents, notwithstanding whatever they contend that their foreign obligations are, because they are subject to jurisdiction in the U.S. court.  And there is pretty established case law on this topic.

THE COURT:  It seems to me that we, Mr. Grunfeld, at this point are discussing something that is solely a hypothetical.  It doesn't sound, Mr. Grunfeld, with respect, that there is any business for me to attend to today.  The only open issue is whether to reschedule this conference for a later time.  And I gather you are asking me to do that because the

NBG8ALTC

fact of a conference on the calendar has a quickening effect on those who have to produce discovery.  Am I basically reading that right?

MR. GRUNFELD:  That's right, your Honor.

THE COURT:  Mr. Hegt, I have got no problem, in effect, adjourning this conference for a couple of months, to sometime, let us say mid-January, for the same purpose.  That being said, if at the end of the day there is no ground to cover on the conference, I think we can, rather than holding it, simply have a joint letter that explains where things stand and you tell me whether or not we need a new conference date to be set.  So I am glad to keep an active hand in that respect, but I don't really need to check in where there is no action item.

Mr. Grunfeld.

MR. GRUNFELD:  I agree.  We can jointly submit a letter in advance of the conference if that ends up being the case.

THE COURT:  Let me get a proposed date from my law clerk for our next phone conference.

How about Tuesday, January 16, at 10 a.m.

Mr. Grunfeld, does that work for you?

MR. GRUNFELD:  Yes.

THE COURT:  Mr. Hegt.

MR. HEGT:  I was just going to ask if we could go one

NBG8ALTC

week later.  I don't know if it will go, but I have a trial that week of -- I think Monday is a holiday, so we are set to begin on Tuesday.

THE COURT:  Why don't we say January 23.  And let me move it to 2 p.m., which is a better time here for non-urgent conferences.  So why don't we say January 23 at 2 p.m.

But, Mr. Grunfeld, I will ask for you to take responsibility to get me a letter a week before the conference, letting me know what the conference agenda is and whether there is a need for it.  And that letter, though, should reflect input from both sides.  Okay?

MR. GRUNFELD:  Yes.  That makes sense.

THE COURT:  Once I get a fully submitted pair of letters on the discovery dispute, I try to act on those quickly.  My view is that discovery disputes don't get better with age and it's better for me to give a prompt, clear, bright-line answer soon rather than letting discovery disputes turn into ground wars or take a long time.  So you can expect a reasonably prompt disposition of the discovery disputes.

I would value their coming in on a mirror image schedule.  So, Mr. Grunfeld and Mr. Hegt, why don't you kindly speak to each other and arrange -- because the plaintiff is ready soon, Mr. Hegt, I will ask you to be flexible so that together you can come up with an agreed schedule and we have two mirror image reciprocal motions being litigated.

NBG8ALTC

Mr. Hegt, does that work for you?

MR. HEGT:  Yes, your Honor.  Thank you.

THE COURT:  Mr. Grunfeld.

MR. GRUNFELD:  Yes.  I would just add, though, like I said earlier, and your Honor noted, we are basically ready to file our motion.  So I don't know what defendants are referring to.  I wasn't aware that we had anything that they were considering filing a motion on.  So if it turns out that they do need to file that and we are not able to resolve it, I would just say that, if it's not something they are going to be filing within the next couple of days, we would think that it makes sense to just go ahead and get ours on file for the sake of avoiding further delay.

THE COURT:  I take it this is something you're representing, Mr. Hegt, that a full meet-and-confer process has occurred and has proven incapable of resolving.

MR. HEGT:  That's right.  We just haven't announced that we are filing a motion, but we have discussed it a number of times, and could be prepared certainly before the holiday.

THE COURT:  Let me suggest this.  If you're both representing that the meet-and-confer process has run its course on these issues, you will represent that in your letter. It's got to be accurate.  If you're still in some negotiation process and it's clear that somebody jumped the gun, I will be unhappy.  So make sure with the other side, as to both of these

NBG8ALTC

points, if you really are at an impasse.

What I would say is, I would like to get the paired letters in promptly. I also don't want anybody's Thanksgiving to be ruined. And so, would you speak to each other and be collegial about figuring out a pair of dates that is respective to the needs of the various team members. Thanksgiving is coming up. I am not going to be the Grinch. Please come up with a pair of dates that everyone can live with, not needlessly burdening either yourselves or the younger people on your teams. I am fine with whatever dates you can both agree on, but I want it to be with sensitivity to personal obligations.

With that, that's all I have got.

Mr. Grunfeld, anything further from you?

MR. GRUNFELD: No. Thank you, your Honor.

THE COURT: Mr. Hegt.

MR. HEGT: No. Thank you, your Honor.

THE COURT: I look forward to seeing the discovery letters, and I will act on them soon.

Thanks very much. Have a good Thanksgiving everyone.

(Adjourned)