**Jason C. Hegt**                                    1271 Avenue of the Americas
Direct Dial: +1.212.906.1686                         New York, New York  10020-1401
Jason.Hegt@lw.com                                    Tel: +1.212.906.1200  Fax: +1.212.751.4864
                                                     www.lw.com

# LATHAM&WATKINS LLP

November 28, 2023

**VIA ECF**

Hon. Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 1305
New York, New York 10007

> Re:   *Altimeo Asset Management v. Qihoo 360 Technology Co. Ltd. et al.*, No. 1:19-cv-
> 10067-PAE (S.D.N.Y.) – Defendants' Opposition to Plaintiffs' Discovery Letter

Dear Judge Engelmayer:

We write on behalf of Defendants Qihoo 360 Technology Co. Ltd. ("Qihoo" or the "Company"), Eric X. Chen, and Hongyi Zhou ("Defendants") in the above-referenced matter to oppose Plaintiffs' letter motion to compel (the "Motion") (ECF No. 196).  In the Motion, Plaintiffs request that Defendants produce (1) "the entire set of" documents from an appraisal action in the Cayman Islands (the "Cayman Action")—including (a) Qihoo's document productions and (b) all "Court filings, affidavits, judicial decisions, and expert reports,"—and (2) additional documents retrieved with a search protocol Plaintiffs attached to their motion without noting what was in dispute.  Mot. at 2-4.  The Court should deny the Motion.

> ### A.   Plaintiffs' Request for the "Entire Set" of Documents from the Cayman Action Is Overbroad and Unduly Burdensome

Plaintiffs' request for "the entire set of Cayman Documents,"  Mot. at 3, should be denied because it impermissibly seeks cloned discovery from another proceeding.[1]  As another court in this District noted, "'[c]opy cat' or 'monkey see/monkey do' requests may be appropriate where the scope and contours of separate lawsuits and discovery demands are the same, or nearly the same."  *New Jersey Carpenters*, 2012 WL 13135408, at *1 (S.D.N.Y. Mar. 2, 2012).  Plaintiffs do not (and cannot) make such showing here.  This case, arising under U.S. securities laws, focuses on the narrow question of the alleged impact (if any) of certain statements about a potential

---

[1] *See, e.g.*, *In re Tenaris S.A. Sec. Litig.*, 2022 WL 905125, at *2 (E.D.N.Y. Mar. 28, 2022) (denying request for documents related to three prior investigations when such request "is a canard being advanced to get access to a massive trove of material"); *New Jersey Carpenters Health Fund v. DLJ Mortg. Cap.*, Inc., 2012 WL 13135408, at *1 (S.D.N.Y. Mar. 2, 2012) (denying request for documents previously produced to the government where "the [g]overnment's investigation is far broader than the limited subject matter of this lawsuit"); *TravelPass Grp., LLC v. Caesars Ent. Corp.*, 2020 WL 698538, at *6 (E.D. Tex. Jan. 16, 2020) (defendants "not entitled to the wholesale reproduction" of FTC documents "simply because there may be overlap between the issues in those cases and those in this case"); *King Cty. v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) ("'[C]loned discovery' . . . is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the subject case.").

LATHAM&WATKINS LLP

relisting on the price of Qihoo's ADS during the roughly six months before Qihoo was taken private in July 2016.  The Cayman Action, by contrast, dealt with the "fair value" of shares owned by three Qihoo shareholders at the time those shares were tendered in the take-private transaction. As Plaintiffs admit (Mot. at 2), the Court has already rejected allegations related to Qihoo's "intrinsic value" drawn from the Cayman Action as irrelevant.  *See* ECF No. 164 at 26-36.  Because the two lawsuits touch upon different subject matters, Plaintiffs cannot show that "*the entire set of* Cayman Documents . . . relate to a sufficiently similar subject matter to this action."  Mot. at 3; *see In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 4680242, at \*1 (N.D. Cal. Oct. 18, 2017) (holding that certain "similarities [between cases] are not enough to require a *carte blanche* production of all documents" from one case to another).

Though Plaintiffs are not entitled to cloned discovery from the Cayman Action, Defendants have nevertheless *already* agreed to reproduce the 70,000 documents produced in the Cayman Action by way of compromise.  Mot. at 1.  Thus, what remains is Plaintiffs' request for the "entire record" from the Cayman Action, including "Court filings, affidavits, judicial decisions, and expert reports."  Mot. at 2-3.  This request fails for several reasons.

