## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALTIMEO ASSET MANAGEMENT, Individually and On Behalf of All Others Similarly Situated,<br><br>                               Plaintiff,<br><br>        v.<br><br>QIHOO 360 TECHNOLOGY CO. LTD., HONGYI ZHOU, XIANGDONG QI and ERIC X. CHEN,<br><br>                               Defendants. | Case No. 1:19-cv-10067-PAE |

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ............................................................................ 1

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT............................................ 3

      A.    Procedural History of the Litigation .......................................................... 3

      B.    Summary of Key Aspects of the Proposed Settlement ........................................ 5

            1.    Relief to Settlement Class Members and Release of Claims ...................... 5

            2.    Notice and Settlement Administration.......................................... 6

            3.    Objections ........................................................................ 6

            4.    Requests for Exclusion .......................................................... 7

            5.    Termination of the Settlement .................................................. 7

            6.    No Admission of Liability ...................................................... 7

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........... 8

      A.    The Standards for Preliminary Approval.................................................. 8

      B.    Approval of the Settlement is Likely Under Rule 23(e)(2) ................................ 9

            1.    Plaintiffs and Their Counsel Have Zealously Represented the Class......... 9

            2.    The Settlement Is the Product of Good Faith, Informed, and Arm's-Length
                  Negotiations by Experienced Counsel ...................................... 10

            3.    The Settlement Provides Significant and Certain Benefits...................... 12

            4.    The Proposed Method for Distributing Relief Is Effective...................... 13

      C.    The Settlement Does Not Excessively Compensate Plaintiffs' Counsel ............. 14

      D.    All Settlement Class Members Are Treated Equitably Relative to One Another. 15

      E.    The Proposed Settlement Will Meet the Additional *Grinnell* Factors.................. 15

IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
      SETTLEMENT PURPOSES ........................................................................ 19

      A.    The Settlement Class Meets the Requirements of Rules 23(a) and 23(b)(3)........ 19

1.      The Settlement Class Satisfies the Requirements of Rule 23(a)............... 20

2.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3).......... 22

B.      Nationwide Class Certification is Appropriate for Settlement Purposes............. 23

C.      The Court Should Appoint Lead Counsel as Counsel for the Settlement Class... 23

V.      THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE.................................................................................................................. 23

VI.     PROPOSED SCHEDULE OF EVENTS ....................................................................... 25

CONCLUSION............................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)....................................................................................................20, 21, 22

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006) .................................................................................20

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007).......................................................................................20, 21

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................................................8

*City of Providence v. Aeropostale Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014),
  *aff'd*, *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015) ............................11, 15

*Consol. Edison, Inc. v. Ne. Utils.*,
  332 F. Supp. 2d 639 (S.D.N.Y. 2004)........................................................................24

*Deangelis v. Corzine*,
  151 F. Supp. 3d 356 (S.D.N.Y. 2015)........................................................................8

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).......................................................................9, 15, 16, 19

*Diaz v. E. Locating Serv. Inc.*,
  2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010)...........................................................11

*Dover v. British Airways, PLC (UK)*,
  2018 WL 11412431 (E.D.N.Y. Oct. 9, 2018).............................................................8

*Fishoff v. Coty Inc.*,
  2010 WL 305358 (S.D.N.Y. Jan. 25, 2010),
  *aff'd*, 634 F.3d 647 (2d Cir. 2011) ............................................................................13, 14

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)....................................................................................................16

*In re Adv. Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ...............................................................................20, 22, 23

*In re Agent Orange Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984),
  *aff'd*, 818 F.2d 145 (2d Cir. 1987) ......................................................................16

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ....................................................................10

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012) ...................................................................................19

*In re Bear Stearns Companies, Inc. Sec., Deriv., & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ....................................................................18

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  312 F.R.D. 332 (S.D.N.Y. 2015) ............................................................................21

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018),
  *aff'd*, 822 F. App'x 40 (2d Cir. 2020) ...................................................................11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) .....................................................................................21

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................15

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ..................................................................9, 12

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................24

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) ............................................................................22

*In re Oxford Health Plans, Inc., Sec. Litig.*,
  191 F.R.D. 369 (S.D.N.Y. 2000) ............................................................................21

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  2021 WL 1040462 (S.D.N.Y. Mar. 18, 2021) ........................................................14

*In re Payment Card Interch. Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................9

*In re Petrobras Sec. Litig.*,
  2018 WL 4521211 (S.D.N.Y. Sept. 21, 2018),
  *aff'd*, 778 F. App'x 46 (2d Cir. 2019) ....................................................................7

iv

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) .......................................................................8

*In re Sadia, S.A. Sec. Litig.*,
269 F.R.D. 298 (S.D.N.Y. 2010) ......................................................................20

*In re Twinlab Corp. Sec. Litig.*,
187 F. Supp. 2d 80 (E.D.N.Y. 2002) ...............................................................21

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .................................................14

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950). Notice ...........................................................................24

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)..............................................................................17

*Palacio v. E*TRADE Fin. Corp.*,
2012 WL 2384419 (S.D.N.Y. June 22, 2012) .................................................11

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015)..............................................................................22

*Shapiro v. JPMorgan Chase & Co.*,
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .................................................24

*Spagnuoli v. Louie's Seafood Rest., LLC*,
2018 WL 7413304 (E.D.N.Y. Sept. 27, 2018) ................................................11

*Strougo v. Barclays PLC*,
312 F.R.D. 307 (S.D.N.Y. 2016) ......................................................................23

*Vargas v. Capital One Fin. Advisors*,
559 F. App'x 22 (2d Cir. 2014) ........................................................................24

