**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALTIMEO ASSET MANAGEMENT, Individually and On Behalf of All Others Similarly Situated, <br><br>                Plaintiff, <br><br>    v. <br><br> QIHOO 360 TECHNOLOGY CO. LTD., HONGYI ZHOU, XIANGDONG QI and ERIC X. CHEN, <br><br>                Defendants. | Case No. 1:19-cv-10067-PAE |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT <u>AND PLAN OF ALLOCATION</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT ......................................................................................................... 4

      A.    The Standards For Final Approval Under Rule 23(e) and *Grinell* ......................... 4

      B.    The Settlement Is Fair, Reasonable, and Adequate ................................................ 5

            1.    Plaintiffs and Lead Counsel Adequately Represented the Class ................ 5

            2.    The Settlement Is Entitled to a Presumption of Fairness Because It Arose From Arm's-Length Negotiations Among Experienced Counsel .............. 7

            3.    The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation........ 8

                  a.    Complexity, Expense And Likely Duration Of The Litigation ...... 9

                  b.    The Risks Of Establishing Liability And Damages ...................... 10

                  c.    Risks of Maintaining Class Action Status ................................... 14

                  d.    Range of Reasonableness In Light of the Best Possible Recovery and Attendant Risks of Litigation ................................................ 15

            4.    The Remaining Rule 23(e)(2)(C) Factors Support Final Approval .......... 17

            5.    The Settlement Treats All Settlement Class Members Equitably ............. 18

            6.    The Remaining *Grinnell* Factors Weigh In Favor of Final Approval ...... 18

                  a.    The Settlement Class's Reaction Supports Final Approval .......... 19

                  b.    The Stage of the Proceedings and the Amount of Discovery ....... 19

                  c.    The Ability of Defendants to Withstand a Greater Judgment....... 20

      C.    The Plan of Allocation Is Fair and Reasonable and Should Be Approved ........... 21

      D.    The Notice Program Satisfies Rule 23, the PSLRA, and Due Process ................. 23

      E.    Final Certification of the Settlement Class Is Appropriate ................................... 25

III.  CONCLUSION ...................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbuthnot v. Pierson*,
607 F. App'x. 73 (2d Cir. 2015) ......................................................................................9

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000)...............................................................................................5

*Beach v. JPMorgan Chase Bank, N.A.*,
2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ...................................................................5

*Chatelain v. Prudential-Bache Sec. Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ................................................................................14

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...........................................................18, 21

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)..................................................................................... *passim*

*City of Providence v. Aeropostale*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...................................................................9

*Fishoff v. Coty Inc.*,
2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011)....................11

*Fleisher v. Phoenix Life Ins. Co.*,
2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)...............................................................21

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)................................................................................................5

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)........................................................................................................14

*Hayes v. Harmony Gold Mining Co.*,
509 F. App'x 21 (2d Cir. 2013) .......................................................................................9

*In re Alloy, Inc. Sec. Litig.*,
2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) .................................................................10

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)....................................................................10

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)............................................................8, 15, 19

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) ..........................................................................7

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013)..................................................................8, 9

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..........................................................7

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019)........................................................13

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook,
  Inc.*, 674 F. App'x 37 (2d Cir. 2016) .....................................................................7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)..........................................................15

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ..........................................................................23

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................10

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)..........................................................9, 10, 14

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ..................................................................9, 13, 21

*In re Lithium Ion Batteries Antitrust Litig.*,
  2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) .........................................................6

*In re Loop Indus., Inc. Sec. Litig.*,
  2023 WL 127304 (S.D.N.Y. Jan. 5, 2023) ............................................................17

*In re Marsh & McLennan Cos. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................................................21, 25

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) ....................................................................16, 23

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997)................................5

iii

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
 330 F.R.D. 11 (E.D.N.Y. 2019)............................................................................4

*In re Petrobras Sec. Litig.*,
 317 F. Supp. 3d 858 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019).........................9

*In re Platinum and Palladium Commodities Litig.*,
 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ...........................................................6

*In re Polaroid ERISA Litig.*,
 240 F.R.D. 65 (S.D.N.Y. 2006) ...........................................................................6

*In re Portal Software, Inc. Sec. Litig.*,
 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .......................................................16

*In re Reliance Sec. Litig.*,
 2002 WL 35645209 (D. Del. Feb. 8, 2002) ...........................................................16

*In re Sinus Buster Prods. Consumer Litig.*,
 2014 U.S. Dist. WL 5819921 (E.D.N.Y. Nov. 10, 2014)..........................................21

*In re Telik, Inc. Sec. Litig.*,
 576 F. Supp. 2d 570 (S.D.N.Y. 2008)..............................................................10, 14

*In re WorldCom, Inc. Sec. Litig.*,
 388 F. Supp. 2d 319 (S.D.N.Y. 2005)...................................................................21

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
 2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) .........................................................16

*Maley v. Del Glob. Techs. Corp.*,
 186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................10, 18, 19

*McIntire v. Pesch (In re Patriot Nat'l, Inc. Sec. Litig.)*,
 828 F. App'x 760 (2d Cir. 2020) .........................................................................5

*Shapiro v. JPMorgan Chase & Co.*,
 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .........................................................7

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
 258 F. Supp. 2d 254 (S.D.N.Y. 2003)...................................................................10

*Vataj v. Johnson*,
 2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ........................................................16

*Wal-Mart Stores v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005).......................................................................... *passim*

iv

*Watman v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)......................................................................................................7

*Yang v. Focus Media Holding Ltd.*,
   2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014).............................................................................7

**Statutes**

Private Securities Litigation Reform Act of 1995 ............................................................23, 24, 25

Securities Exchange Act of 1934.........................................................................................9, 16

