**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALTIMEO ASSET MANAGEMENT, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> v.<br><br>QIHOO 360 TECHNOLOGY CO. LTD., HONGYI ZHOU, XIANGDONG QI and ERIC X. CHEN,<br><br>     Defendants. | Case No. 1:19-cv-10067-PAE |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, <u>AND COMPENSATORY AWARDS TO LEAD PLAINTIFFS</u>**

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ......................................................................................... 1

II.  FACTUAL AND PROCEDURAL HISTORY ................................................... 3

III.  ARGUMENT ........................................................................................................ 3

    A.  The Common Fund Doctrine Applies To the Settlement ...................................... 3

    B.  The Court Should Award a Reasonable Percentage of the Common Fund ........... 4

    C.  The Requested Attorneys' Fees Are Reasonable .................................................. 6

        1.  The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method ......................................................................................... 6

        2.  Lodestar "Cross-Check" Strongly Supports Reasonableness of Fees ........ 7

    D.  Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee is Fair and Reasonable ................................................................................. 8

        1.  Time and Labor Expended Support the Requested Fee ............................. 9

        2.  The Risks of Litigation Support the Requested Fee ................................ 12

        3.  The Magnitude and Complexity of the Action Support the Requested Fee ................................................................................................................... 16

        4.  The Quality of Representation Supports the Requested Fee ................... 17

        5.  The Requested Fee in Relation to the Settlement Amount ...................... 19

        6.  Public Policy Considerations Support the Requested Fee ....................... 20

    E.  The Reaction of the Settlement Class to Date Supports the Requested Fee ......... 21

    F.  Plaintiffs' Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained .............................................................................. 21

    G.  The Requested Lead Plaintiff Awards are Reasonable ....................................... 23

IV.  CONCLUSION ................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ...................................................................................................16

*Arbuthnot v. Pierson*,
    607 F. App'x 73 (2d Cir. 2015) .................................................................................................17

*Asare v. Change Grp. of N.Y., Inc.*,
    2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ...........................................................................8

*Athale v. Sinotech Energy Ltd.*,
    2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) ......................................................................5, 8

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990) .......................................................................................................15

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) .............................................................................6

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979) .....................................................................................................16

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ....................................................................................................................3

*Burns v. Falconstor Software, Inc.*,
    2014 WL 12917621 (E.D.N.Y. Apr. 10, 2014) .........................................................................8

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
    2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) ...................................................................13, 20

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger*, 209
    F.3d ..........................................................................................................................................12

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) .....................................................................17, 20

*Cornwell v. Credit Suisse Grp.*,
    2011 WL 13263367 (S.D.N.Y. July 18, 2011) ..........................................................................8

*Davis v. J.P. Morgan Chase & Co.*,
    827 F. Supp. 2d 172 (W.D.N.Y. 2011) ..................................................................................5, 8

*Fishoff v. Coty Inc.*,
  2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011).....................15

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)............................................................................................ *passim*

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers,
  L.L.P.*,
  212 F.R.D. 400 (E.D. Wis. 2002) ..................................................................................13

*Guevoura Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ...............................................................8

*Hicks v. Morgan Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................................................4, 6, 14

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) .......................................................................................15

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272 F. App'x 9 (2d Cir.
  2008) ............................................................................................................................18

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)....................................................................16

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
  772 F.3d 125 (2d Cir. 2014).........................................................................................25

*In re Bisys Sec. Litig.*,
  2007 WL 2049726 (S.D.N.Y July 16, 2007) .................................................................8

*In re Blech Sec. Litig.*,
  2000 WL 661680 (S.D.N.Y. May 19, 2000) ...............................................................19

*In re Bristol-Myers Squibb Sec. Litig.*,
  361 F. Supp. 2d 229 (S.D.N.Y. 2005)............................................................................6

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...............................................................22

*In re Cnova N.V. Sec. Litig.*,
  No. 1:16-cv-00444-LTS-OTW (S.D.N.Y.), ECF No 127-1 ........................................6

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014)..............................................................................8

iii

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) ............................................................7, 12, 19

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
80 F. Supp. 3d 838 (N.D. Ill. 2015) ...................................................................................12

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
2016 WL 5867497 (S.D.N.Y. Oct. 4, 2016) ........................................................................18

*In re Deutsche Telekom AG Sec. Litig.*,
2005 WL 7984326 (S.D.N.Y. June 14, 2005) ......................................................................8

*In re Doral Fin. Corp. Sec. Litig.*,
No. 1:05-md-1706-JSR (S.D.N.Y. July 17, 2007), ECF No. 107............................................7

*In re Elan Sec. Litig.*,
385 F. Supp. 2d 363 (S.D.N.Y. 2005)..................................................................................8

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ......................................................................5

*In re Facebook, Inc.*,
674 F. App'x 37 (2d Cir. 2016) ..........................................................................................6

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*,
822 F. App'x 40 (2d Cir. 2020) .........................................................................................19

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)...................................................................6, 11

*In re Flag Telecom Holds., Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov 8., 2010)...............................................................12, 13, 20

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) (Engelmayer, J.)...............................................................13

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................................7, 12

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ......................................................................7

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)..................................................................................6

*In re Interpublic Sec. Litig.*,
2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004).......................................................................8

iv

*In re JDS Uniphase Corp. Securities Litigation*,
   2007 WL 4788556 (N.D. Cal. Nov. 27, 2007)...........................................................................15

*In re Marsh & McLennan Cos. Sec. Litig*,
   2009 WL 5178546 ......................................................................................................................25

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................................................6

*In re Merrill Lynch & Co., Inc. Sec., Deriv. and ERISA Litig.*,
   No. 1:07-cv-09633-JSR (S.D.N.Y.), ECF No. 256, ECF No. 272 .............................................8