*First*, the unbounded request for the "entire record" from the Cayman Action is facially overbroad.  *See Stellato v. Medtronic Minimed, Inc.*, 2021 WL 3134685, at \*3 (M.D. Fla. Feb. 2, 2021) (denying plaintiff's request for "all affidavits and declarations, with any exhibits attached to same, served by or on behalf of any party, of any witness, or experts" as "not appropriately tailored to produce relevant and proportional discovery in this case"); *Town of Westport v. Monsanto Co.*, 2015 WL 13685105, at \*3 (D. Mass. Nov. 5, 2015) (similar).  *Second*, Plaintiffs' argument that they are entitled to these documents due to the "minimal effort required to re-produce" (Mot. at 3-4) "turns the discovery rules on their head."  *Tenaris*, 2022 WL 905125, at \*3.  There is no "entitlement to discovery" simply because a party demands it "[w]ithout demonstrating relevance—which has not been done—no matter how slight the burden."  *Id.*  In any event, there would be significant burden to reproducing the "entire record" because it contains or reflects evidence submitted by the three plaintiffs and various non-parties in the Cayman Action. Reviewing the "entire record" to identify such information and obtain consent to re-produce or redact is a burden entirely disproportionate to the purported relevance of these materials.  And injecting into this case a series of irrelevant legal contentions by other parties in a different action needlessly multiplies the issues to be litigated in this case.  *Third*, this request appears to be an end-run around applicable Cayman Islands rules and procedures, which provide that, subject to certain conditions, "the Court file relating to any proceeding shall be open to inspection only by the parties to that proceeding."  Grand Court Rules, O. 63, r. 3.  Where a nonparty wishes to access the Court file, the nonparty must submit an application for leave to inspect the Court file by letter. *See, e.g.*, Grand Court Rules, O. 63, r. 5; Grand Court Practice Direction 1 of 2015.  Plaintiffs set forth no authority for this Court to abrogate the rules the Cayman Islands courts established for access to Cayman Islands court records.

## B.      Plaintiffs' Request for Additional Discovery Is Without Merit

Defendants have never claimed that the Cayman production "[a]bsolve[s]" them of their discovery obligations.  *Id.* at 3.  To the contrary, separate and apart from the Cayman Action, Defendants have *already* agreed to run dozens of search terms over the files of the fourteen

**LATHAM & WATKINS** LLP

custodians listed in Exhibit A to Plaintiffs' Motion.  In fact, most of what is listed in Exhibit A to Plaintiffs' motion has been agreed to by the parties.  Only two categories remain in dispute.

*First*, Plaintiffs request that for the six custodians whose documents were produced in the Cayman Action, Defendants run additional search terms covering the period that overlaps with what was produced in the Cayman Action.  Defendants' view is that the 188 search terms that were already used in the Cayman Action to locate documents from this time period (attached hereto as Ex. 1) are more than sufficient to capture relevant documents.  Defendants have repeatedly invited Plaintiffs to identify any gaps they believe exist and how any additional terms would fill them, but Plaintiffs have never done so—including in their Motion.  Particularly given Plaintiffs' claims about the similarities between the two cases, their failure to justify why Defendants should collect several years of emails to run any incremental searches is dispositive.

*Second*, for all 14 custodians, Plaintiffs ask the Court to order Defendants to run 92 search terms for the period of January 1, 2015 to September 15, 2016.  Plaintiffs omit that Defendants have agreed to run those search terms (subject to modification if, during review, any term produces an extraordinary number of mis-hits) and that the only dispute concerns term nos. 24-55.  These generic terms such as "Forecast," "2025," "WACC," "Margin," and "Capex" have nothing to do with the issues in this case regarding a potential plan to relist Qihoo in China.  They are general business terms that will appear in countless documents about Qihoo's day-to-day operations and Plaintiffs have made no showing for why Defendants should review documents containing only these incremental terms (and not the other terms that at least have some marginal connection to the claims).  *See Raine Grp. LLC v. Reign Cap., LLC*, 2022 WL 538336, at *3 (S.D.N.Y. Feb. 22, 2022) ("Broad, general search terms such as the ones the parties are using are typically not sufficiently targeted to find relevant documents."); *Capitol Recs., Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 53 (S.D.N.Y. 2009) (declining to impose search terms that are "overbroad").

### C.    Plaintiffs' Request for Expedited Interim Deadlines Must Be Denied

Plaintiffs request that Defendants be directed to either (i) conduct the review outlined in Exhibit A or (ii) within seven days, produce hit reports justifying any assertions of burden.  Mot. at 4.  Plaintiffs premise this request on the fact that it has been "over 20 months since Plaintiffs first served document requests," and that Defendants have held the Cayman documents "captive." Mot. at 1.  Not so.  Plaintiffs first served document requests in March 2022, when the Company and Mr. Chen agreed to begin discovery in this case.  Because Plaintiffs had not served Mr. Zhou during the time this case was originally pending or on appeal, Mr. Zhou's motion to dismiss was filed and the Court stayed discovery.  ECF No. 126.  Plaintiffs caused the stay to be extended again when they filed a motion for partial reconsideration of the Court's decision on that motion.  ECF No. 150.  As Plaintiffs admit, in the five months since the Court denied Plaintiffs' motion for partial reconsideration, the parties have been "far along in agreeing on discovery parameters in response to Plaintiffs' document requests."  Mot. at 1.  Defendants are already expending substantial effort collecting and reviewing the agreed-upon materials.  There is no basis to impose expedited, interim deadlines for the additional material Plaintiffs now seek.  *See Kamden-Ouaffo v. Balchem Corp.*, 2020 WL 4040909, at *2 (S.D.N.Y. July 16, 2020) (denying plaintiff's attempt to "unilaterally accelerate the discovery timeline").

**LATHAM&WATKINS**LLP

Respectfully submitted,

/s/ Jason C. Hegt
Jason C. Hegt
of LATHAM & WATKINS LLP

cc:      All Counsel of Record (via ECF)

**LATHAM&WATKINS**LLP