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005).................................................................................8

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982).................................................................................19

*Wilson v. LSB Indus., Inc.*,
2020 WL 5628039 (S.D.N.Y. Sept. 21, 2020).................................................14

## **Statutes**

Private Securities Litigation Reform Act.........................................................12, 14, 23

Securities Exchange Act of 1934 ............................................................................................3, 12, 19

## **<u>Rules</u>**

Fed. R. Civ. P. 4 ....................................................................................................................2, 4, 10

Fed. R. Civ. P. 23 ................................................................................................................... *passim*

Lead Plaintiffs Altimeo Asset Management ("Altimeo") and ODS Capital LLC ("ODS" and, collectively, "Lead Plaintiffs" or "Plaintiffs"), individually and on behalf of all Settlement Class Members, respectfully submit this memorandum of law in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated February 12, 2024 (the "Stipulation")[1]; (ii) preliminary certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to the Settlement Class Members; (iv) a date for a final settlement fairness hearing (the "Settlement Hearing") and deadlines for the mailing and publication of the Notice, Settlement Class Member objections and exclusion requests, the filing of Lead Plaintiffs' motions for Final Approval of the Settlement and for Lead Counsel's application for an award of attorneys' fees and payment of Litigation Expenses and compensatory awards to Plaintiffs.[2]

## I.   PRELIMINARY STATEMENT

The resolution of this litigation that Lead Plaintiffs have achieved is very favorable for the Settlement Class. The Settlement will resolve all claims against Defendants in exchange for a sizable cash payment of $29,750,000 (the "Settlement Amount"), for the benefit of Settlement Class Members.

Plaintiffs and their counsel were particularly well-informed about the strengths and weaknesses of the claims and defenses in this action given its long history. Since filing this action on March 5, 2019, Plaintiffs have litigated through two motions to dismiss, an appeal to the Second

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, attached as Exhibit 1 to the Declaration of Michael Grunfeld ("Grunfeld Decl."), which is filed concurrently herewith.

[2] Defendants include Qihoo 360 Technology Co. Ltd. ("Qihoo"), Hongyi Zhou, Eric X. Chen, and Xiangdong Qi. Qi has not appeared in this action. Plaintiffs obtained a certificate of default against him and, prior to entering into the Settlement, planned to move for a default judgment at the appropriate time. (ECF No. 182). Defendants Qihoo, Zhou, and Chen are referred to as the "Settling Defendants."

Circuit, a motion for reconsideration, substantial discovery efforts, and the filing of their motion for class certification. These extensive steps have given the Parties a sophisticated understanding of the key legal and factual issues. The $29.75 million Settlement is especially beneficial because following Plaintiffs' successful efforts to revive their claims on appeal, the Court dismissed a substantial portion of their claims on a subsequent motion to dismiss.

In particular, prior to reaching the Settlement nearly five years after this Action was initially filed, Plaintiffs' Counsel: (i) conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of Qihoo's filings with the U.S. Securities and Exchange Commission and public reports concerning Qihoo; interviews with a former employee of Qihoo; and consultation with experts; (ii) drafted the initial and First Amended Class Action Complaint; (iii) briefed Defendants Qihoo and Chen's motion to dismiss; (iv) successfully appealed to the Second Circuit the Court's dismissal of the case when it granted that motion to dismiss; (v) successfully moved to serve Defendants Zhou and Qi pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure; (vi) opposed Defendant Zhou's subsequent motion to dismiss, obtaining the denial of the motion as to claims brought by the Seller Class (defined below); (vii) moved for the Court to reconsider, or grant permission to seek interlocutory appeal as to, certain aspects of Zhou's motion to dismiss that the Court granted; (viii) reviewed the extensive factual information contained in the transcript that Plaintiffs commissioned from the trial of the Appraisal Action, (ix) moved for class certification; (x) engaged in substantial discovery concerning class certification and merits issues, (xi) drafted and exchanged extensive mediation statements; (xii) participated in a full-day mediation session before the Honorable Layn R. Phillips (ret.) and further correspondence following the mediation; and (xiii) engaged in negotiations regarding the terms of the proposed Settlement and drafting of the Settlement papers.

After all of these hard-fought efforts, the Settlement is plainly the result of arm's-length negotiations conducted by informed and experienced counsel, in conjunction with a well-respected mediator. As discussed in greater detail below, Plaintiffs and their counsel believe that the proposed Settlement meets the standards for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure and is in the best interests of the proposed Settlement Class. Plaintiffs therefore respectfully request that the Court grant preliminary approval of the Settlement.

## II.   SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.  Procedural History of the Litigation

On March 5, 2019, the initial complaint was filed in the Central District of California. (ECF No. 1). On July 1, 2019, the court in the Central District of California appointed Altimeo and ODS as Lead Plaintiffs and approved their selection of Pomerantz LLP as Lead Counsel. (ECF No. 42).

On October 24, 2019, the Court in Central District of California granted Defendants Qihoo and Chen's motion to transfer this Action to the Southern District of New York. (ECF No. 60).