**Rules**

Fed. R. Civ. P. 4.....................................................................................................................3, 20

Fed. R. Civ. P. 23..................................................................................................... *passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs Altimeo Asset Management ("Altimeo") and ODS Capital LLC ("ODS" and, collectively, "Lead Plaintiffs" or "Plaintiffs"), individually and on behalf of all other members of the proposed Settlement Class, respectfully submit this memorandum of law in support of their motion seeking (i) final approval of the proposed Settlement presented in the Stipulation and Agreement of Settlement dated February 12, 2024 (ECF No. 224-1 (the "Stipulation")),[1] (ii) approval of the proposed plan of allocation for the Settlement proceeds (the "Plan of Allocation"), and (iii) final certification of the Settlement Class. Defendants do not oppose this motion.[2]

## I.    INTRODUCTION

After nearly five years of hard-fought litigation, Plaintiffs, through their counsel, obtained a $29,750,000 (the "Settlement Amount") all cash, non-reversionary settlement for the benefit of the Settlement Class. As described below and in the Grunfeld Declaration, the proposed Settlement is an outstanding result for the Settlement Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks.

The Settlement is particularly favorable considering the challenges posed in this action. The Court initially dismissed this action, holding Plaintiffs failed to adequately allege that Defendants had a concrete plan to relist Qihoo in China following the Merger at issue in this action. ECF No. 84. This case remains live only because of the dogged persistence of Plaintiffs and their counsel in obtaining a favorable ruling on appeal of that issue. ECF No. 88. In addition, this case

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation, or in the concurrently filed Declaration of Michael Grunfeld in Support of: (I) Lead Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Lead Plaintiffs ("Grunfeld Decl.").

[2] Defendants include Qihoo 360 Technology Co. Ltd. ("Qihoo"), Hongyi Zhou, Eric X. Chen, and Xiangdong Qi. Qi has not appeared in this action and prior to entering into the Settlement, Plaintiffs planned to move for a default judgment against him. (ECF No. 182). Defendants Qihoo, Zhou, and Chen are the "Settling Defendants."

presents the "non-traditional" theory of loss causation that Plaintiffs and the Class suffered losses as a result of their having sold Qihoo shares at artificially deflated prices, rather than the more typical claim in securities litigation that investors suffered losses by purchasing shares at artificially inflated prices. ECF No. 145 at 52-54. While Plaintiffs are confident they would have prevailed on this theory, doing so would have been more challenging than in a more traditional case. Moreover, the Court's ruling on Defendant Zhou's motion to dismiss limited the scope of the case to claims brought by shareholders that sold their Qihoo shares in the market before the Merger closed, dismissing the claims of those that tendered their securities in exchange for the Merger consideration. ECF No. 145 at 50. The Settlement is particularly favorable given this legal posture and Plaintiffs' efforts over the course of five years to develop all of these issues.

The Settlement is also favorable for the reasons Plaintiffs explained in response to the questions that Court raised before it granted preliminary approval. As Plaintiffs explained, the Settlement covers both the Seller claims and the dismissed Tenderer claims in order to obtain "global peace". ECF No. 226 at 1. Plaintiffs specifically accounted for—and adequately represent the Settlement Class as to—both sets of claims. ECF No. 226 at 3-6, 8-12. The Court inquired about these points because "[i]t is preferable to engage with these questions [at the preliminary approval stage], rather than for the first time at a final approval hearing." ECF No. 225. Having addressed these questions already highlights why the Settlement is fair, reasonable, and adequate.

Moreover, the process by which the Settlement was obtained evidences a lack of collusion amongst the Parties and supports a finding of procedural fairness. As described in detail in the Grunfeld Declaration (¶¶14-32, 92), Lead Counsel, *inter alia*:

- drafted the initial complaint in the Action (ECF No. 1) and moved for the appointment of Lead Plaintiffs and Lead Counsel (ECF No. 11);
- conducted an extensive investigation of the claims asserted in the Action to draft the comprehensive 121-page Amended Complaint (ECF No. 53, the "Complaint");

- briefed Defendants Qihoo and Chen's motion to dismiss (ECF No. 81);
- successfully appealed to the Second Circuit the Court's dismissal of the case when it granted that motion to dismiss (ECF No. 88);
- successfully served Zhou and Qi pursuant to Fed. R. Civ. P. 4(f)(3) (ECF Nos. 99-100);
- opposed Defendant Zhou's subsequent motion to dismiss, obtaining the denial of the motion as to claims brought by the Seller Class (ECF No. 128);
- moved for the Court to reconsider, or grant permission to seek interlocutory appeal as to, certain aspects of Zhou's motion to dismiss (ECF Nos. 149-50);
- reviewed the extensive factual information contained in the transcript that Plaintiffs commissioned from the trial of the Appraisal Action;
- served and responded to various demands for the production of documents and interrogatories, engaged in meet and confers, pursued third-party discovery, negotiated discovery parameters, briefed three motions to compel, and produced over 2,000 of their own documents;
- moved for class certification (ECF Nos. 186-88);
- prepared Plaintiffs and their class certification expert for depositions and defended the depositions of Plaintiff ODS and Plaintiffs' class certification expert;
- engaged in a mediation process overseen by a highly experienced third-party mediator, former United States District Judge Layn R. Phillips;
- negotiated a detailed settlement term sheet with defense counsel;
- drafted and negotiated the terms of the Stipulation (including the exhibits thereto) (ECF No. 224-1) and Supplemental Agreement with Settling Defendants' Counsel; and
- worked with a damages expert to craft a plan of allocation that treats Plaintiffs and all other members of the proposed Settlement Class fairly.