*In re Petrobras Sec. Litig.*,
   312 F.R.D. 354 (S.D.N.Y. 2016), *aff'd in part, vacated in part on other
   grounds sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017).....................................18

*In re Petrobras Sec. Litig.*,
   317 F. Supp. 3d 858 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019)........................25

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)........................................................................................................5

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) .......................................................................23, 25

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) ..........................................................................................6

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)...................................................................... *passim*

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)..........................................................................................5

*Johnson v. Brennan*,
   2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)..............................................................................5

*Kalnit v. Eichler*,
   99 F. Supp. 2d 327 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001) ...............................15

*Karcich v. Stuart (In re Ikon Office Sols., Inc. Sec. Litig.)*,
   194 F.R.D. 166 (E.D. Pa. 2000)................................................................................................16

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
   2009 WL 4730185 (D.N.J. Dec. 4, 2009)...................................................................................16

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998).........................................................................................................7

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................4, 8, 19, 20

*Missouri v. Jenkins ex rel. Agyei*,
  491 U.S. 274 (1989)....................................................................................................7

*Monzon v. 103W77 Partners, LLC*,
  2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) ................................................................4

*ODS Capital LLC v. JA Solar Holdings Co., Ltd.*,
  1:18-cv-12083-ALC (S.D.N.Y. July 13, 2023) ........................................................25

*Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  2004 WL 1087261 (S.D.N.Y. May 14, 2004) ..........................................................13

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999)........................................................................................7

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ..........................................................12

*Taft v. Ackermans*,
  2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ..............................................................17

*TAL Educ. Grp.*, 2021 WL 5578665, at *12 ..................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)....................................................................................................20

*Towerview LLC v. Cox Radio, Inc.*,
  2013 WL 3316186 (Del. Ch. June 28, 2013) ............................................................14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)........................................................................................5, 8

*Wilson v. LSB Indus., Inc.*,
  2019 WL 3542844 (S.D.N.Y. June 28, 2019) ............................................................6

**Statutes**

Private Securities Litigation Reform Act of 1995 ..........................................1, 5, 16, 23

Securities Exchange Act of 1934..................................................................................9

**Rules**

Fed. R. Civ. P.4.................................................................................................2, 9

Court-appointed Lead Counsel Pomerantz LLP ("Pomerantz," or "Lead Counsel"), on behalf of all Plaintiffs' Counsel,[1] respectfully submit this memorandum of law in support of their request for attorneys' fees of 33.33% of the Settlement Fund[2] (or $9,915,675, plus interest at the same rate as the Settlement Fund), reimbursement of $662,654.21 in out-of-pocket expenses advanced by counsel (plus interest),[3] as well as $60,000 to each of Court-appointed Lead Plaintiffs Altimeo Asset Management ("Altimeo") and ODS Capital LLC ("ODS" and, collectively, "Lead Plaintiffs" or "Plaintiffs"), as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).

## I.    PRELIMINARY STATEMENT

The proposed Settlement, if approved by the Court, will resolve this Action in its entirety in exchange for a $29.75 million cash payment pursuant to the terms of the Stipulation. The Settlement brings to a close, with a very favorable result, nearly five years of litigation, including vigorous and complex motion and appellate practice and robust arm's-length negotiations between highly experienced counsel. Lead Counsel achieved notable successes on behalf of Plaintiffs and the Class, including a favorable decision from the Second Circuit as to Defendants Qihoo and Chen's motion to dismiss, the denial of Defendant Zhou's subsequent motion to dismiss as to the Seller Class, and victories on the three motions to compel that the parties filed in connection with class certification and merits discovery issues.

---

[1] Pomerantz was assisted in its representation of Plaintiffs and the Class by Labaton Keller Sucharow LLP ("Labaton"). *See* Grunfeld Decl. ¶1. Pomerantz and Labaton are referred to herein as "Plaintiffs' Counsel."

[2] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated February 12, 2024 ("Stipulation," ECF No 224-1), or in the concurrently filed Declaration of Michael Grunfeld in Support of: (I) Lead Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Lead Plaintiffs ("Grunfeld Declaration" or "Grunfeld Decl.").

[3] The Notice informed the Settlement Class that Lead Counsel would apply for an attorneys' fee award of up to 33.4% of the Settlement Fund (which includes accrued interest) and reimbursement of expenses of up to $1,100,000. Grunfeld Decl. ¶¶26, 70.

Defendants had substantial defenses to liability if the litigation were to continue. Plaintiffs' motion for class certification was pending when the Parties agreed to settle. Without the Settlement, the Action would have required resolution of Plaintiffs' motion for class certification, additional fact and expert discovery, a summary judgment motion, *Daubert* motions, and proving Plaintiffs' claims through trial, post-trial motions and appeals. Further, establishing both Defendants' liability and loss causation at trial posed significant challenges.

In the face of these hurdles—as well as the fully contingent nature of the case—Plaintiffs' Counsel devoted substantial resources to prosecuting this Action against highly skilled opposing counsel. Among the other work detailed in the Grunfeld Declaration, Plaintiffs' Counsel: (i) conducted a robust international investigation and filed a detailed 121-page amended complaint; (ii) researched and drafted an opposition to Defendants Qihoo and Chen's motion to dismiss; (iii) successfully briefed and argued an appeal to the Second Circuit of the Court's dismissal of the Action; (iv) successfully moved to serve Defendants Zhou and Qi pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure; (vi) successfully opposed Defendants Zhou's motion to dismiss as to the claims brought by the Seller Class; (vii) moved for the Court to reconsider, or grant permission to seek interlocutory appeal as to, certain aspects of Zhou's motion to dismiss that the Court granted; (viii) served and responded to various discovery demands; (ix) briefed three motions to compel discovery; (x) moved for class certification; and (xi) prepared and defended the depositions of Plaintiffs and the class certification expert. The Parties also engaged in extensive mediation efforts overseen by former United States District Judge Layn R. Phillips, which included the preparation of mediation briefs, a full-day mediation session, and subsequent negotiations before the parties reach an agreement to settle. *See generally* Grunfeld Decl. §§II, VI.