On August 30, 2019 (prior to the case being transferred to this Court), Plaintiffs filed the First Amended Class Action Complaint (the "Amended Complaint") alleging claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and claims against the Individual Defendants under Section 20(a) of the Exchange Act. (ECF No. 53). The Amended Complaint alleged that Defendants violated Section 10(b) by making certain statements that Plaintiffs allege were false and misleading. This includes, *inter alia*, statements regarding: (i) Defendants' intention to relist Qihoo on another stock exchange following the Merger; (ii) the reasons for the Merger; (iii) the fairness of the Merger consideration; and (iv) alternatives to the Merger. The Amended Complaint further alleged that the price of Qihoo ADS was artificially depressed during the Class Period (including when they were exchanged in the Merger) as a result of these alleged misstatements. On December 23, 2019, Defendants Chen and

Qihoo filed a motion to dismiss the Amended Complaint, which was fully briefed on May 18, 2020. (ECF Nos. 77, 81, 83). On August 14, 2020, the Court granted Defendants Qihoo and Chen's motion to dismiss on the ground that the Amended Complaint did not adequately plead "its necessary factual allegation: that defendants, as of the Merger, had in place a concrete plan to relist Qihoo." (ECF No. 84 at 37). Plaintiffs appealed this ruling. On November 24, 2021, the Second Circuit vacated the Court's dismissal, ruling that that the Amended Complaint adequately alleged materially false and misleading statements based on the "plausible inference that a concrete plan [to relist Qihoo] was in place at the time Qihoo issued the Proxy Materials." (ECF No. 88 at 11).

On February 1, 2022, the Court granted Plaintiffs' motion to serve Defendants Zhou and Qi pursuant to Rule 4(f)(3). (ECF No. 100). On April 29, 2022, Zhou filed a subsequent motion to dismiss the Complaint. (ECF Nos. 114-16). On March 21, 2023, the Court denied Zhou's motion as to the proposed class that sold Qihoo ADS during the Class Period prior to the Merger closing (the "Seller Class"), but granted it as to those that tendered their Qihoo securities in exchange for the Merger consideration (the "Tenderer Class") on the issue of loss causation. (ECF No. 145).[3]

The Parties had begun discovery following the Second Circuit's ruling, but it was then stayed pending resolution of Zhou's motion to dismiss and Plaintiffs' motion for reconsideration. (ECF Nos. 126, 156). Following resolution of those motions, the Parties restarted intensive discovery efforts both as to issues related to class certification and the merits of Plaintiffs' claims.

On October 18, 2023, Lead Plaintiffs filed a Motion for Class Certification, seeking certification of the following class for claims under Sections 10(b) and 20(a) of the Exchange Act: "All owners and former owners of Qihoo ADS, who sold their Qihoo ADS and were damaged

---

[3] Plaintiffs then sought reconsideration or, in the alternative, certification of an interlocutory appeal, as to the Court's dismissal of the claims of the Tenderer Class. Plaintiffs included as part of this motion a Proposed Second Amended Complaint containing additional allegations based on the trial that took place in the Appraisal Action. (ECF No. 157). On June 29, 2023, the Court denied Plaintiffs' motion. (ECF No. 164).

thereby, during the period from December 18, 2015 through July 15, 2016, inclusive," other than certain people associated with Defendants. (ECF Nos. 186-88).

The parties' extensive discovery efforts included written discovery requests and responses, in-depth meet-and-confer correspondence concerning the parameters of discovery, Plaintiffs' production of over 2,000 documents, three motions to compel, the depositions of Plaintiffs' class certification expert and Plaintiff ODS, and third-party discovery. On October 19, 2023, the Court denied the Settling Defendants' initial motion to compel, which requested "that plaintiffs apply 23 additional search terms to the files of plaintiffs' custodians," because the Court was "unpersuaded that the documents at issue are relevant to the elements of falsity, reliance, or causation." (ECF No. 189). Then, on December 7, 2023, the Court granted in part Plaintiffs' request that Qihoo produce materials from the Appraisal Action and denied the Settling Defendants' request that Altimeo produce documents "where Qihoo is not expressly named," except "[w]here a produced document incorporates by reference prior communication(s)." (ECF No. 215).

In the fall of 2023, the Parties engaged in settlement discussions to try to resolve the litigation. Following the exchange of mediation materials, on September 28, 2023, the Parties held a full-day in-person mediation session in New York before the Honorable Layn R. Phillips (ret.). This session did not result in a settlement, but the Parties continued to discuss the potential resolution of this Action following the mediation. On December 8, 2023, after continuing to negotiate following the mediation, the Parties reached an agreement in principle to settle the Action for $29.75 million, as memorialized in a Confidential Term Sheet executed on December 21, 2023.

**B. Summary of Key Aspects of the Proposed Settlement**

**1. Relief to Settlement Class Members and Release of Claims**

The Settling Defendants have agreed to settle the Action for a payment of $29.75 million, as described more fully in the Stipulation, in return for which all claims that have been, or could

have been, asserted in the Action ("Released Plaintiffs' Claims") against Defendants and the other Released Defendant Parties will be forever dismissed, barred and released.

### 2.   Notice and Settlement Administration

As explained below and set forth in the proposed Preliminary Approval Order, within 10 business days of the Court's entry of Preliminary Approval, the proposed Notice and Claim Form, substantially in the forms set forth in Exhibits A-1 and A-2 to the Stipulation, will be mailed to each Settlement Class Member identified by records maintained by Qihoo's ADS depositary, as well as to institutional nominees that usually maintain custodial accounts. A Summary Notice will also be published in *The Wall Street Journal* and transmitted over *PR Newswire*.

The Notice describes in plain English the terms of the Settlement, the considerations that led Lead Counsel and Plaintiffs to conclude the Settlement is fair and adequate, the Plan of Allocation for the distribution of the Settlement proceeds, and the maximum attorneys' fees and Litigation Expenses that may be sought, including the proposed compensatory award to Plaintiffs. The Notice will also set forth the date of the Settlement Hearing, as well as procedures for objecting to these matters, opting out of the Settlement Class, and submitting claims. A copy of the Notice, Claim Form and Stipulation will be posted on a website that the Claims Administrator maintains.