In view of the foregoing, and as discussed in greater detail below, it cannot be disputed that the Settlement was negotiated by well-informed Parties at arm's-length, and that the Settlement is an excellent result for the Settlement Class. This is especially true when the recovery is juxtaposed against the many risks of continued litigation. *See* Grunfeld Decl. ¶¶33-59. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Plaintiffs also move for approval of the proposed Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Plaintiffs' damages expert and is

designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement

Class Members. Grunfeld Decl. ¶79. Plaintiffs and their counsel believe that the Plan of Allocation

is fair and reasonable and, as such, it too should be approved.

## II.    ARGUMENT

### A.    The Standards For Final Approval Under Rule 23(e) and *Grinell*

Under Rule 23(e), the Court should grant final approval to a class action settlement if it is

"fair, reasonable, and adequate."[3]  Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2)—which governs final

approval—requires courts to consider the following factors in making this determination:

(A)    have the class representatives and counsel adequately represented the class;
(B)    was the proposal negotiated at arm's length;
(C)    is the relief provided for the class adequate, taking into account:
    (i)    the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)    does the proposal treat class members equitably relative to each other.

Factors (A) and (B) identify "procedural concerns, looking to the conduct of the litigation

and" the settlement negotiations, while factors (C) and (D) focus on "a substantive review of the

terms of the" proposed settlement (*i.e.*, "[t]he relief that the settlement is expected to provide to

class members"). *See* Fed. R. Civ. P. 23(e)(2) advisory committee's notes to 2018 amendments.

These Rule 23(e)(2) factors add to, rather than displace, the *Grinnell* factors previously

adopted by the courts. *See In re Payment Card Interchange Fee and Merchant Discount Antitrust

Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Thus, the Second Circuit's traditional *Grinnell*

factors—certain of which overlap with Rule 23(e)(2)—are still relevant:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of
the class to the settlement; (3) the stage of the proceedings and the amount of

---

[3] Unless otherwise noted, all emphasis is added and internal citations and quotations omitted.

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart Stores v. Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integ. Res.*, 209 F.3d 43 (2d Cir. 2000)); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545, at *2 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on Rule 23(e)(2) and *Grinnell*).

The trial court's discretion in deciding whether to grant or deny such approval "should be exercised in light of the general judicial policy favoring settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Public policy considerations strongly favor settlement, particularly in class actions. *Wal-Mart*, 396 F.3d at 116.

As demonstrated below, the proposed Settlement satisfies the criteria for final approval under the four Rule 23(e)(2) factors, as well as the relevant *Grinnell* factors.

**B.      The Settlement Is Fair, Reasonable, and Adequate**

**1.      Plaintiffs and Lead Counsel Adequately Represented the Class**

Rule 23(e)(2)(A) requires consideration of whether the "class representatives and class counsel have adequately represented the class." In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class,'" *McIntire v. Pesch (In re Patriot Nat'l, Inc. Sec. Litig.)*, 828 F. App'x 760, 764 (2d Cir. 2020) including whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation," *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

5

Here, Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests. As Plaintiffs explained in response the Court's questions, the Settlement may cover the claims of both the Seller and Tenderer shareholders because it is common practice in securities class actions for defendants to seek "global peace" even if the "court believes that those claims may be meritless." ECF No. 226 at 1-2 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 310 (3d Cir. 2011) and *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 243 (2d Cir. 2012)); *see also In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *13 (N.D. Cal. Dec. 10, 2020) (granting final approval, holding the parties are entitled to "'buy peace' even where some claims are not as strong as others"); *In re Platinum and Palladium Commodities Litig.*, 2014 WL 3500655, at *2, *13 (S.D.N.Y. July 15, 2014) (same as to expanded class period). Moreover, Plaintiffs specifically accounted for both sets of claims when agreeing to the Settlement and demanded a higher settlement amount for the inclusion of the Tenderer claims in addition to the Seller claims. ECF No. 226 at 2, 6; *see also supra* at 2.

Plaintiffs adequately represent the Settlement Class because they each both sold Qihoo Securities during the Class Period and cancelled or tendered their Qihoo Securities in exchange for the right to receive the Merger consideration, when the value of their shares was allegedly artificially deflated by Defendants' false and misleading statements and omissions. ECF No. 226 at 3 (citing *Wal-Mart*, 396 F.3d at 111 and *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 867 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019)). Thus, the claims of the Settlement Class and Plaintiffs would prevail or fail in unison, and the common objective of maximizing recovery from Settling Defendants aligns the interests of Plaintiffs and all members of the Settlement Class. *See also In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) (holding "[w]here plaintiffs and class members share the common goal of maximizing recovery, there is no conflict

of interest"). In addition, Plaintiffs oversaw the litigation and communicated with Plaintiffs' Counsel to discuss case developments, including settlement, thus entitling the Settlement "to an even greater presumption of reasonableness." *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Plaintiffs also retained counsel that are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. *See* Grunfeld Decl. Ex. 4-C (Pomerantz firm resume), Ex. 5-C (Labaton firm resume). Lead Counsel vigorously prosecuted the Settlement Class's claims, and was acutely aware of the strengths and weaknesses of the case prior to settling the Action. Grunfeld Decl. ¶11. Based on its expertise, experience, and work in this case, Lead Counsel recommends that final approval of the Settlement is in the best interests of the Settlement Class. *Id*. The judgment of counsel "who have extensive experience in prosecuting complex class actions" is entitled to "great weight." *See Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014); *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) (similar).