Against this backdrop, Lead Counsel requests a fee of 33.33% of the Settlement Fund,

which would represent a reasonable lodestar "multiplier" of approximately 2.94, payment of Litigation Expenses in the amount of $662,654.21, and reimbursement of $60,000 to Altimeo and $60,000 to ODS for the time and resources they dedicated to diligently representing the class. As demonstrated below, the fee request is well within the range of attorneys' fees typically awarded in securities class action settlements of this size in the Second Circuit, and the fee and expense requests are well supported by both case law and the facts of this case.

For the following reasons, Lead Counsel respectfully submits that their efforts and the results achieved in the Action justify the requested fees and expenses.

## II.    FACTUAL AND PROCEDURAL HISTORY

The Grunfeld Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a discussion of, *inter alia*, the history of the Action (Grunfeld Decl. ¶¶14-32); nature of the claims asserted (*id.* ¶¶17-18); negotiations leading to the Settlement (*id.* ¶¶29-32, 102); risks and uncertainties of continued litigation (*id.* ¶¶33-59); a summary of the services Plaintiffs' Counsel provided for the Settlement Class's benefit (*id.* ¶92); and additional information on the factors that support the fee and expense application, including the lodestar cross-check (*id.* ¶¶90-127).

## III.    ARGUMENT

### A.    The Common Fund Doctrine Applies To the Settlement

The Supreme Court and the Second Circuit have long recognized that attorneys whose efforts create a "common fund" are entitled to a reasonable attorneys' fee from that fund.[4] *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The rationale for the doctrine is an equitable one: it prevents unjust

---

[4] Unless otherwise noted, all emphasis is added and internal citations and quotations omitted.

enrichment of those benefitting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47; *see also In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at \*2 (S.D.N.Y. Nov. 7, 2007). Awarding reasonable attorneys' fees from a common fund also serves an important policy goal: it encourages "skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and thus discourages "future misconduct of a similar nature." *Id.*; *see also Hicks v. Morgan Stanley*, 2005 WL 2757792, at \*9 (S.D.N.Y. Oct. 24, 2005).

For the common fund doctrine to apply, "the applicant's efforts must confer a 'substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs proportionately among them,' an award of attorneys' fees must operate to shift the costs of litigation to that group." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)). All of these elements are present here. Plaintiffs' Counsel's efforts conferred a substantial benefit—$29,750,000 in cash—on an ascertainable class. In addition, a fee award from the common fund will equitably shift the costs of litigation to the group benefitting from the Settlement, *i.e.*, the Settlement Class. Accordingly, the Court should award attorneys' fees from the Settlement Fund. *See Maley*, 186 F. Supp. 2d 369.

**B.      The Court Should Award a Reasonable Percentage of the Common Fund**

In the Second Circuit, "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees." *Goldberger*, 209 F.3d at 50. However, "[t]he trend in the Second Circuit is to use the percentage of the fund method in common fund cases like this one, as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC*, 2015 WL 993038, at \*2 (S.D.N.Y. Mar. 5,

4

2015); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for . . . efficient prosecution and early resolution[.]").[5] The percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6).[6] The lodestar method, by contrast, "creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart*, 396 F.3d at 121.

The percentage method does not, however, render the lodestar irrelevant. Rather, part of the reasonableness inquiry is a comparison of the lodestar to the fee awarded pursuant to the percentage-of-the-fund method "[a]s a 'cross-check.'" *Wal-Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case," *id.*, or the court "may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011); *Johnson v. Brennan*, 2011 WL 4357376, at *14-15 (S.D.N.Y. Sept. 16, 2011).

---

[5] *See also Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *7 (S.D.N.Y. Sept. 4, 2013) ("the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases, particularly in complex securities class actions.").

[6] *See also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *See In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) ("applying a lodestar 'cross-check'"); *Hicks*, 2005 WL 2757792, at *10.

## C. The Requested Attorneys' Fees Are Reasonable

### 1. The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

Lead Counsel's 33.33% fee request is well within the range of percentage fees awarded in comparable, complex class actions within the Second Circuit. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *11 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016); *In re Cnova N.V. Sec. Litig.*, No. 1:16-cv-00444-LTS-OTW, (S.D.N.Y.), ECF No 127-1 ¶ 3, ECF No. 148 ¶ 8 (awarding 33.33% of $28.5 million settlement fund); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010) (noting trend of awarding 20% to 50% of recovery to attorneys and finding fee of over $11M, or one-third of the recovery, "fair and reasonable in relation to the recovery and compares favorably to fee awards in other risky common fund cases in this Circuit and elsewhere"); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding plaintiffs' counsel one-third of the settlement fund of over $510 million); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 82 (E.D.N.Y. 2002) (awarding 33.3% of $26,485,893.70 settlement fund); *Wilson v. LSB Indus., Inc.*, 2019 WL 3542844, at *1 (S.D.N.Y. June 28, 2019) (awarding 33.33% of $18.45 million settlement fund).

## 2.    Lodestar "Cross-Check" Strongly Supports Reasonableness of Fees

A lodestar "cross-check" confirms the reasonableness of the requested fee award. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers.[7] Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999). Thus, "[w]here, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar." *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010).