After competitive bidding, Lead Counsel selected Angeion Group (the "Claims Administrator") to administer the notice and claims process. The Claims Administrator is well known and highly experienced in securities-fraud-class-action settlement administration.

### 3.   Objections

Any Settlement Class Member who objects to the Settlement or related matters must do so no later than 28 calendar days prior to the Settlement Hearing and must send copies of such objections to the Court, as well as Lead Counsel and Settling Defendants' Counsel. Preliminary Approval Order ¶ 18. Any Settlement Class Member who does not file a timely written objection

to the Settlement shall be foreclosed from seeking any adjudication or review of the Settlement by appeal or otherwise. To ensure the legitimacy of any objections, the objector must file documents evidencing transactions in Qihoo Securities and submit to the jurisdiction of this Court for possible deposition. *See In re Petrobras Sec. Litig.*, 2018 WL 4521211, at *4 (S.D.N.Y. Sept. 21, 2018), *aff'd*, 778 F. App'x 46 (2d Cir. 2019) (sanctioning objector).

### 4.  Requests for Exclusion

Any Settlement Class Member who wishes to be excluded must do so by written request accompanied by Qihoo transaction documentation, such that it is received no later than 28 calendar days prior to the Settlement Hearing. Preliminary Approval Order ¶ 15. The opt-out must be sent to the Claims Administrator (but not the Court).

### 5.  Termination of the Settlement

The Settling Defendants have the right to withdraw from the Settlement if Class Members who sold or exchanged a previously negotiated amount of Qihoo Securities elect to opt out. The threshold amount is set forth in a separate, confidential Supplemental Agreement Regarding Requests for Exclusion, (the "Supplemental Agreement"). Stipulation ¶ 42.  As is standard in securities class actions, the Supplemental Agreement is kept confidential to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement. The Supplemental Agreement may be submitted to the Court *in camera* or under seal.

In the event that the Settlement is not approved by the Court, or does not become final due to any appeals or Settling Defendants' withdrawal from the Settlement, the Parties will return to their respective positions prior to the Settlement and the litigation will proceed apace.

### 6.  No Admission of Liability

By entering into the Stipulation, the Settling Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

### III.       THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.       The Standards for Preliminary Approval

In the Second Circuit, there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("[T]here is an overriding public interest in settling," particularly "in class actions."). Due to the presumption in favor of settlement, courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *8 (S.D.N.Y. Oct. 16, 2019).[4] Where, as here, the Parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval.  *See* Fed. R. Civ. P. 23(e).  A court may approve a class action settlement if:

> [I]t is fair, adequate, and reasonable, and not a product of collusion. A court determines a settlement's fairness by looking at both [its] terms and the negotiating process…. A presumption of fairness…may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.

*Wal-Mart*, 396 F.3d at 116-17.

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement "may be settled…only with the court's approval."  Fed. R. Civ. P. 23(e).  The approval process typically takes place in two stages.  *See Deangelis v. Corzine*, 151 F. Supp. 3d 356, 357 (S.D.N.Y. 2015).  First, a court provides preliminary approval and authorizes notice to be given to the class. *Id.* at 357; Fed. R. Civ. P. 23(e)(1). Second, if the Court grants this motion, it "holds a fairness hearing to determine whether the settlement's terms are fair, adequate, and reasonable."  *Dover v.*

---

[4] All emphasis is added and all internal quotation marks, citations, and brackets are omitted unless otherwise noted.

*British Airways, PLC (UK)*, 2018 WL 11412431, at *4 (E.D.N.Y. Oct. 9, 2018).

In determining whether notice should be provided to the class, the reviewing court considers whether the court "*will likely be able to*" finally approve the settlement, given the factors enumerated in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

    (A)    class representatives and counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3);[5] and

    (D)    the proposal treats class members equitably relative to each other.[6]

The Settlement satisfies all these factors and should be preliminarily approved. *See In re Payment Card Interch. Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 60 (E.D.N.Y. 2019).

## B. Approval of the Settlement is Likely Under Rule 23(e)(2)

### 1. Plaintiffs and Their Counsel Have Zealously Represented the Class

Plaintiffs and Plaintiffs' Counsel have zealously prosecuted the Action on behalf of the class since its inception and will continue to do so throughout the administration of the Settlement to secure and deliver its benefits. Plaintiffs have been active and informed participants in the

---

[5] The Term Sheet, Stipulation and Supplemental Agreement are the only agreements concerning the Settlement entered into by the Parties.

[6] In assessing these core factors at the final approval stage, the Court may also consider the Second Circuit's longstanding factors set out in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), many of which overlap with Rule 23(e)(2). The Rule 23 amendment, which became effective in December 2018, has not changed the overall approval standard, *i.e.*, whether the settlement is fundamentally fair, adequate, and reasonable. Prior to the amendment, "Rule 23 did not specify a standard, and courts…interpreted Rule 23 to only require the settlement to be within the range of possible final approval." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).

litigation by regularly communicating with Plaintiffs' Counsel, evaluating the Settlement Class's and Settling Defendants' best arguments concerning liability and damages, engaging in extensive discovery efforts, consulting with Plaintiffs' Counsel concerning the settlement negotiations, and approving the terms of the Settlement. Plaintiffs' decision to settle this case was informed by a thorough investigation of the relevant claims, including an exhaustive analysis of public documents in English and Chinese, confidential witness interviews, and consultation with experts, prior to filing the Amended Complaint; briefing on Qihoo and Chen's motion to dismiss; a successful appeal to the Second Circuit of the Court's decision on that motion; briefing to serve Defendants Zhou and Qi pursuant to Rule 4(f)(3); briefing on Zhou's subsequent motion to dismiss; moving for the Court to reconsider, or grant permission to seek interlocutory appeal as to, certain aspects of Zhou's motion;[7] moving for class certification; and engaging in substantial discovery concerning class certification and merits issues. The Settlement is demonstrably the product of well-informed and vigorous advocacy on behalf of the Settlement Class.