### 2.    The Settlement Is Entitled to a Presumption of Fairness Because It Arose From Arm's-Length Negotiations Among Experienced Counsel

The Court must also consider whether the settlement was "negotiated at arm's length" in weighing approval of a class action settlement. Fed. R. Civ. P. 23(e)(2)(B).[4] Courts may apply a presumption of fairness when a class settlement is the product of "arm's-length negotiations between experienced, capable counsel." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116); *see also Watman v. Deutsche Bank*, 236

---

[4] This "procedural" fairness determination also covers the third *Grinnell* factor, assessing "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the [defendants'] defenses," and the value of plaintiffs' claims for settlement purposes. *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *4 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016); *see* Sec. II.B.6(b).

F.3d 78, 85 (2d Cir. 2001) (finding that a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure").

Here, the Parties' negotiations did not commence until after Lead Counsel engaged in an extensive investigation to understand the strengths and weaknesses of the case. The Parties did not engage in mediation until after the Court resolved Defendant Zhou's subsequent motion to dismiss and Plaintiffs' motion for reconsideration of its ruling on that motion, and the Settlement was not reached until after Plaintiffs moved for class certification and Defendants took the depositions of Plaintiffs' expert and ODS. Grunfeld Decl. ¶¶25-27. Then, as part of the mediation process facilitated by former United States District Judge Layn R. Phillips, the Parties exchanged written statements and exhibits concerning liability and damages. *Id.* ¶29. The Parties also engaged in a full-day mediation, on September 28, 2023, and, after continued discussions following the mediation reached an agreement in principle to settle the Action that they memorialized in a confidential Term Sheet on December 21, 2023. *Id.* ¶¶29-30. In addition, the Parties engaged in the substantial discovery efforts described below. *See infra* at 20.

The extensive and arm's-length nature of the settlement negotiations and the involvement of an experienced and respected mediator like Judge Phillips support the conclusion that the Settlement is procedurally fair and free of collusion. *See In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (holding "elements [of procedural fairness] are amply satisfied here," where mediation was overseen by Judge Phillips); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 377 (S.D.N.Y. 2013) (similar).

### 3. The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether the relief provided "is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other

relevant factors. Fed. R. Civ. P. 23(e)(2)(C).[5] The court "must give comprehensive consideration to all relevant factors," *Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 23 (2d Cir. 2013), but "not every factor must weigh in favor of settlement, rather a court should consider the totality of these factors in light of the particular circumstances," *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012). Each of these factors supports final approval of the Settlement.

### a. Complexity, Expense And Likely Duration Of The Litigation

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes." *Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d at 381-82. "[S]ecurities class actions are notably difficult and notoriously uncertain to litigate." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at \*5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x. 73 (2d Cir. 2015).

Further litigation would have been time-consuming and expensive, involved complex legal and factual issues, and presented a significant risk of a lower recovery, or no recovery at all. *See In re Petrobras*, 317 F. Supp. 3d at 871 (approving settlement where "any recovery . . . was far from a certainty"). Without the Settlement, the Action would have required resolution of Plaintiffs' pending motion for class certification, additional fact and expert discovery, summary judgment and *Daubert* motions, and proving Plaintiffs' claims through trial, post-trial motions and appeals.

Additionally, a trial of the claims here would have required extensive expert testimony on issues related to, among others, the fair value of Qihoo at the time of the Merger, the efficiency of the market in advance of the Merger, and damages under the Exchange Act. Courts routinely

---

[5] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (1st factor); the risks of establishing liability and damages (4th and 5th factors); the risks of maintaining class action status through trial (6th factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (8th and 9th factors). *See Grinnell*, 495 F.2d at 463; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

observe that in these sorts of disputes—requiring dueling testimony from experts—it is "virtually impossible to predict with any certainty which testimony would be credited." *See*, *e.g.*, *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008).

Throughout each litigation phase, Plaintiffs would have undoubtedly faced a robust defense from Settling Defendants' experienced counsel. *See In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at \*2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues are "likely to be litigated aggressively, at substantial expense to all parties"). As a result, were the litigation to continue, the delay in any potential recovery "could prevent the class members from obtaining any recovery for several years, if at all." *GSE*, 414 F. Supp. 3d at 693; *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) (similar). By contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

**b.      The Risks Of Establishing Liability And Damages**

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at \*11 (S.D.N.Y. Apr. 6, 2006) (same). In other words, "the Court should balance the benefits" of the settlement to the class and "the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts thus should "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Glob.*

10

*Crossing*, 225 F.R.D. at 459.

### i.      Liability

When the Settlement was reached, Plaintiffs had successfully opposed, in part, Defendant Zhou's motion to dismiss as to the Seller Class. Plaintiffs' defeat of that motion is especially notable given this case was already dismissed once on falsity grounds. The fact that Plaintiffs overcame Zhou's motion to dismiss in part as to the Seller Class, however, is not a guarantee of ultimate success. Plaintiffs faced ongoing risks associated with their motion for class certification (as described below) and a lengthy and expensive discovery process on the merits involving parties located in China, the Settling Defendants' forthcoming summary judgment and *Daubert* motions, motions *in limine*, trial, and inevitable appeals, including Plaintiffs' appeal of the Order dismissing the claims of the Tenderer Class—all of which would extend the litigation for years and might lead to a smaller recovery or no recovery at all.

For example, while Plaintiffs believe they effectively demonstrated that Defendants made materially false and misleading statements, Defendants would contest at summary judgment and trial whether their statements are inactionable because they publicly warned of the risks and/or their statements are not otherwise false and misleading based on the factual record. Grunfeld Decl. ¶38. In addition, Settling Defendants argued that the alleged false and misleading statements were not made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged. *Id.* ¶41. While Plaintiffs strongly disagreed with this assertion, had the litigation continued there is no guarantee that the trier of fact would have adopted Plaintiffs' view. *Id.* Indeed, "scienter is often the most difficult and controversial aspect of a securities fraud claim." *See Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011).