Here, Plaintiffs' Counsel (including attorneys, paralegals, and support staff) collectively devoted a total of 4,339.81 hours to the prosecution of this Action, resulting in a lodestar of $3,377,423. Grunfeld Decl. ¶96.[8] Based on a 33.33% fee (equal to $9,915,675), Plaintiffs' Counsel's lodestar yields a multiplier of 2.94. This multiplier is well within the range of multipliers commonly awarded in securities class actions and other complex litigation, including by courts in this District. *See, e.g.*, Order Awarding Attorneys' Fees and Expenses, *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-1706-JSR (S.D.N.Y. July 17, 2007), ECF No. 107 at 5 (awarding fee

---

[7] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014); *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 283-84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

[8] Plaintiffs Counsel's rates range from $750-$1,325 for partners and $425-$950 for associates, of counsel, staff attorneys, and project associates (Grunfeld Decl. ¶95 & Exs. 4-A, 5-A), and are comparable to peer plaintiffs and defense firms litigating matters of similar magnitude. *See* Grunfeld Decl. Ex. 6 (table of peer law firm billing rates).

representing a multiplier of 10.26); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re Merrill Lynch & Co., Inc. Sec., Deriv. and ERISA Litig.*, No. 1:07-cv-09633-JSR (S.D.N.Y.), ECF No. 256 at 2, ECF No. 272 ¶ 12 (awarding multiplier of 2.8); *Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007) (finding a 2.99 multiplier "falls well within the parameters set in this district and elsewhere"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 18, 2011) (awarding multiplier of 4.7); *Davis*, 827 F. Supp. 2d at 185 (awarding multiplier of 5.3, which was "not atypical" in similar cases); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (awarding multiplier of 3.47 in light of an early settlement).[9]

In sum, Lead Counsel's requested fee award is well within the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar. Moreover, as discussed below, each factor established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

## D. Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee is Fair and Reasonable

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

---

[9] *See also Sinotech*, 2013 WL 11310686, at *8 (stating that courts routinely award lodestar multipliers of "between four and five"); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("In recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) ("[M]ultipliers of between three and four times … have been routinely awarded in this Circuit."); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding fee representing a multiplier of 5.2, which was "large, but not unreasonable"); *Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (awarding fee representing a 3.96 multiplier); *Burns v. Falconstor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 10, 2014) (finding fee award of 33.3% "reasonable" based on cross-check multiplier of 4.75).

(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, demonstrate that the requested fee is reasonable.

### 1.    Time and Labor Expended Support the Requested Fee

The time and effort expended by Plaintiffs' Counsel in prosecuting the Action and achieving the Settlement support the requested fee. Among other things, Plaintiffs' Counsel:

- drafted the initial complaint in the Action (ECF No. 1) and moved for the appointment of Lead Plaintiffs and Lead Counsel (ECF No. 11);

- conducted an extensive investigation of the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) Qihoo's filings with the U.S. Securities and Exchange Commission ("SEC"), (ii) research reports prepared by securities and financial analysts, and news and industry articles, concerning Qihoo, and (iii) other publicly available material related to the Company; (b) retaining and working with private investigators, who interviewed former Company employees; (c) working with a damages and loss causation expert to analyze Qihoo's stock price movements and (d) working with an expert in Chinese and United States mergers & acquisitions and capital markets transactions;

- utilized the foregoing comprehensive investigation and additional research to draft and file the comprehensive 121-page Amended Complaint (ECF No. 53, the "Complaint"), which asserted claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Sections 20(a) and 20A of the Exchange Act;

- briefed Defendants Qihoo and Chen's motion to dismiss (ECF No. 81);

- successfully appealed to the Second Circuit the Court's dismissal of the case when it granted that motion to dismiss (ECF No. 88);

- successfully moved to serve Defendants Zhou and Qi pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure (ECF Nos. 99-100);

- successfully opposed Defendant Zhou's subsequent motion to dismiss, obtaining the denial of the motion as to claims brought by the Seller Class (ECF No. 128);

- moved for the Court to reconsider, or grant permission to seek interlocutory appeal as to, certain aspects of Zhou's motion to dismiss that the Court granted (ECF Nos. 149-50);

- reviewed the extensive factual information contained in the transcript that Plaintiffs commissioned from the trial of the Appraisal Action, which informed the Proposed

9

Second Amended Complaint (ECF No. 157-1);

- served and responded to various demands for the production of documents and interrogatories, engaged in meet and confers with respect to discovery requests, pursued third-party discovery, negotiated search terms for electronically stored information ("ESI") and document custodians, successfully briefed three motions to compel, and produced over 2,000 of their own documents;

- moved for class certification (ECF Nos. 186-88);

- prepared Plaintiffs and their class certification expert for depositions;

- defended the depositions of Plaintiff ODS and Plaintiffs' class certification expert;

- engaged in a mediation process overseen by a highly experienced third-party mediator, former United States District Judge Layn R. Phillips, which involved an exchange of comprehensive written submissions, a full-day formal mediation session, and extensive follow-up after that session;

- negotiated a detailed confidential settlement term sheet with Settling Defendants' counsel, which was executed on December 21, 2023;

- drafted and negotiated the terms of the Stipulation (including the exhibits thereto) (ECF No. 224-1) and Supplemental Agreement with Settling Defendants' Counsel;

- worked with a damages expert to craft a plan of allocation that treats Plaintiffs and all other members of the proposed Settlement Class fairly;

- drafted the Preliminary Approval Motion and supporting papers (ECF Nos. 222-24);

- responded to the Court's questions in response to the Preliminary Approval Motion (ECF No. 226);

- oversaw the implementation of the notice process; and

- drafted the Motion for Final Approval and supporting papers.

Grunfeld Decl. ¶92.