Only after all of these complicated steps were the Parties in a position to reach a settlement through mediation. In addition, during the mediation process, the Parties drafted extensive mediation statements, which illuminated the relative strengths and weaknesses of their positions. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001) (holding that to approve a settlement, "it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently" assess the settlement).

### 2.  The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

"In evaluating the settlement, the Court should keep in mind the unique ability of class and

---

[7] This briefing included a Proposed Second Amended Complaint that incorporated extensive factual information from the transcript that Plaintiffs commissioned of the trial in the Appraisal Action.

defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Spagnuoli v. Louie's Seafood Rest., LLC*, 2018 WL 7413304, at *3 (E.D.N.Y. Sept. 27, 2018); *City of Providence v. Aeropostale Inc.*, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014) (applying "initial presumption of fairness and adequacy" where "Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations"), *aff'd*, *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015). "The Court [also] gives weight to the parties' judgment that the settlement is fair." *Spagnuoli*, 2018 WL 7413304, at *3; *Palacio v. E*TRADE Fin. Corp.*, 2012 WL 2384419, at *2 (S.D.N.Y. June 22, 2012); *Diaz v. E. Locating Serv. Inc.*, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010).

The Settlement was reached through arm's-length negotiations, which included an all-day mediation on September 28, 2023 before a respected and experienced mediator. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018) (involvement of a mediator makes the settlement procedurally fair), *aff'd*, 822 F. App'x 40 (2d Cir. 2020). In advance of the mediation session, the Parties exchanged, and provided to the mediator, detailed mediation statements and exhibits that addressed liability and damages issues. During the mediation, both sides had detailed discussions about the merits of Plaintiffs' claims and the defenses to those claims. The negotiations, though collegial, were adversarial. Though Plaintiffs believe that their claims have merit and that the evidence developed to date supports them, the negotiations were informed in part by the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and appeals, the uncertain outcome, and the risk of any litigation, especially in complex actions such as this one, and the difficulties and delays inherent in such litigation.

In negotiating the Settlement, Plaintiffs had the benefit of attorneys at Pomerantz and Labaton who are highly experienced in complex litigation and familiar with the issues of the case.

### 3.   The Settlement Provides Significant and Certain Benefits

The Settlement provides for a certain near-term recovery of $29.75 million to be allocated among Settlement Class Members following the deduction of Court-approved fees and expenses. In contrast, if the Action continued, the hurdles faced by the Settlement Class would be substantial. The Settlement provides the Settlement Class with substantial relief, without the delay and expense of trial and post-trial proceedings. Due to the inherent complexity of securities litigation, and particularly the stringent requirements imposed by the Private Securities Litigation Reform Act of 1995's ("PSLRA") amendments to the Exchange Act, as well as case law developments, prosecution of securities class actions is inherently complex and lengthy.

If the Parties did not agree to settle, they would have faced the risks associated with Plaintiffs' pending motion for class certification as to the Seller Class. If Plaintiffs prevailed on that motion, the Parties would still face a lengthy and expensive discovery process on the merits involving parties located in China, briefing on summary judgment, and a trial with an uncertain outcome. The jury would have had to determine numerous complex factual and securities law issues and navigate battles of the experts regarding market efficiency, loss causation, and damages. During a trial, the jury would have had to determine whether: (i) Defendants made false and misleading statements; (ii) the alleged misrepresentations and omissions were material; (iii) Defendants acted with scienter; (v) Qihoo Securities traded in an efficient market, entitling Plaintiffs to a presumption of reliance; and (vi) whether, and to what extent, the price of Qihoo ADS was depressed as a result of Defendants' misrepresentations. Not only would *any* recovery be very uncertain, considering the inevitable appeals—including Plaintiffs' appeal of the Order dismissing the claims of the Tenderer Class—it would invariably be delayed by years. *See In re*

*GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693 ("favor[ing] settlement when litigation is likely to be complex, expensive, or drawn out").

Despite Lead Counsel's confidence, there are significant risks to proving falsity, loss causation, and damages, and establishing reliance. Indeed, this case was already dismissed once on falsity grounds and the Settling Defendants were poised to challenge Plaintiffs' ability to invoke the fraud-on-the-market presumption of reliance in their opposition to Plaintiffs' motion for class certification. (*See also infra* at 17-18 (discussing loss causation)). Moreover, proving scienter, a notoriously difficult and risky element of securities fraud cases, was not certain. *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 634 F.3d 647 (2d Cir. 2011).

### 4.   The Proposed Method for Distributing Relief Is Effective

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator.  The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Namely, a potential class member will submit the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective recognized loss based on the Court-approved Plan of Allocation, and ultimately determine each eligible claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation ¶ 26. Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id*. ¶ 32(d)-(e). Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id*.