### ii.      Loss Causation and Damages

Another principal challenge in continuing the Action was the difficulty of proving loss

11

causation and damages. This case raises complicated and unique issues with respect to the central theory of loss causation, namely that investors were induced to sell Qihoo Securities for less than fair value based upon Defendants' misrepresentations—in contrast to the more standard securities fraud claim that investors *bought* a company's stock at *inflated* prices. These facets of the case led Defendants to argue that Plaintiffs had failed to allege any losses that resulted from Defendants' actions. *See* ECF Nos. 58 at 23-25 and 115 at 16-19. Indeed, the Court has already dismissed the Tenderer claims on loss causation grounds. *See* ECF No. 145. While Plaintiffs are confident they would prevail on their theory of loss causation as to the Seller Class, the "non-traditional" nature of their claim demonstrates how favorable the $29.75 million Settlement is for the Class.

**The Seller Shareholders' Damages**

As detailed in the Grunfeld Declaration, if Plaintiffs had fully prevailed on each of their claims at summary judgment and after a jury trial, assuming the Court certified the same class period as the Class Period in the Settlement, and if the Court and jury accepted Plaintiffs' damages theory, total potential maximum damages for Qihoo shareholders that sold their ADS or shares during the Class Period were estimated by Plaintiffs to be approximately $909.81 million. Grunfeld Decl. ¶61. Under this scenario, the $22,312,500 million of the $29.75 million Settlement that is allocated to these shareholders represents a recovery of approximately 2.45%. *Id*. ¶63. This measure of damages, however, faced significant risks, particularly given the "non-traditional" nature of the seller claims here that would have made them highly contested to a greater degree than in a typical stock-drop case, where damages are based on the precise amount that a company's stock fell upon a corrective disclosure that revealed the fraud. *Id*. ¶47.

For example, the court noted in its motion to dismiss decision that "discovery will test [the] premises" of Plaintiffs' theory of loss causation. ECF No. 145 at 53. Defendants also raised a defense as to "'in-and-out' traders who had both bought *and* sold Qihoo securities at artificially

deflated prices." ECF No. 145 at 55. Based on consultation with Plaintiffs' expert, if Defendants were to prevail on these types of arguments, the total damages available to the Seller Class could easily have been cut down to under $250 million, if not eliminated entirely. Grunfeld Decl. ¶62.

**The Tenderer Shareholders' Damages**

The Settlement also allocates 25% to Settlement Class Members that tendered, cancelled, or exchanged shares in the Merger. (*See* Grunfeld Decl. ¶66). As explained in response to the Court's questions, these shareholders are receiving a smaller portion of the Settlement and of their estimated damages because their claims were previously dismissed on loss causation grounds. *See* ECF No. 226 at 3-6; *see also In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *3 (N.D. Cal. July 22, 2019) (granting final approval of settlement that awarded a reduced portion of proceeds to dismissed claims). Although the court held that the Tenderer shareholders' theory of loss causation was too speculative to survive a motion to dismiss, had they not settled, they could have appealed this issue following the resolution of the Seller shareholders' claims. Their Settlement allocation is fair based on a balancing of the maximum value of their claims against (1) the difficulty of prevailing on appeal; (2) the long delay before they would be able to appeal; and (3) the uncertainty involved in assessing Qihoo's fair value. ECF No. 226 at 4-6.

For both the Seller and Tenderer claims, while Plaintiffs would work with their experts with a view towards presenting compelling arguments to the jury and prevailing at trial (should the Tenderer claims prevail on appeal and eventually reach that stage), Defendants would have put forth well-qualified experts who were likely to opine that the class suffered little or no damages. As courts have long recognized, the substantial uncertainty as to which side's experts might be credited by a jury presents a serious litigation risk. *See IMAX Sec. Litig.*, 283 F.R.D. at 193 ("[I]t is well established that damages calculations in securities class actions often descend into a battle

13

of experts."); *Telik,* 576 F. Supp. 2d at 579-80.

Given all of these risks with respect to liability, loss causation, and damages, Plaintiffs and Lead Counsel respectfully submit that it is in the best interests of the Settlement Class to accept the certain and substantial benefit conferred by the Settlement.

### c.      Risks of Maintaining Class Action Status

While Plaintiffs are confident that the Settlement Class meets the requirements for certification, the class has not yet been certified, and there is a risk the Court could disagree. The Settlement Class would face the risk of arguments by Settling Defendants regarding any potential factual dissimilarity of claims asserted by Plaintiffs and putative class members.

In addition, to be entitled to class certification, Plaintiffs must show that common issues predominate over individual ones. If not for Settling Defendants' consent to certify the Settlement Class, Plaintiffs would have to show that Qihoo ADS traded on an efficient market, entitling the Class to the presumption of reliance on Defendants' materially false statements. Under *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014), and its progeny, Defendants would have been permitted to rebut the presumption by proving that there was no "price impact" from their allegedly false and misleading statements. *See* Grunfeld Decl. ¶51. While it is not unusual for courts to certify securities class actions, the law governing these issues has been in constant flux. Thus, without a settlement, the Class risked that certification would be denied. And even if the Class were certified, "the class would face the risk of decertification" at a later stage if Plaintiffs did not prove the class-wide nature of their claims through trial. *Chatelain v. Prudential-Bache Sec. Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992). Thus, the risks surrounding class certification support Settlement approval. *See GSE*, 414 F. Supp. 3d at 694.