This Settlement was only able to be reached after Plaintiffs' Counsel's successes throughout the litigation. Following the initial dismissal of the case on falsity grounds, Plaintiffs' Counsel successfully appealed to the Second Circuit, resulting in the dismissal being vacated and the case being remanded for further proceedings. ECF No. 88. Plaintiffs' Counsel proceeded to defeat Defendant Zhou's subsequent motion to dismiss as to the Seller Class, despite the unique challenges presented by this case, including the "non-traditional" theory of loss causation that

10

Plaintiffs and the Class suffered losses as a result of their having sold Qihoo shares at artificially deflated prices, rather than the more typical claim in securities litigation that investors suffered losses by purchasing shares at artificially inflated prices. ECF No. 145. Plaintiffs' Counsel also successfully engaged in extensive discovery efforts, including the briefing of three motions to compel spanning issues related to class certification and merits discovery, which provided Plaintiffs with significant victories limiting the scope of Defendants' requests and requiring Defendants to produce documents they would not have otherwise produced. Grunfeld Decl. ¶28.

In addition, although the Court denied Plaintiffs' motion for reconsideration, or in the alternative to certify for interlocutory appeal, the granting of Defendant Zhou's motion to dismiss as to the Tenderer Class, the arguments and allegations included in that motion further developed the claims of the Tenderer Class. This gave the claims of the Tenderer Class more value on appeal and contributed to the higher Settlement Amount that Plaintiffs' Counsel obtained in exchange for the inclusion of these claims in the Settlement. *See* ECF No. 226 at 2, 6.

Moreover, the legal work related to the Settlement will not end with the Court's approval of the proposed Settlement. Additional hours and resources will be expended assisting Settlement Class Members with their Claim Forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion and overseeing the distribution process. Grunfeld Decl. ¶97. No additional compensation will be sought for this work, other than reimbursement of any additional out of pocket expenses incurred in fulfilling these tasks. *Id.*; *see In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that

11

a 33% fee award in this matter is reasonable.").

Accordingly, this factor supports the requested fee.

### 2.    The Risks of Litigation Support the Requested Fee

"[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 847-48 (N.D. Ill. 2015) ("When determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk (read: financial risk) that class counsel assumed in undertaking the lawsuit."). This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds by Goldberger*, 209 F.3d at 43. In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *Glob. Crossing*, 225 F.R.D. at 467. The many severe risks that Plaintiffs' Counsel faced in prosecuting this suit more than justify the requested 33.33% fee. *See, e.g.*, Grunfeld Decl. ¶¶33-59.

Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation," *Comverse*, 2010 WL 2653354, at *5, and that "[s]ecurities class actions such as this are notably difficult and notoriously uncertain," *In re Flag Telecom Holds., Ltd.*

12

*Sec. Litig.*, 2010 WL 4537550, at *27 (S.D.N.Y. Nov 8., 2010).[10] This case was no exception. From the outset, Plaintiffs' Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case for [more than two] years." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (Engelmayer, J.). Here, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Plaintiffs' Counsel] have not been compensated for any time or expenses since this case began more than [two] years ago." *Flag Telecom*, 2010 WL 4537550, at *27. Plaintiffs' Counsel's commitment was substantial ($3,377,423 in lodestar and $662,654.21 in expenses), and had they not obtained a recovery, it could have all been lost. Grunfeld Decl. ¶96 (lodestar), ¶115 (expenses).[11]

Plaintiffs' claims in this case were accompanied by substantial risks. Indeed, the Court initially dismissed this action, holding Plaintiffs failed to adequately allege that Defendants had a concrete plan to relist Qihoo in China following the Merger at issue in this action. ECF No. 84. Plaintiffs' claims are alive only as a result of Lead Counsel's skill and persistence in successfully

---

[10] *See also Tchrs.' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."); *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted.").

[11] For a discussion of the litigation, and thus contingency fee risks inherent in this case, the Court is respectfully referred to the concurrently filed Final Approval Memorandum and Grunfeld Declaration. *See* Final Approval Memorandum § II; Grunfeld Decl. ¶¶33-66. While Lead Counsel believe those risks are important in assessing a reasonable attorneys' fee, for the sake of brevity, this section focuses on what made this Action riskier than other securities class actions. *See City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, 2020 WL 7413926, at *3 (S.D.N.Y. Dec. 17, 2020) ("[G]reater risks undertaken by counsel who accept a case on a contingent fee basis support a higher settlement percentage.").

appealing that ruling. ECF No. 88. This case also raises complicated and unique issues with respect to the central theory of loss causation, namely that investors were induced to *sell* Qihoo Securities for *less than fair value* based upon Defendants' alleged misrepresentations—in contrast to the more standard securities fraud claim that investors *bought* a company's stock at *inflated* prices. These facets of the case led Defendants to argue that Plaintiffs had failed to allege any losses that resulted from Defendants' actions. *See* ECF Nos. 58 at 23-25 and 115 at 16-19. When ruling on these issues, the Court described the "non-traditional" nature of Plaintiffs' theory of loss causation for the Seller shareholders and dismissed the Tenderer shareholders' claims on loss causation grounds as overly speculative. *See* ECF No. 145 at 50, 52.

In addition, while Plaintiffs believe they effectively demonstrated that Defendants made materially false and misleading statements in violation of the federal securities laws, Defendants would contest at summary judgment and trial whether their statements are inactionable because Plaintiffs have not shown that they had a sufficiently concrete plan during the Class Period to relist Qihoo following the Merger for a significant profit, as well as whether they are too general and/or not objectively verifiable, that Defendants publicly warned of risks, the truth was on the market, and/or their statements are not otherwise false and misleading based on the factual record. Grunfeld Decl. ¶38.