After the Settlement reaches its Effective Date (*id*. ¶ 40) and the claims process is complete, Authorized Claimants will be issued payments. *Id.* ¶ 28. If there are un-claimed funds after the

initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less estimated expenses). *Id.* ¶ 29. Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. *Id.* At this point, if there are unclaimed funds, such funds will be contributed to Investor Protection Trust, or such other private, non-profit, non-sectarian 501(c)(3) organization designated by Plaintiffs and approved by the Court. *Id.*[8]

### C.  The Settlement Does Not Excessively Compensate Plaintiffs' Counsel

The reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for attorneys' fees and expenses. The Settlement does not contemplate any specific award. Plaintiffs' Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Defendants. As set forth in the Notice, Lead Counsel will apply for attorneys' fees on behalf of Plaintiffs' Counsel of up to 33.4% of the Settlement Fund, plus expenses incurred from the prosecution and resolution of this Action and compensatory awards to Plaintiffs, in an amount not to exceed $1.1 million, plus accrued interest. The expense request may include a request for the costs and expenses (including lost wages) of Plaintiffs directly related to their participation in the Action, pursuant to the PSLRA. *See* 15 U.S.C. § 78u-4(a)(4). This fee request is reasonable and within the range of fee awards in this District. *See, e.g.*, *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding fees over 30% and noting "Class Counsel's

---

[8] Investor Protection Trust is a nonprofit organization devoted to independent and unbiased investor education, research, and support of investor protection efforts. *See* https://investorprotection.org/. Since 1993, the Investor Protection Trust has worked at the state and national level to provide independent and objective investor education to enable the public to make informed investment decisions. This is related to both the injuries Plaintiffs suffered and the objectives of the underlying statutes on which Plaintiffs base their claims. Moreover, Investor Protection Trust functions under the direction of a Board of Trustees composed of various State Securities Regulators. Courts in this circuit have approved of Investor Protection Trust as a *cy pres* recipient in securities fraud class actions. *See In re Patriot Nat'l, Inc. Sec. Litig.*, 2021 WL 1040462, at *1 (S.D.N.Y. Mar. 18, 2021) (approving Investor Protection Trust as *cy pres* beneficiary); *Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) (same).

request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *Aeropostale,* 2014 WL 1883494, at *13 (awarding 33% of $15 million settlement).

### D.  All Settlement Class Members Are Treated Equitably Relative to One Another

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Here, the proposed Plan of Allocation is fair, reasonable and adequate because it treats Plaintiffs and other Settlement Class Members fairly. The Plan of Allocation, which is set out in the Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants.  Each Authorized Claimant, including Plaintiffs, will receive a *pro rata* distribution pursuant to the formulas for calculating losses. Plaintiffs will be subject to the same formulas as all Settlement Class Members for distribution of the Settlement.

### E.    The Proposed Settlement Will Meet the Additional *Grinnell* Factors

*The Complexity, Expense and Likely Duration of the Litigation Support Approval of the Settlement*. The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above. *See supra* § III.B.3.

*The Reaction of the Settlement Class to the Settlement*. After notice is issued to the Settlement Class, Plaintiffs will advise the Court of the Class's reaction.

*The Stage of the Proceedings*. Plaintiffs' and their counsel's knowledge of the merits and potential weaknesses of the claims support the Settlement, as discussed above. The advanced stage of the litigation permitted Plaintiffs and their counsel to carefully weigh the strengths and weaknesses of their case and to engage in effective settlement discussions. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information."). This factor strongly supports preliminary approval of the Settlement.

***The Risk of Establishing Liability and Damages***.  The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal").  *See supra* § III.B.3.

***The Risks of Maintaining the Class Action Through Trial***.  In deciding a motion for class certification, the Settlement Class would face the risk of arguments by the Settling Defendants regarding any potential factual dissimilarity of claims asserted by Plaintiffs and putative class members. If successful, the defense would mandate individual lawsuits, hoping to incur minimal amounts of damages. Moreover, even if a class were certified over Defendants' objection, it would face multiple risks in proving the class-wide nature of their securities law violations at trial.

To be entitled to class certification, Plaintiffs must show that common issues predominate over individual ones. If not for the Settling Defendants' consent to certify the Settlement Class, Plaintiffs would have to meet their burden by showing that Qihoo ADS traded on an efficient market, entitling the Seller Class to the presumption of reliance on Defendants' materially false statements. Under *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258 (2014), Defendants would have been permitted to rebut the presumption by proving that there was no price impact. While it is not unusual for courts to certify securities class actions, it is not automatic. The law governing certification of securities class actions has been in constant flux. Thus, without a settlement, the Settlement Class risked that certification would be denied.

***The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation***. The adequacy of the settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness," which "recognizes the

uncertainties of law and fact in any particular case and the concomitant risks and costs . . . inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, the Settlement provides for a recovery of $29.75 million.  Under the District Court's decisions, and a standard 80/20 multitrader model, Plaintiffs' fair value assessment of total potential maximum damages for Qihoo shareholders who sold their shares during the Class Period (between when Defendants announced the Merger on December 18, 2015 and when the deal closed on July 15, 2016) is estimated to be $909.81 million. In addition, although claims of shareholders who tendered their shares in the Merger were dismissed by this Court, Plaintiffs could have appealed that decision following the conclusion of the remaining claims and believe the maximum potential damages on these claims would have been in the tens of billions of dollars.

The 75% (or $22.31 million) of the $29.75 million Settlement that is allocated to the shareholders that sold their shares during the Class Period is approximately 2.45% of their total damages figure. This measure of damages, however, faced significant risks. For example, the court noted in its motion to dismiss decision that "discovery will test [the] premises" of Plaintiffs' theory of loss causation. (ECF No. 145 at 53). Defendants also raised a defense as to "'in-and-out' traders who had both bought *and* sold Qihoo securities at artificially deflated prices." (ECF No. 145 at 55). Based on consultation with Plaintiffs' expert, if Defendants were to prevail on these types of arguments, the total damages available to the Seller Class could easily have been cut down to approximately $246 million, if not eliminated entirely.