> d.      Range of Reasonableness In Light of the Best Possible
>          Recovery and Attendant Risks of Litigation

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010). A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Here, as discussed above and in the Grunfeld Declaration (¶¶61, 63-64), if the Court and jury accepted Plaintiffs' damages theories, total potential maximum damages for Qihoo shareholders that sold their securities during the Class Period were estimated by Plaintiffs to be approximately $909.81 million, meaning the Settlement represents a recovery of approximately 2.45%, which is greater than the median recovery of 1.8% of estimated damages for all securities class actions settled in 2023. *See* Grunfeld Decl. Ex. 2 at 26, Fig. 22 (Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024)). It is also within the range that courts commonly approve. *See, e.g.*, *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why satisfactory settlement could not amount to a hundredth or even a thousandth" of a "single percent of the potential recovery."); *Bear Stearns*, 909 F. Supp. 2d at 270 (approving settlement over objection, emphasizing it is "well-settled that a cash settlement" of "only a fraction of the potential recovery will not *per se* render the settlement

15

inadequate or unfair"); *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages"); *Vataj v. Johnson*, 2021 WL 1550478, at *9 (N.D. Cal. Apr. 20, 2021) (finding 2% of damages was "consistent with the typical recovery" in securities class actions).[6] Additionally, the Settlement is substantially greater than the median value of securities class action settlements in actions asserting claims under Section 10(b) of the Exchange Act. *See* Grunfeld Decl. ¶65 (citing Grunfeld Decl. Ex. 3 (Bulan & Simmons, *Securities Class Action Settlements – 2023 Review and Analysis*, at 4 (Cornerstone Research 2024) (for the nine years from 2014 through 2022, the median settlement in securities class actions was $10.4 million and the overall median in 2023 was $15 million))). In addition, after accounting for defenses that Settling Defendants could raise, which could bring total damages below $250 million, the Settlement amount is 8.93% of total damages for the Seller Class. Grunfeld Decl. ¶63. Moreover, the percentage of recovery for the Seller Class is particularly favorable given the "non-traditional" nature of their claims. *See supra* at 12-13.

As for the Tenderer shareholders, who are allocated 25% of the Settlement amount based on the considerations described above (*see supra* at 13), courts regularly approve settlements that provide similar amounts to dismissed claims. *See In re Reliance Sec. Litig.*, 2002 WL 35645209, at *13 (D. Del. Feb. 8, 2002) (approving proceeds at lower end of valuation range for claim that was dismissed on summary judgment and rejecting objection that it should have been given a lower amount because of small chance of success on appeal); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2013 WL 6577020, at *6, *17 (C.D. Cal. Dec. 5, 2013) (approving plan of allocation giving 35% of proceeds to dismissed claims); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201,

---

[6] Further, in a stock-drop case, damages are typically capped at the portion of company's value that the price fell. In a defrauded seller case, in contrast, maximum damages can be far larger because damages are incurred throughout the class period, not just immediately following a corrective disclosure. (*See* ECF No. 145 at 52-56). Obtaining damages approaching the full measure on this basis is more difficult than when they are measured from a lower baseline.

16

at *6 (N.D. Cal. Nov. 26, 2007) (approving of plan of allocation awarding five percent of net settlement proceeds to dismissed claims).

### 4.    The Remaining Rule 23(e)(2)(C) Factors Support Final Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each factor supports approving the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method here for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. The Claims Administrator will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies or request the Court to review their denial, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation). Grunfeld Decl. ¶89. The Settlement will be administered for both the Seller and Tenderer shareholders without requiring a second distribution. *See* ECF No. 226 at 11-12.

Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found effective, and necessary, because neither party possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[7] *See In re Loop Indus., Inc. Sec. Litig.*, 2023 WL 127304, at *1 (S.D.N.Y. Jan. 5, 2023).

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice, Lead Counsel seeks a percentage of the common fund fee award in an amount not to exceed one-third of Settlement Fund for services

---

[7] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶14.

rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 33.33% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See Maley*, 186 F. Supp. 2d at 370 ("Petitioners' request [for 33.33% of the Settlement Fund] falls comfortably within the range of fees typically awarded in securities class actions."); Fee and Expense Application, Section III.C.1. Importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. Stipulation ¶21.

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Class Members who collectively purchased more than a specific amount of the Company's securities eligible to participate in the Settlement request exclusion (or "opt out") from the Settlement. "This type of agreement is standard" in securities class actions and "has no negative impact on" the fairness of the Settlement. *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at \*15 (S.D.N.Y. Oct. 16, 2019). The parties will produce this agreement for the Court's review, if requested.

### 5. The Settlement Treats All Settlement Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, detailed on pp. 11-14 of the Notice (Ex. A to the Initial Mailing Decl. (Grunfeld Decl. Ex. 1)) each Authorized Claimant, including Plaintiffs, will receive a *pro rata* distribution pursuant to the formulas for calculating losses. Plaintiffs will be subject to the same formulas as all Settlement Class Members for equivalent claims.

### 6. The Remaining *Grinnell* Factors Weigh In Favor of Final Approval

*Grinnell* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new

factors. These factors, viewed in light of the factors identified above, support final approval.

### a.    The Settlement Class's Reaction Supports Final Approval

The second *Grinnell* factor—the reaction of the class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object. As required by Rule 23(e)(4) & (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement. Initial Mailing Decl. Ex. A (Notice),Questions 13-15, 18-19. In total, as of June 19, 2024, 24,494 potential Settlement Class Members were notified by mailed Notice and Claim Form. Initial Mailing Decl. ¶11. To date, no request for exclusion has been received, and no objections have been filed with the Court. *Id.* ¶¶20-21; Grunfeld Decl. ¶¶76-77.[8]  The Settlement Class's universally positive reaction strongly supports final approval of the Settlement. *See, e.g.*, *Maley*, 186 F. Supp. 2d at 362 ("It is well-settled that the reaction of the class . . . is perhaps the most significant factor to be weighed" as to adequacy).