This complexity was heightened even further because these issues raised the "task of enterprise valuation," which, "even for a finance expert, is fraught with uncertainty." *Towerview LLC v. Cox Radio, Inc.*, 2013 WL 3316186, at \*23 n.171 (Del. Ch. June 28, 2013); *see also See Hicks*, 2005 WL 2757792, at \*6 (noting that "'battle of the experts' as to proper methods of valuation . . . creates a significant obstacle to plaintiffs in establishing liability"). This valuation issue would have been raised as part of the claims of both the Seller and Tenderer shareholders,

14

because both sets of claims hinged on the central allegation that the Buyer Group "plan[ned] to relist Qihoo publicly, on a Chinese exchange, at a higher valuation." ECF No. 145 at 26; *see also id.* at 27, 29; ECF No. 215 at 3-4 (ordering production of "expert reports that Qihoo submitted in the Appraisal Action that speak to Qihoo's valuation").

Defendants would also argue that the alleged false and misleading statements were not made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged. Grunfeld Decl. ¶41. While Plaintiffs strongly disagree with this assertion, had the litigation continued there is simply no guarantee that the trier of fact would have adopted Plaintiffs' view of the case. Scienter, in particular, is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) (similar), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

Further, despite a chance of later success against Defendants' opposition to class certification and near-certain motion for summary judgment, substantial risks would still persist, given that many securities cases have been lost at trial, on post-trial motions, or on appeal. For example, in *In re JDS Uniphase Corp. Securities Litigation*, the jury issued a verdict in favor of defendants after five years of litigation. 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007). In *Hubbard v. BankAtlantic Bancorp, Inc.*, the jury issued a verdict on liability in favor of plaintiffs, but the Eleventh Circuit affirmed judgment as a matter of law against the plaintiffs for lack of proof of loss causation. 688 F.3d 713 (11th Cir. 2012). In *Backman v. Polaroid Corp.*, the class won a $38 million jury verdict, and a motion for judgment n.o.v. was denied; however, on appeal, the judgment was reversed and the case dismissed, inflicting a total loss after ten years of active litigation. 910 F.2d 10 (1st Cir. 1990); *see*

15

*also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

In short, the contingency fee risk in this case was high and, consequently, this factor militates in favor of the requested fee.

### 3.    The Magnitude and Complexity of the Action Support the Requested Fee

Courts repeatedly recognize the "notorious complexity" of securities fraud class actions like this one. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *Lea v. TAL Educ. Grp.*, 2021 WL 5578665, at *9 (S.D.N.Y. Nov. 30, 2021) ("Class action suits have a well-deserved reputation as being most complex, and securities class actions are notably difficult and notoriously uncertain[.]"); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) (same). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law. *Karcich v. Stuart (In re Ikon Office Sols., Inc. Sec. Litig.)*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

As detailed throughout the Grunfeld Declaration, the Action raised difficult issues concerning—among other things—falsity, reliance, and scienter, both with respect to the Complaint and efforts surrounding the proposed SAC. Grunfeld Decl. ¶¶33-59; *see supra* at 14-16. Indeed, the case has already been through one appeal to the Second Circuit and if the litigation were to proceed and Plaintiffs were to prevail on the claims of the Seller shareholders, they would then have appealed the dismissal of the Tenderer shareholders' claims. Grunfeld Decl. ¶66. This

16

is in addition to the complicated issues with respect to the central theory of loss causation—that investors were induced to sell Qihoo Securities for less than fair value based upon Defendants' misrepresentations—in contrast to the more standard securities fraud claim that investors bought a company's stock at inflated prices. *Id.* ¶44. This presents a "non-traditional" theory of loss causation that raises complicated legal issues related to movements in Qihoo's share price. ECF No. 145 at 52. Defendants were also likely to raise related issues in opposition to Plaintiffs' pending motion for class certification, as part of an argument that there was no "price impact" from Defendants' allegedly false and misleading statements. Grunfeld Decl. ¶¶52-53.

Prosecuting the class's claims required expertise, skill and dedication, from extensive expert analysis—on issues related to damages issues and issues of U.S. and Chinese M&A and capital markets transactions—to briefing the appeal with respect to the Defendants Qihoo and Chen's Motion to Dismiss.

In addition, the magnitude of this Action is unquestionable. This was a hard-fought, expensive, multi-year litigation, with at least hundreds of millions of dollars of damages at stake, and it required considerable skill and resources to litigate. Consequently, the magnitude and complexity of the litigation support the requested fee. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

### 4. The Quality of Representation Supports the Requested Fee

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007); *Veeco*, 2007 WL 4115808, at *7. Both factors support the conclusion that a 33.33% fee award in this case is reasonable under the circumstances.

17

The quality of Lead Counsel and Plaintiffs' Counsel's efforts and commitment to providing the Settlement Class with the best possible representation, together with their substantial experience in securities class actions, provided leverage necessary to negotiate the Settlement. *See* Grunfeld Decl. ¶106; *see also id.* Ex. 4-C (Pomerantz firm resume) & Ex. 5-C (Labaton firm resume); *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2016 WL 5867497, at \*5–6 (S.D.N.Y. Oct. 4, 2016) (finding Pomerantz "qualified to serve as lead counsel" because it "possess[ed] significant experience in the area of securities litigation and securities fraud class actions"); *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016) (Pomerantz is "qualified, experienced and able to conduct the litigation."), *aff'd in part, vacated in part on other grounds sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017). In this litigation, "[n]ot only did Plaintiffs' Counsel's skill and expertise contribute to the favorable settlement for the class, it contributed to the overall efficiency of the case." *Veeco*, 2007 WL 4115808, at \*7.