In addition, although the claims of the Tenderer Class have maximum potential damages in the tens of billions of dollars, those claims were dismissed by the Court. (ECF No. 145). Plaintiffs could have appealed that decision following the conclusion of the litigation as to the Seller Class, but their value must be discounted accordingly. The Settlement allocates 25% of the

17

$29.75 million Settlement amount to these claims.

More generally, as the Court observed, this case presents "a non-traditional context" where "the stock's price is alleged to have been artificially low on account of the non-disclosure of the Buyer Group's relisting plans." (ECF No. 145 at 52, 55). This is different than the "paradigmatic case" where "shareholder loss is occasioned and proven by a corrective disclosure." (ECF No. 145 at 34, 52). While Plaintiffs are confident they would ultimately prevail on their theory of loss causation, the "non-traditional" nature of their claims, as well as the Court's dismissal of the Tenderer Class, demonstrate how favorable the $29.75 million Settlement is for the Class.

In addition, even if Plaintiffs were to prevail with respect to the existence of damages as a matter of law, the specific amount would be highly contested because it would be based on expert analysis. For example, during depositions, the Settling Defendants repeatedly challenged whether specific movements in the price of Qihoo ADS during the Class Period was caused by the alleged fraud or external factors. The battle of the experts here would be even more uncertain than in a typical stock drop case, where damages are based on the precise amount that a company's stock fell upon a corrective disclosure that revealed the fraud. Moreover, in a stock-drop case, maximum damages are typically capped at the portion of company's value that the stock price fell. In a defrauded seller case, in contrast, maximum damages can be far larger because damages are incurred throughout the class period, not just immediately following a corrective disclosure. (*See* ECF No. 145 at 52-56). Obtaining damages approaching the full measure on this basis is significantly more difficult than when damages are measured from a lower baseline.

As such, the Settlement falls within the range that courts commonly approve. *See, e.g.*, *In re Bear Stearns Companies, Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) (approving settlement over objection, emphasizing it is "well-settled that a cash settlement"

of "only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair"); *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why satisfactory settlement could not amount to a hundredth or even a thousandth" of a "single percent of the potential recovery.").

Additionally, the Settlement is greater than the median value of securities class action settlements in actions asserting claims under Section 10(b) of the Exchange Act and within the range of settlements with similar amounts of total estimated damages. For the ten years from 2013 through 2022, the median settlement in Section 10(b) cases was $9 million and the overall median settlement in 2022 was $13 million. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements – 2022 Review and Analysis*, at 1, 6-7 (Cornerstone Research 2023) (for cases with total estimated damages ranging from $500 million to $999 million, median settlements from 2013 to 2021 were 3.1% of total estimated damages and 1.7% in 2022) (Grunfeld Decl., Ex. 2).

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

### A.  The Settlement Class Meets the Requirements of Rules 23(a) and 23(b)(3)

In granting preliminary settlement approval, the Court should certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class, which has been stipulated to by the parties, consists of: "all owners and former owners of Qihoo Securities (i) who sold their Qihoo Securities during the period from December 18, 2015 through July 15, 2016, inclusive, and/or (ii) whose Qihoo Securities were tendered, cancelled, or exchanged in the Merger."  *See* Stipulation ¶ 1(mm).

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 243 (2d Cir. 2012); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Before granting preliminary approval of a class action settlement, the Court should determine that the proposed Settlement Class is a proper

class for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation (Fourth)* § 21.632. To certify a class, the Court must determine whether four threshold requirements of Federal Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613-14. Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3). *Id.* In certifying the Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Here, the proposed Settlement Class meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

### 1. The Settlement Class Satisfies the Requirements of Rule 23(a)

**Numerosity:** A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). That is presumed "when a putative class exceeds 40 members." *In re Adv. Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 181 (S.D.N.Y. 2014). Impracticable does not mean impossible, but only that the difficulty or inconvenience of joining all class members makes use of the class action mechanism appropriate. *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007).

"While a precise quantification of the class is not required, some evidence or a reasonable estimate of the number of class members must be provided." *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 350-51 (E.D.N.Y. 2006). This assessment allows the court to "make some common sense assumptions and rely on reasonable inferences." *Id.* at 351. Consequently, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010). With approximately 223.37 million ADS sold during the Class Period, individual joinder

is impracticable and the numerosity requirement is clearly satisfied. *See* Notice at 2.

**Commonality:** The proposed Settlement Class also meets the commonality requirement of Rule 23(a). Commonality is "applied permissively by courts in the context of securities fraud litigation, and minor variations" across class members "will not suffice to defeat certification." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015) (collecting cases). The requirement is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Securities fraud class actions are "essentially course of conduct cases because the nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action." *In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000)

**Typicality:** Plaintiffs also meet Rule 23(a)'s typicality requirement. Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States SE & SW Areas Health and Welf. Fund v. Merck-Medco Mngd. Care*, 504 F.3d 229, 245 (2d Cir. 2007). Plaintiffs' claims are typical of the Settlement Class because they are based on the same alleged misrepresentations and omissions and are situated the same as all Settlement Class Members as to their claims. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002).

**Adequacy:** Lastly, Rule 23(a) requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry focuses "on uncovering 'conflicts of interest between named parties and the class they seek to represent.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Amchem*, 521 U.S. at 625). Plaintiffs adequately represent the Settlement Class as they have no individual interests or claims that are antagonistic to the Settlement Class and have zealously represented the Settlement Class's interests to date, including by monitoring the pleadings, participating in discovery, and

authorizing Lead Counsel's mediation and settlement efforts.