### b.    The Stage of the Proceedings and the Amount of Discovery

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-mart*, 396 F.3d at 117, examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267.

The stage of the proceedings here was significantly advanced, giving Plaintiffs a wealth of information to assess the merits of this action. Among other things, Plaintiffs conducted an extensive investigation into Qihoo, briefed Qihoo and Chen's motion to dismiss, briefed an appeal to the Second Circuit regarding the Court's dismissal of the case, briefed Zhou's subsequent

---

[8] The deadline to request exclusion from the Settlement and/or to object to any aspect of the Settlement is July 5, 2024. If objections or exclusions are received after the date of this filing, they will be addressed on reply.

motion to dismiss, moved for class certification, consulted with loss causation and damages experts, exchanged detailed mediation briefs with Defendants, and participated in a full day of mediation with a well-respected mediator. *See* Grunfeld Decl. ¶¶14-32.

In addition, the parties have engaged in substantial discovery efforts, including the exchange of, and response to, written discovery requests; extensive meet-and-confer correspondence concerning the scope of class certification and merits discovery; the briefing of three motions to compel spanning issues related to class certification and merits discovery, which provided Plaintiffs with significant victories limiting the scope of Defendants' requests and requiring Defendants to produce documents that they would not have otherwise produced; defending the depositions of Plaintiffs' class certification expert and one of the Plaintiffs; and obtaining and reviewing third-party discovery from financial institutions that analyzed Qihoo's ADRs. Grunfeld Decl. ¶28. Through these efforts, Plaintiffs produced over 2,000 documents in response to Defendants' requests and negotiated the parameters of merits discovery from Defendants. *Id*. Plaintiffs also reviewed the 2,582 pages of the transcript from the trial of the Appraisal Action in the Cayman Islands, which spanned 16 days and covered substantial factual information that Qihoo produced in that action, informing Plaintiffs of the content of key documents that Defendants would have produced here. *Id*.

c.    **The Ability of Defendants to Withstand a Greater Judgment**

Several factors posed hurdles to Plaintiffs collecting a judgment here. First, the location of Qihoo, Zhou, and Qi in China might have made collecting a judgment at trial more difficult. Indeed, Defendant Qi did not even appear in this action after the Court granted Plaintiffs' motion to serve him pursuant to Rule 4(f)(3). Plaintiffs would have had to continue pursuing a default judgment against him if the litigation continued. *See* Grunfeld Decl. ¶56. Second, Qihoo was reconstituted in the Merger at issue in this action and does not currently exist in the same form as

it did during the Class Period. Grunfeld Decl. ¶59. Qihoo might have used this fact to avoid or delay paying the amount owed here.

In addition, even if Defendants could ultimately withstand a greater judgment if Plaintiffs were to overcome the hurdles noted above, this fact should not weigh against final approval. Measured against the other *Grinnell* factors, the ability "to pay more . . . does not, standing alone, indicate the settlement is unreasonable or inadequate." *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *9 (S.D.N.Y. Sept. 9, 2015); *see also In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) (similar).

### C.    The Plan of Allocation Is Fair and Reasonable and Should Be Approved

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "As numerous courts have held, a plan of allocation need not be perfect." *Christine Asia*, 2019 WL 5257534, at *15-16. Rather, "[w]hen formulated by competent and experienced counsel," it "need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; Thus, "[i]n determining whether a plan of allocation is fair, courts look largely to the opinion of counsel." *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *13 (S.D.N.Y. Dec. 23, 2009).

Here, the proposed Plan, which was developed by Lead Counsel in consultation with Plaintiffs' damages expert, provides a fair and reasonable method to allocate the Net Settlement Fund among class members who submit valid claims. The Plan is set forth in the Notice and Class Members were advised that it was subject to modification, without additional individual notice. *See* Initial Mailing Decl. Ex. A (Notice) at 11-14. The Plan provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis within each Sub-Fund, based on their "Recognized Seller Claims" and "Recognized Merger Claims". *See* Grunfeld Decl. ¶86.

21

The Plan of Allocation calls for the Net Settlement Fund to be allocated into two Sub-Funds based on whether the security was sold or tendered/cancelled/exchanged in the Merger. A "Seller Loss Amount" will be calculated for each sale of Qihoo Securities during the Class Period and a "Merger Consideration Amount" will be calculated for each Qihoo Security tendered, cancelled, or exchanged for the right to receive the Merger consideration, that are listed in the Claim Form and for which adequate documentation is provided. Claims for Qihoo Securities sold during the Class Period may recover up to a maximum of 75% of the Net Settlement Fund. Initial Mailing Decl. Ex. A (Notice) at 12. Claims for Qihoo Securities that were tendered, cancelled or exchanged in the Merger may recover up to a maximum of 25% of the Net Settlement Fund. *Id.* The Recognized Seller Claims for the Seller Class will be the sum of their Seller Loss Amounts for each share sold during the Class Period. Grunfeld Decl. ¶84. The Recognized Merger Claims for the Tenderer Class will be the sum of the Merger Consideration Amounts for each share tendered, canceled or exchanged in the Merger. *Id.* ¶85.

The allocation of Settlement funds between the two Sub-Funds is fair, reasonable, and adequate for the reasons explained in response to the Court's questions, as described above. *See supra* at 6-7, 13-14, 17 (citing ECF No. 226 at 1-6). This allocation should be approved because it is "within the range of possible approval" and is not "obviously deficient." ECF No. 226 at 3-4. In addition, the specific formulas used to allocate Net Settlement Funds among the Seller and Tenderer shareholders are consistent with Plaintiffs' claims for each set of Settlement Class Members, are consistent with the Court's rulings in this action, and are the most administratively feasible way to distribute the Net Settlement Funds. ECF No. 226 at 8-11.