Additionally, courts have recognized that the quality of the opposition faced by Plaintiffs' Counsel should be taken into consideration in assessing the quality of the counsel's performance. *See, e.g.*, *Veeco*, 2007 WL 4115808, at \*7 (fee award supported by fact that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at \*3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were represented by Latham & Watkins LLP and Dechert LLP, two highly respected law firms with substantial securities class action litigation practices, whose lawyers tenaciously represented the interests of their clients throughout this Action. Grunfeld Decl. ¶107. Notwithstanding this formidable opposition, Plaintiffs' Counsel's

18

thorough investigation, ability to present a strong case, and demonstrated willingness to vigorously prosecute the Action, ultimately resulted in the favorable Settlement. *Id*. Consequently, this factor supports the requested fee. *See Veeco*, 2007 WL 4115808, at *7 ("That Plaintiffs' Counsel was able to obtain a substantial settlement from these Defendants confirms the quality of Plaintiffs' Counsel's representation … and is a factor in determining the reasonableness of the fee request.").

Moreover, the recovery here is an excellent result for the Settlement Class. *See* Final Approval Memorandum §II.B. It is especially favorable after accounting for the risks of continued litigation. Weighing "[t]he 'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Maley*, 186 F. Supp. 2d at 365. This case has been pending since 2019 and could be expected to last several more years had the Settlement not been reached. "While additional years of litigation might well have resulted in a higher settlement or verdict at trial, continued litigation could also have reduced the amount of insurance coverage available and not necessarily resulted in a greater recovery." *In re Blech Sec. Litig.*, 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000); *see also In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018) ("Because Plaintiffs face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery."), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020). The quality of representation therefore supports the requested fee.

**5.     The Requested Fee in Relation to the Settlement Amount**

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL

19

2653354, at *3. As discussed in detail in Section III.C.1, *supra*, the requested 33.33% fee is consistent with percentage fees that courts in the Second Circuit have awarded in comparable complex cases. *See also* Final Approval Brief §II.B.3.d. Accordingly, the requested fee is reasonable in relation to the Settlement.

### 6.    Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley*, 186 F. Supp. 2d at 373. This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the [SEC]." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29. As a practical matter, "[l]awsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18.

Here, Plaintiffs' Counsel invested substantial amounts of time and money vigorously pursuing allegedly serious wrongdoing by a public enterprise, and they did so on a fully contingent basis. Had Plaintiffs' Counsel not done so, the Settlement Class would have received no compensation whatsoever. Accordingly, public policy considerations favor Lead Counsel's attorneys' fee request. *See City of Birmingham*, 2020 WL 7413926, at *2 ("Protecting investors from fraudulent or misleading investments serves the public interest, and Lead Counsel's fees

20

should reflect the important goal of 'serv[ing] as an inducement for lawyers to make similar efforts in the future.'") (alteration in the original) (quoting *Wal-Mart*, 396 F.3d at 96).

### E.    The Reaction of the Settlement Class to Date Supports the Requested Fee

The reaction of the Settlement Class to date also supports the fee request. Through June 19, 2024, the Claims Administrator has mailed 24,494 copies of the Notice and Claim Form ("Notice Packet"), directly or indirectly, to unique potential Settlement Class Members, informing them that, among other things, Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 33.4% of the Settlement Fund and up to $1,100,000 in Litigation Expenses. *See* Declaration of Dawn M. Cody of Angeion Group, Regarding (A) Mailing of the Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections, dated June 20, 2024 ("Initial Mailing Decl.") (Grunfeld Decl. Ex. 1), ¶11 and Ex. A thereto. While the time to object to the Fee and Expense Application does not expire until July 5, 2024, to date no objections have been received. Grunfeld Decl. ¶77. Lead Counsel will address any that are submitted in their reply papers, which will be filed on or before July 25, 2024.

Additionally, the requested fee of 33.33% is made with the full support of Co-Lead Plaintiffs. *See* Grunfeld Decl. Ex. 7 (Declaration of Bernard Delattre on Behalf of Altimeo) & Ex. 8 (Declaration of Hilary Shane on Behalf of ODS). Lead Plaintiffs' endorsement of the fee supports its approval. *See Veeco*, 2007 WL 4115808, at *8 ("[P]ublic policy considerations support the award in this case because the Lead Plaintiff . . . – a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request.").

### F.    Plaintiffs' Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Lead Counsel's fee application includes a request for payment of their Litigation Expenses, which were reasonably incurred and necessary to prosecute the Action. Plaintiffs' Counsel

incurred $662,654.21 in total. *See* Grunfeld Decl. Exs. 4-B; 5-B; Grunfeld Decl. § VI(B). These expenses are detailed in counsel's individual fee and expense declarations. *See* Grunfeld Decl. Exs. 4-5. This amount is below the $1,100,000 cap set forth in the Notice.

Plaintiffs' Counsel have incurred expenses related to, among other things, expert and consultant fees, the investigation, and mediation fees. The expense items are recorded separately by Plaintiffs' Counsel, and such costs are not duplicated in the firm's hourly rates. It is respectfully submitted that the expenses are properly recoverable by counsel. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'").

The largest expense relates to the retention of experts. These fees total $465,361.12, or approximately 70.2% of the total Litigation Expenses. Grunfeld Decl. ¶116, Ex. 4 ¶5a, Ex. 5 ¶5(f). Principally, Plaintiffs' Counsel consulted with experts in the fields of (i) service of process in the Cayman Islands and China, (ii) Chinese and U.S. mergers and acquisitions and capital markets transactions, (iii) market efficiency, loss causation and damages, and (iv) Cayman law. Plaintiffs' Counsel utilized these experts in connection with preparing the Complaint, serving the foreign defendants, Plaintiffs' motion for class certification, in preparation for mediation, and in connection with the development of the proposed Plan of Allocation. These experts were essential to the prosecution of the Action. Grunfeld Decl., Ex. 4 ¶5a, Ex. 5 ¶5(f).