## 2. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Finally, the proposed Settlement Class meets the requirements of Rule 23(b)(3). This rule authorizes class certification if "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the" action.

To satisfy predominance, a plaintiff must show that questions capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Supreme Court has noted that predominance is a "test readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625. There are questions of law and fact common to the Settlement Class that predominate over individual questions. This includes whether Defendants' alleged actions, which were centralized and uniform, violated federal securities laws, including whether they were committed with scienter.

"Together with predominance, the superiority requirement ensures that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Adv. Battery Techs.*, 298 F.R.D. at 182.

A class action is also superior to other methods for the fair and efficient adjudication of this case. Securities suits easily satisfy the superiority requirement because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration" that follows. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015). Settlement Class Members are not likely, and many do not have the means, to prosecute an individual case against Defendants, who are represented by a top-tier, well-staffed

law firm expert in the field of securities litigation. In addition, concerns for efficiency and economy support resolving the issues in one suit before this Court now.

**B.   Nationwide Class Certification is Appropriate for Settlement Purposes**

It is appropriate to settle the claims of all Settlement Class Members in one action because their claims are all subject to the terms of a single federal statute, 15 U.S.C. § 78, *et seq*.

**C.   The Court Should Appoint Lead Counsel as Counsel for the Settlement Class**

A court that certifies a class must also appoint class counsel. Rule 23(g) states that the adequacy of counsel is determined by four factors: (1) the work counsel has done in investigating potential claims; (2) counsel's class action experience; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).  Lead Counsel Pomerantz and additional counsel Labaton have extensive experience and stellar reputations in class actions and securities litigation. (Grunfeld Decl., Exs. 3-4 (Firm Resumes)); *In re Adv. Battery Techs.*, 298 F.R.D. at 182 ("Pomerantz LLP has extensive experience and a stellar reputation in the field of class action and securities litigation."); *Strougo v. Barclays PLC*, 312 F.R.D. 307, 328 (S.D.N.Y. 2016). Pomerantz and Labaton have been appointed as lead or co-lead counsel in many complex securities class actions, and have recovered substantial amounts of money for clients and class members. For these reasons, among others, Plaintiffs respectfully request that the Court appoint Lead Counsel to serve as Class Counsel.

**V.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE**

The proposed Notice and Summary Notice, attached as Exhibits 1 and 3 to the proposed Preliminary Approval Order, satisfies due process, the Federal Rules, and the PSLRA. "Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise, regardless of

whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Litigation (Fourth)* § 21.312. To satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity" to object. *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950). Notice to class members must be "the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). In addition to how it is delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options" available to them, including the ability to opt out of or object to the settlement. *Id.* at 27; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014); *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004).

The proposed Notice, which the Claims Administrator will send to potential Settlement Class Members by first class mail, describes in plain English the Settlement's terms, the considerations that led Lead Counsel to conclude it is fair and adequate, the maximum attorneys' fees and expenses that may be sought, the procedures for objecting to the Settlement, requesting exclusion, or submitting a Claim Form, and how to attend the Settlement Hearing.

With the Court's permission, the Claims Administrator will commence mailing the Notice to Settlement Class Members identified by Qihoo's ADS depositary within 10 business days of the Court's entry of the Preliminary Approval Order, and mail the Notice to shareholders identified in requests to nominees as soon thereafter as addresses are received. The Summary Notice will be published in *The Wall Street Journal* and transmitted over *PR Newswire* within 14 days thereafter.

Neither Rule 23 nor due process requires receipt of actual notice by all Settlement Class Members; rather, notice should be mailed to the last known addresses of those who can be identified, and publication used to notify others. *Newberg* § 8.04; *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) (approving of mailing to "last known addresses" in combination

with publication, website, and a toll-free telephone number).

The Court should approve the proposed form of Notice and direct that notice be given.

## VI.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events in connection with the Settlement as set

forth in the proposed Preliminary Approval Order (Exhibit A to the Stipulation) filed herewith:

| Event | Proposed Timing |
|---|---|
| Date for Settlement Hearing. | Approximately 100 days after the Court enters the Preliminary Approval Order. (Preliminary Approval Order ¶ 5) |
| Mailing of Notice and Proof of Claim and Release. | No later than 10 business days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 8) (the "Notice Date") |
| Publication of Summary Notice. | No later than 14 calendar days after the Notice Date (Preliminary Approval Order ¶ 11) |
| Submission deadline for requests for exclusion. | Received no later than 28 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 15) |
| Date for Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and the application for attorneys' fees and payment of expenses. | No later than 42 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 22) |
| Filing deadline for objections. | Received no later than 28 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 18) |
| Date for Lead Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and the application for attorneys' fees and payment of expenses. | Seven (7) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 22) |
| Date for Claims to be Filed | Postmarked no later than 7 calendar days after the Settlement Hearing. (Preliminary Approval Order ¶ 13(a)) |

## <u>CONCLUSION</u>

For the forgoing reasons, Plaintiffs respectfully request that the Court preliminarily

approve the proposed Settlement and enter the Preliminary Approval Order.

DATED: February 12, 2024

**POMERANTZ LLP**

*/s/ Michael Grunfeld*
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
      mgrunfeld@pomlaw.com

***Lead Counsel for Lead Plaintiffs
Altimeo Asset Management, ODS
Capital LLC, and the Settlement Class***

**LABATON KELLER SUCHAROW
LLP**

Carol C. Villegas
Jake Bissell-Linsk
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: cvillegas@labaton.com
      jbissell-linsk@labaton.com

***Additional Counsel for Lead Plaintiff
ODS Capital LLC***