Angeion Group ("Angeion"), as the Court-approved Claims Administrator, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized

22

Claimant's total Recognized Seller Claim and/or Recognized Merger Claim, as compared to the aggregate claims of all Authorized Claimants within each Sub-Fund, under the Plan of Allocation. In the unlikely event that the amount of Net Settlement Funds in either Sub-Fund is greater than the aggregate amount of recognized claims for that Sub-Fund, the excess amount will be applied to the Net Settlement Funds for the other Sub-Fund. ECF No. 226 at 11-12.

For the reasons explained above, Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund. *See also In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("[I]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel."). Moreover, as noted above, to date, no objections to the proposed Plan have been received. *See supra* at 19.

**D.      The Notice Program Satisfies Rule 23, the PSLRA, and Due Process**

Rule 23(e) and due process together require that notice of a settlement be "reasonable"— *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (noting "[t]here are no rigid rules to" whether a settlement notice "satisfies constitutional or Rule 23(e) requirements"); *see also In re Merrill Lynch*, 246 F.R.D. at 166 ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."). The notice program's method of dissemination here, as well as its substance, satisfy the applicable standards.

In accordance with the Preliminary Approval Order, the Court-appointed Claims Administrator, Angeion: (a) mailed copies of the Notice via first-class mail to all Settlement Class Members who could be identified with reasonable effort; and (b) notified brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities to either (i)

23

mail the Notice to potential Settlement Class Members, or (ii) provide Angeion with mailing or email information that would enable Angeion to notify potential Settlement Class Members. Initial Mailing Decl. ¶¶4-9. As of June 19, 2024, a total of 24,494 potential Settlement Class Members were notified by mailed Notice. *Id*. ¶11.

As required by Fed. R. Civ. P. 23(c)(2)(B), and as approved by the Court in the Preliminary Approval Order, the Notice informs Settlement Class Members of, among other things: (a) the nature of the Action; (b) the Settlement Class definition; (c) the claims and defenses asserted; (d) a description of the terms of the Settlement; (e) the right of a Settlement Class Member to enter an appearance; (f) the right of a Settlement Class Member to request exclusion from the Settlement Class, and instructions for doing so; (g) the right of a Settlement Class Member to object to any aspect of the Settlement, and instructions for doing so; (h) the binding effect of the Settlement on Settlement Class Members that do not elect to be excluded; and (i) the date and time of the final Settlement Hearing. *See* Fed. R. Civ. P. 23(c)(2)(B); Initial Mailing Decl. Ex. A (Notice), Questions 2-5, 8-9, 12-16, 18-19, 20.[9]

The notice program also satisfies the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7), by setting forth in plain, easily understandable language: (a) a cover page summarizing the information in the Notice; (b) a statement of plaintiffs' recovery, and the estimated recovery per damaged share; (c) a statement of potential outcomes of the case; (d) a statement of attorneys' fees or costs sought; (e) identification of lawyers' representatives; and the (g) reasons for the settlement. Initial Mailing Decl. Ex. A (Notice).

---

[9] The Notice further advised that Lead Counsel will apply to the Court for an award of attorneys' fees on behalf of all Plaintiffs' Counsel in an amount not to exceed one-third of the Settlement Fund, as well as reimbursement of Litigation Expenses not to exceed $1,100,000, including an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Class, and explained that Settlement Class Members may object to any aspect of the fee and expenses request. Initial Mailing Decl. Ex. A (Notice), Question 17.

In addition to ensuring the dissemination of the Notice to 24,494 potential Settlement Class Members, Angeion caused the Summary Notice to be published once in *The Wall Street Journal* and transmitted once over the *PR Newswire* on April 9, 2024. Initial Mailing Decl. ¶13. Angeion also posted downloadable versions of the Stipulation, Preliminary Approval Order, and Notice and Claim Form on the Settlement Website (*id.* ¶16), and established a toll-free number to respond to Settlement Class Member inquiries (*Id.* ¶17). These various methods of notice provided all necessary information for Settlement Class Members to make an informed decision regarding the Settlement and complied with the notice program set out in the Preliminary Approval Order. Accordingly, the notice program satisfied the requirements of Rule 23, the PSLRA, and due process. *See In re Marsh & McLennan*, 2009 WL 5178546, at *12.

### E. Final Certification of the Settlement Class Is Appropriate

The Court's Preliminary Approval Order preliminarily certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 228 ¶¶2-4. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiffs' Preliminary Approval Brief (*see* ECF No. 223 at 19-23), Plaintiffs respectfully request that the Court affirm its prior determinations and certify the Settlement Class under Rules 23(a) and (b)(3) solely for purposes of the Settlement.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable, and adequate; approve the Plan of Allocation as fair, reasonable, and adequate; certify the Settlement Class for settlement purposes only; appoint Lead Plaintiffs as the Settlement Class Representatives; and appoint Lead Counsel as Class Counsel for the Settlement Class. A Proposed Order will be submitted with Plaintiffs' reply papers, after the deadlines for objections and seeking exclusion have passed.

Dated: June 20, 2024

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Michael Grunfeld*
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
        mgrunfeld@pomlaw.com

*Lead Counsel for Lead Plaintiffs*
*Altimeo Asset Management, ODS Capital LLC,*
*and the Settlement Class*

**LABATON KELLER SUCHAROW LLP**

Carol C. Villegas
Jake Bissell-Linsk
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: cvillegas@labaton.com
        jbissell-linsk@labaton.com

*Additional Counsel for Lead Plaintiff*
*ODS Capital LLC*

26