Another large component of expenses, $44,860, or approximately 6.8% of the total expenses, was expended in connection with the mediation session and discussions facilitated by Judge Phillips. Grunfeld Decl. ¶117, Ex. 4 ¶5f, Ex. 5 ¶5(g). Plaintiffs' Counsel also incurred fees

22

totaling $26,778.64, or approximately 4% of the total expenses, on deposition and court reporting expenses. Grunfeld Decl. Ex. 4 ¶5e.

The other Litigation Expenses for which Plaintiffs' Counsel seeks payment are the types of expenses that are necessarily incurred in complex international litigation and routinely paid by clients in non-contingent cases. These Litigation Expenses included, among other things: (i) work-related transportation and meals; (ii) the use of discovery databases; (iii) the use of online research databases to research many of the factual allegations alleged in the complaints and to research and support Plaintiffs' legal arguments; (iv) appellate briefing costs; (v) investigators; and (vi) translation costs. Grunfeld Decl. ¶119.

### G.    The Requested Lead Plaintiff Awards are Reasonable

In connection with their request for reimbursement of Litigation Expenses, Lead Counsel also respectfully request PSLRA awards of $60,000 for each of the Plaintiffs to compensate them for the time and effort they expended on behalf of the Settlement Class. Grunfeld Decl. ¶¶122-27. The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Indeed, "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *22 (S.D.N.Y. July 21, 2020)

Here, as detailed in Plaintiffs' Declarations, Plaintiffs have been committed to pursuing the Class's claims over the past five years—and have taken an active and diligent role in so doing. Among other things, Altimeo — an institutional asset manager — through its senior managers (a) reviewed the key pleadings and briefing filed in the Action; (b) regularly consulted with Lead

23

Counsel regarding the progress of and strategy for the case; (c) compiled its trading data and completed its certification in connection with its motion to be appointed Co-Lead Plaintiff; (d) prepared for its deposition in connection with Plaintiffs' motion for class certification; (e) conferred with Lead Counsel regarding the mediations and settlement negotiations; (f) and evaluated and approved the proposed Settlement with Defendants and the plan of allocation. These efforts provided a significant benefit to the Settlement Class given the expertise of Altimeo's senior managers and their deep knowledge of the going-private transaction for Qihoo that was at the center of this litigation. Altimeo estimates that its senior managers devoted 300 hours total to these tasks. Based on their knowledge and experience as senior finance professionals, their time is worth over $500 per hour, but Altimeo is requesting that it be compensated $60,000 for these efforts, which comes out to a reduced rate of $200 per hour for the time that its senior managers spent on this matter. *See* Grunfeld Decl. ¶124 & Ex. 7 ¶12.

Likewise, as set forth in its declaration, ODS has been committed to pursuing the claims of the Settlement Class since it filed an initial complaint in this Action in January 2019, complying with all of the demands placed upon it throughout the litigation and settlement of the Action. Ms. Shane, the Managing Member of ODS, who has an undergraduate degree in economics from Princeton and a Ph.D. in finance from Wharton, applied her knowledge and experience throughout this Action, including that she (a) provided valuable contributions to the development of the core case theory given her advanced degree in finance and experience with issues concerning mergers and appraisal rights; (b) had regular in-person, telephonic, and written communications with counsel concerning the Action; (c) remained fully informed regarding case developments; (d) carefully read and analyzed all court filings over the span of this five year litigation; (e) closely monitored and participated in all stages of the settlement discussions and documentation,

24

ultimately agreeing to accept the Settlement, subject to the Court's approval; and (f) prepared for, traveled to, and sat for a deposition taken by Defendants. *See* Shane Decl. (Grunfeld Decl. Ex. 8) ¶¶ 3-4, 9. Altogether, Ms. Shane conservatively estimates that she spent more than 75 hours working on this Action. *Id.* ¶ 10. Her effective hourly rate exceeds $1,000 per hour. *Id.* She is therefore requesting that Lead Plaintiff ODS be compensated in the amount of $60,000. *Id.*

Consequently, Lead Counsel respectfully request that the Court grant Plaintiffs' request for reimbursement of their "reasonable costs and expenses incurred in managing this litigation and representing the Class." *In re Marsh & McLennan Cos. Sec. Litig*, 2009 WL 5178546, at *21 (approving $215,000 total award to two lead plaintiffs); *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 873 (S.D.N.Y. 2018) (awarding $300,000 to lead plaintiff and $100,000 to named plaintiffs where the work performed by the class representatives "was beneficial to the class and included reviewing drafts of the complaints, responding to defendants' interrogatories and document requests, producing responsive documents, providing oversight of the mediation and settlement process, authorizing the settlements, and reviewing drafts of the settlements before they were filed with"), *aff'd*, 784 F. App'x 10 (2d Cir. 2019); *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) (affirming award of approximately $453,000 to representative plaintiffs); *ODS Capital LLC v. JA Solar Holdings Co., Ltd.*, 1:18-cv-12083-ALC (S.D.N.Y. July 13, 2023), (ECF No. 133) (awarding $60,000 to each of the Lead Plaintiffs); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *24 (collecting cases and awarding $25,410 to lead plaintiff).

## IV.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully request that the Court grant the motion. A proposed order will be submitted with the reply papers, after the deadline for objections has passed.

Dated: June 20, 2024

Respectfully submitted,

**POMERANTZ LLP**

<u>/s/ Michael Grunfeld</u>
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
      mgrunfeld@pomlaw.com

*Lead Counsel for Lead Plaintiffs*
*Altimeo Asset Management, ODS*
*Capital LLC, and the Settlement Class*

**LABATON KELLER SUCHAROW LLP**

Carol C. Villegas
Jake Bissell-Linsk
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: cvillegas@labaton.com
      jbissell-linsk@labaton.com

*Additional Counsel for Lead Plaintiff*
*ODS Capital LLC*

26